**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **CUREPOINT, LLC,** | **CASE NO. 22-56501-jwc** |
|      **Debtor.** | |
| **ARVEST BANK,** | |
|      **Movant,** | **CONTESTED MATTER** |
| **v.** | |
| **CUREPOINT, LLC,** | |
|      **Respondent.** | |

**NOTICE OF HEARING ON MOTION**

**PLEASE TAKE NOTICE** that on September 22, 2022, Arvest Bank, a creditor of Curepoint, LLC, filed a *Motion for Relief from the Automatic Stay* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the Motion at the following toll-free number: **833-568-8864; access code: 160 459 5648, at 10:00 a.m. on October 27, 2022, in Courtroom 1203, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303**.

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's

Office is Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

This 22nd day of September, 2022.

**JONES & WALDEN LLC**

*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
Attorney for Arvest Bank
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
lpineyro@joneswalden.com

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **CUREPOINT, LLC,** | **CASE NO. 22-56501-jwc** |
|      **Debtor.** | |
| | |
| **ARVEST BANK,** | |
|      **Movant,** | **CONTESTED MATTER** |
| **v.** | |
| **CUREPOINT, LLC,** | |
|      **Respondent.** | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

COMES NOW Arvest Bank ("Arvest Bank" or "Movant") through its undersigned counsel, and moves the Court for entry of an order granting relief from the automatic stay. In support of its motion, Movant shows the Court the following:

**<u>JURISDICTION</u>**

1.     This Court has jurisdiction to decide this Motion pursuant to 28 U.S.C. § 1334.

2.     This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (M). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**<u>BACKGROUND</u>**

3.     On August 19, 2022 ("Petition Date"), Curepoint, LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., (the "Bankruptcy Code").

4.     This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (M). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     Debtor is a Georgia limited liability company which, upon information and belief,

operates a medical practice providing radiation oncology and cancer treatment (the "Business").

6.      Arvest Bank is the holder of two secured claims against Debtor identified as Loan Number 2406303 ("Loan 6303") and Loan Number 2403619 ("Loan 3619") (collectively, the "Loans").

7.      As of the Petition Date, Debtor was indebted to Arvest Bank pursuant to Loan 6303 in the principal amount of $622,325.79, plus pre-petition interest, post-petition interest, late fees, attorney's fees and charges as allowed by law, as evidenced by an Equipment Finance Agreement (the "6303 Agreement") and related documents (collectively, the "6303 Loan Documents").

8.      The 6303 Agreement grants Arvest Bank a first priority lien in Debtor's (i) four 2019 Kyocera 3252 CI Copiers (Serial Nos. VFG6Z00665, VFG6600111, VFG7401517, VFG8903560), (ii) three 2019 Kyocera 5052 CI Copiers (Serial Nos. W2H8106756, W2H6X01011, VFF6900204), (iii) one 2019 Kyocera 3552 CI Copier (Serial No. VLQ7604545), (iv) one 2019 Kyocera 6052 CI Copier (Serial No. W2D6700088), (v) five 2019 Kyocera 4052 CI Copiers (Serial Nos. W2M6X00806, W2M8705302, W2M8504499, W2M7301475, W2M6800397), and (vi) a Copier Stand DP-7100 Fax System 12W Interface Kit Print System with Interface Kit Sequence Impose DP-7170 with Muti-Feed Productivity Package CPS V4 Software CPS V4 ES 2000 5 Year Support Internet Fax Kit, including all parts, attachments, and accessions thereto (the "6303 Collateral") as further described in the UCC Financing Statement recorded in the records of the Clerk of Superior Court of Coweta County, Georgia, as File No. 038-2021-034156 (the "6303 UCC"). A true and correct copy of the 6303 Agreement and 6303 UCC are attached hereto as **Exhibit "A"**.

9.      As of the Petition Date, Debtor was indebted to Arvest Bank pursuant to Loan 3619 in the principal amount of $147,695.16, plus pre-petition interest, post-petition interest, late fees, attorney's fees and charges as allowed by law, as evidenced by an Equipment Finance Agreement (the "3619 Agreement") and related documents (collectively, the "3619 Loan

4

Documents").

10.    The 3619 Agreement grants Arvest Bank a first priority lien in Debtor's: (i) two 2019 Kyocera 5052 C Copers, (Serial Nos. W2H6X01389 and W2H8207395), with accessories, and (ii) two 2019 Kyocera 3552 CI Copers (Serial Nos. VLQ7604317 and VLQ6X02412 with accessories, including all parts, attachments, and accessions thereto (the "3619 Collateral" and together with the 6303 Collateral, the "Collateral") as further described in UCC Financing Statement recorded in the records of the Clerk of Superior Court of Coweta County, Georgia, as File No. 038-2021-032239 (the "3619 UCC"). A true and correct copy of the 3619 Agreement and 3619 UCC are attached hereto as **Exhibit "B"**.

11.    Movant's Collateral is secured by total principal indebtedness of $770,020.95 plus interest and other fees and costs. In Debtor's Schedule D, Debtor lists the value of the Collateral as $600,000.00. (Doc. No. 37, p. 13 of 62). Debtor testified at the 341 Meeting of Creditors that Movant's Collateral is not in Debtor's possession, but in the possession of unidentified third parties. Movant has requested, but has not received, an accounting of the location of each item of Collateral. The filing of the bankruptcy case has prohibited Movant from enforcing the terms of its security interests in the Collateral which it would otherwise be entitled to do. Movant's security interests in the Collateral are not adequately protected.  Movant hereby demands adequate protection.

## ARGUMENT

**Cause exists to grant Movant relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1), (d)(2), and (d)(4).**

Section 362(d) of the Bankruptcy Code provides, in pertinent part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; …
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d) (emphasis added). The disjunctive "or" emphasized above indicates that a party in interest that has carried its burden under either § 362(d)(1) or (d)(2) is entitled to relief from the automatic stay. Movant is entitled to relief under both of these sections.

Movant is entitled to relief "for cause." Cause is not defined in the Bankruptcy Code and must be addressed on a case-by-case basis. Here, cause exists because Movant is not adequately protected. Upon information and belief, the Collateral is (a) encumbered by Movant's lien and (b) worth less than the amount outstanding under Movant's loan. Moreover, the Collateral is not in the possession of Debtor, is currently in use by unidentified third parties and is depreciating.

Movant is likewise entitled to relief under § 362(d)(2) because Debtor does not have equity in the Collateral and such Collateral is not necessary to an effective reorganization. As indicated above, there does not appear to be equity in the property for which Movant seeks relief. Likewise, the property is not necessary to an effective reorganization. It is Debtor's burden to show that the Property "is essential for an effective reorganization that is in prospect." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S. Ct. 626, 633 (1988). Even putting aside the issue of who has the burden of proof, there is no reorganization in prospect.

Movant requests that the Court grant it relief from the automatic stay, instanter, without the necessity of any fourteen day stay, all as authorized by the provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3).

Movant, by and through its counsel, waives the requirements of 11 U.S.C. § 362(e) which would otherwise require a hearing on said Motion within thirty (30) days. The Movant waives such provisions and consents to the automatic stay remaining in effect with respect to Movant until such time as the Court orders otherwise.

6

WHEREFORE, Movant requests relief from or annulment of the automatic stay as to the

Collateral, adequate protection, or other relief as the Court deems equitable.

Respectfully submitted this 22nd day of September, 2022.

**JONES & WALDEN LLC**

*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
Attorney for Arvest Bank
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
lpineyro@joneswalden.com

# Exhibit "A"



**EQUIPMENT FINANCE AGREEMENT**

| SECURED PARTY:<br>Arvest Equipment Finance,<br>A division of Arvest Bank | DEBTOR:<br>**CurePoint, LLC**<br>**11175 CICERO DRIVE SUITE 100**<br>**ALPHARETTA, Georgia 30022** | CONTRACT NUMBER:<br>2406303 |
|---|---|---|

| EQUIPMENT FINANCED:<br>See Schedule of Financed Equipment | EQUIPMENT LOCATION:<br>**2406 Bellevue Ave Suite 7**<br><br>**Dublin, GA 31021** |
|---|---|

| Number of Payments | Payment Amount | Payment Frequency | Equipment Cost | Rate of Interest |
|---|---|---|---|---|
| 48 | $16,203.38 | Monthly | $699,859.00 | 4.99% |

