**December 9, 2017**

Phillip Miles
Mark Miles
Northwinds Leasing, LLC
3330 Preston Ridge Rd, Suite 300
Atlanta, GA  30005

**Re:  Term Sheet**

Dear Mr. Phillip Miles and Mr. Mark Miles:

Below is a term sheet that for discussion only, this is not a commitment for Georgia Heritage Bank (hereafter the "Bank") to extend a loan.  This is for discussion purposes only.

| | |
|---|---|
| **1. BORROWER:** | Northwinds Leasing, LLC or entity to be named |
| **2. GUARANTORS:** | Phillip Miles – Individual GTY<br>Mark Miles – Individual GTY<br>Curepoint, LLC – Corporate GTY |
| **3. LOAN AMOUNT:** | The Loan will be $1,400,000 |
| **4. LOAN TERMS:** | 5 years. |
| **5. INTEREST RATE:** | 7.0% fixed for 5 years. |
| **6. LOAN COMMITMENT FEE:** | 1.75% of loan amount. |
| **7. COLLATERAL:** | The Loan will be secured by a UCC on an Elekta Infinity dual modality digital accelerator with MOSAIQ Software Maintenance and Support.<br>Purchase Price $2,425,691. |
| **8. APPRAISAL:** | The Loan is contingent on the receipt of appraisal acceptable to the Bank, and the Loan will equal the lesser of 65% of the appraised value. |
| **9. LIQUIDITY:** | Borrower must provide documentation that at least $1,000,000 was paid towards the purchase price of the Collateral. |

**Page 2:  December 9, 2017**
**Northwinds Leasing, LLC**

**10. FINANCIAL
    INFORMATION:**          So long as the Borrower is indebted to the Bank, the
                            Borrower shall submit to the Bank financial
                            statements on an annual basis and annual tax returns
                            on the business.  The guarantors are also responsible for
                            providing the bank with annual tax returns and personal
                            financial statements.

**11. PREPAYMENT PENALTY:**  No prepayment penalty.

**12. EXPENSES:**           Borrower shall pay all costs and expenses incurred
                            by the Bank in connection with the Bank's review,
                            due diligence and closing of the Loan, including
                            attorney's fees incurred by the Bank in connection
                            with the negotiation and preparation of the Loan
                            documentation, the costs of any environmental
                            appraisal, whether or not the Loan actually closes.

Sincerely,

Gary S. Lochbaum
Vice President
NMLS#1274104
Georgia Heritage Bank
Dallas, Georgia
Phone 678-622-1371

# GEORGIA HERITAGE BANK
# LOAN APPROVAL

| Background Information | | |
|---|---|---|
| Date | 12/9/17 | Loan | 3 |
| Borrower's | Northwinds Leasing, LLC or entity | Phone Number: 770-255-7410 | |
| Street | 3330 Preston Ridge Road, Suite | Tax ID: 27-2554094, formed | |
| City, State, | Atlanta, GA 30005 | Email: | |
| Line of Business | Radiation Oncology Center operating 2 CONs and 2 Vaults in | | |
| Type of | Corp./S- | Partnership | Individual | Sole | LLC |
| Name of | Curepoint, LLC | | |
| Guarantor(s) | Mark Miles and Phillip Miles | | |

| Loan Summary | | | | | |
|---|---|---|---|---|---|
| Loan Amount | $1,400,000 plus fees | New or Renewal | New | | |
| Loan Purpose | To finance the purchase of an Elekta Infinity dual modality digital accelerator with software and maintenance support. | | | | |
| Repayment Terms | 5 years P&I | | | | |
| Collateral Description | UCC on Elekta Accelerator. Assignment of Lease | Appraised Value | PP $2,425,691 AV – to be ordered | LTV | 65% or less of AV |
| Loan Pricing | Interest Rate | Fixed at 7% | Sources of Repayment | Primary | Cashflow |
| | Loan Fees | Net to bank of 1.0% | | Secondary | GTY support |

| Loan and Deposit Summary | | | |
|---|---|---|---|
| Total **ALL Debt** Outstanding | $0 | Total Checking Balances | None |
| Subject Loan Request | $1,400,000 plus fees | Total Certificates of Deposit | |
| Total Bank Exposure | $1,400,000 plus fees | Total Deposits | |
| Participations Sold | $0 | | |
| Loans paid by subject request | $0 | | |
| Total Net Exposure to Bank | $1,400,000 plus fees | | |
| Legal Lending Limit | **$2,075,000 9/30/17** | | |
| | | | |

| Corporate Financial Statement Summary | | | | |
|---|---|---|---|---|
| Statement Date/Type | 2015 | 2016 | 9/30/17 interim | Proforma Yr 1 |
| Liquid Assets | | $56,441 | $12,192 | Dublin CurePoint |
| Total Assets | | $1,745,714 | $1,750,072 | With new unit |
| Total Liabilities | | $944,580 | $756,716 | |
| Net Worth | | $801,134 | $933,356 | |
| Gross Sales (Business) | $353,102 | $717,778 | $312,083 | $3,542,432 |
| Net Profit or Income | ($248,355) | $155,498 | $193,325 | $994,775 |
| Depreciation | $569,822 | $493,381 | $79,893 | $280,590 |

AMOA 000154

| Interest | $30,093 | $67,235 | $38,419 | $273,348 |
|---|---|---|---|---|
| Officer Salary | $0 | $0 | $0 | |
| Cashflow | $351,560 | $716,114 | $311,637 9 months | $1,547,712 |
| Debt Service | | $330,000 | $330,000 | |
| Debt Coverage Ratio | | 2.17x | 1.26x annualized | |

- $1,400,000 at 7% for 5 years = $330,000 per year.   1.26x DCR is annualized and from current inome, no consideration given for increased revenue once accelerator installed in Dublin.  That proforma is attached and shows EBITDA of $1,547,712, for a very strong DCR, but that is based on pro-forma, so went with conservative route, actual YTD income.

| Personal / Guarantor(s) Financial Condition Summary | | | | |
|---|---|---|---|---|
| Name | Mark Miles | Phillip Miles | | |
| Address | Jones, Oklahoma | Alpharetta, GA | | |
| Date of Birth | 9/19/59 | 7/11/66 | | |
| Statement Date | 6/30/17 | 6/30/17 | | |
| Liquid Assets | $525,000 | $480,940 | | |
| IRA/401K | $575,000 | $120,000 | | |
| Total Assets | $4,870,000 | $4,537,761 | | |
| Total Liabilities | $470,000 | $457,000 | | |
| Net Worth | $4,400,000 | $4,080,761 | | |
| Income | $498,202 PFS | $101,852 | | |
| Monthly Debt | $6,640 | $6,126 | | |
| Debt To Income | 16% | | | |
| Beacon Score/Date | 11/6/17  707 | 11-6-17 741 | | |

| Current Loan Summary | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Acct Name/ Number | Loan Date | Original Amount | Current Balance | Interest Rate | Repayment Terms | Maturity Date | Collateral Description | Appraised Value | Loan to Value |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTALS | | | | | | | | | |

| Comments on Loan Documentation | | | | | |
|---|---|---|---|---|---|
| Are Tax Returns current | x | YES | | NO | If no, explain. |
| Are Personal Financial Statements Current | x | YES | | NO | If no, explain. |
| Has CIP form been completed? | x | YES | | NO | If no, complete |
| Any documentation items incomplete | | YES | x | NO | If yes, explain |
| Bank Policy or Regulatory exceptions? | | YES | x | NO | If yes, explain. |
| Is this a Regulation O Relationship? | | YES | x | NO | If yes, explain. |
| Is this a HVCRE Loan | | YES | x | NO | If yes, CFO must sign here. |
| Consumer Loan Pricing Sheet Exception? | | YES | x | NO | If yes, explain. |

| Loan Approval |
|---|

| Loan Officer's Signature | *[signature]* | Date | 12/9/17 | Lending Limit | $150K - secured $75K - unsecured |
|---|---|---|---|---|---|
| Approving Officer's Signature | | Date | | Lending Limit | |

| Directors Loan Committee Approval Required | x | YES | | NO | Date Approved | |
|---|---|---|---|---|---|---|
| Full Board Approval Required | | YES | x | NO | Date Approved | |

| Comments: |
|---|
| 1 |
| 2 |
| 3 |

BORROWER:                          Northwinds Leasing, LLC or entity to be named
LOAN AMOUNT:                   $1,400,000 plus fees
DATE:                                    12/9/17

**Directors Loan Committee:**

| | Verbal Date | Signature | Vote | |
|---|---|---|---|---|
| Kim Curl | _____ | _____ | Yes | No |
| Bruce Smith | _____ | _____ | Yes | No |
| Charles Brock | _____ | _____ | Yes | No |
| Tom Cable | _____ | _____ | Yes | No |
| Genevieve Cole | _____ | _____ | Yes | No |

**Full Board (names above and):**

| | | | | |
|---|---|---|---|---|
| Jack Bickford | _____ | _____ | Yes | No |
| Angle Byrd | _____ | _____ | Yes | No |
| Howard Maxwell | _____ | _____ | Yes | No |

**Officers Loan Committee**

| | | | | |
|---|---|---|---|---|
| Genevieve Cole | _____ | _____ | Yes | No |
| Charles Brock | _____ | _____ | Yes | No |
| Billy Ray Burkett | _____ | _____ | Yes | No |
| Gary Lochbaum | _____ | _____ | Yes | No |
| Bruce Smith | _____ | _____ | Yes | No |
| Harry Smith | _____ | _____ | Yes | No |

