**36**

*087-2020-001227*
Laurens County, Georgia
Real Estate Transfer **Tax**
Paid $ *850.00*
Date *August 7, 2020*
*Jackie H. Dalton*
Clerk

State of Georgia, Laurens County
CLERK'S OFFICE, SUPERIOR COURT
Filed *August 7*, 20 *20*
Recorded *Aug 7*, 20 *20*
At *10:30* O'clock, *A* M.
In Book *3078* Page *36*
*Jackie H. Dalton*
Clerk of Superior Court

**Return Recorded Document to:**
William E. Porter, P.C.
1835 Lockeway Drive, Suite 303
Alpharetta, Georgia 30004
Tax Identification No: D04F 037

## GENERAL WARRANTY DEED

**STATE OF GEORGIA**

**COUNTY OF** FULTON                    File #: **20-0278**

THIS INDENTURE made and delivered on August 5, 2020, between **Carmike Realty II, LLC**, a Georgia Limited Liability Company, as party or parties of the first part, hereinafter called Grantor, and **CurePoint Dublin LLC**, a Georgia Limited Liability Company, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of **TEN AND 00/100'S ($10.00) Dollars** and other good and valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

**See Exhibit "A" attached hereto and incorporated herein by reference.**

The within conveyance of the above-described property is subject to the exceptions to title and matters set forth in Exhibit "B", attached hereto and made a part hereof by reference, and all other rights of way, easements, and restrictions of record, if any.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in **FEE SIMPLE**.

TOGETHER WITH all rights, members, easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, emblements, and appurtenances in any way belonging, relating, or appertaining to the above-described property.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

[SIGNATURES ON FOLLOWING PAGE]

AMOA 000220

GSCCCA.org - Image Index    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

37

[Signature page to General Warranty Deed]

**IN WITNESS WHEREOF**, Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered
in the presence of:

**Carmike Realty II, LLC**

By: _____ (SEAL)

**Stanley Baum - Operating Manager**

_____
Unofficial Witness

_____
Notary Public

AMOA 000221

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

38

## EXHIBIT A
### Legal Description

ALL THAT TRACT OR PARCEL OF LAND situate, lying and being in the City of Dublin, Laurens County, Georgia, containing 0.663 acres, more or less, designated as Lot 7 of Erin Office Park and particularly shown on a plat of survey by Marvin D. Clements, Land Surveyor, dated January 19, 1991, and recorded in Deed Book 606, Page 259, Laurens County Records, which plat is by this reference incorporated herein as a part of this description.

This property described on that certain unrecorded plat of "A Portion of Lot 7, Erin Office Park, City of Dublin, 342nd G.M.D., Laurens County, Georgia", prepared for Atlantic Coast Bank, Satilla Regional Cancer Treatment Center, P.A.; Chicago Title Insurance Company, prepared by Privett & Associates, Inc., Jeffrey S. Foster, G.R.L.S. No. 3143, dated July 21, 2009, described as follows:  For a POINT OF BEGINNING commence at a point where the centerline of Limerock Road (a 65 foot easement according to deed recorded in Deed Book 358, Page 608, public records of said county) intersects the southeasterly right-of-way line of Bellevue Road (a varied width right-of-way as now established) and run the next three courses along the southeasterly, southwesterly and southeasterly right of way line of the aforementioned Bellevue Road: Course 1, North 26 degrees 59 minutes 30 seconds East a distance of 45.08 feet to a point; Course 2, North 63 degrees 00 minutes 30 seconds West a distance of 10.00 feet to a point; Course 3, North 26 degrees 59 minutes 30 seconds East a distance of 119.64 feet to a point lying at the southwesterly corner of lands now or formerly of Rose G. Killingsworth (according to deed recorded in Deed Book 1534, Page 228, public records of said County); run thence South 65 degrees 47 minutes 00 seconds East along the southerly line of last mentioned lands, a distance of 175.00 feet to a point lying at the northwesterly corner of lands now or formerly of Lawrence R. Spira (according to a deed recorded in Deed Book 873, Page 250, public records of said county); run thence South 26 degrees 59 minutes 30 seconds West along the northwesterly line of last mentioned lands, a distance of 165.20 feet to a point lying in the centerline of the aforementioned Limerock Road; run thence North 65 degrees 47 Minutes 00 Seconds West along last mentioned centerline, a distance of 164.99 feet to the POINT OF BEGINNING.

AMOA 000222

39

## EXHIBIT B
### Permitted Encumbrances

1. All taxes for 2020 and subsequent years, which are a lien not yet payable.

2. Rights of upper and lower riparian owners in and to the waters of the creeks and branches crossing subject property and the natural flow thereof without diminution.

3. Rights of tenants in possession under unrecorded leases pursuant to their terms.

4. Terms, provisions, covenants, conditions, restrictions, easements, charges, assessments and liens provided in the Protective Covenants for Erin Office Park dated 05/01/1978, recorded in Deed Book 358, Page 600, Laurens County, Georgia records; as amended by agreement dated 04/02/1982, recorded in Deed Book 395, Page 181, aforesaid records, but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the covenant, condition or restriction (a) is exempt under Title 42 of the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons. As this instrument has been amended or modified from time to time.

5. Any and all matters as disclosed by plat of survey recorded in Plat Book 606, Page 259, aforesaid records.

6. Easement to Georgia Power Company dated March 30, 1949 recorded in Deed Book 106, Page 446, aforesaid records.

7. Right-of-way easement in favor of Oconee EMC dated May 25, 1978 recorded in Deed Book 357, Page 754, aforesaid records.

8. Right-of-way easement in favor of Oconee EMC dated June 4, 1982 recorded in Deed Book 397, Page 545, aforesaid records.

9. Easement in favor of Georgia Power Company dated August 4, 1982 recorded in Deed Book 401, Page 516, aforesaid records.

