

U.S. Small Business Administration

# AUTHORIZATION
# (SBA 7(A) GUARANTEED LOAN)

| SBA Loan # | 33601191-01 |
|---|---|
| SBA Loan Name | Zerorez of Nashville |
| Approval Date | February 15, 2022 |

**Lender:**
Newtek Small Business Finance, LLC
1981 Marcus Avenue
Suite 130
Lake Success, NY 11042

**U. S. Small Business Administration (SBA):**
Georgia District Office
233 Peachtree Street, NE
Suite 1900
Atlanta, GA 30303

SBA approves, under Section 7(a) of the Small Business Act as amended, Lender's application, received February 15, 2022, for SBA to guarantee 75.00% of a loan ("Loan") in the amount of $3,500,000.00 to assist:

**Borrower:**
1. Zeroholding, LLC
   dba Zerorez of Nashville
   11175 Cicero Drive
   Alpharetta, GA 30022

All requirements in the Authorization which refer to Borrower also apply to any Co-Borrower.

A. THE GUARANTY FEE IS $95,937.50.
Lender must pay the guaranty fee within 90 days of the approval date of this Authorization. Failure to timely pay the guaranty fee will result in cancellation of the SBA guarantee. The 90-day deadline may not be extended. Lenders are required to make their payments electronically. Payment can be made at www.pay.gov or by ACH if they have previously enrolled with the SBA. No part of the guaranty fee is refundable if Lender has made any disbursement. Lender may collect this fee from Borrower after initial disbursement of Loan, except when an escrow closing is used, Lender may not collect the fee until all Loan funds have been disbursed to the Borrower from the escrow account. Borrower may use Loan proceeds to reimburse Lender for the guaranty fee.
For loans of $150,000 or less, Lender may retain 25% of any required guaranty fee but must remit the remainder to SBA.

B. ON-GOING GUARANTY FEE (Lender's Annual Service Fee):
  1. Lender agrees to pay SBA an on-going guaranty fee equal to 0.550 of one percent per year of the guaranteed portion of the outstanding balance.
  2. Lender may not charge or otherwise pass through this fee to Borrower.

C. IT IS LENDER'S SOLE RESPONSIBILITY TO:
  1. Close the Loan in accordance with the terms and conditions of this Authorization.

2. Obtain valid and enforceable Loan documents, including obtaining the signature or written consent of any obligor's spouse if such consent or signature is necessary to bind the marital community or create a valid lien on marital property.
3. Retain all Loan closing documents. Lender must submit these documents, along with other required documents, to SBA for review if Lender requests SBA to honor its guarantee on the Loan, or at any time SBA requests the documents for review.

D. REQUIRED FORMS
1. Lender may use its own forms except as otherwise instructed in this Authorization. Lender must use the following SBA forms for the Loan:
NOTE: LENDER MAY USE ITS OWN NOTE AND GUARANTEE AGREEMENTS IN LIEU OF THE SBA NOTE AND GUARANTEE AGREEMENTS. IF LENDER USES ITS OWN NOTE AND/OR GUARANTEE FORMS, LENDER MUST ENSURE THE DOCUMENTS COMPLY WITH THE REQUIREMENTS SET FORTH IN SOP 50 10.

SBA Form 147, Note or Lender's own Note that complies with SOP 50 10
SBA Form 1050, Settlement Sheet
SBA Form 159, Compensation Agreement, for each required agent
SBA Form 722, Equal Opportunity Poster
Guarantee: SBA Form 148 or Lender equivalent
Limited Guarantee: SBA Form 148L or Lender equivalent

2. Lender may use computer-generated versions of mandatory SBA Forms, as long as the text is identical.
3. Lender must submit a copy of each completed SBA Form 159 by email to the SBA fiscal and transfer agent after initial disbursement and in conjunction with Lender's 1502 Report for the month. Lender must maintain each original SBA Form 159 in its file.