| See Attached Addendum: N/A |
|---|

**TERMS AND CONDITIONS**

**1.    FINANCE AGREEMENT; DISCLAIMER OF WARRANTIES:**   For your convenience, this Equipment Finance Agreement (this "**Agreement**") has been written in "Plain English."   The words "**you**" and "**your**" refer to the Debtor identified above and its permitted successors and assigns. The words "**we**", "**us**" and "**our**" refer to the Secured Party identified above and its successors and assigns. This Agreement shall be effective when it has been accepted by us as evidenced solely by our advance of funds hereunder. You hereby acknowledge that your execution of this Agreement constitutes an offer on your part which we may accept by advancing funds hereunder. You further agree that you cannot revoke such offer for fifteen days, and that any revocation thereafter must be in a writing that is (a) delivered in accordance with the terms of this Agreement and (b) received by us in time for us to stop any such advance through our normal internal processes. Subject to the terms of this Agreement and compliance with all other terms and conditions that we require in our sole discretion, we may advance the amount set forth above as the Equipment Cost in connection with the financing of the personal property described or referred to above as the "Equipment Financed" (such personal property and any accessories, accessions, parts, additions, upgrades, operating systems and software, replacements and repairs now or hereinafter made thereto is hereinafter referred to collectively as the "**Equipment**"). This is solely a financing agreement.  You selected the Equipment and the supplier from whom it was purchased. You further acknowledge that neither we nor any of our affiliates is the agent or affiliate of the supplier and that no supplier or any of its salesmen or agents are our agents. We are not responsible for any statements made to you by such supplier or any intermediary or otherwise in any way for the quality, condition or acceptability of the Equipment.    **WE MAKE NO, AND HEREBY DISCLAIM, ANY AND ALL, REPRESENTATIONS OR WARRANTIES OF ANY KIND WITH RESPECT TO THE EQUIPMENT, INCLUDING ANY IMPLIED WARRANTY OF <u>MERCHANTABILITY, SUITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE</u>, OR VALUE. YOU HEREBY WAIVE ANY CLAIM (INCLUDING ANY CLAIM BASED IN STRICT OR ABSOLUTE LIABILITY IN TORT) YOU MIGHT HAVE AGAINST US OR OUR AFFILIATES FOR ANY LOSS, DAMAGE (INCLUDING INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOST PROFITS) OR EXPENSE CAUSED BY THE EQUIPMENT OR UNDER THIS AGREEMENT INCLUDING ANY DELAY OR FAILURE BY ANY SUPPLIER TO DELIVER ANY EQUIPMENT AND ANY MALFUNCTION OR OTHER PROBLEMS THEREWITH.** This Agreement is not a "Consumer Transaction", as defined in the Uniform Commercial Code (the "<u>UCC</u>") and you acknowledge that the funds advanced hereunder and all Equipment are each **SOLELY FOR YOUR BUSINESS PURPOSE** and not for consumer, personal, family or household purposes.

**2.    TERMS AND PAYMENTS:**  You promise to pay us the total of all the payments that are indicated above, which can be determined by multiplying the number of monthly payments times the monthly payment amount and the other payments, all as indicated above.  The monthly payments shall commence on the date specified by us following our acceptance of this Agreement, and shall continue thereafter to be paid on the same day of each succeeding month, in the amount specified, until all payments and any additional amounts chargeable under this Agreement shall have been paid in full. You expressly authorize us to confirm the first payment date with you orally on or about (including after) the date we advance funds hereunder. You may have various payment method options and we may charge fees in connection with certain of those options, including any payment options we elect to offer, in our sole discretion from time to time, by phone, online, or interactive voice response. You expressly authorize us to charge such a fee if you elect to use a payment method with an associated fee. **YOUR OBLIGATIONS TO PAY ALL PAYMENTS AND TO PERFORM ALL OTHER OBLIGATIONS HEREUNDER ARE NON-CANCELLABLE, IRREVOCABLE, ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO ANY ABATEMENT, REDUCTION, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER INCLUDING PROBLEMS WITH THE EQUIPMENT OR ANY MAINTENANCE, WARRANTY OR SERVICES AGREEMENT RELATING THERETO (EVEN IF FINANCED BY US) OR ANY OTHER CLAIM AGAINST US, ANY SUPPLIER, MANUFACTURER OR SERVICE PROVIDER OR ANY OTHER PERSON OR ENTITY.**

**3.    SECURITY INTEREST:** To secure all of your indebtedness, liabilities and other obligations (collectively, the "**Obligations**") hereunder and under all other past, present or future agreements, including any mortgage, indenture, loan or credit agreement, or other contract or agreement for money borrowed or the lease of real or personal property with us or our affiliates (collectively, "**Other Agreements**"), you hereby grant to us and all such affiliates a security interest in all of your right, title and interest, whether now existing or hereafter acquired or arising, in and to the following (collectively, the "**Collateral**"): (a) the Equipment; (b) any equipment or other personal property leased or financed pursuant to the Other Agreements ("**Other Equipment**"); (c) any leases, subleases, chattel paper, accounts and security deposits relating to the Equipment or Other Equipment; (d) any and all deposit accounts maintained at, or certificates of deposit maintained with or issued by, us or any of our affiliates (whether such certificates constitute "Deposit Accounts" or "Instruments" as defined in the UCC); (e) all other collateral as to which a security interest has been or is hereafter granted by you to us or any of our affiliates in connection with any Other Agreements; and (f) any and all proceeds of any of the foregoing.  Notwithstanding the foregoing, any security interest granted hereunder to us or our affiliates with respect to Other Equipment, with respect to the collateral described in Section 3(c) relating to the Other Equipment, with respect to any collateral described in Sections 3(d) and 3(e), or with respect to any proceeds of the foregoing shall in each case be for the benefit of any of our assignees or their affiliates only to the extent such assignees are also our affiliates (it being the intention of the parties that any cross-collateralization between this Agreement and any Other Agreements , and any lien in any of the Collateral described in subsection 3(d), only be effective amongst us and/or our affiliates). You authorize us to file or record any and all UCC financing statements, and amendments thereto, and other documents that we deem necessary to perfect and protect our security interest in the Equipment and the other collateral described in this Agreement. You further acknowledge that the description may include a broad reference to property pledged, or to be pledged, to us without including a specific listing of the Equipment.  You agree to pay or reimburse us for any searches, filings, recordings, stamp fees or taxes related to the filing or recording of any UCC financing statements or other instruments or statements showing our interest in the Equipment.

**4.    COLLATERAL:** You represent and warrant that you are the sole owner of the Collateral and hold good title thereto free of any liens, encumbrances, or interests of any kind except for the security interest granted to us or our affiliates.  You agree not to sell, lease, trade, transfer, assign or dispose of the Collateral or any interest therein or to allow the Collateral to become subject to any liens, encumbrances, or security interests of any kind, except for security interests in favor of us or our affiliates, until all amounts payable by you under this Agreement have been paid in full. You agree to inspect the Equipment to confirm it is acceptable.  You agree, at our request, to execute an Acceptance Certificate in the form approved by us to confirm the foregoing but you acknowledge that we are not in any way obligated to make any such request, the Acceptance Certificate is solely for our benefit to confirm the acceptability of the Equipment as Collateral, and no Acceptance Certificate is required for us to enforce our rights hereunder.

**5.    USE; INSPECTION:** You agree to use the Equipment solely in the conduct of your business; in a careful and proper manner; only for lawful purposes; and in compliance with applicable laws, insurance requirements and the manufacturer's and supplier's requirements. Additionally, at your cost and expense you shall keep the Equipment in good repair, condition, and working order and shall furnish any and all parts and labor required for that purpose in accordance with applicable manufacturer's or supplier's manuals and instructions.  You shall not make any alterations to the Equipment without our prior written consent. You shall not permit any Equipment to become an accession to other goods except those financed by us under this Agreement or any Other Agreements unless specifically authorized by us in writing in advance.  We shall have the right from time to time during normal business hours to enter upon your premises or elsewhere for the purpose of confirming the existence, condition, and proper maintenance of the Equipment.

**6.    LOCATION; FIXTURES:** You will keep the Equipment at the address shown on the first page of this Agreement and you agree the Equipment shall not be removed from such location without thirty (30) days prior written notice to us and our prior written consent (unless such Equipment consists of a motor vehicle or any equipment subject to a state's motor vehicle laws ("**Vehicles**") or of any other mobile goods specifically designed to be moved on a regular basis, such as laptop computers ("**Mobile Equipment**"), in which case you may move such Equipment so long as: (a) you do not permit any Vehicle to be located in a state other than the state in which such Vehicle is then titled for any continuous period of time that would subject such Vehicle to the title or registration laws of such other state; (b) you do not permit any Vehicle or Mobile Equipment to be located outside of the Continental United States; and (c) such Vehicle and Mobile Equipment will be based at, and return at regular intervals to, the location specified on page one hereof or such other location as we have agreed to in advance in writing). It is the intention of the parties hereto that the Equipment shall consist solely of personal property and that it shall not constitute fixtures under the laws of the states where the Equipment is located.  The parties acknowledge and agree that the Equipment is and shall remain removable from, and not essential to, the premises where the Equipment is located, and you covenant that you will not fasten the Equipment to real estate in a manner that may cause it to be considered a fixture.