AMOA 000156



**Law Office of Marvin Rice, LLC**
**8302 Dunwoody Place**
**Suite 355**
**Atlanta, GA 30350**

## LOAN CLOSING STATEMENT

| | |
|---|---|
| **DATE OF TRANSACTION:** | **January 31, 2018** |
| **BORROWER:** | **NORTHWINDS LEASING, LLC** |
| **LENDER:** | **GEORGIA HERITAGE BANK** |
| **COLLATERAL PROPERTY:** | Elekta Esteya Electronic Brachytcherapy System, Serial # 301365<br>Elekta HDR Electronic HDR System, Serial # 794165<br>Elekta Infinity dual modality digital accelerator, Serial #154535 |
| **FILE NO:** | **378.17** |

### SCHEDULE OF LOAN ADVANCES

| | |
|---|---|
| **TOTAL LOAN AMOUNT** | **$1,417,119.00** |
| **TOTAL LOAN ADVANCE AT CLOSING** | **$1,417,119.00** |

### DISBURSEMENTS PAID BY BORROWER

| | |
|---|---|
| Appraisal to Arwood Appraisal | $1,000.00 |
| Loan Fee to Lender | $295.00 |
| Loan Commitment Fee | $14,000.00 |
| Wire Fee to Lender | $25.00 |
| Future Release Fee to Lender | $24.00 |
| Recording Estimate | $50.00 |
| Lien Search | $150.00 |
| Payoff to Randy J. Bates, Jr. | $545,000.00 |
| Attorney's Fees to Law Office of Marvin Rice, LLC | $1,500.00 |

AMOA 000157

Expenses to Law Office of Marvin Rice, LLC
(Courier/express services, SOS certificate and copies)                              $75.00

Consulting Fee to First Liberty Capital                                      $42,513.57

Funds to (from) Borrower                                              ($812,486.43)


**TOTAL LOAN ADVANCE AT CLOSING**                              **$1,417,119.00**

―――――――――――――――――

Borrower agrees to cooperate with Lender in executing any additional documents
reasonably required to correct any errors in loan documents or reasonably required to
perfect Lender's security interest in the collateral property.

The undersigned Lender and Borrower acknowledge that each has reviewed the above
closing statement, approved the form and content thereof as true and correct, and do
hereby authorize and direct the closing attorney to make the disbursements shown
thereon.

AMOA 000158

"BORROWER"

**NORTHWINDS LEASING, LLC**, a Georgia
limited liability company, f/k/a Northwind
Leasing, LLC

By: _____ (seal)
    **Phillip Miles FBO MEC Capital**

LENDER:

**GEORGIA HERITAGE BANK**

By: _____
    Name: _____
    Title: _____

AMOA 000159

## CERTIFICATE OF THE MEMBERS OF
## NORTHWINDS LEASING, LLC,
## A GEORGIA LIMITED LIABILITY COMPANY

This Certificate of the Members of Northwinds Leasing, LLC, a Georgia limited liability company, f/k/a Northwind Leasing, LLC, ("Company") is delivered in respect of that certain loan of even date in the original maximum principal amount of $1,417,119.00 from **GEORGIA HERITAGE BANK** ("Lender") to the Company and Promissory Note ("Promissory Note") dated as of the date hereof by and between Lender and the Company. The undersigned, being all of the Members of the Company, do hereby certify that:

1. Attached hereto as **Exhibit A** is a true and correct copy of the Articles of Organization of the Company. Such Articles of Organization are in full force and effect and no action or any amendment to, or dissolution of, such Articles of Organization has been taken or is pending on the date hereof.

2. Attached hereto as **Exhibit B** is a true, complete and correct copy of the Operating Agreement of the Company as in effect on the date hereof. Such Operating Agreement has not been amended, modified or rescinded and is in full force and effect on the date hereof.

3. Attached hereto as **Exhibit C** is a Certificate of the State of Georgia as to the Company's good standing and which Certificate has not been modified, amended or rescinded as of the date hereof and is of full force and effect as of the date hereof.

4. Attached hereto as **Exhibit D** is a true and correct copy of resolutions duly adopted by the Members of the Company by unanimous written consent, approving the transactions contemplated therein, including, without limitation, the Promissory Note. Such resolutions are in conformity with the Articles of Organization and the Operating Agreement of the Company and have not been amended or modified since the date thereof, have not been superseded, revoked or rescinded, and remain in full force and effect on the date hereof.

AMOA 000160

**IN WITNESS WHEREOF,** the undersigned Members of the Company has duly executed this Certificate as of the 31st day of January, 2018.

**COMPANY MEMBERS:**

_____(seal)
**MARK G. MILES**

_____(seal)
**PHILLIP MILES** FBO MEC Capital

**MEC CAPITAL, INC.,** a
Georgia corporation

By: _____
   Jamila Dadabhoy, President

   (CORPORATE SEAL)

AMOA 000161

## **EXHIBIT A**

ARTICLES OF ORGANIZATION

AMOA 000162

## **EXHIBIT B**

OPERATING AGREEMENT

AMOA 000163

# **EXHIBIT C**

## CERTIFICATE OF GOOD STANDING

AMOA 000164

## **EXHIBIT D**


RESOLUTIONS OF THE MEMBERS

AMOA 000165

## RESOLUTIONS ADOPTED BY THE MEMBERS OF
## NORTHWINDS LEASING, LLC,
## A GEORGIA LIMITED LIABILITY COMPANY

### As of January 31, 2018

This Resolution is made and entered to be effective as of the date set forth above, in connection with that certain Promissory Note dated as of the 31st day of January, 2018, from Northwinds Leasing, LLC, a Georgia limited liability company, ("Borrower") in favor of GEORGIA HERITAGE BANK ("Lender") relating to a loan including loan proceeds in the original maximum principal amount of $1,417,119.00 ("**Promissory Note**") and all other agreements, documents, instruments, and certificates to be executed and delivered in connection therewith, concerning certain personal property equipment described in a Security Agreement from Borrower to Lender ("Property"), said loan being for the purpose of paying the remaining unpaid portion of the purchase price of the Property and paying a bridge loan for same.

The undersigned Members of Borrower do hereby consent to and approve the following written consent to action in lieu of holding a meeting, which shall be treated for all purposes as resolutions passed with unanimous approval:

**RESOLVED**, that Borrower, acting through any one (1) or more of its Members, shall make, enter into, execute, and deliver unto Lender the Promissory Note and all other applicable documents and agreements contemplated thereby, by which Lender is making a loan to Borrower in such original principal amount as shall be reflected in the Promissory Note, as evidenced by a certain promissory note of even date with the Promissory Note to Lender (the "Note") and secured by, among other things, the Property; and

**RESOLVED**, that Borrower, acting through any one (1) or more of its Members, shall enter into the Loan with Lender and make, enter into, execute, and deliver as applicable all documents and agreements, and take all other actions as shall be deemed necessary or appropriate by it, in order to consummate the Loan and the transactions contemplated thereby;

**RESOLVED**, that the forms, terms and provisions of the foregoing Promissory Note, together with any and all related documents and agreements and other documents or instruments contemplated under the foregoing Promissory Note, including, but not limited to, Security Agreement, UCC-1 financing statements, the Note, collateral assignments, settlement statements and such other agreements, documents, instruments, certificates, powers of attorney and materials delivered or contemplated to be delivered in connection with the Promissory Note, as any of such may be amended, renewed, extended, restated or supplemented from time to time (collectively, the "**Loan Documents**"), hereby are, in all respects approved, and any one (1) or more of the Members is/are hereby authorized and empowered to execute and deliver in the name of and on behalf of Borrower, the foregoing Promissory Note and any and all other applicable Loan Documents as may be approved by either Member, with the execution thereof by any one (1) or more of the Members, to be conclusive evidence of such approval by Borrower and the Members, and such Members are hereby expressly authorized to execute, deliver and make in the name of Borrower any and all amendments, supplements and modifications thereto as it deems necessary or desirable and to take any such actions and to do any such things as it deems necessary or desirable to consummate the

AMOA 000166

transactions contemplated by the foregoing instruments with any such actions to be binding on the Borrower; and

**RESOLVED**, that Borrower, through any one (1) or more of its Members is authorized to give possession of the Loan Documents hereinabove referred to, to the Lender with the intent of Borrower to form immediately binding agreements with the foregoing Lender, which immediately binding agreements shall be evidenced by the physical possession of the foregoing Loan Documents by the Lender;

**RESOLVED**, any one (1) or more of the Members, on behalf of Borrower is/are hereby authorized and directed to take any and all actions, to execute and deliver the Promissory Note, and other applicable Loan Documents, and to take any and all steps deemed to be necessary or desirable to carry out the purposes and intents of and to consummate any and all of the transactions contemplated by the foregoing Promissory Note and other Loan Documents and the resolutions set forth hereinabove.

**RESOLVED**, that the execution of any document authorized by the foregoing resolutions by any one (1) or more of its Members, or any document executed in the accomplishment of any action or actions so authorized, is (or shall become upon delivery) the enforceable and binding act and obligation of the Borrower without the necessity of the signature or attestation of any other officer or representative of the Borrower or the affixing of the company seal.

**RESOLVED**, that all acts, transactions, or agreements undertaken by any one (1) or more of the Members, or otherwise, in the name of and on behalf of the Borrower, in connection with the foregoing matters, including, without limitation, in connection with the Loan Documents prior to the adoption of these resolutions are hereby ratified, confirmed, adopted and approved by the Borrower in all respects.