10. Right- of-way in favor of the City of Dublin dated March 25, 1999 recorded in Deed Book 1043, Page 298, aforesaid records.

11. Easements as shown on plat recorded 07/06/1978, in Deed Book 358, Page 608, aforesaid records.

12. Any and all matters disclosed on that ALTA/NSPS Land Title Survey for CurePoint Dublin, LLC, First-Citizens Bank & Trust Company, Stewart Title Guaranty Company, and William E. Porter, P.C., prepared by Jackson Land Surveying, P.C., sealed and certified by Charles H. Jackson, GRLS No. 2351, dated 08/01/2020.

AMOA 000223

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

State of Georgia, Laurens County
CLERK'S OFFICE, SUPERIOR COURT

Filed _August 7_ , 20 _20_
Recorded _August 7_ 20 _20_
At _10.30_ O'clock _A_ M
In Book _3078_ Page _43_

_Jackie H. Dalton_
Clerk of Superior Court

**' · 0 ' 43**

**RECORDATION REQUESTED BY:**
First-Citizens Bank & Trust Company
DAC 20
PO Box 26592
Raleigh, NC 27611-6592

**WHEN RECORDED MAIL TO:**
First Citizens Bank
Loan Servicing Department-DAC20
PO Box 26592
Raleigh, NC 27611-6592

William E Porter, P.C.
1835 Lockeway Drive
Suite 303
Alpharetta, GA 30004

GEORGIA INTANGIBLE TAX PAID

$ _2,250.00_

_August 7_ 20 _20_

Ralph H. Jackson
TAX COLLECTOR/COMMISSIONER
LAURENS COUNTY

**SEND TAX NOTICES TO:**
CUREPOINT DUBLIN LLC
1500 LA CHONA CT NE
ATLANTA, GA 30329

Parcel ID: D04F 037



*#############116508032020#############01*

## SECURITY DEED

**THIS SECURITY DEED** dated August 5, 2020, is made and executed between **CUREPOINT DUBLIN LLC WHOSE ADDRESS IS 1500 LA CHONA CT NE, ATLANTA GA 30329** (referred to below as "Grantor") and **First-Citizens Bank & Trust Company,** whose address is DAC 20, PO Box 26592, Raleigh, NC 27611-6592 (referred to below as "Lender").

**GRANT OF SECURITY DEED.** FOR AND IN CONSIDERATION of the financial accommodations to Grantor by Lender resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells to Lender, with power of sale, all of Grantor's right, title, and interest in and to the following described real property: **The Real Property is located in LAURENS County, State of Georgia and is described as follows:**

**See the exhibit or other description document which is attached to this Security Deed and made a part of this Security Deed as if fully set forth herein.**

TOGETHER WITH ANY AND ALL of the following: (i) all buildings, structures and Improvements now or hereafter located on the real property or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto; (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof; (iii) all Rents accruing therefrom, whether now or hereafter due; (iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon; (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located thereon or thereunder or on or under any part or parcel thereof; (vi) all estates, rights, title and interest therein, or in any part or parcel thereof; (vii) all equipment, machinery, apparatus, fittings, fixtures, furniture, furnishings, mobile homes, modular homes and all personal property of every kind or description whatsoever now or hereafter located thereon, or in or on the buildings, structures and improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and (viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

**The Real Property or its address is commonly known as 2406 BELLEVUE ROAD #7, DUBLIN, GA 31021.**

THIS SECURITY DEED, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $750,000.00 WHICH HAS THE MATURITY DATE OF FEBRUARY 7, 2028, THE RELATED DOCUMENTS, AND THIS SECURITY DEED. THIS CONVEYANCE SHALL BE CONSTRUED AS A DEED PASSING TITLE AND NOT AS A MORTGAGE. IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS SECURITY DEED PURSUANT TO O.C.G.A. 44-14-80 AND TO AGREE THAT TITLE SHALL NOT REVERT TO GRANTOR FOR A PERIOD OF TWENTY (20) YEARS FROM THE DATE OF THIS SECURITY DEED. HOWEVER, NOTHING IN THIS PARAGRAPH WILL IMPAIR LENDER'S RIGHTS TO COLLECTION OF THE INDEBTEDNESS AND FORECLOSURE OF THE SECURITY INTEREST IF THE INDEBTEDNESS IS NOT REPAID WHEN DUE. THIS SECURITY DEED IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Security Deed, Grantor shall pay to Lender all amounts secured by this Security Deed as they become due and shall strictly perform all of Grantor's obligations under this Security Deed and the Related Documents.

AMOA 000224

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...





*#################116508032020#############02*

## SECURITY DEED
### (Continued)

Page 2

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property; (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Security Deed.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Security Deed or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Security Deed, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Security Deed and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Security Deed.

**Compliance with Governmental Requirements.**  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Security Deed upon the sale or transfer, without Lender's prior written consent, of all or any part of the Property, or any interest in the Property.  A "sale or transfer" means the conveyance of Property or any right, title or interest in the Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property.  If any

AMOA 000225

GSCCCA.org - Image Index                          https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

**45**



*###################116508032020#############03*

### SECURITY DEED
### (Continued)

Page 3

Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Georgia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Security Deed:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Security Deed, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Security Deed:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Security Deed. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Security Deed, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

AMOA 000226

GSCCCA.org - Image Index

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

4 6



*###################116508032020#############04*

### SECURITY DEED
### (Continued)

Page 4

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1)  the name of the insurer;  (2)  the risks insured;  (3)  the amount of the policy;  (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and  (5)  the expiration date of the policy.  Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Security Deed or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor  is required to discharge or pay under this Security Deed or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated) to take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Security Deed also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Security Deed:

**Title.**  Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Security Deed, and  (b) Grantor has the full right, power, and authority to execute and deliver this Security Deed to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Security Deed, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Grantor in this Security Deed shall survive the execution and delivery of this Security Deed, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Security Deed:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable attorneys' fees and costs and expenses, including court costs that are incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Security Deed:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Security Deed and take whatever other action is requested by Lender to perfect and continue Lender's security interest on the Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Security Deed, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Security Deed.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Security Deed or upon all or any part of the  Indebtedness secured by this Security Deed;  (2)  a specific tax on Grantor which Grantor is authorized or

AMOA 000227

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...