E. CONTINGENCIES --SBA issues this Authorization in reliance on representations in the Loan application, including supporting documents. The guarantee is contingent upon Lender:
1. Having and complying with a valid SBA Loan Guarantee Agreement (SBA Form 750, SBA Form 750B for short-term loans, or 750CA for Community Advantage (CA) loans, if applicable) and any required supplemental guarantee agreements, between Lender and SBA;
2. Having paid the full guaranty fee in the time and manner required by this Authorization and SBA Loan Program Requirements;
3. Complying with the current SOP 50 10 and all applicable appendices;
4. Completing disbursement no later than 48 months from the approval date of this Authorization. (The loan must be fully disbursed within 48 months from the date of this Authorization. Any undisbursed balance remaining after 48 months will be automatically cancelled by SBA.);
5. Having no evidence since the date of the Loan application, or since any preceding disbursement, of any unremedied adverse change in the financial condition, organization, management, operation, or assets of Borrower or Operating Company which would warrant withholding or not making any further disbursement; and,
6. Satisfying all of the conditions in this Authorization.

F. NOTE TERMS:
1. Maturity: This Note will mature in 10 years from date of Note.
2. Repayment Terms: If Lender uses its own Note, Lender must comply with the repayment terms set forth below and must ensure the Note is legally enforceable and assignable, has a stated maturity and is not payable on demand. The Note must include the following language:

"When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As

to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law."

If Lender uses SBA Note, Form 147, Lender must insert into Note, to be executed by Borrower, the following terms, without modification. Lender must complete all blank terms on the Note at time of closing.

The interest rate on this Note will fluctuate. The initial interest rate is 6.00% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay one payment of interest only on the disbursed principal balance one month from the month this Note is dated; payment must be made on the first calendar day in the month it is due.

Borrower must pay principal and interest payments of $39,095.74 every month beginning two months from the month this Note is dated; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period"), beginning April 1, 2022 (date of first rate adjustment).

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper ) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

> Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:
>
> a. Give Lender written notice;
> b. Pay all accrued interest; and
> c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.
>
> If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

3. Lender must include in the Note the following language:

"The undersigned borrower hereby waives the right to require the Holder of this obligation to confirm any foreclosure sale as a condition for taking action to collect on this note."

## G. USE OF PROCEEDS

1. $640,000.00 to purchase fixtures.
2. $329,871.00 for working capital.
3. $95,938.00 to pay the guarantee fee (Lender may not disburse Loan proceeds solely to pay the guarantee fee).
4. $31,653.00 to pay notes payable to Ally Financial.
5. $1,450,000.00 to pay notes payable to MCA Positions.
6. $32,069.00 to pay notes payable to Ally Financial.
7. $807,201.00 to pay notes payable to First Liberty.
8. $113,268.00 to pay notes payable to PayPal.

All amounts listed above are approximate. Lender may not disburse Loan proceeds solely to pay the guaranty fee. Lender may disburse to Borrower, as working capital only, funds not spent for the listed purposes as long as those funds do not exceed 20% of the specific purpose authorized or $50,000.00, whichever is less. An Eligible Passive Company may not receive working capital funds or funds to be used for the purchase of other assets, including intangible assets, for the Operating Company's use.

The loan must be made for a sound business purpose and must benefit the small business, and one 7(a) loan may not be split into two 7(a) loans merely to benefit the Lender. 13 CFR 120.120 and 120.130(f).

Lender must document that Borrower used the loan proceeds for the purposes stated in this Authorization. Except under SBA Express, Export Express, and 7(a) Small Loans, Lender and Borrower must complete and sign SBA Form 1050 at the time of first disbursement. Lender must document the first and all subsequent disbursements by attaching required documentation to the original SBA Form 1050 and must maintain the documentation in the Loan file, following the procedures described in SOP 50 10.

## H. COLLATERAL CONDITIONS

Lender must obtain a lien on 100% of the interests in the following collateral and properly perfect all lien positions.

The following language must appear in Lender's Guarantee when Lender uses its own Guarantee.