**7.    LOSS OF EQUIPMENT:** You assume the entire risk of loss, damage, theft or requisition from any cause whatsoever to the Equipment (any occurrence thereof being hereinafter referred to as a "**Casualty Occurrence**") and no such Casualty Occurrence shall relieve you of your duties hereunder. In the event of a Casualty Occurrence, you shall promptly, but in any event within three (3) days of the Casualty Occurrence, give us written notice thereof and the facts pertaining thereto.  If the Equipment can be repaired, you shall promptly place the Equipment in the condition required by this Agreement.  If the Equipment cannot be repaired, you shall pay to us, on the next monthly payment date following the Casualty Occurrence, an amount we calculate (without regard to insurance) to be equal to the Payoff Amount (as defined in Section 11 below).  In the event the Equipment subject to the Casualty Occurrence (the "**Casualty Equipment**") is less than all Equipment financed hereunder: (a) we may reasonably make an item by item allocation of the amount of the mandatory prepayment applicable to only the Casualty Equipment and may, but shall not be obligated to, consider the initial cost of the applicable Equipment as well as the depreciation thereof; and (b) we may require mandatory prepayment with respect to all Equipment (not solely the Casualty Equipment) if we determine that the Casualty Equipment is material in value when compared to the remaining Equipment, is material the overall functionality of the remaining Equipment or that the Casualty Occurrence could reasonably be expected to have a material adverse effect on your business, property or financial condition or your ability to perform hereunder.

**8.    TAXES AND CERTAIN FEES:** You agree to report and pay when due (and shall indemnify and hold us harmless on an after-tax basis from and, if we request, defend us against) all license, title, recording and registration fees and any and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, fees and assessments now or hereafter imposed by any foreign, federal, state or local

governmental body, agency, or any other taxing authority on the Equipment or its purchase, ownership, delivery, leasing, possession, use or operation thereof or upon the payments due hereunder or otherwise with respect to this Agreement and the transactions contemplated hereby, together with any penalties, fines or interest thereon (excluding, however, any taxes by the United States of America or any state or political subdivision thereof that are imposed on or measured by our net income (as opposed to gross receipts)). If we pay any of these charges or any related penalties or fines, you agree to reimburse us upon demand for the entire amount advanced by us. Any sums paid by us shall not be deemed a waiver of, or release you from, the obligation.

**9.    INSURANCE:** Throughout the term of this Agreement you agree to maintain (a) general property damage insurance covering the Equipment for its full replacement value against all risks (including loss, theft, damage, and destruction) and naming us as sole loss payee; and (b) such other insurance as we may require, including automobile liability insurance with respect to Vehicles in a minimum amount of $1,000,000 combined single limit for bodily injury or property damage with a carrier that is licensed to do business in each state required under applicable law and has a Best's Rating of A-, V or better, naming us as additional insured. Upon our request, you agree to provide us with certificates or other evidence of such insurance which shall be in a term, amount, and with companies reasonably acceptable to us and shall provide that we be given thirty (30) days prior written notice of any material policy alteration or cancellation. If you do not provide evidence of property insurance acceptable to us, you grant us the right, but we do not have any obligation, to buy such insurance to protect us and add the cost of such insurance, including service fees, subcontractor fees, finance charges or other charges or fees associated with the placement, maintenance, or service of such insurance (collectively, "**Insurance Charge**"), to the payment amounts due from you. You agree to pay the Insurance Charge in equal installments allocated to each remaining payment (with interest on such allocations up to the maximum rate permitted by applicable law). You further expressly agree that the Insurance Charge may be substantially higher than the premium you would pay if you placed such insurance separately; the Insurance Charge may result in a profit to us or our agents; any such insurance shall be only for our benefit and it may not name you as an insured or fully protect your interests; and no such insurance shall absolve you of your obligations hereunder, including pursuant to Section7 hereof, or constitute a waiver of our rights to declare a default due to your failure to provide insurance. Nothing in this Agreement creates any insurance coverage and we may terminate or allow to lapse any coverage without having any liability to you. You hereby irrevocably appoint us (such appointment being coupled with an interest) as your attorney-in-fact to make claims for, receive payment of, and execute and endorse all documents, checks, or other drafts for loss, theft, damage, or destruction to the Equipment under any property insurance. In all circumstances, you shall cooperate with us or our agent with respect to the placement of insurance and processing of claims.

**10.    DEFAULT:** Each of the following shall be an "**Event of Default**" hereunder: (a) you fail to make any payment hereunder when due; (b) you fail to perform any of the terms, covenants, agreements, or conditions of this Agreement; (c) you provide us, or if you have previously provided us, any information that is false, misleading, inaccurate, or incomplete; (d) you change your name, or if you are a legal entity, change your type of entity, state of organization, or chief executive office without giving us at least thirty (30) days' prior written notice thereof; (e) you cease or terminate the regular conduct or operation of your business; (f) you die, if you are an individual, or are dissolved or cease to be in good standing in all necessary jurisdictions, if you are a legal entity; (g) you become insolvent or make an assignment for the benefit of creditors, or file a petition under the Bankruptcy Code or one is filed against you; (h) a receiver, trustee, or conservator or liquidator is appointed with or without your consent; (i) you take any action that adversely affects our security interest; (i) an event of default occurs under any Other Agreement after giving effect to any notice or cure provisions thereunder; (k) an event of default occurs under any agreement with any third party material to your business or providing for the lease of real or personal property or the repayment of money borrowed, in each case after giving effect to any notice or cure provisions thereunder; or (l) if any guarantor of your obligations hereunder (a "**Guarantor**") shall breach any covenant, condition or agreement of a guaranty executed by a Guarantor for our benefit, or suffer any of the events described above in Sections 10(c) through 10(h), inclusive.

**11. REMEDIES:** Upon the occurrence of an Event of Default and at any time thereafter, we shall have any and all rights and remedies existing at law or in equity and shall have the right, at our sole election, at any time to exercise any or all of such remedies concurrently, successively or separately, and without notice to you. Without limiting the foregoing, we shall expressly have the right to: (a) accelerate, declare due, sue for and receive from you the sum of (the "**Payoff Amount**"): (i) all payments and other amounts due and owing under this Agreement as of the date of the calculation (the "**Calculation Date**"), (ii) the present value of the sum of the payments for the unexpired term of this Agreement discounted at the 1-year Treasury Constant Maturity rate as published in the Selected Interest Rates table of the Federal Reserve statistical release H.15(519) (or if such rate is no longer determined or published, a successor or alternate rate that we select); (iii) all costs and expenses we incur by in any repossession, storage, refurbishing, advertising, sale, re-lease, or other disposition of the Equipment or our enforcement of our rights hereunder, including attorneys' fees; and (iv) interest on all of the foregoing from the date due at a rate equal to the Default Rate (as defined below); (b) similarly accelerate the balances due under any other obligations you owe us; (c) disable and/or take immediate possession of the Equipment, and lease, sell or otherwise dispose of the Equipment or any portion thereof at private or public sale, in bulk or in parcels, with or without notice except to the extent required by applicable laws, without having the Equipment present at the place of sale or in our possession, and upon such terms as we may elect; (d) apply the net proceeds of any disposition, less reasonable selling and administrative expenses, to your Obligations in the order we determine; (e) charge you interest on all monies due us from and after the date of default at the rate of one and one half percent (1.5%) per month until paid, but in no event more than the maximum rate permitted by law (the "**Default Rate**"); (f) require you to deliver all the Equipment and other collateral, at your expense, to a place reasonably designated by us; (g) charge you for all the expenses incurred in connection with the enforcement of any of our remedies including all costs of collection, reasonable attorneys' fees and court costs and any costs we incur in connection with acts we deem necessary or reasonable to protect our security interest in the Equipment and any other collateral; (h) set off the amounts you owe us against any deposits you have with us or any other amounts we may owe you; (i) accept all or a portion of the Equipment in full or partial satisfaction of your obligations pursuant to the provisions of Article 9 of the UCC (and any such acceptance must be confirmed by us in writing); and (j) exercise any and all other rights and remedies available to a secured party under the UCC or other applicable law. Exercise of any one remedy shall not be deemed an election of such remedy or to preclude the exercise of any other remedy. No failure on our part to exercise any right or remedy and no delay in exercising any right or remedy shall operate as a waiver of the right or remedy or to modify the terms of this Agreement. A waiver of default shall not be construed as a waiver of any other or prior, concurrent or subsequent default. In the event the amount we calculate pursuant to Sections 11(a)(i) and (ii) above, as part of the Payoff Amount, exceeds the outstanding principal balance and all accrued and unpaid interest thereon as of the Calculation Date, such excess shall be deemed to be a reasonable prepayment penalty as compensation for our loss of its bargain. With respect to our exercise of our right to recover or dispose of any Equipment securing your obligations, you acknowledge and agree as follows: (A) we shall have no obligation, subject to the requirements of commercial reasonableness, to clean-up or otherwise prepare the Equipment for disposition, (B) we may at our option comply with any applicable State or Federal law requirements that

we deem to be applicable or prudent to follow in connection with any disposition of the Equipment, and any actions taken or not taken in connection therewith shall not be deemed to have adversely affected the commercial reasonableness of any such disposition; and (C) any requirements of reasonable notice under Article 9 of the UCC shall be met if such notice is given at least five (5) days before the time of the public sale or the time after which any other disposition is to be made.