[Signatures on following page]

AMOA 000167

The foregoing Resolutions have been adopted as of the date first set forth hereinabove.

**COMPANY MEMBERS**:

_____(seal)
**MARK G. MILES**

_____(seal)
**PHILLIP MILES** FBO MEC Capital

**MEC CAPITAL, INC.,** a
Georgia corporation

By:_____
   **Jamila Dadabhoy, President**

   (CORPORATE SEAL)

AMOA 000168

STATE OF GEORGIA

COUNTY OF Fulton

## CORPORATION CERTIFICATION

In consideration of the sum of $10.00 and other good and valuable consideration, the undersigned do hereby warranty and certify unto Randy J. Bates, Sr. the following:

1. That **MEC CAPITAL, INC.** is a Georgia corporation, (hereinafter "Company") of which Jamila Dadabhoy is President.

2. That the Company is a Member of Northwinds Leasing, LLC, a Georgia limited liability company, ("Borrower") through Phillip Miles, who holds such membership interest for the benefit of the Company.

3. That attached hereto as Exhibit "A" is a true and exact copy of the Articles of Incorporation of the Company ("Articles").

4. That the Articles are in full force and effect and have not been modified, amended or cancelled.

5. That no actions are pending or threatened to remove any of the Officers, Directors or Shareholders.

6. That this warranty and certification is made with the knowledge that Georgia Heritage Bank ("Lender"), will rely upon this warranty and certification in making a loan to the Borrower ("Loan").

7. The undersigned is fully authorized to represent the Company in all matters related to the Loan to the Borrower without the further consent, act or deed of any other parties. In furtherance thereof, the undersigned approves of such Loan to the Borrower and authorizes and directs Phillip Miles, as holder of the membership interest in the Borrower for the benefit of the Company to execute and deliver any and all such documents, instruments and agreements that are necessary or useful in furtherance of the Loan to Borrower, and the undersigned does hereby appoint Phillip Miles as agent or representative of the Company for all such purposes, and his signature on any and all documents as "FBO", agent or representative for the Company, shall be sufficient to bind the Company in all such matters.

IN WITNESS WHEREOF, the undersigned have executed this Certification under seal this 31st day of January, 2018.

_____ (SEAL)
JAMILA DADABHOY

AMOA 000169

State of Georgia
County of Fulton

## SUBORDINATION AGREEMENT

**THIS SUBORDINATION AGREEMENT** (this "Agreement") is made as of this 22nd day of December, 2017, by and among **GEORGIA HERITAGE BANK** ("GHB" and **RANDY J. BATES, JR.,** ("Bates") (individually ("Lender") and collectively "Lenders"), **BANK OF NORTH GEORGIA, A DIVISION OF SYNOVUS BANK** (the "Subordinated Lender") and **NORTHWINDS LEASING, LLC,** a Georgia limited liability company (the "Borrower").

### WITNESSETH:

WHEREAS, the Subordinated Lender has made loans or other extensions of credit to the Borrower, which are secured by a security interest in the personal property assets of the Borrower identified in that certain UCC Financing Statement No. 038-2015-006887, filed June 29, 2015, in the Superior Court of Coweta County, Georgia, a copy of which is attached hereto as Exhibit "A" (the "Financing Statement"); and

WHEREAS, the Borrower has received or will receive certain loans from each Lender each evidenced or to be evidenced by a promissory note herewith made payable by the Borrower to the order of Lender in the anticipated original principal amounts of $500,000.00 from Bates and $1,400,000.00 from GHB (said promissory notes evidencing said loans, and all other documents executed in connection therewith, together with any and all extensions, renewals, amendments, modifications, or supplements thereto, are hereinafter referred to as the "Loan Documents"), and each of said loans will be secured by all of that certain personal property equipment of the Borrower described in Exhibit "B" attached hereto (the "Collateral");

WHEREAS, the execution and delivery of this Subordination Agreement is a condition, among others, to the Borrower's ability to borrow funds from the Lenders pursuant to the provisions of the Loan Documents; and

WHEREAS, as an entity financially interested in the Borrower, the Subordinated Lender deems it to be in its best interest to enter into this Subordination Agreement;

NOW, THEREFORE, to induce the Lender to permit the Borrower to borrow funds or obtain other credit from the Lender pursuant to the Loan Documents and in consideration of the Lender doing so, and for Ten Dollars ($10.00) and other good and valuable consideration, the

AMOA 000170

receipt and sufficiency of which are hereby acknowledged, the Borrower and Subordinated Lender hereby agree with the Lender as follows:

1. Definitions. For purposes hereof, the term "Senior Indebtedness" means, collectively, all outstanding Indebtedness of the Borrower to the Lenders under the Loan Documents. The term "Subordinated Debt" means, collectively, all Indebtedness of the Borrower to the Subordinated Lender, however evidenced or incurred, whether direct or indirect, absolute or contingent, now existing or hereafter arising or created, due or to become due. The Subordinated Debt is secured by, inter alia, the Collateral, as evidenced by the Financing Statement.

Except as defined above, capitalized terms used herein and not otherwise defined are used as defined in the Loan Documents.

2. Subordination. The Subordinated Lender hereby subordinates and waives the priority of the Subordinated Lender's liens on and security interests in the Collateral in favor of the liens and security interests of the Lenders in the Collateral, so that as between the Lenders and the Subordinated Lender the liens and security interests of the Lenders in the Collateral shall be prior and superior liens and security interests to the liens and security interests of the Subordinated Lender in the Collateral with all of the rights, titles, interests, and remedies of prior liens and security interests incident thereto. The subordination provisions contained herein shall apply notwithstanding any contrary provisions of the Uniform Commercial Code, as enacted in the State of Georgia or any other applicable jurisdiction, with respect to the attachment and relative priority of the liens and security interests referred to in this Subordination Agreement and notwithstanding the order of the recording of any and all UCC financing statements.

3. Collateral in Possession of Subordinated Lender. The Subordinated Lender agrees that, if at any time the Subordinated Lender shall be in possession of any of the Collateral, the Subordinated Lender shall hold such Collateral in trust for the Lenders so long as any of the Senior Indebtedness remains unpaid. Until such time as the Lender shall notify the Subordinated Lender in writing that the Senior Indebtedness has been paid in full and the Lenders are under no further obligation to make additional advances or extensions of credit to the Borrower under the Loan Documents, the Subordinated Lender agrees that it shall not exercise any of its rights under any document, instrument, or agreement, or accelerate the Subordinated Debt, or realize upon any of the Collateral, or to attach, levy upon, or execute against any of the Collateral.

4. Survival of Rights. No right of the Lenders or any present or future holder of any Senior Indebtedness to enforce subordination as provided herein shall at any time in any way be prejudiced or impaired by any act or failure to act on the part of the Borrower or the Subordinated Lender, or by any act or failure to act, in good faith, by the holder of the Senior Indebtedness, or by any noncompliance by the Borrower or the Subordinated Lender with the terms of the Loan Documents regardless of any knowledge thereof which such holder may have or be otherwise charged with.

2

AMOA 000171

5.    Amendment of Financing Statement.  The Subordinated Lender, by its execution of this Agreement, authorizes the Lenders to file an amendment to the Financing Statement to reflect the subordination expressed herein.

6.    Modification of Senior Indebtedness.  The Lenders may extend, renew, modify, or amend the terms of the Senior Indebtedness or any security therefor and may increase the amount of the Senior Indebtedness, and release, transfer, assign, sell, or exchange such security and otherwise deal freely with the Borrower, to the same extent as could any Person, all without notice to or consent of the Subordinated Lender and without affecting the liabilities and obligations of the Subordinated Lender or the priority of the Lenders' lien and security interest in the Subordinated Collateral, pursuant to the provisions hereof.

7.    Assignment.  The Lenders may assign or transfer any or all of the Senior Indebtedness or any interest herein as provided in the Loan Documents; and notwithstanding any such assignment or transfer or any subsequent assignment or transfer thereof, such Senior Indebtedness shall be and remain Senior Indebtedness for purposes of this Agreement, and every immediate and successive assignee or transferee of any of the Senior Indebtedness or of any interest therein shall, to the extent of the interest of such assignee or transferee in the Senior Indebtedness, be entitled to the benefits of this Agreement to the same extent as if such assignee or transferee were the Lenders, without affecting the priority of the Lenders' lien and security interest in the Collateral.

8.    No Waiver by Lender.  No delay on the part of the Lenders in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by the Lender of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy; nor shall any modification or waiver of any of the provisions of this Agreement be binding upon the Lender except as expressly set forth in a writing duly signed and delivered by or on behalf of the Lender.

9.    Time of Creation of Indebtedness Irrelevant.  The priorities herein specified are applicable irrespective of the time of creation of any indebtedness owed by the Borrower.

10.    Waiver of Right to Marshall Assets.  THE SUBORDINATED LENDER HEREBY WAIVES, AS TO THE LENDER, ANY AND ALL RIGHTS TO THE MARSHALLING OF THE BORROWER'S ASSETS IN WHICH THE LENDER HAS A SECURITY INTEREST.