*#################116508032020#############05*

## SECURITY DEED
### (Continued)

required to deduct from payments on the Indebtedness secured by this type of Security Deed; (3) a tax on this type of Security Deed chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Security Deed, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Security Deed as a security agreement are a part of this Security Deed:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Security Deed in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Security Deed as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Security Deed may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Security Deed.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Security Deed:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Security Deed, and the Related Documents, and (2) the liens and security interests created by this Security Deed as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Security Deed, Lender shall execute and deliver to Grantor a suitable satisfaction of this Security Deed and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Security Deed:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Security Deed to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Security Deed or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Security Deed or any of the Related Documents.

AMOA 000228

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

48



*#################116508032020#############06*

## SECURITY DEED
### (Continued)

Page 6

---

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Security Deed or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Security Deed or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**LENDER'S REMEDIES AND POWER OF SALE.** Upon the occurrence of an Event of Default, Lender shall have the following rights, powers, and remedies:

**Accelerate Indebtedness.** Lender, at Lender's option and election and without notice to Grantor, may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment demand, protest or notice of any kind, all of which are expressly waived by Grantor.

**Entry and Possession.** Lender may enter upon the Property, or any part thereof, and take possession of the Property, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Property or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Property or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Property insured; and carry out or enter into agreements of any kind with respect to the Property.

**Collection of Rents.** Lender may collect and receive all Rents from the Property and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Property, including the fees and expenses of Lender's attorneys, and agents.

**Payments.** Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Property or any part of the Property or Lender's interest in the Property.

**Other Remedies.** Lender may exercise all rights and remedies contained in any Related Document, heretofore, concurrently herewith or in the future executed by Grantor in favor of Lender in connection with the transactions resulting in the Indebtedness or any part thereof.

**Appointment of Receiver.** Lender may make application to any court and be entitled to the appointment of a receiver to take charge of the Property or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Property as security for the Indebtedness, or any other matter usually incident to the appointment of a receiver.

**UCC Remedies.** With respect to the Personal Property in which a security interest is herein granted, Lender may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (Sections 11-9-101 et. seq. of the Ga. Code Annotated) and any other applicable law. Grantor shall, if Lender requests, assemble all such Personal Property and make it available to Lender at a place or places to be designated by Lender, which shall be reasonably convenient to Grantor and Lender. Any notice required to be given by Lender of a public or private sale, lease or other disposition of the Personal Property or any other intended action by Lender may be delivered personally to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Lender at least five (5) business days prior to such proposed action,

AMOA 000229

GSCCCA.org - Image Index                                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

49



*#################116508032020#############07*

**SECURITY DEED**
**(Continued)**

Page 7

and shall constitute reasonable and fair notice to Grantor of any such action.

**Power of Sale.** Lender may sell the Property, or any part thereof or any interest therein, separately, at Lender's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Property, or any part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement, published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Lender may bid and purchase at any such sale, and Lender may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Property, or the part thereof or interest therein sold. Lender's conveyance may contain recitals as to the occurrence of an Event of Default, under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Lender shall be binding and conclusive upon Grantor, and the sale and conveyance made by Lender shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Property, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Lender may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Lender as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Lender as Grantor's agent and attorney-in-fact hereunder. Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorneys' fees if applicable, then to payment of the Indebtedness, and the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Property, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over.

**Cumulative Remedies.** All rights and remedies set forth in this Security Deed are cumulative and in addition to any right or remedy provided for by statute, or now or hereafter existing at law or in equity, including without limitation the right of Lender to collect or enforce the Indebtedness with or without taking action with respect to the Property. Lender may, at Lender's election and at Lender's discretion, exercise each and every such right and remedy concurrently or separately. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Security Deed or by any other writing, shall be cumulative and may be exercised singularly or concurrently.

**Attorneys' Fees; Expenses.** If any part of the Indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor shall pay to Lender as Lender's attorneys' fees, fifteen percent (15%) of such amount collected. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Security Deed, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Security Deed. All copies of notices of foreclosure from the holder of any prior security interest which has priority over this Security Deed shall be sent to Lender's address, as shown near the beginning of this Security Deed. Any party may change its address for notices under this Security Deed by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ADDITIONAL COLLATERAL; SECURITY AGREEMENT.** Grantor hereby grants and conveys to Lender a Uniform Commercial Code security interest in the following additional collateral (collectively, the "Additional Collateral"), whether now owned or hereafter acquired by Grantor: (a) all Personal Property, (b) all Rents, (c) all building materials, supplies, inventory, equipment, fixtures, furnishings and/or other goods (but excluding any household goods) intended for use, used, or usable in the construction, repair, renovation, operation or maintenance of improvements constructed or to be constructed on the Real Property, (d) all construction, engineering, and architectural contracts and all

AMOA 000230

GSCCCA.org - Image Index                                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

50



*###################116508032020##############08*

### SECURITY DEED
### (Continued)

Page 8

plans, drawings and specifications relating to the construction, repair or renovation of improvements on the Real Property, and (e) all attachments, accessories and accessions to any of the foregoing and all replacements of and proceeds from the foregoing. This instrument shall constitute a Security Agreement as to the Additional Collateral, and Lender shall have all of the rights with respect thereto of a secured party under the Uniform Commercial Code as enacted and amended from time to time in the state in which the Real Property is located. Lender is authorized to file at Grantor's expense such financing statements and other filings as Lender shall deem appropriate to perfect and continue Lender's security interest in the Additional Collateral. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach any Additional Collateral from the Real Property, and Grantor shall assemble all Additional Collateral not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three days after receipt of written demand from Lender to the extent permitted by applicable law. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this instrument may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage. This provision is in addition to (and does not supersede) any other provision of this Mortgage granting Lender a security interest in personal property.