"When SBA is the holder, the Note and this Guarantee will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claims of SBA, or preempt federal law."

1. Guarantee on SBA Form 148 or equivalent lender's form, by Curepoint LLC, resident in Georgia.
2. Guarantee on SBA Form 148 or equivalent lender's form, by MEC Capital, Inc., resident in Georgia.
3. Guarantee on SBA Form 148 or equivalent lender's form, by Phillip E. Miles, resident in Georgia.

    Secured by:

        a   ThirdGeorgia Deed to Secure Debt (including due on sale clause and water rights, if any, and assignment of rents) on land and improvements located at 300 Hayward Lane, Alpharetta, GA. This property is residential.

           a. Subject only to prior lien(s) as follows:

        (1) First: Newrez in the amount of $120,954.00.

        (2) Second: CENLAR in the present amount of $191,000.00, with a revolving provision limited to a total principal outstanding of $270,000.00.

b. Any prior lien(s) that is (are) open ended as to future advances must be closed, in writing, according to applicable state law. The revolving line(s) of credit set out above, if any, must be limited in writing to the amount stated.

c. Lender must obtain a written agreement from prior lienholders to provide Lender with 30 days written notice before commencing foreclosure of prior lien.

d. Lender must obtain from prior lienholders written verification (1) of amount owing on prior obligation, (2) that prior obligation is current on payments, and (3) that prior obligation is not otherwise in default.

e. Evidence of title and priority of lien must be based upon:

        (1) ALTA Loan Policy, insuring lender and assigns, policy to be without standard exceptions ("extended ALTA") and without arbitration clause, in the amount of $3,500,000.00.

4. Guarantee on SBA Form 148 or equivalent lender's form, by Mark Miles, resident in Oklahoma.

5. Limited Guarantee on SBA Form 148L or equivalent lender's form, by Lori M. Miles, resident in Georgia.

COLLATERAL/RECOURSE LIMITATION: The Guarantee is limited to the amount Lender obtains from the following collateral pledged by Guarantor: Land and improvements located at 300 Hayward Lane, Alpharetta, GA 30022.

  Secured by:

    a  ThirdGeorgia Deed to Secure Debt (including due on sale clause and water rights, if any, and assignment of rents) on land and improvements located at 300 Hayward Lane, Alpharetta, GA. This property is residential.

        a. Subject only to prior lien(s) as follows:

            (1) First: Newrez in the amount of $120,954.00.

            (2) Second: CENLAR in the present amount of $191,000.00, with a revolving provision limited to a total principal outstanding of $270,000.00.

        b. Any prior lien(s) that is (are) open ended as to future advances must be closed, in writing, according to applicable state law. The revolving line(s) of credit set out above, if any, must be limited in writing to the amount stated.

        c. Lender must obtain a written agreement from prior lienholders to provide Lender with 30 days written notice before commencing foreclosure of prior lien.

        d. Lender must obtain from prior lienholders written verification (1) of amount owing on prior obligation, (2) that prior obligation is current on payments, and (3) that prior obligation is not otherwise in default.

        e. Evidence of title and priority of lien must be based upon:

            (1) ALTA Loan Policy, insuring lender and assigns, policy to be without standard exceptions ("extended ALTA") and without arbitration clause, in the amount of $3,500,000.00.

6. _____ perfected security interest in the following personal property (including any proceeds and products), whether now owned or later acquired, wherever located:

    a. Lender must obtain an appropriate Uniform Commercial Code lien search evidencing all required lien positions. If UCC search is not available, another type of lien search may be substituted.

    b. Lender must take a purchase money security interest in all personal property acquired with Loan proceeds.

The following language must appear in all security instruments including Mortgages, Deeds of Trust, and Security Agreements:

"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

    a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

    b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

    c) Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."

Georgia Mandatory Provision--The following language must appear in all guarantees (including limited guarantees) signed by Georgia residents:

"The undersigned guarantor hereby waives the right to require the Holder of the obligations hereby guaranteed to take action against the debtor as provided for in O.C.G.A. 10-7-24. The guarantor further waives the right to require the Holder to confirm any foreclosure sale as a condition for taking action to collect the guarantee."