12. **LATE CHARGES; TIME IS OF THE ESSENCE; INTEREST:** If a payment is more than ten (10) days late, you will be charged five percent (5%) of the unpaid portion of such late payment or fifteen dollars ($15.00), whichever is greater. However, this charge will not be greater than fifty dollars ($50.00). You will pay this late charge promptly but only once for each late payment. You agree to pay us a returned check or non-sufficient funds charge in the amount of $25.00, or if less, the maximum amount permitted by law. Timeliness of your payment and other performance is of the essence under this Agreement and all related documents. You expressly acknowledge and agree that, although we use the interest rate specified on the first page hereof to calculate the amount of your monthly payment, the effective interest rate may be different as a result of numerous factors including whether interest is being computed on a 365/360 or a 366/360 basis, whether the Equipment Cost reflects only the equipment cost or other fees or charges, whether we are advancing other funds in connection with your acquisition of the Equipment (including financing fees we intend to amortize during the term of this Agreement), the date on which we advance funds hereunder, and the date of your first payment. You further agree that the maximum interest rate that we could be deemed to have charged for advancing the funds loaned hereunder can be calculated using the Equipment Cost, the term, and the amount and timing of each scheduled payment, and is therefore ascertainable within the four corners of this Agreement. You further expressly agree that the effective interest rate may be less after taking into account documentation fees or out of pocket amounts that we may pay to third parties or otherwise incur in connection with this transaction, including broker or origination fees, legal fees and filing fees. It is the intention of the parties to comply strictly with applicable laws (including usury laws) and, accordingly, in no event shall we ever be entitled to receive, collect, or apply as interest any interest, fees, charges or other payments determined by a court of law to be the equivalent of interest, in excess of the maximum rate which Lender may lawfully charge under applicable law. In the event that we ever receive, collect, or apply as interest any such excess, such amount which, but for this provision, would be excessive interest, shall be applied to the reduction of the principal amount of the loan; provided, however, that you waive, to the extent permitted by applicable law, the right to seek such reduction. If the principal amount of the loan, all lawful interest thereon, and all lawful fees and charges in connection therewith, are paid in full, any remaining excess shall forthwith be paid to you, or other party lawfully entitled thereto.

13. **ASSIGNMENT:** You agree that you have no right to sell, lease, trade, transfer, or assign any interest in this Agreement or the Equipment (including by operation of law). We may, without notice, sell, transfer or assign our interest in this Agreement, the Equipment, or any payments due hereunder. If we make any such assignment or transfer, the new owner will have all of our rights and benefits but none of our obligations. The rights of the new owner will not be subject to any claims, defenses, or set-offs that you may have against us. You acknowledge that any assignment or transfer by us shall not materially change your duties or obligations under this Agreement nor materially increase your burdens or risks. Upon notification of such an assignment, you shall remit payments directly to the address set forth on the notification.

14. **NOTICES; TITLE WORK:** All written notices relating to this Agreement shall either be sent by regular mail, certified mail, return receipt requested, or nationally recognized overnight courier service or delivered in person to (a) you at the address set forth on page one of this Agreement, or at any other address that you specify in writing in a notice provided as required hereunder; and (b) to us at 8000 Taylor Ave., Fort Smith, AR 72916 or at any other address that we specify in writing in a notice provided as required hereunder. Notwithstanding the foregoing, any correspondence relating to the titling, registration or notation of liens on Vehicles, including any correspondence including certificates of title, applications or similar documentation, shall be sent to Arvest Bank, PO Box 799, Lowell, AR 72745 or to such other address that we specify in writing in a notice provided as required hereunder.

15. **CHOICE OF LAW; VENUE; NONJURY TRIAL:** THIS AGREEMENT HAS BEEN DELIVERED TO AND, UPON OUR ADVANCE OF FUNDS, ACCEPTED BY US IN THE STATE OF ARKANSAS AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ARKANSAS (EXCLUDING LAWS APPLICABLE TO CONFLICTS OR CHOICE OF LAWS). YOU CONSENT TO, AGREE, AND STIPULATE THAT THE COURTS OF THE STATE OF ARKANSAS OR ANY FEDERAL DISTRICT COURT HAVING JURISDICTION IN SUCH STATE SHALL BE THE AGREED VENUE FOR THE DETERMINATION OF ALL DISPUTES ARISING UNDER THIS AGREEMENT. NOTHING STATED IN THE TERMS AND CONDITIONS OF THIS AGREEMENT IS MEANT TO PREVENT US FROM INITIATING ANY ACTION IN ANY OTHER COURT HAVING PROPER JURISDICTION. <u>YOU AND WE EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY.</u>

16. **INDEMNITY:** You shall indemnify and hold us harmless on an after-tax basis from and, if we request, defend us against all losses, liabilities, damages, penalties, expenses (including legal fees and costs) claims, actions and suits (including negligence, strict liability, patent, copyright, trademark and tort claims), directly or indirectly arising out of this Agreement or the ownership, possession, operation (regardless of where and how and by whom the Equipment is operated), control, use, condition (including latent and other defects, whether or not discovered by you), maintenance, and delivery, of Equipment, or in the event that you are in default hereunder, arising out of the condition of any item of Equipment sold or disposed of after your use. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the termination of this Agreement.

17. **CREDIT INFORMATION:** You hereby authorize us to obtain credit bureau reports and make any other credit inquiries, as we deem necessary. You further warrant that all credit information and financial statements that you have given to us at the time of your credit application are true, accurate and complete. If we request, you will provide us current interim, and/or annual financial statements during the term of this Agreement, financial Statements or other financial information we require for each Guarantor, and any other credit information, documents, or financial reports we reasonably request. You further acknowledge that we may require the annual financial statements to be audited by a certified public accountant satisfactory to us.

18. **OTHER COVENANTS AND WARRANTIES:** You agree that this Agreement is irrevocable for the full term hereof, that your obligations under this Agreement are absolute and shall continue without abatement and regardless of any inability to use the Equipment or any part thereof because of any reason including (a) war, (b) act of God, (c) governmental regulations, (d) strike, (e) loss, (f) damage, (g) destruction, (h) obsolescence, (i) failure of or delay in delivery, (j) failure of the Equipment to properly operate, or (k) termination by operation of law or any other cause.

19. **MISCELLANEOUS:** The provisions of this Agreement are severable, and the remainder shall not be affected if any provision is held unenforceable, invalid or illegal. This Agreement inures to the benefit of and is binding on the successors or permitted assigns of us or

you.  The individual(s) signing this Agreement or any document hereto or hereto personally warrants that he or she is duly authorized to do so and that his or her signature is legally binding on you.  You agree that this Agreement contains the entire agreement between you and us and it may not be changed, amended, modified, rescinded, terminated or otherwise altered unless in writing and signed by both you and us. All references to any "Equipment" shall include each and all portions of the Equipment, no limitation being intended by the choice of terms. As used in this Agreement, the terms "include" or "including" means "include" or "including", as the case may be, without limiting the generality of any description or word preceding such term. The accounts or records maintained by us shall be conclusive evidence, absent manifest error, of the obligations you owe hereunder, including advances, interest, outstanding principal balance and related information.

**DEBTOR**: **CurePoint, LLC**

SIGNATURE: _____

PRINT NAME:  PHILLIP MILES

TITLE: MEMBER/MANAGER

DATE: _____

---

**DEBTOR**: **CurePoint, LLC**

SIGNATURE: _____

PRINT NAME:  MARK MILES

TITLE: MEMBER

DATE: _____



## SCHEDULE OF FINANCED EQUIPMENT

This Schedule of Financed Equipment ("Schedule") is incorporated into and made a part of the finance agreement (the "EFA") described at the bottom of this page, subject to the additional terms, if any, stated below:

EQUIPMENT

| Quantity | Description | Serial Number | Location |
|---|---|---|---|
| 1 | (4) 2019 KYOCERA 3252 CI COPIERS S/N: VFG6Z00665, VFG6600111, VFG7401517, VFG8903560 | VFG6Z00665, VFG6600111, VFG7401517, VFG8903560 | 2406 Bellevue Ave Suite 7 Dublin, GA 31021 |
| 1 | (3) 2019 KYOCERA 5052 CI COPIERS S/N: W2H8106756, W2H6X01011, VFF6900204 | W2H8106756, W2H6X01011, VFF6900204 | 2406 Bellevue Ave Suite 7 Dublin, GA 31021 |
| 1 | (1) 2019 KYOCERA 3552 CI COPIER S/N: VLQ7604545 | VLQ7604545 | 2406 Bellevue Ave Suite 7 Dublin, GA 31021 |
| 1 | (1) 2019 KYOCERA 6052 CI COPIER S/N: W2D6700088 | W2D6700088 | 2406 Bellevue Ave Suite 7 Dublin, GA 31021 |
| 1 | (5) 2019 KYOCERA 4052 CI COPIER S/N: W2M6X00806, W2M8705302, W2M8504499, W2M7301475, W2M6800397 | W2M6X00806, W2M8705302, W2M8504499, W2M7301475, W2M6800397 | 2406 Bellevue Ave Suite 7 Dublin, GA 31021 |
| 1 | COPIER STAND DP-7100 FAX SYSTEM 12W INTERFACE KIT PRINT SYSTEM W INTERFACE KIT SEQUENCE IMPOSE DP-7170 W MUTI-FEED PRODUCTIVITY PACKAGE CPS V4 SOFTWARE CPS V4 ES 2000 5 YEAR SUPPORT INTERNET FAX KIT | | 2406 Bellevue Ave Suite 7 Dublin, GA 31021 |
| 1 | DOCUMENT FEE | | 2406 Bellevue Ave Suite 7 Dublin, GA 31021 |

**ADDITIONAL TERMS APPLICABLE TO THIS SCHEDULE**:

SECURED PARTY:  **ARVEST EQUIPMENT FINANCE, A DIVISION OF ARVEST BANK**
DEBTOR: **CurePoint, LLC**
CONTRACT NUMBER: **2406303**
DATE OF AGREEMENT: **11/16/2021**

GSCCCA eFile LES-206866402_00133389b 038 Received Friday, November 19, 2021 11:25 PM Page 1 of 1.