11.    Miscellaneous.  This Agreement shall be construed in accordance with, and the rights of the parties shall be governed by, the laws of the State of Georgia.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without

3

AMOA 000172

invalidating the remainder of such provision or the remaining provisions of this Agreement. Time is of the essence of this Agreement. This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall together constitute but one and the same instrument. The provisions hereof shall be binding upon the successors and assigns of the Borrower and the Subordinated Lender, and shall inure to the benefit of the Lender and any participant of the Lender and all subsequent holders of the Senior Indebtedness or any portion thereof

IN WITNESS WHEREOF, the Borrower, the Subordinated Lender, and the Lenders have caused their respective duly authorized officers or representatives to execute, seal, and deliver this Agreement as of the date first above written.

SUBORDINATED LENDER:

Sworn to and subscribed
before me this _____ day of
December, 2017

_____
Unofficial Witness

BANK OF NORTH GEORGIA, A
DIVISION OF SYNOVUS BANK

By: _____
Name: _____
Title: _____

(SEAL)

_____
Notary Public

Suzette Christensen (SEAL)
Notary Public, Cobb County, GA
My Commission Expires August 18, 2019

4

LENDERS:

**GEORGIA HERITAGE BANK**

Sworn to and subscribed
before me this ____ day
of December, 2017.

_____
Unofficial Witness

By: _____
    Name: _____
    Title: _____

(BANK SEAL)

_____
Notary Public

(NOTARY SEAL)

5

AMOA 000174

Sworn to and subscribed
before me this _____ day
of December, 2017.

_____
Unofficial Witness

_____ (SEAL)
RANDY J. BATES, SR.

_____
Notary Public

(NOTARY SEAL)

HEATHER L VICK
NOTARY PUBLIC
STATE OF SOUTH CAROLINA
MY COMMISSION EXPIRES
JANUARY 22, 2025

6

AMOA 000175

BORROWER:

Sworn to and subscribed
before me this 31st day of
~~December, 2017.~~
January 2018

NORTHWINDS LEASING, LLC, a
Georgia limited liability company

By: _____ (seal)
Name: PHILLIP MILee
Title: MOR

_Paula Bansphar_
Unofficial Witness

_Jillian Boyd_
Notary Public

(NOTARY SEAL)
JILLIAN BOYD
NOTARY
EXPIRES
GEORGIA
07-27-2021
PUBLIC
FORSYTH COUNTY

7

EXHIBIT "A"
(Financing Statement)

8

AMOA 000177

EXHIBIT "B"
(Collateral)

1. Elekta Esteya Electronic Brachyteherapy System, Serial # 301365
2. Elekta HDR Electronic HDR System, Serial # 794165
3. Elekta Infinity dual modality digital accelerator, Serial #154535

Together with any and all present and future accessories, parts, licenses, software, manuals, warranties, replacements or substitutions thereof.

9

AMOA 000178

PLEASE COMPLETE:



**GEORGIA HERITAGE BANK**

**Customer Information Form**

Date: 1/8/18

Legal Name: Mark G. Miles

Physical Address: 12720 N Douglas Blvd

Mailing Address: _____

City, State, Zip: Jones, OK 73049

SS #: 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    DOB: 9/19/59    Census Tract: _____

DL#: _____ State: _____ Date of Issuance: _____ Expiration Date _____

Email: _____ Account Officer: _____ Passcode: _____

Phone 1: 405-323-7111    Phone 2: 405-323-7111    Phone 3: _____

Employer Name: Mark Miles, MD PLLC    Occupation: self employed doctor

Employer Address: _____

How did you find out about us? _____    Where did you previously bank? _____
1-reader board 2-newspaper 3-WOM 4-GHB employee 5-GHB customer 6-website 7-Internet ads 8-other

**Do you anticipate frequently depositing cash, purchasing Official Checks, Travel Cards, sending or receiving Wire Transfers or exchanging Foreign Currency?**    [  ] YES        [X] NO

I authorize Georgia Heritage Bank to make any investigation of my credit, either directly or through any agency.  I understand that Georgia Heritage Bank will retain this application and any other credit information used in conjunction with opening my deposit account(s), even if the account(s) is not opened.

Customer Signature: _____

Employee Signature: _____

## BANK USE ONLY:

If YES above:

| Frequent Transaction Type: | How Much? | How Often? |
|---|---|---|
| Cash Transaction | | |
| Official Checks | | |
| Travel Cards | | |
| Wires: [ ] IN  [ ] OUT  [ ] Int'l | | |
| Foreign Currency | | |

BSA Officer Initial if YES above _____    Tier Class Code _____ (assigned by BSA Officer)

Discrepancies (If Applicable): _____
_____

Resolution: _____
_____

Revised 6-2016

AMOA 000179

# GUARANTY
### (Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is January 31, 2018. The parties and their addresses are:

**LENDER:**
> **GEORGIA HERITAGE BANK**
> 18 Georgia Heritage Place
> PO Box 1430
> Dallas, GA 30132
> Telephone: (770) 445-8888

**BORROWER:**
> **NORTHWINDS LEASING, LLC**
> a Georgia Limited Liability Company
> 3330 Preston Ridge Road Ste 300
> Alpharetta, GA 30005

**GUARANTOR:**
> **MARK G. MILES**
> 12720 N Douglas Blvd
> Jones, OK 73049

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

**A. Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

**B. Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

**C. Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

**D. Loan.** "Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

**E. Loan Documents.** "Loan Documents" refer to all the documents executed as a part of or in connection with the Loan.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 40000335301, dated January 31, 2018, from Northwinds Leasing, LLC (Borrower) to you, in the amount of $1,417,119.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertakings includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Debt.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**\*163\*    \*40000335301\*    \*01312018\***

AMOA 000180

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I waive my right to notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure the Debt.

(10) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, person or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**10. REMEDIES.** After the Borrower is in default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

**D. Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guaranteed hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Georgia, unless otherwise required by law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing. This Guaranty and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

Mark G. Miles
Georgia Guaranty
GA/4ACRENSHA00000000001544016N

Wolters Kluwer Financial Services ©1996, 2018 Bankers Systems™

Initials _____
Page 2

AMOA 000181

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. SIGNATURES.** By signing under seal, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_____ Date_____ (Seal)
Mark G. Miles

LENDER:

Georgia Heritage Bank

By_____ Date_____ (Seal)
Gary S. Lochbaum, VP

AMOA 000182

Addendum to Loan Application

 Mark G. Miles signing as guarantor

Mark G. Miles

AMOA 000183

# GEORGIA HERITAGE BANK

**Business New Account Worksheet**

Date: 1/8/18

Business/Entity Name: Northwinds Leasing, LLC

Type/Nature of Business: Radiation Oncology Center

Street Address*: 3330 Preston Ridge Road Ste 300

*(Please note: *PO Box holders **must furnish physical address** as well as mailing address*)

City Atlanta          State GA          Zip + 4: 30005  -

Taxpayer ID #: 27 - 2554094          Census Tract Code 0116.19

Business Phone #: 770-255-7410  Fax #: _____  Cellular #: _____

E-mail/website: phillip.miles@comcast.net

How did you find out about us? 5          Where did you previously bank? _____
1-reader board 2-newspaper 3-WOM 4-GHB employee 5-GHB customer 6-website 7-Internet ads 8-other

*Please Answer:
Type of Account: loan          Amount of Opening Deposit: $_____

Do you/will you accept credit card payments?   Y or N
    If yes, who is your processor? _____

Do you/will you cash checks for people?          Y or N

Do you/will you perform wire transfer services (MoneyGram, Western Union, etc.)?          Y or N

Are you/will you be an agent of Western Union, Money Gram or similar agency?          Y or N

Do you/will you sell money orders?          Y or N

Do you/will you sell prepaid access devices (cash cards, gift cards,)?     Y or N
    If yes, what type of devices are sold: _____

Does your business engage in Internet Gambling?     Y or N

Does your business have a private ATM?          Y or N
    If yes, how will the ATM be funded? _____

Types of deposits/withdrawals typically made? Cash, Checks, Electronic, Wire Transfers (domestic or foreign), Other (more than one may be listed), if Other, specify:
                                        loan

X _____          Date 1.25.3018
    (Signature of authorized signer/owner/partner)

Revised 11-2014



# GEORGIA HERITAGE BANK

**Customer Information Form**

**Date:** 1/8/18

**Legal Name:** Phillip Miles

**Physical Address:** 300 Hayward Lane

**Mailing Address:** _____

**City, State, Zip:** Alpharetta, GA 30022

**SS #:** 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     **DOB:** 7/11/66     **Census Tract:** 0116.18

**DL#:** 49950642     **State:** _____     **Date of Issuance:** _____     **Expiration Date** _____

**Email:** phillip.miles@comcast.net     **Account Officer:** _____   **Passcode:** _____

**Phone 1:** 770-475-8147     **Phone 2:** _____     **Phone 3:** _____

**Employer Name:** Eclipse Advisors     **Occupation:** CPA

**Employer Address:** 3330 Preston Ridge Drive Alpharetta, GA 30005

**How did you find out about us?** 5     **Where did you previously bank?** _____
1-reader board 2-newspaper 3-WOM 4-GHB employee 5-GHB customer 6-website 7-Internet ads 8-other

**Do you anticipate frequently depositing cash, purchasing Official Checks, Travel Cards, sending or receiving Wire Transfers or exchanging Foreign Currency?     [ ] YES     [X] NO**

I authorize Georgia Heritage Bank to make any investigation of my credit, either directly or through any agency.  I understand that Georgia Heritage Bank will retain this application and any other credit information used in conjunction with opening my deposit account(s), even if the account(s) is not opened.