**FUTURE ADVANCES AND CHANGES.** This instrument additionally secures future advances and re-advances (both obligatory and optional) made by Lender under the terms of this instrument or pursuant to the Note, Credit Agreement or any of the Related Documents secured hereby, and all parties to this instrument acknowledge that future advances and re-advances are expressly within the contemplation of the parties. The terms of any Note, Credit Agreement or other instrument evidencing the Indebtedness or any other obligation secured by this instrument may be changed from time to time by agreement between the holder(s) thereof and the parties obligated thereon as maker(s). Such changes may include, without limitation, the renewal, extension, modification, amendment, refinancing, restatement and/or increase of the obligation. For example, the holder(s) and maker(s) may agree to (a) increase or decrease the interest rate, (b) convert the obligation to or from a closed-end or an open-end obligation, (c) convert the obligation to or from a fixed interest rate obligation or an adjustable interest rate obligation, (d) increase or decrease the payment amount, (e) change the payment schedule, (f) extend or shorten the time during which future advances may be made, (g) advance and/or re-advance loan proceeds, (h) amortize a balloon payment, (i) extend or shorten the maturity date, (j) increase the principal amount, face amount, and/or credit limit of the instrument evidencing the obligation, and/or (k) any combination of the foregoing. To the extent permitted by law, the obligation as so changed from time to time and all future advances and re-advances relating thereto shall be and continue to be secured by this instrument with a priority as of the date this instrument is recorded, regardless of whether any record of such change is filed or recorded or when funds are advanced or re-advanced.

**RIGHT TO CURE.** Prior to accelerating the Indebtedness secured by this instrument, Lender shall give such notice and opportunity to cure as may be required by the Note or Credit Agreement secured by this instrument. The provisions of this section shall not supersede or limit the application of any controlling provisions of state law concerning notice of default, the right to cure, or the right to reinstate, and nothing in this instrument shall be deemed a waiver of those provisions; provided, however, that the provisions of the Note or Credit Agreement and any such state law requirements shall run concurrently.

**INFORMATION ABOUT OTHER LIENS.** Lender is authorized to obtain such information about other liens or claims of lien on the Real Property as Lender may reasonably request from the each creditor or other person or entity that has, claims to have, or asserts a lien on the Real Property. The information requested may include, but is not limited to, the nature of the lien or claim of lien, the circumstances under which the lien or claim of lien arose, and the amount required to satisfy the lien or claim of lien. The creditors or other persons or entities that have, claim to have, or assert a lien on the Real Property are authorized and directed to promptly provide to Lender the information requested by Lender. This provision applies whether the lien or claim of lien is superior or subordinate in priority to the lien of this instrument.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Deed:

**Amendments.** This Security Deed, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Security Deed. No alteration of or amendment to this Security Deed shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Security Deed are for convenience purposes only and are not to be used to interpret or define the provisions of this Security Deed.

**Governing Law.** This Security Deed will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Georgia without regard to its conflicts of law provisions. This Security Deed has been accepted by Lender in the State of Georgia.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Security Deed unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such

AMOA 000231

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

**5 1**



*###################116508032020#############09*

## SECURITY DEED
### (Continued)

Page 9

right or any other right. A waiver by Lender of a provision of this Security Deed shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Security Deed. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Security Deed, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Security Deed to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Security Deed. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Security Deed shall not affect the legality, validity or enforceability of any other provision of this Security Deed.

**Merger.** There shall be no merger of the interest or estate created by this Security Deed with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Security Deed on transfer of Grantor's interest, this Security Deed shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Security Deed and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Security Deed or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Security Deed.

**Waiver of Notice and Hearing and Homestead Exemption.** Grantor expressly waives: (1) any right Grantor may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Lender by this Security Deed and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Property as against the collection of the Indebtedness, or any part of the Indebtedness. All waivers by Grantor in this provision have been made voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Security Deed. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Security Deed shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means CUREPOINT DUBLIN LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Security Deed in the events of default section of this Security Deed.

**Grantor.** The word "Grantor" means CUREPOINT DUBLIN LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words

AMOA 000232

GSCCCA.org - Image Index    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

52



**SECURITY DEED**
**(Continued)**

Page 10

"Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws.  The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.**  The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.**  The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Security Deed, together with any amounts expended to preserve and protect the Property and together with interest on such amounts as provided in this Security Deed.

**Lender.**  The word "Lender" means First-Citizens Bank & Trust Company, its successors and assigns.

**Note.**  The word "Note" means the promissory note dated August 5, 2020, **in the original principal amount of $750,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.  The maturity date of the Note is February 7, 2028.

**Personal Property.**  The words "Personal Property" mean all equipment, fixtures, mobile homes, modular homes, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached, affixed to or used in the operation of the Real Property excluding only that property which by operation of law is Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.**  The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.**  The words "Real Property" mean the real property, interests and rights, as further described in this Security Deed less and except the Personal Property.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.**  The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Security Deed.**  The words "Security Deed" mean this Security Deed between Grantor and Lender, and includes without limitation all assignments and security interest provision relating to the Personal Property and the Rents.

IN WITNESS WHEREOF, THIS SECURITY DEED HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF.  THIS SECURITY DEED IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS SECURITY DEED IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

X _____
Unofficial Witness

_____
Notary Public, _____ County,

(NOTARY SEAL)

My Commission expires: _____

GRANTOR:

CUREPOINT DUBLIN LLC

By: _____ (Seal)
MARC J LEWYN, Manager of CUREPOINT
DUBLIN LLC

LaserPro, Ver. 20.1.0.034  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - GA  G:\LPL\CFI\LPL\G03.FC
TR-6384596  PR-536

AMOA 000233

GSCCCA.org - Image Index                              https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476106&...