## I. ADDITIONAL CONDITIONS

1. Insurance Requirements

Prior to disbursement, Lender must require Borrower to obtain the following insurance coverage and maintain this coverage for the life of Loan:

    a. Flood Insurance. Based on the Standard Flood Hazard Determination (FEMA Form 086-0-32):

        (1) If any portion of a building that is collateral for the Loan is located in a special flood hazard area, Lender must require Borrower to obtain flood insurance for the building under the NFIP.

        (2) If any equipment, fixtures, or inventory that is collateral for the Loan ("Personal Property Collateral") is in a building any portion of which is located in a special flood hazard area and that building is collateral for the Loan, Lender must require Borrower to also obtain flood insurance for the Personal Property Collateral under the NFIP.

        (3) If any Personal Property Collateral is in a building any portion of which is located in a special flood hazard area and that building is not collateral for the Loan, Lender must require Borrower to obtain available flood insurance for the Personal Property Collateral. Lender may waive this requirement when the building is not collateral for the Loan if it uses prudent lending standards and includes in the Loan file a written justification that fully explains why flood insurance is not economically feasible or, if flood insurance is not available, the steps taken to determine that it is not available.

Insurance coverage must be at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001 et seq.), whichever is less. ("Maximum limit of coverage available" is the lesser of the maximum limit available under the NFIP for the type of structure or the insurable value of the structure.) Insurance coverage must contain a <u>MORTGAGEE CLAUSE/LENDER'S LOSS</u>

PAYABLE CLAUSE (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the debtor or owner of the insured property will not invalidate the interest of Lender and SBA. (Borrower will be ineligible for any future SBA disaster assistance or business loan assistance if Borrower does not maintain any required flood insurance for the entire term of the Loan.)

b. Real Estate Hazard Insurance coverage (including any required additional coverage, such as wind, hail, earthquake, etc., if the business is located in a state that requires additional coverage) on all real estate that is collateral for the Loan in the amount of the full replacement cost. If full replacement cost insurance is not available, coverage must be for maximum insurable value. Insurance coverage must contain a MORTGAGEE CLAUSE (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the mortgagor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

c. Life Insurance, satisfactory to Lender:

   (1) on the life of Phillip E. Miles in the amount of $2,500,000.00.

Lender must obtain a collateral assignment of each policy with Lender as assignee, and Lender must also obtain acknowledgment of the assignment by the Home Office of the Insurer. Lender must ensure that Borrower pays the premium on the policy.

d. Liability Insurance in an amount and with an insurance company satisfactory to Lender.

e. Workers' Compensation Insurance in an amount meeting state law requirements and with an insurance company satisfactory to Lender.

2. Borrower, Guarantor and Operating Company Documents

   a. Prior to closing, Lender must obtain from Borrower, Guarantor and Operating Company a current copy of each of the following as appropriate:

      (1) Corporate Documents--Articles or Certificate of Incorporation (with amendments), any By-laws, Certificate of Good Standing (or equivalent), Corporate Borrowing Resolution, and, if a foreign corporation, current authority to do business within this state.

      (2) Limited Liability Company (LLC) Documents--Articles of Organization (with amendments), Fact Statement or Certificate of Existence, Operating Agreement, Borrowing Resolution, and evidence of registration with the appropriate authority.

      (3) General Partnership Documents--Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable.

      (4) Limited Partnership Documents--Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable, Certificate of Limited Partnership, and evidence of registration with the appropriate authority.

      (5) Limited Liability Partnership (LLP) Documents--Partnership Agreement, Certificate as to Partners, Certificate of Partnership or Good Standing (or equivalent) as applicable, and evidence of registration with the appropriate authority.