Case 22-58501-pmb Doc 37 Filed 09/22/22 Entered 09/22/22 11:48:55 Desc Main
Document Page 15 of 25

FILED & RECORDED

Monday, November 22, 2021 9:03:49 AM

File Number: 038-2021-034156

Cindy G. Brown

Coweta County Clerk of Superior Court

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2221 12980
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Georgia
(Central Index - Coweta County)

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME CUREPOINT, LLC | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 11175 CICERO DRIVE SUITE 100 | CITY ALPHARETTA | STATE GA | POSTAL CODE 30022 | COUNTRY USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME ARVEST BANK | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS 921 W MONROE | CITY LOWELL | STATE AR | POSTAL CODE 72745 | COUNTRY USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
(4) 2019 KYOCERA 3252 CI COPIERS S/N: VFG6Z00665, VFG6600111, VFG7401517, VFG8903560 (3) 2019 KYOCERA 5052 CI COPIERS S/N: W2H8106756, W2H6X01011, VFF6900204 (1) 2019 KYOCERA 3552 CI COPIER S/N: VLQ7604545 (1) 2019 KYOCERA 6052 CI COPIER S/N: W2D6700088 (5) 2019 KYOCERA 4052 CI COPIER S/N: W2M6X00806, W2M8705302, W2M8504499, W2M7301475, W2M6800397 COPIER STAND DP-7100 FAX SYSTEM 12W INTERFACE KIT PRINT SYSTEM W INTERFACE KIT SEQUENCE IMPOSE DP-7170 W MUTI-FEED PRODUCTIVITY PACKAGE CPS V4 SOFTWARE CPS V4 ES 2000 5 YEAR SUPPORT INTERNET FAX KIT, INCLUDING ALL PARTS, ATTACHMENTS AND ACCESSIONS THERETO.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

2221 12980

# Exhibit "B"



## EQUIPMENT FINANCE AGREEMENT

| SECURED PARTY:<br>Arvest Equipment Finance,<br>A division of Arvest Bank | DEBTOR:<br>**CurePoint, LLC**<br>**11175 CICERO DRIVE SUITE 100**<br>**ALPHARETTA, Georgia 30022** | CONTRACT NUMBER:<br><br>2403619 |
|---|---|---|

| EQUIPMENT FINANCED:<br><br>See Schedule of Financed Equipment | EQUIPMENT LOCATION:<br><br>**11175 CICERO DRIVE SUITE 100**<br><br>**ALPHARETTA, GA 30022** |
|---|---|

| Number of Payments | Payment Amount | Payment Frequency | Equipment Cost | Rate of Interest |
|---|---|---|---|---|
| 36 | $5,490.79 | Monthly | $179,399.00 | 5.99% |

| See Attached Addendum: N/A |
|---|

### TERMS AND CONDITIONS

**1.    FINANCE AGREEMENT; DISCLAIMER OF WARRANTIES:**    For your convenience, this Equipment Finance Agreement (this "**Agreement**") has been written in "Plain English."  The words "**you**" and "**your**" refer to the Debtor identified above and its permitted successors and assigns. The words "**we**", "**us**" and "**our**" refer to the Secured Party identified above and its successors and assigns. This Agreement shall be effective when it has been accepted by us as evidenced solely by our advance of funds hereunder. You hereby acknowledge that your execution of this Agreement constitutes an offer on your part which we may accept by advancing funds hereunder. You further agree that you cannot revoke such offer for fifteen days, and that any revocation thereafter must be in a writing that is (a) delivered in accordance with the terms of this Agreement and (b) received by us in time for us to stop any such advance through our normal internal processes. Subject to the terms of this Agreement and compliance with all other terms and conditions that we require in our sole discretion, we may advance the amount set forth above as the Equipment Cost in connection with the financing of the personal property described or referred to above as the "Equipment Financed" (such personal property and any accessories, accessions, parts, additions, upgrades, operating systems and software, replacements and repairs now or hereinafter made thereto is hereinafter referred to collectively as the "**Equipment**"). This is solely a financing agreement.  You selected the Equipment and the supplier from whom it was purchased. You further acknowledge that neither we nor any of our affiliates is the agent or affiliate of the supplier and that no supplier or any of its salesmen or agents are our agents. We are not responsible for any statements made to you by such supplier or any intermediary or otherwise in any way for the quality, condition or acceptability of the Equipment.  **WE MAKE NO, AND HEREBY DISCLAIM, ANY AND ALL, REPRESENTATIONS OR WARRANTIES OF ANY KIND WITH RESPECT TO THE EQUIPMENT, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, SUITABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, OR VALUE. YOU HEREBY WAIVE ANY CLAIM (INCLUDING ANY CLAIM BASED IN STRICT OR ABSOLUTE LIABILITY IN TORT) YOU MIGHT HAVE AGAINST US OR OUR AFFILIATES FOR ANY LOSS, DAMAGE (INCLUDING INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOST PROFITS) OR EXPENSE CAUSED BY THE EQUIPMENT OR UNDER THIS AGREEMENT INCLUDING ANY DELAY OR FAILURE BY ANY SUPPLIER TO DELIVER ANY EQUIPMENT AND ANY MALFUNCTION OR OTHER PROBLEMS THEREWITH.** This Agreement is not a "Consumer Transaction", as defined in the Uniform Commercial Code (the "**UCC**") and you acknowledge that the funds advanced hereunder and all Equipment are each **SOLELY FOR YOUR BUSINESS PURPOSE** and not for consumer, personal, family or household purposes.

**2.    TERMS AND PAYMENTS:**  You promise to pay us the total of all the payments that are indicated above, which can be determined by multiplying the number of monthly payments times the monthly payment amount and the other payments, all as indicated above.  The monthly payments shall commence on the date specified by us following our acceptance of this Agreement, and shall continue thereafter to be paid on the same day of each succeeding month, in the amount specified, until all payments and any additional amounts chargeable under this Agreement shall have been paid in full. You expressly authorize us to confirm the first payment date with you orally on or about (including after) the date we advance funds hereunder. You may have various payment method options and we may charge fees in connection with certain of those options, including any payment options we elect to offer, in our sole discretion from time to time,  by phone, online, or interactive voice response. You expressly authorize us to charge such a fee if you elect to use a payment method with an associated fee. **YOUR OBLIGATIONS TO PAY ALL PAYMENTS AND TO PERFORM ALL OTHER OBLIGATIONS HEREUNDER ARE NON-CANCELLABLE, IRREVOCABLE, ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO ANY ABATEMENT, REDUCTION, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER INCLUDING PROBLEMS WITH THE EQUIPMENT OR ANY MAINTENANCE, WARRANTY OR SERVICES AGREEMENT RELATING THERETO (EVEN IF FINANCED BY US) OR ANY OTHER CLAIM AGAINST US, ANY SUPPLIER, MANUFACTURER OR SERVICE PROVIDER OR ANY OTHER PERSON OR ENTITY.**

3.   **SECURITY INTEREST:** To secure all of your indebtedness, liabilities and/or obligations (collectively, the "**Obligations**") hereunder and under all other past, present or future agreements, including any mortgage, indenture, loan or credit agreement, or other contract or agreement for money borrowed or the lease of real or personal property with us or our affiliates (collectively, "**Other Agreements**"), you hereby grant to us and all such affiliates a security interest in all of your right, title and interest, whether now existing or hereafter acquired or arising, in and to the following (collectively, the "**Collateral**"): (a) the Equipment; (b) any equipment or other personal property leased or financed pursuant to the Other Agreements ("**Other Equipment**"); (c) any leases, subleases, chattel paper, accounts and security deposits relating to the Equipment or Other Equipment; (d) any and all deposit accounts maintained at, or certificates of deposit maintained with or issued by, us or any of our affiliates (whether such certificates constitute "Deposit Accounts" or "Instruments" as defined in the UCC); (e) all other collateral as to which a security interest has been or is hereafter granted by you to us or any of our affiliates in connection with any Other Agreements; and (f) any and all proceeds of any of the foregoing. Notwithstanding the foregoing, any security interest granted hereunder to us or our affiliates with respect to Other Equipment, with respect to the collateral described in Section 3(c) relating to the Other Equipment, with respect to any collateral described in Sections 3(d) and 3(e), or with respect to any proceeds of the foregoing shall in each case be for the benefit of any of our assignees or their affiliates only to the extent such assignees are also our affiliates (it being the intention of the parties that any cross-collateralization between this Agreement and any Other Agreements , and any lien in any of the Collateral described in subsection 3(d), only be effective amongst us and/or our affiliates). You authorize us to file or record any and all UCC financing statements, and amendments thereto, and other documents that we deem necessary to perfect and protect our security interest in the Equipment and the other collateral described in this Agreement. You further acknowledge that the description may include a broad reference to property pledged, or to be pledged, to us without including a specific listing of the Equipment.  You agree to pay or reimburse us for any searches, filings, recordings, stamp fees or taxes related to the filing or recording of any UCC financing statements or other instruments or statements showing our interest in the Equipment.