**Customer Signature:** _____

**Employee Signature:** _____

## BANK USE ONLY:

If YES above:

| Frequent Transaction Type: | How Much? | How Often? |
|---|---|---|
| Cash Transaction | | |
| Official Checks | | |
| Travel Cards | | |
| Wires: [ ] IN  [ ] OUT  [ ] Int'l | | |
| Foreign Currency | | |

BSA Officer Initial if YES above_____     Tier Class Code_____     (assigned by BSA Officer)

Discrepancies (If Applicable): _____

Resolution: _____

Revised 6-2016

AMOA 000185

# GEORGIA HERITAGE BANK

**Business New Account Worksheet**

Date: 1/8/18

**Business/Entity Name:** MEC Capital, Inc

**Type/Nature of Business:** investment

**Street Address\*:** 3330 Preston Ridge Road Ste 300

*(Please note: PO Box holders must furnish physical address as well as mailing address)*

City Alpharetta        State GA        Zip + 4: 30005    -

Taxpayer ID #: 45 - 2419751        Census Tract Code 0116.19

Business Phone #: 770-255-7410    Fax #: _____    Cellular #: _____

E-mail/website: phillip.miles@comcast.net

How did you find out about us? 5        Where did you previously bank? _____
1-reader board 2-newspaper 3-WOM 4-GHB employee 5-GHB customer 6-website 7-Internet ads 8-other

**\*Please Answer:**
Type of Account: loan        Amount of Opening Deposit: $ _____

Do you/will you accept credit card payments?    **Y or N**
        If yes, who is your processor? _____

Do you/will you cash checks for people?        **Y or N**

Do you/will you perform wire transfer services (MoneyGram, Western Union, etc.)?        **Y or N**

Are you/will you be an agent of Western Union, Money Gram or similar agency?        **Y or N**

Do you/will you sell money orders?        **Y or N**

Do you/will you sell prepaid access devices (cash cards, gift cards,)?    **Y or N**
        If yes, what type of devices are sold: _____

Does your business engage in Internet Gambling?    **Y or N**

Does your business have a private ATM?        **Y or N**
        If yes, how will the ATM be funded? _____

Types of deposits/withdrawals typically made? Cash, Checks, Electronic, Wire Transfers (domestic or foreign), Other (more than one may be listed), if Other, specify:
        loan

X _____        Date 1-25-2018
    (Signature of authorized signer/owner/partner)
            PHILLIP MILES

Revised 11-2014

AMOA 000186

# Commercial
# Loan Application

Georgia Heritage Bank
18 Georgia Heritage Place PO Box 1430
Dallas, GA 30132

**Important Applicant Information:** Federal law requires financial institutions to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

*(Creditor Name, Address and Telephone Number)*

## 1. TYPE OF CREDIT REQUESTED.

☐ **Joint Credit Requested:** We intend to apply for joint credit. (Initials) _____

☒ New Credit
☐ Refinance or Consolidation
☐ Renewal/Extension (No New Advances)
☐ Renewal with New Advance
☐ Modification

*For refinance/consolidation, renewal, extension or modification only*

| | Loan Number | Balance | Lender Name and Address |
|---|---|---|---|
| 1. | | $ | 1. |
| 2. | | $ | 2. |
| 3. | | $ | 3. |

☐ See Addendum for additional credits

## 2. APPLICANT. Applicant General Information.

Legal Name
**Northwinds Leasing, LLC**

Organizational Form, Where and When Organized (ex., Corporation, Delaware, 1984)
**Limited Liability Company, Georgia, May 6, 2010**

☐ Franchise, in full force and without defaults, with (Name of Franchiser)
Name(s) of Affiliated Entities

Current Tradename(s)                                    Other Tradenames Used in Last 10 Years

Local Address
**3330 Preston Ridge Road Ste 300**
**Alpharetta, GA 30005**

Principal Executive Office Address

Phone No:
Fax No:

Phone No: **770-255-7410**
Fax No:

| Tax Identification Number | Nature of Business | NAICS Code |
|---|---|---|
| 27-2554094 | | 0, 0 |

Principals' Names, Addresses, Position Title and Social Security Numbers
Mark G. Miles, 12720 N Douglas Blvd Jones, OK 73049, 9/19/59, 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
Phillip Miles, 300 Hayward Lane Alpharetta, GA 30022, 7/11/66, 255-355-2912

Accountant Name, Address, and Phone Number

Financial Statements. (Check all that apply and attach statements to this application.)
Fiscal Year _____ Calendar Year _____
☐ Financial Statements covering _____ to _____
☐ Accounts Receivable Schedule covering _____ to _____
☐ Inventory Schedule covering _____ to _____
☐ Income Tax/Informational Returns for tax years _____
☐ Other (Specify) _____
Other Statements. (Check all that apply and attach statements to this application.)
☐ Business Plan dated _____
☐ Project Plans & Specifications      ☐ Project Budget dated _____
☐ Franchise Agreement, FTC Franchiser Disclosure Statement
☐ List of outstanding judgments or threatened lawsuits, arbitration, or other proceeding against loan applicant.
☐ Other (Articles of Incorporation, Resolutions, etc.) _____

Commercial Loan Application
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services ©2017

VMPC500 (1701).00
COMM-APP 1/31/2017
Page 1 of 3

*103*        *40000335301*        *01312018*

AMOA 000187

## 3. LOAN REQUEST AND SOURCES OF REPAYMENT.

Amount Requested $ 1,417,119.00

☒ Commercial Purpose Credit
☐ Agricultural Purpose Credit

Use of Proceeds (Brief Description of Intended Use):
finance equipment purchase

**Loan Advances (Choose One)**
☒ Single Advance/Closed End
☐ Revolving Draw Line of Credit
☐ Draw Loan
☐ Construction/Permanent Loan
☐ Revolving Draw Construction Line of Credit
☐ Draw Construction Loan

**Loan Payment (Choose One)**
☒ Principal and Interest
☐ Principal, plus Interest
☐ Interest Only
☐ Single Payment
☐ Other (describe)

Requested Payment Amount $ 28,121.17    ☐ with Balloon $ _____
Requested First Payment Date 02/28/2018    Requested Loan Term 60 months
Payment Frequency (if Installment) ☒ Monthly ☐ Quarterly ☐ Semi-Annually ☐ Other (describe) _____
Requested Interest Rate ☒ Fixed ☐ Variable Index (if Variable) _____

List of primary and secondary sources of repayment for this Credit:
cash flow
GTY

## 4. ☒ LOAN SECURITY. The requested loan will be secured. (Complete this section if checked)

☐ All loan proceeds will be for purchase of collateral.    ☐ $ _____ of the proceeds will be for purchase of collateral.
Description of purchase money collateral:    Appraised value of purchase money collateral $ _____

Brief description of non-purchase money collateral:    Description of current property insurance on non-purchase money collateral
Elekta Infinity Linear Accelerator System    Type:    Deductible: $0.00
Appraised value $ 2,200,000.00    Coverage:    Term:
Liens on collateral (List any collateral with liens on it, the amount of underlying debt, the names and addresses of collateral's lienholders)

☐ Non-Applicant owners of collateral. Attach a separate list with name(s), address(es), and phone number(s) of any other owner(s) of the collateral.

## 5. ☒ LOAN GUARANTY. The requested loan will be guaranteed. (Complete this section if checked)

Legal name Mark G. Miles   and Phillip Miles

Address
12720 N Douglas Blvd
Jones, OK 73049

Phone No:

☐ Guarantor or affiliate were declared bankrupt within the last 10 years.
☐ There are outstanding judgments against Guarantor. (Attach Summary)
☐ On a separate sheet, list each threatened or pending lawsuit, arbitration, or other proceeding and its amount claimed.

☐ Guarantor Financial Statements. If checked, Guarantor is an entity and will provide financial statements upon request by Lender.
☐ Security. Brief description of collateral to secure this guaranty    Description of current property insurance on existing collateral
    Type:    Deductible:
    Coverage:    Term:
Appraised value of guaranty collateral $ _____
Liens on collateral (List any collateral with liens on it, the amount of underlying debt, and the names and addresses of collateral's lienholders):

☒ Non-Guarantor owners of collateral. If checked, attach a separate list with the name(s), address(es), and phone number(s) of any other owner(s) of the collateral.

### Equal Credit Opportunity Notice

**CREDIT DENIAL NOTICE.** If your gross revenues were $1,000,000 or less in your previous fiscal year, or you are requesting trade credit, a factoring agreement, or similar types of business credit in this Commercial Loan Application, and if your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement please contact (Name, address, and telephone number of the person or office from which the statement of reasons can be obtained):
Gary S. Lochbaum, Georgia Heritage Bank 18 Georgia Heritage Place PO Box 1430, Dallas, Georgia  30132
(770) 445-8888
within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request for the statement. The notice that follows describes additional protections extended to you.

**NOTICE:** The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (providing the applicant has the capacity to enter into a binding contract), because all or a part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is:
FDIC Consumer Response Center
1100 Walnut Street, Box 11
Kansas City, Missouri 64106-

Commercial Loan Application
Bankers Systems™ VMP®
Wolters Kluwer Financial Services ©2017

VMPC500  (1701).00
COMM-APP  1/31/2017
Page 2 of 3

AMOA 000188

**Notices, Consent and Signatures**

**Important Applicant Information:** Federal law requires financial institutions to obtain sufficient information to verify your identity. You may be asked several questions and to provide one or more forms of identification to fulfill this requirement. In some instances we may use outside sources to confirm the information. The information you provide is protected by our privacy policy and federal law.