53

## EXHIBIT A
### Legal Description

ALL THAT TRACT OR PARCEL OF LAND lying and being in G.M.D. 342, in the City of Dublin, Laurens County, Georgia, and being more particularly described as follows:

BEGINNING at an iron pin set at the intersection of the centerline of Limerock Road (65' Easement) with the southeasterly right-of-way of Bellevue Road (R/W Varies); thence along said right-of-way of Bellevue Road North 26 degrees 59 minutes 30 seconds East a distance of 45.08 feet to a concrete right-of-way monument found; thence North 63 degrees 00 minutes 30 seconds West a distance of 10.00 feet to an iron pin set; thence North 26 degrees 59 minutes 30 seconds East  a distance of 119.64 feet to an iron pin set; thence leaving said right-of-way South 65 degrees 47 minutes 00 seconds East a distance of 175.00 feet to an iron pin set; thence South 26 degrees 59 minutes 30 seconds West a distance of 165.20 feet to an iron pin set on the centerline of Limerock Road; thence along said centerline North 65 degrees 47 minutes 00 seconds West a distance of 164.99 feet to an iron pin set and the POINT OF BEGINNING.

Said tract or parcel of land contains 0.65 acres according to that ALTA/NSPS Land Title Survey for CurePoint Dublin LLC, First-Citizens Bank & Trust Company, Stewart Title Guaranty Company, and William E. Porter, P.C., prepared by Jackson Land Surveying, P.C., sealed and certified by Charles H. Jackson, GRLS No. 2351, dated 08/01/2020, which survey is incorporated herein by reference for a more particular description of the subject property.

AMOA 000234

GSCCCA.org - Image Index                        https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476109&...

**67**

Return to:
William E. Porter, P.C.
1835 Lockeway Dr., Suite 303
Alpharetta, GA 30004
File No. 20-0278
Parcel ID: D04F 037

State of Georgia, Laurens County
CLERK'S OFFICE, SUPERIOR COURT
Filed _August 7_, 20 20
Recorded _Aug 7_, 20 20
At _10:32_ O'clock _A_ M
In Book _3078_ Page _67_

_Jackie H. Dalton_
Clerk of Superior Court

## SUBORDINATION, ESTOPPEL, NONDISTURBANCE
## AND ATTORNMENT AGREEMENT
## (GEORGIA)

This Subordination, Estoppel, Nondisturbance and Attornment Agreement (this "Agreement") is made and entered into as of the 31 day of July, 2020, by and between the following parties:

"Tenant":          **CurePoint, LLC**
                   **11175 Cicero Dr, STE 100**
                   **Alpharetta, GA 30022**

"Landlord":        **CurePoint Dublin LLC**
                   **11175 Cicero Dr, STE 100**
                   **Alpharetta, GA 30022**

"Bank":            **First-Citizens Bank & Trust Company**
                   **DAC-20**
                   **P.O. Box 26592**
                   **Raleigh, NC 27611-6592**

**WHEREAS:**

A.       Tenant is the lessee under the terms of that certain Lease Agreement dated 04/01/2010, as assigned from Satilla Cancer Treatment Centers, LLC – The Dublin Series to CurePoint, LLC, by Assignment and Assumption Agreement; and as amended by First Amendment to Lease Agreement dated 8/01/2019, as may be further amended from time to time, (the "Lease"), by and between **Carmike Realty II, LLC,** as assigned to **CurePoint Dublin LLC** (the "Landlord") and Tenant.  The real property that is the subject of the Lease (i.e., the "leased premises") is located in **Laurens** County, Georgia, and is a portion of that property more particularly identified or described as follows:

         **See Exhibit "A" attached hereto and incorporated herein by reference, and the leased premises being commonly known as 2406 Bellevue Ave, Erin Office Park #7, Dublin, GA 31021.**

         For purposes of this Agreement, the "Lease" includes all amendments, modifications, substitutions, renewals, extensions and replacements of the Lease.

B.       Bank has made or has agreed to make one or more loans to **CurePoint Dublin LLC** (collectively, the "Loan").  Repayment of the Loan is or will be secured by one or more mortgages, security deeds or deeds to secure debt in favor of the Bank as lender (collectively, the "Security Deed").  For purposes of this Agreement, the Security Deed includes all amendments, modifications, extensions and renewals thereof and all substitutions therefor.  The property described in the Security Deed includes all or a portion of the Premises.

C.       Bank has requested Tenant to subordinate the Lease to the Security Deed, all indebtedness secured by the Security Deed, and all other advances made pursuant thereto, whether made prior to or after the execution of the Lease.

D.       Tenant is willing to so subordinate the Lease, provided it obtains assurances from Bank that its possession of the Premises and its right to use such common areas as may be permitted under the terms of the Lease will not

1

AMOA 000235

GSCCCA.org - Image Index

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476109&...

68

be disturbed by reason of or in the event of Landlord's default under the Security Deed.  Bank is willing to give such assurance.

NOW, THEREFORE, for and in consideration of the mutual agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties do hereby mutually covenant and agree as follows:

1.    Subordination.  Tenant hereby subordinates the Lease and all of Tenant's rights under the Lease (including, without limitation, any and all options to purchase, rights of first refusal, and rights of first negotiation) to the Security Deed and the lien thereof, all indebtedness secured by the Security Deed, and all advances made pursuant thereto, whether made prior to or after the signing of the Lease.