      (6) Trustee Certification--A Certificate from the trustee warranting that:

         (a) The trust will not be revoked or substantially amended for the term of the Loan without the consent of Lender/SBA;

         (b) The trustee has authority to act;

         (c) The trust has the authority to borrow funds, guarantee loans, and pledge trust assets;

         (d) If the trust is an Eligible Passive Company, the trustee has authority to lease the property to the Operating Company;

         (e) There is nothing in the trust agreement that would prevent Lender from realizing on any security interest in trust assets;

         (f) The trust agreement has specific language confirming the above; and

   (g) The trustee has provided and will continue to provide Lender/SBA with a true and complete list of all trustors and donors.

  (7) Trade Name--Documentation that Borrower has complied with state requirements for registration of Borrower's or Operating Company's trade name (or fictitious name), if one is used.

 b. Prior to closing, Lender must obtain from Borrower and Operating Company:

  (1) Ownership--Evidence that ownership and management have not changed without Lender's approval since the application was submitted.

3. Operating Information

 Prior to any disbursement of Loan proceeds, Lender must obtain:

  a. Verification of Financial Information--Lender must submit IRS Form 4506-T to the Internal Revenue Service to obtain federal income tax information on Borrower, or the Operating Company if the Borrower is an EPC, for the last 3 years (unless Borrower or Operating Company is a start-up business). If the business has been operating for less than 3 years, Lender must obtain the information for all years in operation. This requirement does not include tax information for the most recent fiscal year if the fiscal year-end is within 6 months of the date SBA received the application. If the applicant has filed an extension for the most recent fiscal year, Lender must obtain a copy of the extension along with evidence of payment of estimated taxes. Lender must compare the tax data received from the IRS with the financial data or tax returns submitted with the Loan application, and relied upon in approving the Loan. Borrower must resolve any significant differences to the satisfaction of Lender and SBA. Failure to resolve differences may result in cancellation of the Loan.

  If the Loan involves a change of ownership, Lender must verify financial information provided by the seller of the business in the same manner as above.

  If the IRS responds and the transcript reflects "Record not Found" for any tax year, Lender must follow the procedures detailed in SOP 50 10 to determine what steps must be taken to satisfy the SBA tax verification requirement.

  If Lender is processing a loan under its delegated authority and does not receive a response from the IRS or copy of the tax transcript within 10 business days of submitting the IRS Form 4506-T, then Lender may close and disburse the loan provided that Lender sends a second request following precisely the procedures detailed in SOP 50 10 and Lender performs the verification and resolves any significant differences discovered, even if the Loan is fully disbursed.

  b. Authority to Conduct Business--Evidence that Borrower and Operating Company have an Employer Identification Number and all insurance, licenses, permits and other approvals necessary to lawfully operate the business, including, but not limited to, the ability to operate at the business location.

  c. Flood Hazard Determination--A completed Standard Flood Hazard Determination (FEMA Form 086-0-32).

  d. Lease--Current lease(s) on all business premises where collateral is located, with an adequate term, including options, appropriate to the maturity of the Loan, considering location, type of business, and type of leasehold interest.

4. Appraisal

 Prior to disbursement, and in accordance with SOP 50 10, Lender must obtain:

  a. Real Estate Appraisal on the real property located at 300 Hayward Lane, Alpharetta, GA, 30022, Fulton, showing a fair market value of at least $865,000.00.

5. Certifications and Agreements

 a. Prior to disbursement, Lender must require Borrower and Operating Company to certify that:

  (1) Receipt of Authorization--Borrower and Operating Company have received a copy of this Authorization from Lender, and acknowledge that

(a) The Authorization is <u>not</u> a commitment by Lender to make a loan to Borrower;

(b) The Authorization is between Lender and SBA and creates no third party rights or benefits to Borrower;

(c) The Note will require Borrower to give Lender prior notice of intent to prepay.

(d) If Borrower defaults on Loan, SBA may be required to pay Lender under the SBA guarantee. SBA may then seek recovery of these funds from Borrower. Under SBA regulations, 13 CFR Part 101, Borrower may not claim or assert against SBA any immunities or defenses available under local law to defeat, modify or otherwise limit Borrower's obligation to repay to SBA any funds advanced by Lender to Borrower.