4.   **COLLATERAL:** You represent and warrant that you are the sole owner of the Collateral and hold good title thereto free of any liens, encumbrances, or interests of any kind except for the security interest granted to us or our affiliates. You agree not to sell, lease, trade, transfer, assign or dispose of the Collateral or any interest therein or to allow the Collateral to become subject to any liens, encumbrances, or security interests of any kind, except for security interests in favor of us or our affiliates, until all amounts payable by you under this Agreement have been paid in full. You agree to inspect the Equipment to confirm it is acceptable.  You agree, at our request, to execute an Acceptance Certificate in the form approved by us to confirm the foregoing but you acknowledge that we are not in any way obligated to make any such request, the Acceptance Certificate is solely for our benefit to confirm the acceptability of the Equipment as Collateral, and no Acceptance Certificate is required for us to enforce our rights hereunder.

5.   **USE; INSPECTION:** You agree to use the Equipment solely in the conduct of your business; in a careful and proper manner; only for lawful purposes; and in compliance with applicable laws, insurance requirements and the manufacturer's and supplier's requirements. Additionally, at your cost and expense you shall keep the Equipment in good repair, condition, and working order and shall furnish any and all parts and labor required for that purpose in accordance with applicable manufacturer's or supplier's manuals and instructions.  You shall not make any alterations to the Equipment without our prior written consent. You shall not permit any Equipment to become an accession to other goods except those financed by us under this Agreement or any Other Agreements unless specifically authorized by us in writing in advance.  We shall have the right from time to time during normal business hours to enter upon your premises or elsewhere for the purpose of confirming the existence, condition, and proper maintenance of the Equipment.

6.   **LOCATION; FIXTURES:** You will keep the Equipment at the address shown on the first page of this Agreement and you agree the Equipment shall not be removed from such location without thirty (30) days prior written notice to us and our prior written consent (unless such Equipment consists of a motor vehicle or any equipment subject to a state's motor vehicle laws ("**Vehicles**") or of any other mobile goods specifically designed to be moved on a regular basis, such as laptop computers ("**Mobile Equipment**"), in which case you may move such Equipment so long as: (a) you do not permit any Vehicle to be located in a state other than the state in which such Vehicle is then titled for any continuous period of time that would subject such Vehicle to the title or registration laws of such other state; (b) you do not permit any Vehicle or Mobile Equipment to be located outside of the Continental United States; and (c) such Vehicle and Mobile Equipment will be based at, and return at regular intervals to, the location specified on page one hereof or such other location as we have agreed to in advance in writing). It is the intention of the parties hereto that the Equipment shall consist solely of personal property and that it shall not constitute fixtures under the laws of the states where the Equipment is located. The parties acknowledge and agree that the Equipment is and shall remain removable from, and not essential to, the premises where the Equipment is located, and you covenant that you will not fasten the Equipment to real estate in a manner that may cause it to be considered a fixture.

7.   **LOSS OF EQUIPMENT:** You assume the entire risk of loss, damage, theft or requisition from any cause whatsoever to the Equipment (any occurrence thereof being hereinafter referred to as a "**Casualty Occurrence**") and no such Casualty Occurrence shall relieve you of your duties hereunder. In the event of a Casualty Occurrence, you shall promptly, but in any event within three (3) days of the Casualty Occurrence, give us written notice thereof and the facts pertaining thereto.  If the Equipment can be repaired, you shall promptly place the Equipment in the condition required by this Agreement.  If the Equipment cannot be repaired, you shall pay to us, on the next monthly payment date following the Casualty Occurrence, an amount we calculate (without regard to insurance) to be equal to the Payoff Amount (as defined in Section 11 below).  In the event the Equipment subject to the Casualty Occurrence (the "**Casualty Equipment**") is less than all Equipment financed hereunder: (a) we may reasonably make an item by item allocation of the amount of the mandatory prepayment applicable only the Casualty Equipment and may, but shall not be obligated to, consider the initial cost of the applicable Equipment as well as the depreciation thereof; and (b) we may require mandatory prepayment with respect to all Equipment (not solely the Casualty Equipment) if we determine that the Casualty Equipment is material in value when compared to the remaining Equipment, is material the overall functionality of the remaining Equipment or that the Casualty Occurrence could reasonably be expected to have a material adverse effect on your business, property or financial condition or your ability to perform hereunder.

8.   **TAXES AND CERTAIN FEES:** You agree to report and pay when due (and shall indemnify and hold us harmless on an after-tax basis from and, if we request, defend us against) all license, title, recording and registration fees and any and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, fees and assessments now or hereafter imposed by any foreign, federal, state or local

governmental body, agency, or any other taxing authority on the Equipment or the purchase, ownership, delivery, leasing, possession, use or operation thereof or upon the payments due hereunder or otherwise with respect to this Agreement and the transactions contemplated hereby, together with any penalties, fines or interest thereon (excluding, however, any taxes by the United States of America or any state or political subdivision thereof that are imposed on or measured by our net income (as opposed to gross receipts)). If we pay any of these charges or any related penalties or fines, you agree to reimburse us upon demand for the entire amount advanced by us. Any sums paid by us shall not be deemed a waiver of, or release you from, the obligation.

**9.    INSURANCE:** Throughout the term of this Agreement you agree to maintain (a) general property damage insurance covering the Equipment for its full replacement value against all risks (including loss, theft, damage, and destruction) and naming us as sole loss payee; and (b) such other insurance as we may require, including automobile liability insurance with respect to Vehicles in a minimum amount of $1,000,000 combined single limit for bodily injury or property damage with a carrier that is licensed to do business in each state required under applicable law and has a Best's Rating of A-, V or better, naming us as additional insured. Upon our request, you agree to provide us with certificates or other evidence of such insurance which shall be in a term, amount, and with companies reasonably acceptable to us and shall provide that we be given thirty (30) days prior written notice of any material policy alteration or cancellation.  If you do not provide evidence of property insurance acceptable to us, you grant us the right, but we do not have any obligation, to buy such insurance to protect us and add the cost of such insurance, including service fees, subcontractor fees, finance charges or other charges or fees associated with the placement, maintenance, or service of such insurance (collectively, "**Insurance Charge**"), to the payment amounts due from you. You agree to pay the Insurance Charge in equal installments allocated to each remaining payment (with interest on such allocations up to the maximum rate permitted by applicable law).  You further expressly agree that the Insurance Charge may be substantially higher than the premium you would pay if you placed such insurance separately; the Insurance Charge may result in a profit to us or our agents; any such insurance shall be only for our benefit and it may not name you as an insured or fully protect your interests; and no such insurance shall absolve you of your obligations hereunder, including pursuant to Section7 hereof, or constitute a waiver of our rights to declare a default due to your failure to provide insurance.  Nothing in this Agreement creates any insurance coverage and we may terminate or allow to lapse any coverage without having any liability to you.  You hereby irrevocably appoint us (such appointment being coupled with an interest) as your attorney-in-fact to make claims for, receive payment of, and execute and endorse all documents, checks, or other drafts for loss, theft, damage, or destruction to the Equipment under any property insurance.  In all circumstances, you shall cooperate with us or our agent with respect to the placement of insurance and processing of claims.

**10.    DEFAULT:** Each of the following shall be an  "**Event of Default**" hereunder: (a) you fail to make any payment hereunder when due; (b)  you fail to perform any of the terms, covenants, agreements, or conditions of this Agreement; (c) you provide us, or if you have previously provided us, any information that is false, misleading, inaccurate, or incomplete; (d) you change your name, or if you are a legal entity, change your type of entity, state of organization, or chief executive office without giving us at least thirty (30) days' prior written notice thereof; (e) you cease or terminate the regular conduct or operation of your business; (f) you die, if you are an individual, or are dissolved or cease to be in good standing in all necessary jurisdictions, if you are a legal entity; (g) you become insolvent or make an assignment for the benefit of creditors, or file a petition under the Bankruptcy Code or one is filed against you; (h) a receiver, trustee, or conservator or liquidator is appointed with or without your consent; (i) you take any action that adversely affects our security interest; (i) an event of default occurs under any Other Agreement after giving effect to any notice or cure provisions thereunder; (k) an event of default occurs under any agreement with any third party material to your business or providing for the lease of real or personal property or the repayment of money borrowed, in each case after giving effect to any notice or cure provisions thereunder; or (l) if any guarantor of your obligations hereunder (a "**Guarantor**") shall breach any covenant, condition or agreement of a guaranty executed by a Guarantor for our benefit, or suffer any of the events described above in Sections 10(c) through 10(h), inclusive.