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law. Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**SIGNATURES.** By signing below, Loan Applicant submits this application and the information provided on all accompanying financial statements and schedules for the purpose of obtaining credit and represents that the information submitted is accurate and complete. Loan Applicant acknowledges that representations made in this application will be relied on by Lender in evaluating this application and, if approved, in extending credit. Loan Applicant represents that none of the parties named in this application have relied on advice from the Lender in applying for or receiving any credit. Loan Applicant acknowledges that Lender has not made any commitment to approve this application and extend credit, unless otherwise agreed to in writing. Lender is authorized to conduct any inquiries it decides are necessary to verify the accuracy of the information contained in this application and to use any reasonable method to determine the creditworthiness of the Loan Applicant. Lender is also authorized to answer any questions from others about Lender's credit experience with the parties in this application. Loan Applicant will promptly notify Lender of any subsequent changes which would affect the accuracy of this application, and will provide all documents and information that Lender decides are necessary to complete this application. Loan Applicant authorizes Lender to retain this application, whether or not Lender approves any extension of credit. Any intentional misrepresentation of the information contained herein could result in criminal action under federal law.

In addition, each individual signing below authorizes the Creditor to check their individual credit account and employment history and have a consumer reporting agency prepare a consumer credit report on them.

Northwinds Leasing, LLC
_____
Applicant Name

By X _____     FBO MEC Capital
       for Applicant Phillip Miles                          _____
                                          Date    Title


By X _____     _____
       for Applicant                              Date    Title

| For Creditor's Use Only | | | | | |
|---|---|---|---|---|---|
| **Date Application Received** 12/09/2017 | **Received By** Gary S. Lochbaum | **Decision** ☒ Approved ☐ Denied | **Decision By** | **Date of Notification** | **Notification Given** ☐ Email or Text ☐ Face-To-Face ☐ Mail or Fax ☐ Telephone |
| **HMDA Reportable** ☐ Yes ☒ No | **Census Tract** | **Account No. or HMDA ULI** 40000335301 | | *Instruction: If this application for credit is HMDA reportable and one or more applicants are a natural person, have the separate HMDA Demographic Information form completed. Even if HMDA-reportable, do not complete the HMDA Demographic Information form for any guarantor.* | |
| **The HMDA Demographic Information was provided through:** | ☐ Mail or Fax ☐ Telephone Interview | ☐ Email or Internet ☐ Face-To-Face Interview (includes Electronic Media with Video Component) | | | |

Phillip Miles, Guarantor
_____

     SEE ADDENDUM
_____
Mark Miles, Guarantor

Commercial Loan Application
Bankers Systems™ VMP®
Wolters Kluwer Financial Services ©2017

VMPC500  (1701).00
COMM-APP  1/31/2017
Page 3 of 3

AMOA 000189

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 40000335301 | Northwinds Leasing, LLC | | 01/31/18 | GSL |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $1,417,119.00 | Not Applicable | 7.000% | 01/31/23 | Commercial |
| | | Creditor Use Only | | |

## PROMISSORY NOTE
### (Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is January 31, 2018. The parties and their addresses are:

**LENDER:**
 **GEORGIA HERITAGE BANK**
 18 Georgia Heritage Place
 PO Box 1430
 Dallas, GA  30132
 Telephone:  (770) 445-8888

**BORROWER:**
 **NORTHWINDS LEASING, LLC**
 a Georgia Limited Liability Company
 3330 Preston Ridge Road Ste 300
 Alpharetta, GA 30005

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

 **A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

 **B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

 **C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

 **D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

 **E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

 **F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

 **G. Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$1,417,119.00 (Principal)** plus interest from January 31, 2018 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **7.000 percent (Interest Rate)**.

 **A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at 16.000 percent until paid in full.

 **B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

 **C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the Georgia usury laws under Ga. Code title 7, ch. 4.

 **D. Accrual.** Interest accrues using an Actual/360 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

 **A. Late Charge.** If a payment is more than 10 days late, I will be charged **10.000** percent of the Amount of Payment or $5.00, whichever is greater. I will pay this late charge promptly but only once for each late payment.

**6. PAYMENT.** I agree to pay this Note in 60 payments. I will make 59 payments of **$28,121.17** beginning on February 28, 2018, and on the last day of each month thereafter. A single, final payment of the entire unpaid balance of Principal and interest will be due January 31, 2023.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to principal that is due, and finally to late charges that are due. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

Northwinds Leasing, LLC
Georgia Promissory Note
GA/4ACRENSHA00000000001544016N

Wolters Kluwer Financial Services ©1986, 2018 Bankers Systems™

Initials ____
Page 1

**\*183\*      \*40000335301\*      \*01312018\***

AMOA 000190

**7. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**8. LOAN PURPOSE.** The purpose of this Loan is to finance equipment purchase.

**9. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Security Agreement - Northwinds Leasing, LLC | Northwinds Leasing, LLC | 01/31/2018 |

**10. GUARANTY.** A Guaranty, dated January 31, 2018, from Mark G. Miles (Guarantor) to you, guaranties the payment and performance of my debts as described in the Guaranty.

A Guaranty, dated January 31, 2018, from Phillip Miles (Guarantor) to you, guaranties the payment and performance of my debts as described in the Guaranty.

**11. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. New Organizations.** Without your written consent, I organize, merge into, or consolidate with an entity; acquire all or substantially all of the assets of another; materially change the legal structure, management, ownership or financial condition; or effect or enter into a domestication, conversion or interest exchange.

**E. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**F. Other Documents.** A default occurs under the terms of any other Loan Document.

**G. Other Agreements.** I am in default on any other debt or agreement I have with you.

**H. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**I. Judgment.** I fail to satisfy or appeal any judgment against me.

**J. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**K. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**L. Property Transfer.** I transfer all or a substantial part of my money or property.

**M. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**N. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**O. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I waive my right to notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure this Loan.

(8) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon your strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

AMOA 000191

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

**E. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**F. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs, and other legal expenses. If this debt is collected by or through an attorney after maturity, I agree to pay 15 percent of the Principal and interest owing as attorneys' fees. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**16. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**17. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**18. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

**A. Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing the Loan.

**B. Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for the Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply these insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**19. APPLICABLE LAW.** This Note is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Georgia, unless otherwise required by law.

**20. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**21. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

AMOA 000192

**22. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**23. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**24. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**25. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**26. SIGNATURES.** By signing under seal, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

Northwinds Leasing, LLC

By_____    Date_____  (Seal)
Phillip Miles, FBO MEC Capital

LENDER:

Georgia Heritage Bank

By_____    Date_____  (Seal)
Gary S. Lochbaum, VP

AMOA 000193

**APPENDIX: FEES AND CHARGES**

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Outgoing Wire Fee.** A(n) Outgoing Wire Fee fee of $25.00 payable from the loan proceeds.
**Loan.** A(n) Loan fee of $14,295.00 payable from the loan proceeds.
**Consulting Fee.** A(n) Consulting Fee fee of $42,513.57 payable from the loan proceeds.
**Attorney's Fees.** A(n) Attorney's Fees fee of $1,575.00 payable from the loan proceeds.
**Lien Search.** A(n) Lien Search fee of $150.00 payable from the loan proceeds.
**Equipment Appraisal Fee.** A(n) Equipment Appraisal Fee fee of $1,000.00 payable from the loan proceeds.
**Filing.** A(n) Filing fee of $74.00 payable from the loan proceeds.

Northwinds Leasing, LLC
Georgia Promissory Note
GA/4ACRENSHA00000000001544016N

Wolters Kluwer Financial Services ®1996, 2018 Bankers Systems™

Initials _____
Page 5

AMOA 000194

\*309\*        \*40000335301\*

# STATEMENT OF PURPOSE

The undersigned has this day applied for or obtained credit from
___Georgia Heritage Bank_____
of __Dallas_____, __Georgia_____, (the "Bank")
in the amount of $__1,417,119.00_____, and does hereby certify to said
Bank that the proceeds of said loan being made to the undersigned are for
business, commercial  or agricultural  purposes and  that no part of  the
proceeds of said loan is for any personal, family or household purpose.


This the __31st_____day of ___January_____, __2018___.

Northwinds Leasing, LLC

BY: _____          _____
Phillip Miles, FBO MEC Capital                          Date

_____          _____
                                                                                        Date

_____          _____
                                                                                        Date

_____          _____
                                                                                        Date

_____          _____
                                                                                        Date

_____          _____
                                                                                        Date

STPURP (Rev 5/16/06)
GP - AL, FL, GA, IL, IN,
KY, LA, MS, NC, TN

AMOA 000195

# SECURITY AGREEMENT

**DATE AND PARTIES.** The date of this Security Agreement (Agreement) is January 31, 2018. The parties and their addresses are:

**SECURED PARTY:**
**GEORGIA HERITAGE BANK**
18 Georgia Heritage Place
PO Box 1430
Dallas, GA  30132

**DEBTOR:**
**NORTHWINDS LEASING, LLC**
a Georgia Limited Liability Company
3330 Preston Ridge Road Ste 300
Alpharetta, GA 30005

**Definitions.** For the purposes of this document, the following terms have the following meanings.

"Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Debtor and agreeing to give the Property described in this Agreement as security for the Secured Debts.

**1. SECURED DEBTS.** The term "Secured Debts" includes and this Agreement will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 40000335301, dated January 31, 2018, from me to you, in the amount of $1,417,119.00.