2.    Nondisturbance.  So long as no event of default under the Lease has occurred and continued for such period of time (after notice and opportunity to cure, if any, required by the Lease) as would entitle Landlord to terminate the Lease, the Lease shall not be terminated or modified in any respect whatsoever, and Tenant's right of possession to the Premises, its rights in and to any common areas, and its other rights arising out of the Lease will all be fully recognized and honored by Bank and shall not be disturbed, cancelled, terminated or otherwise adversely affected by reason of the Security Deed or any action or proceeding instituted by Bank to foreclose the Security Deed, irrespective of whether Tenant shall have been joined in any such action or proceeding. Notwithstanding the foregoing, Tenant shall not be entitled to exercise any option, right of first refusal, or right of first negotiation which Tenant may have under the terms of the Lease to purchase the Premises upon any transfer or prospective transfer of all or any portion of the property described in the Security Deed (including, without limitation, the Premises) by Bank (if Bank at any time becomes owner thereof) or  which occurs because of Landlord's default under the Security Deed, whether as a result of foreclosure of the Security Deed, conveyance of the property by deed in lieu of foreclosure, or otherwise.  Unless required by law, Tenant shall not be joined as a party in any foreclosure proceeding.

3.    Attornment.  If Bank or any other person or entity (the "New Owner") acquires ownership of Landlord's interest in the Premises as a result of Landlord's default under the Security Deed, whether as the result of foreclosure of the Security Deed, acceptance of a deed to the Premises in lieu of foreclosure, or otherwise, then:  (a) Tenant shall attorn to the New Owner and recognize the New Owner as its landlord under the Lease; (b) the New Owner will recognize and accept Tenant as its tenant under the Lease; (c) the Lease shall continue under the same terms, covenants and conditions in full force and effect as a direct lease between the New Owner and Tenant for the full remaining term thereof and any extension or renewals thereof which may be effected in accordance with any option in the Lease; and (d) the New Owner shall thereafter assume and perform all of Landlord's obligations as the landlord under the Lease with the same force and effect as if the New Owner were originally named therein as Landlord; provided, however, that the New Owner shall not be:

(a)    Liable for any act, omission or default of any prior landlord (including Landlord); or

(b)    Subject to any offsets or defenses which have accrued prior to the date New Owner acquires ownership of Landlord's interest in the Premises; or

(c)    Bound by any rent or additional rent which Tenant might have paid for more than one month in advance or any security deposit paid to any prior landlord (including Landlord) unless such rent, additional rent or security deposit is actually in the New Owner's possession; or

(d)    Bound by any obligation to make any payment to Tenant that was required to be made before New Owner succeeded to Landlord's interest; or

(e)    Bound by any material amendment or modification of the Lease, any assignment of the Lease, or any subletting of the Premises made without Bank's written consent.

Such attornment shall be effective and self-operative without the execution of any further instrument on the part of the parties hereto immediately upon the New Owner succeeding to the interest of Landlord in the Premises. Upon request, Tenant will execute a written attornment agreement in favor of the New Owner.

4.    Leasehold Improvements and Personal Property.

2

AMOA 000236

GSCCCA.org - Image Index    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476109&...

69

(a)     Leasehold improvements made to the Premises by Tenant, including fixtures which are so related to the Premises that an interest in them arises under real estate law (collectively, the "Leasehold Improvements") shall be considered part of the Premises except to the extent expressly provided in the Lease.  Tenant may not remove Leasehold Improvements from the Premises except to the extent specifically permitted under the Lease, and Tenant will be deemed to have abandoned or waived any claim to or ownership interest in Leasehold Improvements which Tenant is permitted by the Lease to remove if Tenant fails to remove them from the Premises in a timely manner in accordance with the terms of the Lease.

(b)     From time to time Tenant may place, install or erect furniture, business fixtures, equipment and/or other personal property (collectively, the "Personal Property") on the Premises.  Any interest Bank has or may acquire pursuant to the Security Deed in Tenant's Personal Property shall be subordinate to the Tenant's rights in such Personal Property.  However, Tenant will be deemed to have abandoned and waived any claim to or ownership interest in Tenant's Personal Property remaining on the Premises if Tenant fails to remove the Tenant's Personal Property from the Premises within 30 days following termination of the Lease.

(c)     Tenant shall repair, at Tenant's expense, all physical damage to the Premises caused by Tenant's removal of Leasehold Improvements and/or Tenant's Personal Property from the Premises.  However, Tenant shall not be responsible for any reduction in the value of the Premises caused by the absence of the Leasehold Improvements or Personal Property removed or by any necessity of replacing them.

5.     Casualty and Condemnation Proceeds.  If the Premises sustains a casualty loss covered by insurance, or if the Premises or any part thereof is taken under the power of eminent domain, any insurance proceeds payable by reason of the casualty loss and any award or damages (direct or consequential) payable by reason of the taking shall be disposed of as follows:

(a)     If the Lease obligates Landlord to repair and restore the Premises, or such repairs and restoration are otherwise undertaken by agreement among the parties, then the insurance or condemnation proceeds shall be deposited in a special escrow account under Bank's exclusive control to be applied by Bank to the repair and restoration of the Premises in substantially the same manner construction loan proceeds are handled by Bank.  Except to the extent otherwise provided in the Lease, Landlord shall be responsible for repair and restoration of the Premises.  However, notwithstanding the foregoing, Bank may, at its option, apply all or any part of the insurance or condemnation proceeds to the satisfaction of the indebtedness secured by the Security Deed if:

(1)     The Loan is in default;

(2)     In the case of a casualty loss, Bank paid the insurance premium or advanced the insurance premium on behalf of Landlord or any other person or entity (regardless of whether the amount paid or advanced by Bank was added to the indebtedness secured by the Security Deed);

(3)     The insurance or condemnation proceeds deposited to the escrow account are insufficient to pay the anticipated costs of repairing and restoring the Premises in full, and neither Landlord nor Tenant deposits such additional sums to the escrow account as may be reasonably required by Bank to pay the anticipated costs of the repair and restoration of the Premises in full;

(4)     Neither Landlord nor Tenant provides at Bank's request evidence satisfactory to Bank that (i) repair and restoration of the Premises are economically feasible, (ii) Bank's security will not be significantly impaired by the repair and restoration of the Premises, (iii) Landlord has the ability and willingness to repay the Loan during the period of restoration and repair in accordance with the terms of the Loan documents, or (iv) the resulting value of the Premises after the completion of all repairs and restoration will be equal to or greater than the value of the Premises prior to the casualty loss or taking;

3

AMOA 000237

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476109&...