(e) Payments by SBA to Lender under SBA's guarantee will not apply to the Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or the obligations of any personal guarantor of the Note.

(f) If the small business defaults on the SBA-guaranteed loan and SBA suffers a loss, the names of the small business and the guarantors of the SBA-guaranteed loan will be referred for listing in the Credit Alert Verification Reporting System (CAIVRS) database, which may affect their eligibility for further financial assistance.

(2) There has been no adverse change in Borrower's (and Operating Company's) financial condition, organization, operations, or fixed assets since the date the Loan application was signed.

(3) Child Support--No principal who owns at least 50% of the ownership or voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement requiring payment of child support.

(4) Current Taxes-- Borrower and Operating Company are current (or will be current with any loan proceeds specified for eligible tax payments) on all federal, state, and local taxes, including but not limited to income taxes, payroll taxes, real estate taxes, and sales taxes.

(5) Environmental--For any real estate pledged as collateral for the Loan or where the Borrower and Operating Company (if applicable) is conducting business operations (collectively "the Property"):

(a) At the time Borrower and Operating Company submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

(b) Borrower and Operating Company will continue to comply with these laws and regulations;

(c) Borrower and Operating Company, and all of its principals, have no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater under such Property other than what was disclosed in connection with the Environmental Investigation of the Property;

(d) Until full repayment of the Loan, Borrower and Operating Company will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower and Operating Company or such Property are subject to any investigation or enforcement action by any federal, state, or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater.

(e) As to any Property owned by Borrower and Operating Company, Borrower and Operating Company indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at or under the Property, including groundwater, regardless of whether such Contaminant resulted from Borrower's or

Operating Company's operations. (Lender or SBA may require Borrower and Operating Company to execute a separate indemnification agreement).

   b. Prior to disbursement, Lender must require Borrower and Operating Company to certify that they will:

     (1) Reimbursable Expenses--Reimburse Lender for expenses incurred in the making and administration of the Loan.

     (2) Books, Records and Reports-

       (a) Keep proper books of account in a manner satisfactory to Lender ;

       (b) Furnish Compiled year-end statements to Lender within 120 days of fiscal year end;

       (c) Furnish additional financial statements or reports whenever Lender requests them;

       (d) Allow Lender or SBA, at Borrower's or Operating Company's expense, to:

         [1] Inspect and audit books, records and papers relating to Borrower's and Operating Company's financial or business condition; and

         [2] Inspect and appraise any of Borrower's and Operating Company's assets; and

         [3] Allow all government authorities to furnish reports of examinations, or any records pertaining to Borrower and Operating Company, upon request by Lender or SBA.

     (3) Equal Opportunity--Post SBA Form 722, Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public.

     (4) American-made Products--To the extent practicable, purchase only American-made equipment and products with the proceeds of the Loan.

     (5) Taxes--Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

     (6) Leasing--During the life of the loan, the real estate pledged as Collateral for the Loan or where the Borrower or Operating Company conducts its business operations will not be leased to or occupied by any business that Borrower or Operating Company knows is engaged in any activity that is illegal under federal, state or local law or any activity that can reasonably be determined to support or facilitate any activity that is illegal under federal, state, or local law.

   c. Lender must require Borrower and Operating Company to certify that they will not, without Lender's prior written consent:

     (1) Distributions--Make any distribution of company assets that will adversely affect the financial condition of Borrower and/or Operating Company.

     (2) Ownership Changes--Change the ownership structure or interests in the business during the term of the Loan.

     (3) Transfer of Assets--Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.

ADMINISTRATOR, SMALL BUSINESS ADMINISTRATION

By: _____    02/15/2022
Virginia M. Wylly, Chief Operating Officer of    Date
Newtek Small Business Finance, LLC

A Preferred Lender, as Lender and as an agent of and on behalf of the SBA for the purpose of executing this Authorization.