**11. REMEDIES:** Upon the occurrence of an Event of Default and at any time thereafter, we shall have any and all rights and remedies existing at law or in equity and shall have the right, at our sole election, at any time to exercise any or all of such remedies concurrently, successively or separately, and without notice to you.  Without limiting the foregoing, we shall expressly have the right to: (a) accelerate, declare due, sue for and receive from you the sum of (the "**Payoff Amount**"): (i) all payments and other amounts due and owing under this Agreement as of the date of the calculation (the "**Calculation Date**"), (ii) the present value of the sum of the payments for the unexpired term of this Agreement discounted at the 1-year Treasury Constant Maturity rate as published in the Selected Interest Rates table of the Federal Reserve statistical release H.15(519) (or if such rate is no longer determined or published, a successor or alternate rate that we select); (iii) all costs and expenses we incur by in any repossession, storage, refurbishing, advertising, sale, re-lease, or other disposition of the Equipment or our enforcement of our rights hereunder, including attorneys' fees; and (iv) interest on all of the foregoing from the date due at a rate equal to the Default Rate (as defined below); (b) similarly accelerate the balances due under any other obligations you owe us; (c) disable and/or take immediate possession of the Equipment, and lease, sell or otherwise dispose of the Equipment or any portion thereof  at private or public sale, in bulk or in parcels, with or without notice except to the extent required by applicable laws, without having the Equipment present at the place of sale or in our possession, and upon such terms as we may elect; (d) apply the net proceeds of any disposition, less reasonable selling and administrative expenses, to your Obligations in the order we determine; (e) charge you interest on all monies due us from and after the date of default at the rate of one and one half percent (1.5%) per month until paid, but in no event more than the maximum rate permitted by law (the "**Default Rate**"); (f) require you to deliver all the Equipment and other collateral, at your expense, to a place reasonably designated by us; (g) charge you for all the expenses incurred in connection with the enforcement of any of our remedies including all costs of collection, reasonable attorneys' fees and court costs and any costs we incur in connection with acts we deem necessary or reasonable to protect our security interest in the Equipment and any other collateral; (h) set off the amounts you owe us against any deposits you have with us or any other amounts we may owe you; (i) accept all or a portion of the Equipment in full or partial satisfaction of your obligations pursuant to the provisions of Article 9 of the UCC (and any such acceptance must be confirmed by us in writing); and (j) exercise any and all other rights and remedies available to a secured party under the UCC or other applicable law.  Exercise of any one remedy shall not be deemed an election of such remedy or to preclude the exercise of any other remedy.  No failure on our part to exercise any right or remedy and no delay in exercising any right or remedy shall operate as a waiver of the right or remedy or to modify the terms of this Agreement.  A waiver of default shall not be construed as a waiver of any other or prior, concurrent or subsequent default. In the event the amount we calculate pursuant to Sections 11(a)(i) and (ii) above, as part of the Payoff Amount, exceeds the outstanding principal balance and all accrued and unpaid interest thereon as of the Calculation Date, such excess shall be deemed to be a reasonable prepayment penalty as compensation for our loss of its bargain. With respect to our exercise of the right to recover or dispose of any Equipment securing your obligations, you acknowledge and agree as follows: (A) we shall have no obligation, subject to the requirements of commercial reasonableness, to clean-up or otherwise prepare the Equipment for disposition, (B) we may at our option comply with any applicable State or Federal law requirements that

we deem to be applicable or prudent to follow in connection with any disposition of the Equipment, and any actions taken or not taken in connection therewith shall not be deemed to have adversely affected the commercial reasonableness of any such disposition; and (C) any requirements of reasonable notice under Article 9 of the UCC shall be met if such notice is given at least five (5) days before the time of the public sale or the time after which any other disposition is to be made.

**12.    LATE CHARGES; TIME IS OF THE ESSENCE; INTEREST:** If a payment is more than ten (10) days late, you will be charged five percent (5%) of the unpaid portion of such late payment or fifteen dollars ($15.00), whichever is greater. However, this charge will not be greater than fifty dollars ($50.00). You will pay this late charge promptly but only once for each late payment. You agree to pay us a returned check or non-sufficient funds charge in the amount of $25.00, or if less, the maximum amount permitted by law. Timeliness of your payment and other performance is of the essence under this Agreement and all related documents. You expressly acknowledge and agree that, although we use the interest rate specified on the first page hereof to calculate the amount of your monthly payment, the effective interest rate may be different as a result of numerous factors including whether interest is being computed on a 365/360 or a 366/360 basis, whether the Equipment Cost reflects only the equipment cost or other fees or charges, whether we are advancing other funds in connection with your acquisition of the Equipment (including financing fees we intend to amortize during the term of this Agreement), the date on which we advance funds hereunder, and the date of your first payment. You further agree that the maximum interest rate that we could be deemed to have charged for advancing the funds loaned hereunder in accordance with the terms hereof can be calculated using the Equipment Cost, the term, and the amount and timing of each scheduled payment, and is therefore ascertainable within the four corners of this Agreement. You further expressly agree that the effective interest rate may be less after taking into account documentation fees or out of pocket amounts that we may pay to third parties or otherwise incur in connection with this transaction, including broker or origination fees, legal fees and filing fees. It is the intention of the parties to comply strictly with applicable laws (including usury laws) and, accordingly, in no event shall we ever be entitled to receive, collect, or apply as interest any interest, fees, charges or other payments determined by a court of law to be the equivalent of interest, in excess of the maximum rate which Lender may lawfully charge under applicable law. In the event that we ever receive, collect, or apply as interest any such excess, such amount which, but for this provision, would be excessive interest, shall be applied to the reduction of the principal amount of the loan; provided, however, that you waive, to the extent permitted by applicable law, the right to seek such reduction. If the principal amount of the loan, all lawful interest thereon, and all lawful fees and charges in connection therewith, are paid in full, any remaining excess shall forthwith be paid to you, or other party lawfully entitled thereto.

**13.    ASSIGNMENT:** You agree that you have no right to sell, lease, trade, transfer, or assign any interest in this Agreement or the Equipment (including by operation of law). We may, without notice, sell, transfer or assign our interest in this Agreement, the Equipment, or any payments due hereunder. If we make any such assignment or transfer, the new owner will have all of our rights and benefits but none of our obligations. The rights of the new owner will not be subject to any claims, defenses, or set-offs that you may have against us. You acknowledge that any assignment or transfer by us shall not materially change your duties or obligations under this Agreement nor materially increase your burdens or risks. Upon notification of such an assignment, you shall remit payments directly to the address set forth on the notification.

**14.    NOTICES; TITLE WORK:** All written notices relating to this Agreement shall either be sent by regular mail, certified mail, return receipt requested, or nationally recognized overnight courier service or delivered in person to (a) you at the address set forth on page one of this Agreement, or at any other address that you specify in writing in a notice provided as required hereunder; and (b) to us at 8000 Taylor Ave., Fort Smith, AR 72916 or at any other address that we specify in writing in a notice provided as required hereunder. Notwithstanding the foregoing, any correspondence relating to the titling, registration or notation of liens on Vehicles, including any correspondence including certificates of title, applications or similar documentation, shall be sent to Arvest Bank, PO Box 799, Lowell, AR 72745 or to such other address that we specify in writing in a notice provided as required hereunder.

**15.    CHOICE OF LAW; VENUE; NONJURY TRIAL:** THIS AGREEMENT HAS BEEN DELIVERED TO AND, UPON OUR ADVANCE OF FUNDS, ACCEPTED BY US IN THE STATE OF ARKANSAS AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ARKANSAS (EXCLUDING LAWS APPLICABLE TO CONFLICTS OR CHOICE OF LAWS). YOU CONSENT TO, AGREE, AND STIPULATE THAT THE COURTS OF THE STATE OF ARKANSAS OR ANY FEDERAL DISTRICT COURT HAVING JURISDICTION IN SUCH STATE SHALL BE THE AGREED VENUE FOR THE DETERMINATION OF ALL DISPUTES ARISING UNDER THIS AGREEMENT. NOTHING STATED IN THE TERMS AND CONDITIONS OF THIS AGREEMENT IS MEANT TO PREVENT US FROM INITIATING ANY ACTION IN ANY OTHER COURT HAVING PROPER JURISDICTION. <u>YOU AND WE EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY.</u>

**16.    INDEMNITY:** You shall indemnify and hold us harmless on an after-tax basis from and, if we request, defend us against all losses, liabilities, damages, penalties, expenses (including legal fees and costs), claims, actions and suits (including negligence, strict liability, patent, copyright, trademark and tort claims), directly or indirectly arising out of this Agreement or the ownership, possession, operation (regardless of where and how and by whom the Equipment is operated), control, use, condition (including latent and other defects, whether or not discovered by you), maintenance, and delivery, of Equipment, or in the event that you are in default hereunder, arising out of the condition of any item of Equipment sold or disposed of after your use. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the termination of this Agreement.