**B. Sums Advanced.** All sums advanced and expenses incurred by you under the terms of this Agreement.

Loan Documents refer to all the documents executed in connection with the Secured Debts.

**2. SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**3. PROPERTY DESCRIPTION.** The Property is described as follows:

**A. Specific Property.** See attached exhibit A

**4. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Agreement is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am an entity organized and registered under the laws of Georgia. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**D. Business Name.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**E. Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**5. DUTIES TOWARD PROPERTY.**

**A. Protection of Secured Party's Interest.** I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

**B. Use, Location, and Protection of the Property.** I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

---

AMOA 000196

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my address, name or, if an organization, any change in my identity or structure.

Until the Secured Debts are fully paid and this Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

**C. Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**6. INSURANCE.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

**7. AUTHORITY TO PERFORM.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Agreement or any other Loan Document, you are authorized, without notice to me, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to:

   **A.** pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

   **B.** pay any rents or other charges under any lease affecting the Property.

   **C.** order and pay for the repair, maintenance and preservation of the Property.

   **D.** file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

   **E.** place a note on any chattel paper indicating your interest in the Property.

   **F.** take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

   **G.** handle any suits or other proceedings involving the Property in my name.

   **H.** prepare, file, and sign my name to any necessary reports or accountings.

   **I.** make an entry on my books and records showing the existence of this Agreement.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Document. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

   **A. Payments.** I fail to make a payment in full when due.

   **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Obligor, or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations Obligor has with you.

   **C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

   **D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

   **E. Other Documents.** A default occurs under the terms of any other Loan Document.

   **F. Other Agreements.** I am in default on any other debt or agreement I have with you.

   **G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

   **H. Judgment.** I fail to satisfy or appeal any judgment against me.

AMOA 000197

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**9. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**10. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Secured Debts immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

**E. Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

**F. Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Georgia Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

**G. Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

**H. Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. WAIVER OF CLAIMS.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**12. PERFECTION OF SECURITY INTEREST AND COSTS.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all taxes, fees and costs you pay or incur in connection with preparing, filing or recording any financing statements or other security interest filings on the Property. I agree to pay all actual costs of terminating your security interest.

**13. APPLICABLE LAW.** This Agreement is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Georgia, unless otherwise required by law.

**14. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. You may sue each Debtor individually or together with any other Debtor. You may release any part of the Property and I will still be obligated under this Agreement for the remaining Property. Debtor agrees that you and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Debtor's consent. Such a change will not release Debtor from the terms of this Agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to me or my consent, and this Agreement will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Secured Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**17. NOTICE AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Debtor will be deemed to be notice to all Debtors. I will inform you in writing of

AMOA 000198

any change in my name, address or other application information. I will provide you any other, correct and complete information you request to effectively grant a security interest on the Property. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Agreement and to confirm your lien status on any Property. Time is of the essence.

**SIGNATURES.** By signing under seal, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

**DEBTOR:**

Northwinds Leasing, LLC

By_____     Date_____     (Seal)
Phillip Miles, FBO MEC Capital

**SECURED PARTY:**

Georgia Heritage Bank

By_____     Date_____     (Seal)
Gary S. Lochbaum, VP

AMOA 000199

## EXHIBIT "A"

### Collateral

All personal property assets of the Debtor, including, without limitation, all of Debtor's right, title and interest, whether now existing or hereafter acquired, in all of its accounts (including without limitation health-care receivables), chattel paper (whether tangible or electronic), deposit accounts, documents, general intangibles (including without limitation payment intangibles and software), goods (including without limitation inventory, equipment, fixtures and accessions), instruments (including without limitation promissory notes), investment property, letter-of-credit rights, letters of credit, money, supporting obligations, as-extracted collateral, together with: (i) all proceeds and products of the foregoing, including, without limitation, all cash, checks, drafts, accounts receivable, chattel paper, leases and instruments received by Debtor in connection with any sale, lease, exchange or disposition of any of the foregoing, and (ii) all books, records (including computer software) and documents at any time evidencing or relating to any of the foregoing or any proceeds of the foregoing, in each case as such terms are defined under the Uniform Commercial Code as in effect in the State of Georgia from time to time.

The equipment shall include, without limitation the following:

1.    Elekta Esteya Electronic Brachyteherapy System, Serial # 301365
2.    Elekta HDR Electronic HDR System, Serial # 794165
3.    Elekta Infinity dual modality digital accelerator, Serial #154535

Together with any and all present and future accessories, parts, licenses, software, manuals, warranties, replacements or substitutions thereof.



# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Pat Hamm   770-445-8888

**B. E-MAIL CONTACT AT FILER (optional)**
Info@georgiaheritagebank.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Loan Operations, Georgia Heritage Bank
PO Box 1430
Dallas, Georgia 30132

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME**: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME Northwinds Leasing, LLC | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS 3330 Preston Ridge Road Ste 300 | CITY Alpharetta | STATE GA | POSTAL CODE 30005 | COUNTRY USA |
|---|---|---|---|---|

2. **DEBTOR'S NAME**: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Georgia Heritage Bank | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS 18 Georgia Heritage Place PO Box 1430 | CITY Dallas | STATE GA | POSTAL CODE 30132 | COUNTRY USA |
|---|---|---|---|---|

4. **COLLATERAL**: This financing statement covers the following collateral:   See attached exhibit A

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:          6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility      ☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**          Wolters Kluwer Financial Services UCC-1-0713 1/1/2017

AMOA 000201

## EXHIBIT "A"

### Collateral

All personal property assets of the Debtor, including, without limitation, all of Debtor's right, title and interest, whether now existing or hereafter acquired, in all of its accounts (including without limitation health-care receivables), chattel paper (whether tangible or electronic), deposit accounts, documents, general intangibles (including without limitation payment intangibles and software), goods (including without limitation inventory, equipment, fixtures and accessions), instruments (including without limitation promissory notes), investment property, letter-of-credit rights, letters of credit, money, supporting obligations, as-extracted collateral, together with: (i) all proceeds and products of the foregoing, including, without limitation, all cash, checks, drafts, accounts receivable, chattel paper, leases and instruments received by Debtor in connection with any sale, lease, exchange or disposition of any of the foregoing, and (ii) all books, records (including computer software) and documents at any time evidencing or relating to any of the foregoing or any proceeds of the foregoing, in each case as such terms are defined under the Uniform Commercial Code as in effect in the State of Georgia from time to time.

The equipment shall include, without limitation the following:

1.  Elekta Esteya Electronic Brachyteherapy System, Serial # 301365
2.  Elekta HDR Electronic HDR System, Serial # 794165
3.  Elekta Infinity dual modality digital accelerator, Serial #154535

Together with any and all present and future accessories, parts, licenses, software, manuals, warranties, replacements or substitutions thereof.



## AGREEMENT TO PROVIDE INSURANCE

**DATE AND PARTIES.** The date of this Agreement to Provide Insurance (Agreement) is January 31, 2018. The parties and their addresses are:

**OWNER:**
   **NORTHWINDS LEASING, LLC**
   a Georgia Limited Liability Company
   3330 Preston Ridge Road Ste 300
   Alpharetta, GA 30005

**SECURED PARTY:**
   **GEORGIA HERITAGE BANK**
   18 Georgia Heritage Place
   PO Box 1430
   Dallas, GA  30132

The pronouns "you" and "your" refer to the Secured Party. The pronouns "I," "me" and "my" refer to each person or entity signing this Agreement as Owner.

**1. LOAN DESCRIPTION** (Loan).
   **A. Date.** January 31, 2018
   **B. Loan Number.** 40000335301
   **C. Loan Amount.** $1,417,119.00

**2. AGREEMENT TO PROVIDE INSURANCE.** As part of my Loan, I agree to do all of the following.
   A. I will insure the Property as listed and with the coverages shown in the DESCRIPTION OF PROPERTY section.
   B. I will have you named on the policy, with the status listed under the STATUS section.
   C. I will arrange for the insurance company to notify you that the policy is in effect and your status has been noted.
   D. I will pay for this insurance, including any fee for this endorsement.
   E. I will keep the insurance in effect until the Property is no longer subject to your security interest. (I understand that the Property may secure debts in addition to any listed in the LOAN DESCRIPTION section.)

**3. DESCRIPTION OF PROPERTY.** The Property subject to this Agreement is described as follows.
Equipment:   See attached exhibit A .
I agree to insure this Property according to the following described risks, amount of coverage, and maximum deductible allowed. I will insure the Property with the coverages necessary to protect the Property from all risks and liability reasonably associated with the Property. The insurable value of this Property is $.00. The term of coverage will be _____. The amount of premium will be _____.
Effective Date:
**INSURANCE COMPANY.** The insurance policy covering the Property and the insurance company issuing the policy are as follows:
Policy Number. _____
Insurance Company Name, Address, and Phone Number.


**INSURANCE AGENCY AND AGENT.** The insurance agency through which I have purchased, or intend to purchase, the required insurance is as follows:
Agent Name. _____
Agency Name, Address, and Phone Number.


**4. STATUS.** Your status shall be listed on the insurance policy as Lienholder. The current lien position of the Secured Party is First Lien.

**5. MAILING ADDRESS.** Please return to Secured Party at the address listed in the DATE AND PARTIES section.


**SIGNATURES FOR OWNERS AND AUTHORIZATION TO INSURANCE AGENT AND COMPANY.** By signing below under seal, I agree to the terms contained in this Agreement and acknowledge receipt of a copy of this Agreement. I request the listed insurance company and agency to provide the indicated coverage, and list you on the policy with the indicated status. I also request the insurance company or its authorized agent to immediately confirm that the policy is in effect by signing this form and forwarding a copy of the policy to you.