(5)    Landlord and/or Tenant fail to obtain Bank's prior written approval (which will not be unreasonably withheld) of any plans and specifications, general contractor and contracts or agreements for the repair or restoration of the Premises;

(6)    Repairs and restoration are not commenced, diligently pursued, and completed within a reasonable period of time; or

(7)    The Lease is terminated as a result of the casualty loss or taking.

Bank will not be required to be a party to any contract or agreement for the repair or restoration of the Premises.  Bank may disburse or release funds from the escrow account to or for the benefit of Landlord and shall not be responsible for the proper application or use of funds paid or released from the escrow account.  Any funds remaining in the escrow account after the repair and restoration of the Premises may be applied by Bank towards satisfaction of the indebtedness secured by the Security Deed, regardless of whether the same is then payable.  The application of insurance or condemnation proceeds in the manner described above or towards the satisfaction of the indebtedness secured by the Security Deed shall not extend or postpone the due date of payments due under the terms of any obligation secured by the Security Deed.

(b)    If the Lease does not obligate Landlord to repair and restore the Premises or if such repairs and restoration are not undertaken by agreement among the parties, any insurance or condemnation proceeds shall be disposed of in accordance with the terms of the Security Deed.

(c)    Notwithstanding anything in this section to the contrary, Tenant shall be entitled to any insurance or condemnation proceeds to the extent such proceeds are paid in compensation for damage to or the taking of Tenant's tangible personal property.

(d)    In the event of a foreclosure of the Security Deed, a deed in lieu of foreclosure or any other transfer of title to the Premises in satisfaction of any indebtedness or obligation secured thereby, all right, title and interest of Landlord to (i) any insurance policies then in force, (ii) any insurance proceeds resulting from damage to the Premises which occurred prior to such foreclosure or transfer, and (iii) any condemnation proceeds payable by reason of any taking under the power of eminent domain which occurred prior to such foreclosure or transfer, shall pass to Bank or to its grantee or to the New Owner.

6.    Bank's Opportunity to Cure.  Tenant agrees (a) to give Bank prompt written notice of any default by Landlord under the Lease; (b) to certify to Bank from time to time as to whether the Lease is in effect and whether there are any defaults thereunder; (c) not to surrender, cancel or terminate the Lease without Bank's prior written consent except due to an uncured default by Landlord or as may be otherwise permitted by the Lease; and (d) that if Bank elects to perform Landlord's obligations under the Lease, the Lease shall not be terminated due to any defaults of Landlord which are not capable of being cured by Bank, such as, for example, the bankruptcy of Landlord.  Bank shall have the right but shall have no obligation or duty to cure any default by Landlord under the terms of the Lease.  Bank shall have a "reasonable time" within which to cure Landlord's default.  For purposes of this Agreement, a "reasonable time" shall be deemed to be 30 days from Bank's receipt of Tenant's notice of default, provided the default can reasonably be cured within that time.  If the default cannot reasonably be cured within the 30 day period, the term "reasonable time" shall include such longer period as may be reasonably required to cure the default, so long as Bank is diligently pursuing such cure (including, but not limited to, commencement of foreclosure proceedings, if necessary, to effect such cure).

7.    Assignment of Rents.  As further security for the Loan, Landlord has executed and delivered or shall execute and deliver to Bank an Assignment of Leases, Rents and Profits (the "Assignment").  The Assignment permits Bank to collect all rents and other monies due to Landlord under the Lease on the occurrence of certain events as set forth in the Assignment without taking possession of the Premises and without assuming Landlord's position or any of Landlord's obligations under the Lease.  Tenant hereby agrees to pay all rents and other monies due and payable under the Lease directly to Bank or at Bank's direction immediately upon receipt of Bank's written notice or demand.  By signing this Agreement, Landlord hereby (a) authorizes and directs Tenant to pay such rents and other monies to Bank or at Bank's direction, (b) releases Tenant from any liability (under the Lease or otherwise) for making any such payment to Bank or at Bank's direction, and (c) agrees to

4

AMOA 000238

GSCCCA.org - Image Index                                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476109&...

defend, indemnify, and hold Tenant harmless from and against any and all claims, demands, losses, or liabilities asserted by, through, or under Landlord for any and all payments so made. Tenant shall be authorized to rely on any such notice or demand from Bank without making any further inquiry of Bank or Landlord, and any such notice or demand to Tenant by Bank shall be binding upon Landlord. Without limiting the foregoing, it shall not constitute a default under the Lease for Tenant to comply with any such notice or demand from Bank. Tenant agrees that neither Bank's demanding or receiving any such payments, nor Bank's exercise of any other right, remedy or privilege, will operate to impose any liability upon Bank for performance of any obligation of Landlord under the Lease unless and until Bank elects otherwise in writing or acquires ownership of Landlord's interest in the Premises as a result of Landlord's default under the Security Deed, whether as a result of foreclosure of the Security Deed, acceptance of a deed to the Premises in lieu of foreclosure, or otherwise. Payments to Bank or at Bank's direction shall continue until Bank directs Tenant otherwise in writing. Tenant agrees not to pay any rent under the Lease more than one month in advance without Bank's written consent. The provisions of this section will apply from time to time throughout the term of the Lease and any extension or renewal thereof.