**17.    CREDIT INFORMATION:** You hereby authorize us to obtain credit bureau reports and make any other credit inquiries, as we deem necessary. You further warrant that all credit information and financial statements that you have given to us at the time of your credit application are true, accurate and complete. If we request, you will provide us current interim, and/or annual financial statements during the term of this Agreement, financial Statements or other financial information we require for each Guarantor, and any other credit information, documents, or financial reports we reasonably request. You further acknowledge that we may require the annual financial statements to be audited by a certified public accountant satisfactory to us.

**18.    OTHER COVENANTS AND WARRANTIES:** You agree that this Agreement is irrevocable for the full term hereof, that your obligations under this Agreement are absolute and shall continue without abatement and regardless of any inability to use the Equipment or any part thereof because of any reason including (a) war, (b) act of God, (c) governmental regulations, (d) strike, (e) loss, (f) damage, (g) destruction, (h) obsolescence, (i) failure of or delay in delivery, (j) failure of the Equipment to properly operate, or (k) termination by operation of law or any other cause.

**19.    MISCELLANEOUS:** The provisions of this Agreement are severable, and the remainder shall not be affected if any provision is held unenforceable, invalid or illegal. This Agreement inures to the benefit of and is binding on the successors or permitted assigns of us or

you.  The individual(s) signing this Agreement or any document hereto or on your behalf personally warrants that he or she is duly authorized to do so and that his or her signature is legally binding on you.  You agree that this Agreement contains the entire agreement between you and us and it may not be changed, amended, modified, rescinded, terminated or otherwise altered unless in writing and signed by both you and us. All references to any "Equipment" shall include each and all portions of the Equipment, no limitation being intended by the choice of terms. As used in this Agreement, the terms "include" or "including" means "include" or "including", as the case may be, without limiting the generality of any description or word preceding such term. The accounts or records maintained by us shall be conclusive evidence, absent manifest error, of the obligations you owe hereunder, including advances, interest, outstanding principal balance and related information.

**DEBTOR: CurePoint, LLC**

SIGNATURE:

PRINT NAME: PHILLIP EDWARD MILES

TITLE: MANAGER

DATE: 11.1.21

**DEBTOR: CurePoint, LLC**

SIGNATURE:

PRINT NAME: MARK GRADY MILES

TITLE: OWNER

DATE: 11.01.2021



## SCHEDULE OF FINANCED EQUIPMENT

This Schedule of Financed Equipment ("Schedule") is incorporated into and made a part of the finance agreement (the "EFA") described at the bottom of this page, subject to the additional terms, if any, stated below:

EQUIPMENT

| Quantity | Description | Serial Number | Location |
|----------|-------------|---------------|----------|
| 1 | **(2) 2019 Kyocera 5052 CI Copiers, S/N's: W2H6X01389 and W2H8207395, with Accessories, and (2) 2019 Kyocera 3552 CI Copiers, S/N's: VLQ7604317 and VLQ6X02412, with Accessories** | **W2H6X01389 W2H8207395 VLQ7604317 VLQ6X02412** | **11175 CICERO DRIVE SUITE 100 ALPHARETTA, GA  30022** |
| 1 | **DOCUMENT FEE** | | **11175 CICERO DRIVE SUITE 100 ALPHARETTA, GA  30022** |

**ADDITIONAL TERMS APPLICABLE TO THIS SCHEDULE**:

SECURED PARTY:  **ARVEST EQUIPMENT FINANCE, A DIVISION OF ARVEST BANK**
DEBTOR: **CurePoint, LLC**
CONTRACT NUMBER: **2403619**
DATE OF AGREEMENT: **11/1/2021**

FILED & RECORDED
Wednesday, November 3, 2021 3:24:50 PM
File Number: 038-2021-032239
Cindy G. Brown
Coweta County Clerk of Superior Court

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2212 33593
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Georgia
(Central Index - Coweta County)

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME CUREPOINT, LLC | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 11175 CICERO DRIVE SUITE 100 | CITY ALPHARETTA | STATE GA / POSTAL CODE 30022 | COUNTRY USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME ARVEST BANK | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 921 W MONROE | CITY LOWELL | STATE AR / POSTAL CODE 72745 | COUNTRY USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
(2) 2019 Kyocera 5052 CI Copiers, S/N's: W2H6X01389 and W2H8207395, with Accessories, and (2) 2019 Kyocera 3552 CI Copiers, S/N's: VLQ7604317 and VLQ6X02412, with Accessories, INCLUDING ALL PARTS, ATTACHMENTS AND ACCESSIONS THERETO.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
2212 33593

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE:

**CUREPOINT, LLC,**

        Debtor.

**Chapter 11**

**Case No. 22-56501-jwc**

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day electronically filed the foregoing *Motion for Relief from the Automatic Stay* ("Motion") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of and an accompanying link to the Motion to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing Program:

- **Taylor L. Dove**    tdove@huntermaclean.com, aharris@huntermaclean.com; lpadgett@huntermaclean.com
- **David A. Garland**    dgarland@mcdr-law.com, dgarland@mcdr-law.com; hjohnson@mcdr-law.com
- **Will B. Geer**    wgeer@rlkglaw.com, willgeer@ecf.courtdrive.com; 2836@notices.nextchapterbk.com;swenger@rlkglaw.com;6717577420@filings.docketbird.com
- **Brian P. Hall**    bhall@sgrlaw.com, sgr.notifications@gmail.com
- **Todd Eugene Hennings**    thennings@maceywilensky.com, cteh11@trustesolutions.net;hcrowder@maceywilensky.com
- **Michael F. Holbein**    mholbein@sgrlaw.com
- **Lindsay P. S. Kolba**    lindsay.p.kolba@usdoj.gov
- **J. Michael Levengood**    mlevengood@levengoodlaw.com, MichaelJR68751@notify.bestcase.com
- **Francesca Macchiaverna**    fmacchiaverna@huntermaclean.com, aharris@huntermaclean.com;lpadgett@huntermaclean.com
- **Caitlyn Powers**    cpowers@rlkglaw.com, swenger@rlkglaw.com; yalamin@rlkglaw.com;csmith@rlkglaw.com;6717577420@filings.docketbird.com
- **William A. Rountree**    wrountree@rlkglaw.com, swenger@rlkglaw.com; yalamin@rlkglaw.com;6717577420@filings.docketbird.com;R71213@notify.bestcase.com;csmith@rlkglaw.com;2836@notices.nextchapterbk.com
- **Aaron P.M. Tady**    atady@colesbarton.com, mjohnston@colesbarton.com; epoole@colesbarton.com;tbarton@colesbarton.com;tbrandenburg@colesbarton.com
- **Fred B. Wachter**    fbwachter@wachterlaw.com

I further certify that I have served a copy of the Motion on all parties referenced below via the method indicated:

*Via U.S. First Class Mail:*
Curepoint, LLC
11175 Circero Drive
Suite 100
Alpharetta, GA 30022

*Via U.S. First Class Mail:*
Newtek Small Business Finance
4800 T-Rex Avenue
Suite 120
Boca Raton, FL, 33431

*Via U.S. First Class Mail:*
Click Capital Group, LLC
7901 4th St N.
Ste 300
Saint Petersburg, FL, 33702

*Via U.S. First Class Mail:*
Alder Opportunity LP
300 Galleria PKWY
# 600
Atlanta, GA, 30339

*Via U.S. First Class Mail:*
Mark McCord
2007 Breckinridge Lane
Alpharetta, GA, 30005

*Via U.S. First Class Mail:*
Premium Merchant Funding, LLC.
40 Wall St. 5th Floor
New York, NY, 10005

*Via U.S. First Class Mail:*
Zen Capital
3131 NE 7th
Miami, FL, 33137

*Via U.S. First Class Mail:*
Georgia Department of Revenue
ARCS – Bankruptcy
1800 Century Blvd NE, Suite 9100
Atlanta, GA, 30345

*Via U.S. First Class Mail:*
Georgia Department of Labor
148 Andrew Young Inter. Blvd
Room 738
Atlanta, GA, 30303-0000

*Via U.S. First Class Mail:*
Internal Revenue Service
CIO
P.O. Box 7346
Philadelphia, PA, 19101-7346

*Via U.S. Certified Mail, Return
Receipt Requested:*
Mark Butler
State of Georgia Labor Commissioner
148 Andrew Young Inter. Blvd
Atlanta, GA 30303

*Via U.S. Certified Mail, Return
Receipt Requested:*
Christopher Carr
Attorney General of Georgia
40 Capitol Square, SW
Atlanta, GA 30334-9057

*Via U.S. Certified Mail, Return
Receipt Requested:*
U.S. Attorney
Attn: Civil Process Clerk
600 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

*Via U.S. Certified Mail, Return
Receipt Requested:*
U.S. Attorney General
Attn: Civil Process Clerk
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

This 22nd day of September, 2022.

**JONES & WALDEN LLC**

*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
lpineyro@joneswalden.com
Attorney for Arvest Bank