OWNER:
   Northwinds Leasing, LLC

   By_____ Date_____ (Seal)
   Phillip Miles, FBO MEC Capital


**SIGNATURE OF SECURED PARTY AND REQUEST FOR CONFIRMATION.** Upon receipt of this Agreement, the insurance company or agency named above is requested to confirm the policy coverages shown above.

   SECURED PARTY:
      Georgia Heritage Bank



      By_____ Date_____ (Seal)
      Gary S. Lochbaum, VP

*275*        *40000335301*        *01312018*

**SIGNATURE FOR INSURANCE COMPANY AND CONFIRMATION.** By signing below, Insurance Company confirms the existence of the insurance coverages agreed to be provided by our insured and that you will be notified not less than 10 days before cancellation.

**INSURANCE COMPANY:**

_____

Insurance Company

By_____ (Seal)
Signer Name _____
Signer Title _____
Telephone Number _____

AMOA 000204

# GUARANTY
#### (Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is January 31, 2018. The parties and their addresses are:

**LENDER:**
**GEORGIA HERITAGE BANK**
18 Georgia Heritage Place
PO Box 1430
Dallas, GA 30132
Telephone: (770) 445-8888

**BORROWER:**
**NORTHWINDS LEASING, LLC**
a Georgia Limited Liability Company
3330 Preston Ridge Road Ste 300
Alpharetta, GA 30005

**GUARANTOR:**
**PHILLIP MILES**
300 Hayward Lane
Alpharetta, GA 30022

1. **DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

   A. **Pronouns.** The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, individually and together. "You" and "your" refer to the Lender.

   B. **Note.** "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

   C. **Property.** "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

   D. **Loan.** "Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

   E. **Loan Documents.** "Loan Documents" refer to all the documents executed as a part of or in connection with the Loan.

2. **SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 40000335301, dated January 31, 2018, from Northwinds Leasing, LLC (Borrower) to you, in the amount of $1,417,119.00.

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

3. **EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

4. **UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

5. **BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

6. **REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

7. **PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

8. **DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

   A. **Payments.** I fail to make a payment in full when due.

   B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

   C. **Death or Incompetency.** I die or am declared legally incompetent.

   D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Guaranty.

   E. **Other Documents.** A default occurs under the terms of any other document relating to the Debt.

   F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

   G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

*163*          *40000335301*          *01312018*

AMOA 000205

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

**9. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers.** In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I waive my right to notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure the Debt.

(10) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**10. REMEDIES.** After the Borrower or I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on default.

**D. Payments Made on the Borrower's Behalf.** Amounts advanced on the Borrower's behalf will be immediately due and may be added to the balance owing under the Debt.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**11. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**12. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Guaranty. The execution and delivery of this Guaranty will not violate any agreement governing me or to which I am a party.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or warranties from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

**13. RELIANCE.** I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby. I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

**14. APPLICABLE LAW.** This Guaranty is governed by the laws of Georgia, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Georgia, unless otherwise required by law.

**15. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing. This Guaranty and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**16. ASSIGNMENT.** If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

AMOA 000206

**17. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

**18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

**19. CREDIT INFORMATION.** I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

**20. SIGNATURES.** By signing under seal, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

_____   Date_____   (Seal)
Phillip Miles

LENDER:

Georgia Heritage Bank

By_____   Date_____   (Seal)
Gary S. Lochbaum, VP

AMOA 000207

# DISBURSEMENT AUTHORIZATION

**DATE AND PARTIES.** The date of this Disbursement Authorization is January 31, 2018. The parties and their addresses are:

LENDER:
    **GEORGIA HERITAGE BANK**
    1B Georgia Heritage Place
    PO Box 1430
    Dallas, GA  30132
    Telephone:  (770) 445-8888

BORROWER:
    **NORTHWINDS LEASING, LLC**
    a Georgia Limited Liability Company
    3330 Preston Ridge Road Ste 300
    Alpharetta, GA 30005

Loan Number:  40000335301

**1. DEFINITIONS.**  As used in this Disbursement Authorization, the terms have the following meanings:

    **A. Pronouns.**  The pronouns "I", "me" and "my" refer to all Borrowers signing this Disbursement Authorization, individually and together.  "You" and "Your" refer to the Lender.

    **B. Loan.**  "Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Disbursement Authorization.

**2. DISBURSEMENT SUMMARY.**  The following summarizes the disbursements from the Loan.

| | | |
|---|---:|---:|
| Loan | | $1,417,119.00 |
|     Cash Paid In | $0.00 | |
|     Amount Contributed by Borrower | $0.00 | |
| Total Cash Received | | $0.00 |
|     Disbursed to Borrowers | $1,357,486.43 | |
|     Disbursed to Lender | $14,320.00 | |
|     Disbursed to Other Payees | $45,312.57 | |
| Total Amounts Disbursed | | $1,417,119.00 |
| Amount Remaining To Be Disbursed | | $0.00 |
| Undisbursed Fees/Charges | | $0.00 |

**3. DISBURSEMENT AUTHORIZATION.**  I authorize you to disburse the following amounts from my Loan.

| DISBURSED TO: | DATE: | | AMOUNT DISBURSED: |
|---|---|---:|---:|
| Disbursements to Borrower: | | | $1,357,486.43 |
|     Check # payable to Northwinds Leasing, LLC | 01/31/2018 | | $812,486.43 |
|     Check # payable to Payoff Randy J. Bates Jr | 01/31/2018 | | $545,000.00 |
| Disbursements to Lender: | | | $14,320.00 |
|     Fees & Charges: | 01/31/2018 | | $14,320.00 |
|         Outgoing Wire Fee | | $25.00 | |
|         Loan | | $14,295.00 | |
| Disbursements to third parties: | | | $45,312.57 |
|     First Liberty Capital: | 01/31/2018 | | $42,513.57 |
|         Consulting Fee | | $42,513.57 | |
|     Marvin Rice, LLC: | 01/31/2018 | | $1,725.00 |
|         Attorney's Fees | | $1,575.00 | |
|         Lien Search | | $150.00 | |
|     Arwood Appraisal: | 01/31/2018 | | $1,000.00 |
|         Equipment Appraisal Fee | | $1,000.00 | |
|     Public Officials: | 01/31/2018 | | $74.00 |
|         Filing | | $74.00 | |
| **TOTAL DISBURSED:** | | | $1,417,119.00 |

Amount remaining to be disbursed, if any:  $0.00

**4. ADDITIONAL INSTRUCTIONS.**  0

I acknowledge receipt of a copy of this Disbursement Authorization on January 31, 2018.

BORROWER:

Northwinds Leasing, LLC

By _____    Date _____
Phillip Miles, FBO MEC Capital

Northwinds Leasing, LLC
Disbursement Authorization
GA/4ACRENSHA0G0000000001544015N      Wolters Kluwer Financial Services ©1996, 2018 Bankers Systems™      Initials _____
Page 1

*151*  *40000335301*  *01312018*

AMOA 000208

Rev. 12/2011

| **FACTS** | **WHAT DOES GEORGIA HERITAGE BANK DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br>• Social Security number     • Transaction history<br>• Account balances     • Credit history<br>• Payment history     • Overdraft history<br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Georgia Heritage Bank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Georgia Heritage Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes –** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes –** to offer our products and services to you | No | We don't share |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes –** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes –** information about your creditworthiness | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| **Questions?** | Call 770-445-8888 or go to www.georgiaheritagebank.com |
|---|---|



Privacy Model Disclosure
VMP® Bankers Systems™
Wolters Kluwer Financial Services © 2010

PRIV-MODEL 8/1/2010

2012.1/4922 3153594-010 EPRV4922

AMOA 000209

**Page 2**

## What We Do

| | |
|---|---|
| **How does Georgia Heritage Bank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br><br>We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
| **How does Georgia Heritage Bank collect my personal information?** | We collect your personal information, for example, when you<br>● Open an account   ● Make a wire transfer<br>● Apply for a loan   ● Show your government-issued ID<br>● Make deposits or withdrawals from your account<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>● sharing for affiliates' everyday business purposes - information about your creditworthiness<br>● affiliates from using your information to market to you<br>● sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

## Definitions

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and non-financial companies.<br>● *Georgia Heritage Bank has no affiliates.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and non-financial companies.<br>● *Georgia Heritage Bank does not share with nonaffiliates so they can market to you.* |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>● *Georgia Heritage Bank doesn't jointly market.* |

AMOA 000210

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Pat Hamm   770-445-8888

**B. E-MAIL CONTACT AT FILER (optional)**
Info@georgiaheritagebank.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Loan Operations, Georgia Heritage Bank
PO Box 1430
Dallas, Georgia 30132

DOC# 002130
FILED IN OFFICE
02/08/2018   11:26 AM
SEQ #: 038-2018-002130
CINDY G BROWN
CLERK OF SUPERIOR COURT
COWETA COUNTY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Northwinds Leasing, LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3330 Preston Ridge Road Ste 300 | Alpharetta | GA | 30005 | USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Georgia Heritage Bank | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 18 Georgia Heritage Place PO Box 1430 | Dallas | GA | 30132 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:  See attached exhibit A

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)    ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien    ☐ Non-UCC Filing

7. **ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. **OPTIONAL FILER REFERENCE DATA:**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    Wolters Kluwer Financial Services UCC-1-0713 1/1/2017