8. <u>Landlord's Warranties</u>.  Landlord further represents and warrants to the Bank that:

   (a)    The Lease has been duly executed by Landlord, is in full force and effect, and is valid, binding and enforceable against the Landlord;

   (b)    Landlord has not assigned, mortgaged or encumbered its interest in the Lease or any portion thereof to anyone other than Bank;

   (c)    Landlord is not aware of any default by Tenant under the Lease or any event or situation which would, with the passage of time, constitute a default by Tenant under the Lease; and

   (d)    A true and correct copy of the Lease, including all addenda, exhibits, supplements and amendments thereto, has been delivered to Bank.  There are no other agreements or understandings between Landlord and Tenant relating to the Lease or the Premises.

9. <u>Tenant's Warranties</u>.  Tenant further represents and warrants to Bank that:

   (a)    The Lease has been duly executed by Tenant, is in full force and effect, and is valid, binding and enforceable against the Tenant;

   (b)    Tenant has not assigned, mortgaged or encumbered its interest in the Lease or the Premises or any portion thereof;

   (c)    Tenant currently has no defense or offset to payment of rent; and

   (d)    Tenant is not aware of any default by Landlord under the Lease or any event or situation which would, with the passage of time, constitute a default by Landlord under the Lease.

10.    <u>Notices</u>.  All notices, requests, demands and other communications required or permitted to be given may be given by any commercially reasonable method calculated to provide actual notice to the recipient and will be effective as of the date of actual receipt by the recipient.

11.    <u>Miscellaneous</u>.  "Bank" as used in this Agreement includes First-Citizens Bank & Trust Company and any of its nominees, successors, and assigns.  All of the terms, covenants and conditions of this Agreement shall run with the land and shall be binding upon and inure to the benefit of the parties hereto and their respective successors in interest.  This Agreement may not be modified orally, but only in writing signed by the party or parties to be charged therewith or its or their successor or successors in interest.  This Agreement shall be governed by the laws of the State of Georgia without regard to its conflict of laws principles.

12.    <u>Other Provisions</u>.

       This Subordination, Estoppel, Nondisturbance and Attornment Agreement may be executed in multiple counterparts, each of which shall constitute and be considered an original

5

AMOA 000239

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476109&...

Page 72

IN WITNESS WHEREOF, each of the undersigned has executed this Agreement under seal as of the date of this Agreement.

**BANK:**

**First-Citizens Bank & Trust Company**

By: _____ (SEAL)

Signed, Sealed and Delivered in the presence of:

_____
Unofficial Witness

Sylvia Shiverdecker – Vice-President

_____
Notary Public

My Commission Expires:

(NOTARY SEAL)

**LANDLORD:**

**CurePoint Dublin LLC**

By: _____ (SEAL)

Signed, Sealed and Delivered in the presence of:

_____
Unofficial Witness

Marc Lewyn – Managing Member

_____
Notary Public

My Commission Expires:

(NOTARY SEAL)

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

6

AMOA 000240

GSCCCA.org - Image Index

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476109&...

73

**TENANT:**

**CUREPOINT, LLC**

Signed, Sealed and Delivered in the presence of:

_____
Unofficial Witness

By: _____ (SEAL)
Name:
Title: Jamila Dadabhoy
      Manager

_____
Notary Public

My Commission Expires:

(NOTARY SEAL)

PHOEBE FREUND
Notary Public, Georgia
Fulton County
My Commission Expires
March 18, 2022

AMOA 000241

GSCCCA.org - Image Index                    https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=76476109&...

·-9·'·**74**

## EXHIBIT A
### Legal Description

All that tract or parcel of land situate, lying and being in the City of Dublin, Laurens County, Georgia, containing .663 acres, more or less, designated as Lot 7 of Erin Office Park and particularly shown on a plat of survey by Marvin D. Clements, Land Surveyor, dated January 19, 1991, and recorded in Deed Book 606, Page 259, Laurens County Records, which plat is by this reference incorporated herein as a part of the description.

This property described on that certain unrecorded plat of "A Portion of Lot 7, Erin Office Park, City of Dublin, 342nd G.M.D., Laurens County, Georgia", prepared for Atlantic Coast Bank, Satilla Regional Cancer Treatment Center, P.A.; Chicago Title Insurance Company, prepared by Privett & Associates, Inc., Jeffrey S. Foster, G.R.L.S. No. 3143, dated July 21, 2009 described as follows:    For a point of beginning commence at a point were the centerline of Limerock Road (a 65 foot easement according to deed recorded in Deed Book 358, Page 608, Public Records of said county) intersects the southeasterly right-of-way line of Bellevue Road (a varied width right-of-way as now established) and run the next three courses along the southeasterly, southwesterly and southeasterly right of way line of the aforementioned Bellevue Road; Course 1, North 26 Degrees 59 Minutes 30 Seconds East a distance of 45.08 feet to a point; Course 2, North 63 Degrees 00 minutes 30 seconds West a distance of 10.00 feet to a point; Course 3, North 26 Degrees 59 Minutes 30 Seconds East a distance of 119.64 feet to a point lying at the southwesterly corner of Lands now or formerly of Rose G. Killingsworth (according to deed recorded in Deed Book 1534, Page 228, Public Records of said County); run thence South 65 Degrees 47 Minutes 00 Seconds East along the Southerly line of Last Mentioned lands, a distance of 175.00 feet to a point lying at the northwesterly corner of lands now or formerly of Lawrence R. Spira (according to a deed recorded in Deed Book 873, Page 250, Public record of said county);  run thence South 26 degrees 59 minutes 30 seconds West along the northwesterly line of last mentioned lands, a distance of 165.20 feet to a point lying in the centerline of the aforementioned Limerock Road; run thence North 65 degrees 47 Minutes 00 Seconds West along last mentioned centerline, a distance of 164.99 feet to the point of beginning.

8

AMOA 000242