**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CUREPOINT, LLC, | Case No. 22-56501- JWC |
| Debtor. | |

## APPLICATION OF CHAPTER 11 TRUSTEE TO RETAIN INVESTMENT BANKER EFFECTIVE AS OF NOVEMBER 1, 2022

David A. Wender, solely in his capacity as the chapter 11 trustee (the "Trustee") for the above-captioned debtor (the "Debtor") in the above-styled case (the "Case"), by and through his attorneys, Eversheds Sutherland (US) LLP ("Eversheds Sutherland"), hereby files this motion (the "Application") requesting entry of an order authorizing the Trustee to employ SOLIC Capital Advisors, LLC ("SCA") and SOLIC Capital, LLC ("SC", together with SCA, "SOLIC") as investment banker to the Debtor.  In support of the Application, the Trustee presents the *Declaration of Gregory F. Hagood* (the "Hagood Declaration"), attached hereto as **Exhibit 1**.  In further support of the Application, the Trustee respectfully states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought herein are sections 105(a), 327(a), and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014 and 2016 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On August 19, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      On September 21, 2022, Mark W. McCord, M.D. and the United States Trustee filed motions to appoint a chapter 11 trustee in the Case. [Doc. Nos. 52, 54].  Shortly thereafter, on October 3, 2022, AMOA Finance, LLC filed its motion to appoint a chapter 11 trustee in the Case. [Doc. No. 68].   On October 13, 2022, the Court entered an order granting Mark W. McCord, M.D.'s and AMOA Finance, LLC's motions and directing the United States Trustee to appoint a chapter 11 trustee in the Case. [Doc. No. 96].

5.      On October 17, 2022, the United States Trustee filed the Notice of Appointment of Chapter 11 Trustee and Setting of Bond, which, among other things, appointed the Trustee as chapter 11 trustee for the Debtor's estate. [Doc. No. 104].  On October 18, 2022, the Trustee filed his Acceptance of Appointment as Chapter 11 Trustee. [Doc. No. 106].  The Court approved the appointment of the Trustee on October 19, 2022. [Doc. No. 108].  On October 27, 2022, the Court entered an order approving Eversheds Sutherland as counsel for the Trustee. [Doc. No. 119].

6.      On November 7, 2022, the Trustee filed his emergency motion seeking, among other things, the authority to conduct a sale of substantially all of the Debtor's assets (the "Sale"), to solicit and accept bids in connection therewith, and for the approval of certain other procedures necessary to effectuate the Sale (the "Sale Procedures Motion") [*see* Doc. No. 124].  The Sale Procedures Motion is currently scheduled for hearing on November 17, 2022. [*See* Doc. No. 127].

**RELIEF REQUESTED**

7.     By this Motion, the Trustee seeks entry of the Order: (i) authorizing and approving the employment of SOLIC as investment banker to the Trustee in accordance with the terms and conditions set forth in that certain engagement letter (together with any schedules thereto) (the "Engagement Letter"), attached hereto as **Exhibit 2**, effective as of November 1, 2022; and (ii) approving the terms of SOLIC's employment and retention including, without limitation, the proposed Fee and Expense Structure (as defined below) and the related indemnification provisions set forth in Exhibit A to the Engagement Letter (the "Indemnification Provision"), subject to the standards set forth in section 328 of the Bankruptcy Code.

**A.     SOLIC's Qualifications**

8.     SOLIC and its professionals have more than two (2) decades of experience dealing with distressed assets in the healthcare industry and have advised on the rehabilitation or sale of over $5 billion in healthcare assets.  In the last six (6) years, SOLIC has managed the sale of over $3 billion in healthcare related assets and liabilities.

9.     SOLIC has acted in an investment banking role across the healthcare spectrum, including physician and dental practices, hospitals and health systems, and diagnostics and laboratories. In this role, SOLIC's professionals have vast experience identifying and valuing distressed healthcare assets, managing and facilitating the sale of those assets, and advertising to and vetting interested purchasers of the same.

**B.     Services to be Provided[1]**

10.     Subject to entry of the Order and consistent with the terms of the Engagement

---

[1] The summaries of the Engagement Letter contained herein are provided for purposes of convenience only.  In the

Letter, SOLIC has provided, and will continue to provide, the investment banking services as SOLIC and the Trustee deem appropriate and feasible to advise the Trustee in connection with the Sale, as defined by and set forth more fully in the Sale Procedures Motion, including, but not limited to, the following (the "Services"):[2]

     a.  assisting the Trustee in developing a marketing strategy for the Sale and developing solicitation materials for marketing the same;

     b.  assisting the Trustee in compiling and reviewing due diligence materials on the Debtor and its assets and hosting and managing an electronic data room for these materials;

     c.  contacting and profiling potential purchasers;

     d.  communicating with and facilitating due diligence discussions with potential purchasers;

     e.  assisting the Trustee in negotiating with prospective purchasers the terms for the Sale and in reviewing documentation related thereto; and

     f.  assisting the Trustee and its counsel in managing the Sale procedures, facilitating the Sale, and reviewing competing bids/competing offers (if necessary).

11.    The Services will enable the Trustee to maximize the value of the Debtor's assets received through the Sale. SOLIC has indicated a willingness to act on behalf of the Trustee in connection with the Sale, on the terms described herein, and to subject itself to the jurisdiction of the Court.

---

event there is any inconsistency between the summaries provided herein and the provisions of the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

[2] The following is a summary of the list of services to be provided. The complete scope of services to be provided by SOLIC is set forth in ¶ 2 of the Engagement Letter.

### C.    Professional Compensation

12.    In consideration of the Services to be provided by SOLIC, and as more fully described in the Engagement Letter, subject to Court approval, and in compliance with the U.S. Trustee Fee Guidelines (the "Fee Guidelines"), the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court, the Trustee has agreed to pay SOLIC the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure") whose principal terms may be summarized as follows:[3]

a.    **Monthly Payments.** The Debtor shall make two monthly payments to SOLIC as follows: (i) an initial payment of $25,000 upon the Court's authorization of the Trustee's engagement of SOLIC; and (ii) a payment of $25,000 on December 1, 2022.

b.    **Success Fee.** At the closing of a Sale, the Debtor will pay to SOLIC out of the proceeds of the Sale a success fee ("Success Fee") equal to (i) $225,000, plus (ii) 3.0% of the sale value in excess of $5.0 million.  Sale value shall be calculated cumulatively and includes all individual completed transactions, if applicable.

c.    **Expenses.** The Debtor has agreed to reimburse SOLIC for all reasonable expenses incurred by SOLIC as set forth in the Engagement Letter including reasonable legal expenses. SOLIC will bill such expenses on a monthly basis.

13.    The Fee and Expense Structure as described above is comparable to compensation generally charged by other firms of similar stature to SOLIC for comparable engagements, both in and out of bankruptcy. The Fee and Expense Structure is also consistent with SOLIC's normal and customary billing practices for cases of this size and complexity that require the level and scope

---

[3] The following constitutes a summary of the Fee and Expense Structure.  The complete scope of the of the Fee and Expense Structure is set forth in ¶ 4 to the Engagement Letter.

of services outlined. SOLIC and the Trustee believe that the Fee and Expense Structure is reasonable and at favorable market rates.

14.     Moreover, and as is customary in transactions of this type, the Engagement Letter provides that the Trustee and/or SOLIC will seek a surcharge under section 506(c) of the Bankruptcy Code and, consequently, the Trustee hereby requests that upon completion of the Sale, to the extent necessary, the Trustee shall be entitled to surcharge the proceeds of the Sale to satisfy any amounts then due and owing to SOLIC, including the Success Fee.

15.     As required by the Engagement Letter, during the pendency of this Case, SOLIC will apply for compensation for its services and reimbursement of expenses incurred connection with the Case and Sale in accordance with applicable provisions of the Bankruptcy Code.

16.     SOLIC has not shared or agreed to share any compensation to be paid by the Debtor with any other person, other than other principals and employees of SOLIC, in accordance with section 504 of the Bankruptcy Code.

**D.     Indemnification**

17.     As part of the Fee and Expense Structure payable to SOLIC under the terms of the Engagement Letter, the Trustee has agreed to certain indemnification and related obligations pursuant to **Exhibit A** to the Engagement Letter (the "<u>Indemnification Provision</u>"). The Indemnification Provision provides, among other things, that the Debtor will indemnify and hold harmless SOLIC and its respective directors, officers, agents, employees, and controlling persons subject to customary carve outs for gross negligence and willful misconduct. Both the Trustee and SOLIC believe that such provisions are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 cases.

18.     The provisions of the Indemnification Provision were negotiated by the Trustee, his counsel, and SOLIC at arm's-length and in good faith. Further, such provisions, viewed in conjunction with the other terms of SOLIC's proposed retention, are reasonable and in the best interests of the Debtor in light of the fact that the Debtor requires SOLIC's services to successfully maximize value to all parties in interest. Accordingly, the Trustee requests that the Court approve SOLIC's retention, including the provisions reflected in the Indemnification Provision.

**E.      Disinterestedness**

19.     To the best of the Trustee's knowledge, information, and belief, and except and to the extent disclosed herein and in the Hagood Declaration, SOLIC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtor or its estate in connection with the matters for which SOLIC is to be retained.

20.     If any new material facts or relationships with Potential Parties in Interest (as defined in the Hagood Declaration) are discovered or arise, SOLIC will inform this Court.

<u>**BASIS FOR RELIEF**</u>

**A.      The Court Should Approve the Engagement Letter and Authorize the Retention of SOLIC.**

21.     Section 327 of the Bankruptcy Code provides that a trustee is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 328(a) of the Bankruptcy Code provides, in relevant part, that the trustee "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including

on a retainer, on an hourly basis, <u>on a fixed or percentage fee basis</u>, or on a contingent fee basis." 11 U.S.C. § 328(a) (<u>emphasis added</u>). Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on flexible terms that reflect the nature of their services and market conditions.

22.    As set forth above, the terms of the Engagement Letter appropriately reflect the nature and scope of services to be performed by SOLIC, SOLIC's substantial experience with respect to investment banking services, including with respect to sales in the healthcare industry, and the Fee and Expense Structure utilized by SOLIC and other leading investment bankers. As described herein, the Trustee selected SOLIC as its investment banker because of SOLIC's extensive experience with situations similar to that of the Debtor. Not granting the relief requested herein would deprive the Trustee of the assistance of a highly qualified investment banking firm, which would disadvantage the Debtor and all parties in interest in this Case.

23.    The Trustee believes the Fee and Expense Structure set forth in the Engagement Letter reflects reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. As described herein, the Fee and Expense Structure adequately reflects the following: (i) the nature of the services to be provided by SOLIC, and (ii) a fee and expense structure and indemnification provisions typically utilized by SOLIC and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis. In particular, the Trustee believes the Fee and Expense Structure creates a proper balance between fixed and contingency fees based on the successful consummation of a Sale and the overall success of this Case. Moreover, SOLIC's substantial experience with respect to investment banking services, coupled with the nature and scope of work

already performed by SOLIC as of the date of this Application, further support the reasonableness of the Fee and Expense Structure. In light of the foregoing, the Fee and Expense Structure is fair and reasonable and meets the standards set forth in section 328(a) of the Bankruptcy Code.

24.    Additionally, as set forth above, notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, SOLIC shall apply for reimbursement of expenses incurred in connection with this Case, as required by the Bankruptcy Code, subject to the Court's approval, and in compliance with the Fee Guidelines, unless otherwise ordered by the Court.

**B.    The Court Should Approve the Indemnification Provision.**

25.    The Trustee and SOLIC submit that the terms of the Indemnification Provision are customary and reasonable for an investment banking engagement, both out of court and in chapter 11 proceedings. *See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.*), 315 F. 3d 217, 234 (3d Cir. 2003) (finding that indemnification agreement between debtor and advisor was reasonable under section 328 of the Bankruptcy Code).

26.    The terms and conditions of the Engagement Letter, including the Indemnification Provision, were negotiated by the Trustee and SOLIC at arm's length and in good faith. The Trustee respectfully submits that the Indemnification Provision, viewed in conjunction with the terms of SOLIC's proposed retention, are reasonable and in the best interests of the Debtor, its estate, and creditors in light of the fact that the Debtor requires SOLIC's services for a successful result in this Case.

**C.    A Surcharge Right is Appropriate Under the Circumstances.**

27.    Section 506(c) of the Bankruptcy Code permits a trustee to recover "from property

securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit of the holder of such claim…." 11 U.S.C. § 506(c). To obtain relief under this section, a movant must show that: (1) the expenditure was necessary; (2) the amount expended was reasonable; and (3) the creditor benefited from the expenditure. *In re Spa at Sunset Isles Condominium Ass'n, Inc.*, 454 B.R. 898, 908-09 (Bankr. S.D. Fla. 2011).

28.     In review of the proofs of claims filed to date, certain creditors and parties in interest assert that they have security interests in all, or substantially all, of the Debtor's assets. SOLIC is being retained to facilitate and effectuate the Sale of these assets for the purpose of maximizing their value for the benefit of these creditors. As such, the requirements of section 506(c) are satisfied in this Case.

### (1)    The Fees and Costs Are Necessary.

29.     An expense is deemed "necessary" if it was incurred to preserve or dispose of a secured creditor's collateral and it was necessary under the circumstances. *Rifkin v. CapitalSource Finance, LLC (In re Felt Manufacturing Co., Inc.*), 402 B.R 502, 523 (Bankr. D.N.H. 2009).

30.     Courts have found that the costs and expenses of professional services incurred in connection with marketing and selling a debtor's assets are necessary and entitled to surcharge. *See Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160 (5th Cir. 1993) (court surcharged secured creditor for the costs and expense of appraiser, architect, and marketing consultant as necessary under section 506(c)); *In re MMS Builders, Inc.*, 101 B.R. 426 (D.N.J. 1989) (approving auctioneer fees under section 506(c)). "Typical examples [of allowed surcharge costs] include appraisal fees, auctioneer fees, moving expenses, maintenance and repair costs, and advertising costs." *In re*

*Strategic Labor, Inc.*, 467 B.R. 11, 22 (Bankr. D. Mass. 2012) (quoting *In re Swann*, 149 B.R. 137, 143 (Bankr. D.S.D. 193); *see also* 4 Collier on Bankruptcy ¶ 506.05 [4] (Alan N. Resnick & Henry J. Sommer, 16th ed. 2022) ("Necessary expenses include appraisal fees, auctioneer fees, advertising costs, moving expenses, storage charges, payroll of employees directly and solely involved with the disposition of the subject property, maintenance and repair costs, and marketing costs.").

31.     Here, the fees incurred by the Debtor with respect to SOLIC arise from, and are inextricably tied to, the expenses and costs of marketing the Debtor's assets, facilitating and assisting in negotiations with prospective purchasers of the Debtor's assets, and effectuating the ultimate Sale of the Debtor's assets.  Given the nature of the Debtor's business and its assets, the Trustee's ability to maximize the value of the Debtor's assets (and thus maximize value for the estate and its creditors) would be markedly hindered and diminished without SOLIC's services. Therefore, the fees and costs incurred by SOLIC are necessary.

### (2)    The Fees and Costs Are Reasonable.

32.     "Reasonableness" is generally measured against the amount that would have been incurred by a secured creditor in foreclosing on its collateral.  *See In re Felt Mfg. Co., Inc.*, 402 B.R. at 523.  However, some courts have measured "reasonableness" by using the same standard for determining reasonableness of professional compensation under section 330 of the Bankruptcy Code.  *See id*.  Regardless of the standard applied, SOLIC's fees and costs are reasonable.

33.     SOLIC's fees and expenses are comparable to what secured creditors would have incurred outside of bankruptcy.  Any creditor that had sought relief from the automatic stay to foreclose on its collateral, or sought to enforce its lien rights under applicable state law, would

have expended funds and resources in prosecuting the foreclosure or otherwise enforcing its lien. Such a creditor would also be subject to the delay inherent in those types of proceedings. Moreover, given the specialized nature of the assets in this Case, a secured creditor would have likely received minimal value at foreclosure, absent the hiring of a professional to properly market the asset. Furthermore, with respect to analysis under section 330, SOLIC's fees and expenses are reasonable in light of the services provided, the experience of its professionals, and the facts and circumstances of the Case.

### (3)    Secured Creditors Benefit.

34.    To satisfy the third element, "benefit to the creditor," a movant must show that the secured creditor received over and above the benefit that the creditor would have realized without the expenditure and efforts by the estate professionals. *See In re Crutcher Concrete Const.,* 218 B.R. 376, 380-81 (Bankr. W.D. Ky. 1998)

35.    As discussed above, secured creditors benefit because they are not being forced to foreclose on, advertise, and sell their collateral on their own, which would likely occur on a piecemeal basis. Instead, their collateral is being marketed by an experienced investment banker with expertise in the healthcare industry and contacts with potential purchasers who are willing to purchase the assets of the Debtor for the purpose of continuing the Debtor's operations on a go-forward basis. A sale encompassing all assets of the Debtor as a going concern is inherently more beneficial to secured creditors than individualized sales of their respective collateral. Moreover, secured creditors are also benefited because they are not subject to the delay inherent in any foreclosure proceeding they would be forced to pursue on their own outside of the bankruptcy process. Furthermore, the Trustee anticipates that secured creditors will be paid a meaningful

distribution from the proceeds of the Sale.  Thus, the third element is satisfied.

36.      Consequently, the Trustee and/or SOLIC requests that the Court authorize it to surcharge against the proceeds of the Sale pursuant to section 506(c) of the Bankruptcy Code for the purpose of satisfying the Success Fee and any other amounts due and owing to SOLIC at the conclusion of the Sale.

37.      For the avoidance of doubt, the above paragraph does not constitute an admission by the Trustee as to the validity or enforceability of any claim filed in this Case nor does it constitute a waiver by the Trustee of his right to contest, object to, or otherwise take action with respect to any claim (or a creditor asserting such claim) in this Case.  The Trustee expressly reserves any and all such rights.

### NO PREVIOUS REQUEST

38.      No prior motion for the relief requested herein has been made by the Trustee or Debtor to this or any other court.

### NOTICE

39.      The Trustee will provide notice of this Application to: (a) the Office of the United States Trustee for the Northern District of Georgia pursuant to Bankruptcy Rule 2014; (b) all creditors who may have a lien on the Debtor's property, and (c) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Trustee respectfully submits that no other or further notice is necessary.

### CONCLUSION

WHEREFORE, the Trustee respectfully requests entry of the Order: (i) authorizing and approving the employment of SOLIC as investment banker for the Debtor in accordance with the

terms and conditions set forth in the Engagement Letter effective as of November 1, 2022;
(ii) approving the terms of SOLIC's employment and retention including, without limitation, the
proposed Fee and Expense Structure and the Indemnification Provision; (iii) authorizing the
Trustee and/or SOLIC to surcharge of the proceeds of the Sale; and (iv) granting such further relief
as is necessary or appropriate.

Dated:  November 14, 2022                     Respectfully submitted,

                                              /s/ *David A. Wender*
                                              David A. Wender (Ga. Bar No. 748117)
                                              Nathaniel T. DeLoatch (Ga. Bar No. 216330)
                                              Eversheds Sutherland (US) LLP
                                              999 Peachtree Street, NE, Suite 2300
                                              Atlanta, GA 30309-3996
                                              Telephone: 404.853.8175
                                              Facsimile: 404.853.8806
                                              Davidwender@eversheds-sutherland.com
                                              Nathanieldeloatch@eversheds-sutherland.com

                                              - and –

                                              Erin Broderick (*Pro Hac Vice* Forthcoming)
                                              227 W Monroe St., Suite 6000
                                              Chicago, IL 60606
                                              Telephone: 312.585.8793
                                              Facsimile: 312.724.9322
                                              Erinbroderick@eversheds-sutherland.com

                                              *Proposed Counsel for the Chapter 11 Trustee*

**EXHIBIT 1**

**<u>Declaration of Gregory F. Hagood</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CUREPOINT, LLC, | Case No. 22-56501- JWC |
| Debtor. | |

**DECLARATION OF GREGORY F. HAGOOD IN SUPPORT OF THE CHAPTER
11 TRUSTEE'S APPLICATION TO RETAIN INVESTMENT BANKER EFFECTIVE AS
OF NOVEMBER 1, 2022**

I, Gregory F. Hagood of SOLIC Capital Advisors, LLC and SOLIC Capital, LLC (collectively, the "Firm"), declare under penalty of perjury as follows:

1.       I am a Senior Managing Director of the Firm and, in that capacity, I have personal knowledge of, and authority to speak on behalf of, the Firm with respect to the matters set out herein. This declaration is offered in support of the *Chapter 11 Trustee's Application to Retain Investment Banker Effective as of November 1,* 2022 (the "Application"), and the matters set out herein are true and correct to the best of my knowledge, information and belief.

2.       In connection with its proposed retention by the Debtor in this Chapter 11 case, the Firm undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.

16

3.      Specifically, the Firm reviewed its connections with certain individuals and entities that may be parties in interest in this Chapter 11 case that were reasonably made known to the Firm by the Debtor.

4.      To the best of my knowledge, neither the Firm nor I have or represent any interest adverse to the Debtor or its estate, or have any material connections with the Debtor, its creditors, any other party in interest or their respective attorneys or accountants. The Firm is disinterested, as that term is defined in 11 U.S.C. § 101(14).

5.      Insofar as I have been able to ascertain through inquiry, the Firm has no connection with the Debtor, its creditors, any other party-in-interest, their respective attorneys or professionals, the United States Trustee or any person employee in the office of the United States Trustee, and does not represent any entity having an adverse interest to the Debtor in connection with this Chapter 11 case, except as set forth below.

6.      The Firm may in the past have worked with, may continue to work with, and may have mutual clients with certain law firms who may represent parties-in-interest in the Chapter 11 case.  Because of the size and diversity of the Firm's practice, the Firm may have in the past performed professional services for, and may in the future provide services for entities that are claimants or interest holders of the Debtor in matters wholly unrelated to the Debtor's pending chapter 11 Case.  The parties that the firm worked with in prior unrelated matters are listed on **Schedule I** hereto.

7.      Despite the efforts described above to identify and disclose the Firm's connections with the Debtor and the parties listed above, because the Debtor has numerous creditors and other relationships, the Firm is unable to state with certainty that every client representation or other

connection has been disclosed.  If the Firm discovers additional information that requires disclosure, the Firm will supplement these disclosures as appropriate.

8.      The Firm has no principals or other professional employees who are related to any Judge of the United States Bankruptcy Court for the Northern District of Georgia. Notwithstanding the foregoing, it should be noted that Judge Cavender served as the general counsel of Taylor Bean & Whitaker Mortgage Corp. ("TBW").  A SOLIC professional served as TBW's Chief Restructuring Officer (and other SOLIC professionals provided services to TBW) during the pendency of its bankruptcy case and post-confirmation.  Subsequent to confirmation of TBW's Plan of Liquidation, Judge Cavender, in private practice, provided legal services to the Taylor Bean & Whitaker Mortgage Corp. Liquidating Trust (the "TBW Trust") while a SOLIC professional served as Liquidating Trustee thereof (and other SOLIC professionals provided services to the TBW Trust).

9.      The Firm has not been provided a retainer in this case. Neither the Firm nor I have agreed to share any compensation or reimbursement received in connection with this engagement with any other person.

10.      To the best of my knowledge, the employment of the Firm as investment banker to the Debtor would be appropriate under 11 U.S.C. § 327 and Bankruptcy Rule 2014.

(Signature on following Page)

This 14th day of November, 2022

_____
  GREGORY F. HAGOOD

## Schedule I

1. The Firm and its professionals have worked previously with David Wender, Chapter 11 trustee of the Debtor, on multiple other wholly unrelated matters where Mr. Wender served as counsel to debtors and other stakeholders.

2. The Firm has worked in the past for a law firm on behalf of U.S. Bank National Association, a creditor of the Debtor, on a matter wholly unrelated to the Debtor.

**EXHIBIT 2**

**SOLIC Engagement Letter**



SOLIC Capital Advisors, LLC
425 W. New England Avenue
Suite 300
Winter Park, FL 32789

November 1, 2022

**Personal and Confidential**

Curepoint, LLC
11175 Cicero Drive
Suite 100
Alpharetta, GA 30022
Attn: Mr. David Wender, Chapter 11 Trustee

Dear Mr. Wender,

Subject to approval of the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"), this agreement (this "Agreement" or "Engagement Letter") confirms the retention of SOLIC Capital Advisors, LLC ("SCA") and SOLIC Capital, LLC ("SC", and together with SCA, "SOLIC")[1] by Curepoint, LLC and its affiliates (collectively referred to herein as "Curepoint", the "Company" or the "Debtor") through David Wender, solely in his capacity as chapter 11 trustee (the "Trustee"), nunc pro tunc to the date hereof, pursuant to which SOLIC will provide the Company the services described below with respect to *In re Curepoint, LLC., et al, Case No. 22-56501-jwc.*

On August 24, 2022 (the "Commencement Date"), the Debtor commenced the Case by filing voluntary petitions for relief under chapter 11 title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court. This Engagement Letter, and SOLIC's obligations and responsibilities relating to this engagement (the "Engagement"), shall be effective as of the date hereof, subject to obtaining Bankruptcy Court approval in this Case; provided, however that, in addition to SOLIC's other rights and remedies, either party may, in its sole discretion and without any liability arising therefrom, terminate this Engagement in the event that (a) a final order authorizing the employment of SOLIC as financial advisors for the Committee (the "Order") is not issued by the Bankruptcy Court in this Case on or before thirty (30) days from the date hereof on the terms and conditions set forth herein or on such other terms and conditions as are satisfactory to SOLIC, or (b) the application of the Company seeking the Order is denied by the Bankruptcy Court in this Case. In such event, the Company hereby agrees to withdraw, promptly upon SOLIC's request, any application filed or to be filed with the Bankruptcy Court to retain SOLIC's services in this Case. Notwithstanding the foregoing, if the Order is not obtained, or is later reversed or set aside for any reason, SOLIC may terminate this Engagement Letter and SOLIC shall be reimbursed for all fees and expenses reasonably incurred prior to the date of expiration or termination.

1.   **Engagement Purpose.**

---

[1] Securities offerings and other related services provided hereunder to be provided by SOLIC Capital, LLC, member FINRA/SIPC.

48146427.2

Curepoint LLC
November 1, 2022
Page 2

The Company hereby engages SOLIC on an exclusive basis for the purpose of (a) assisting the Company in identifying opportunities for a sale, merger, reorganization or recapitalization (a "Transaction" as further defined below) of the Company, the assets of the Company (which include, without limitation, the Company's medical equipment, supplies, accounts receivables, and payor contracts); (b) advising the Company concerning opportunities for a Transaction, whether or not identified by SOLIC; and (c) participating on the Company's behalf in negotiations concerning a Transaction.   For purposes of this Agreement, a Transaction shall include, without limitation, any transaction or series or combination of transactions, whereby, directly or indirectly, control of, or a material interest in, the Company or any of its businesses or any of their respective assets, is transferred for consideration, including, without limitation, a sale or exchange of capital stock or assets, a lease of assets with or without a purchase option, a merger or consolidation, a tender or exchange offer, a restructuring, a recapitalization, a repurchase of capital stock, an extraordinary dividend or distribution, the formation of a joint venture or partnership, or any similar transaction.  Furthermore, a Transaction will also include a credit bid by the Company's creditors, confirmation of a plan of liquidation or plan reorganization, dismissal of the Case or conversion to a chapter 7 liquidation.

2. <u>Scope of Services.</u>

SOLIC hereby accepts the engagement described in Section 1 of this Agreement (this "Engagement") and agrees to serve as the Company's financial advisor with respect to identifying, evaluating, and structuring a Transaction or Transactions, and undertake one or more of the following activities, as requested from time to time by the Company:

    a. **Transaction Planning:**

        i. Assist the Company and the Chapter 11 Trustee in aggregating and reviewing due diligence materials on the Company including historical financial statements, historical operating metrics, schedules of assets and liabilities, lists of contracts and personnel, and other available information on the Company in order to facilitate a Transaction;

        ii. Develop solicitation materials including and host and mange an electronic datarooms;

        iii. Identify and profile potential purchasers for the Company, and its operations and assets; and

        iv. Work with the Chapter 11 Trustee to develop marketing strategy for the Company and its operations and assets;

    b. **Solicitation Process Management:**

        i. Contact potential purchasers approved by the Company regarding their interest in pursuing a Transaction with the Company;

        ii. Coordinate all communication with interested purchasers including facilitating due diligence discussions and site visits with the Company;

48146427.2

Curepoint LLC
November 1, 2022
Page 3

    iii.    Oversight of due diligence review process including review and approval of information requests and compilation and delivery due diligence responses;

    iv.    Solicitation of proposals for a Transaction or Transactions;

    v.    Assist in the negotiation of terms for a Transaction with prospective purchasers including structuring a stalking horse purchase agreement or agreements(s) as requested, and participating with the Company in negotiations with creditors and other parties, as needed, involved in one or more Transactions;

    vi.    Assist in the review of definitive documentation and supporting schedules for any agreements relating to a Transaction; and

    vii.    Assist the Company and its legal and financial advisors in management of court mandated sale procedures to close a Transaction including facilitating an auction process for competing bids, if required.

3.    **Company Obligations.**

In connection with SOLIC's activities on the Company's behalf:

a.    The Company agrees to cooperate with SOLIC and will furnish to, or cause to be furnished to, SOLIC all information and data concerning the Company, any possible Transaction and any possible participant (the "Information"), that SOLIC reasonably deems appropriate and will provide SOLIC with access to the Company's officers, directors, employees and advisors.

b.    The Company represents, covenants and warrants that, to the Trustee's knowledge, all Information made available to SOLIC by or through the Company with respect to a possible Transaction will be complete and correct in all material respects and that any projections, forecasts or other Information provided by the Company to SOLIC or to any possible participant or other party to a possible Transaction, will have been prepared in good faith and will be based upon reasonable assumptions.

c.    The Company agrees to promptly notify SOLIC if the Company believe that any Information that was previously provided to SOLIC or to any possible participant has become materially misleading.

d.    The Company acknowledges and agrees that, in rendering its services hereunder, including, without limitation, assisting the Company in the preparation of the Descriptive Memorandum, SOLIC will be using and relying on the Information (and information available from public sources and other sources deemed reliable by SOLIC) without assuming any duty of independent verification thereof or independent appraisal or valuation of any of the Company's assets or those of any possible participant. Furthermore, in evaluating each possible participant, SOLIC will be using information contained in public reports and possibly other information furnished to SOLIC by such possible participant. SOLIC does not assume

Curepoint LLC
November 1, 2022
Page 4

responsibility for the accuracy or completeness of the Information or any other information regarding the Company, any possible participant or any possible Transaction.

e.  In order to coordinate most efficiently our efforts together to affect a possible Transaction satisfactory to the Company, the Company and its management will promptly inform SOLIC of any inquiry they may receive concerning the availability of all or anything other than a *de minimis* portion of the stock or assets of the Company (or any affiliate thereof) for purchase. Also, during the period of our engagement, none of the Company, or the Company's management or directors will initiate any discussions involving the possible sale of anything other than a *de minimis* portion of the stock or assets of the Company without informing SOLIC.

f.  It is further understood that any advice rendered by SOLIC pursuant to its engagement hereunder, including any advice rendered during the course of participating in negotiations and meetings with the Company, as well as any written materials provided by SOLIC, will be solely for the benefit and confidential use of the Company, and will not be reproduced, summarized, described or referred to or given to or relied upon by, any other person for any purpose without SOLIC's prior written consent, except for discussion and analysis purposes with the Company's Board of Directors, management, attorneys, and accountants, nor shall the Company make any public references to SOLIC without SOLIC's prior written consent or except as may otherwise be required by applicable law. In addition, the Company agrees that they shall not use, distribute, reproduce or reference in any manner any descriptive material prepared with SOLIC's assistance except to prospective acquirers that have executed confidentiality agreements in form and substance approved by the Company and SOLIC or otherwise with SOLIC's prior written consent.

4.  **Fees and Expenses.**

In consideration of SOLIC's efforts, the Company, jointly and severally, agrees to compensate SOLIC as follows:

a.  *Monthly Payments*
The Company shall pay SOLIC i) an initial payment of twenty-five thousand dollars ($25,000.00) promptly upon authorization of the Bankruptcy Court for the Trustee's proposed engagement of SOLIC, and ii) a second payment of twenty-five thousand dollars ($25,000.00) on December 1, 2022 (collectively the "Monthly Payments"). All Monthly Payments shall be paid via wire transfer pursuant to the instructions on Exhibit B)

b.  In addition to the Monthly Payments, upon the closing of any Transaction, the Company shall pay SOLIC a success fee (the "Success Fee") equal to (i) Two Hundred and Twenty-Five Thousand Dollars ($225,000.00); plus (ii) 3.0% of Transaction Value in excess of $5.0 million. The Success Fee shall be due at the time of closing a Transaction and payable in cash via wire transfer per the wire instructions attached hereto as Exhibit B. For purposes of calculating the Success Fee, Transaction Value shall be treated cumulatively and include all individual completed Transactions. "Transaction Value" is defined as the sum of (i) all amounts received, directly or indirectly, in cash or stock, (ii) liabilities assumed and/or retired, (iii) contractual

48146427.2

Curepoint LLC
November 1, 2022
Page 5

deferred payments to be received (including, but not limited to non-compete and consulting agreements, but excluding amounts under employment agreements at market based compensation levels), and (iv) the fair market value of any equity or assets retained in connection with the Transaction. The fair market value of the securities for which there is an established trading market will be the average of the closing prices, as reported on a national securities exchange, for the 10 trading days ending on the day of closing. The fair market value of any assets, securities, property, or rights (other than as provided above) will be mutually agreed upon by SOLIC and the Company. If the parties cannot agree upon the fair market value of such assets, securities, property, or rights, they will choose a qualified securities appraiser of national standing to conclusively determine, at the Company's expense, such fair market value. Upon request, the Company will make available to SOLIC any information available to it for purposes of calculating the amount of any component of the Transaction Value.

c.  Out-of-pocket expenses (e.g., printing, duplication costs, courier charges, overnight mail, travel and the reasonable fees and expenses of SOLIC's counsel) incurred by SOLIC in connection with this Agreement or any of the transactions contemplated hereby will be reimbursed to SOLIC as described below.

d.  Any documents memorializing the Transaction shall include language disclosing the Company's fee liability to SOLIC pursuant to this Agreement. Further, SOLIC reserves the right to attend closing. If a Transaction is completed pursuant to this Agreement, SOLIC may, reference that SOLIC has acted as financial advisor for the Company in the transaction.

d.  The Success Fees outlined above shall be due and payable (only) upon the closing of the aforementioned Transaction(s). Said out-of-pocket expenses as outlined above will be billed on a monthly basis and will be due immediately upon receipt of such invoice.

e.  During the term of this Agreement, the Success Fee due SOLIC as outlined above shall be due and payable should the Company and/or its affiliates enter into and close a Transaction or Transactions with any individuals or entities, including any party that is not one furnished by SOLIC to the Company, during the term of this Agreement.

f.  It is agreed that subsequent to the termination of this Agreement, SOLIC shall be entitled to the Success Fee described above only if definitive documentation relating to a Transaction is consummated within 18 months after the termination of this Agreement with any individuals or entities, including any party that is not one furnished by SOLIC to the Company during the term of this Agreement.

g.  In the event SOLIC prevails in any action to enforce collection of amounts due or other rights under this Agreement, the Company agrees to pay the legal fees and other collection costs incurred by SOLIC, plus interest at the prime rate (Bank of America prime) plus two percent on all amounts owing to SOLIC.

48146427.2

Curepoint LLC
November 1, 2022
Page 6

h. SOLIC understands that the Company will seek authorization of the Bankruptcy Court for it to fulfill its obligations under this Engagement Letter. The Company has been informed that SOLIC intends to apply for compensation for professional services to be rendered in connection with this Case and for reimbursement of expenses incurred, in accordance with applicable provisions of the Bankruptcy Code and any applicable order of the Bankruptcy Court (the "Payment Rules"). Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court. The request for Bankruptcy Court approval of our retention and the proposed order to be submitted in connection therewith, shall be provided to SOLIC prior to submission and must be acceptable to SOLIC in its sole discretion. Following entry of the order granting the authorization described above, the Company shall pay all then accrued and future fees and expenses due pursuant to this Engagement Letter, as approved by the Bankruptcy Court, as promptly as possible in accordance with the terms of this Agreement and the order of the Bankruptcy Court.

i. To the extent that, at any time during this Case, the Bankruptcy Court reviews any of the terms of this Engagement Letter, such review shall be subject to the standard of review of Section 328(a) of the Bankruptcy Code and the Payment Rules, and not subject to any other standard of review under Section 330 of the Bankruptcy Code. Notwithstanding the foregoing, the Company agrees that, given the contingent nature of the engagement, SOLIC will not have to maintain time entries for its professionals.

j. In agreeing to these provisions, the Company acknowledges that it believes that our general investment banking experience and expertise will inure to the benefit of the Company and that the value to the Company and/or its constituents derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of fees above are reasonable, regardless of the number of hours to be expended by our professionals in the performance of the services to be provided hereunder.

k. The Company agrees that, in seeking approval from the Bankruptcy Court for SOLIC's retention, it will ask that the Court approve a surcharge in respect of SOLIC equal to an amount equal to the sum of any of SOLIC's unpaid fees and expenses (including the Success Fee due or owing).

5. **General Terms & Conditions**

   a. **Indemnification and Limitation of Liability.** Inasmuch as we are agreeing to serve on your behalf, the Company agree to indemnify and hold harmless SOLIC against any and all losses, claims, damages, liabilities, and cost of defense related thereto arising out of this engagement or the services provided hereunder (collectively, "Losses") except to the extent such Losses are finally judicially determined to have arisen solely from SOLIC's gross negligence or willful misconduct. A copy of our indemnity agreement is attached herewith as Exhibit A and is hereby incorporated by reference in and serves as an integral part of this Agreement and the Company agrees that the aggregate liability of SOLIC hereunder will be limited solely to the amount of fees received hereunder.

48146427.2

Curepoint LLC
November 1, 2022
Page 7

b.  **Limitations on Engagement.**    The Company acknowledges that SOLIC is being retained as an independent financial advisor in connection with the matters contemplated herein and is not acting as a broker, dealer, or broker-dealer. The Company hereby acknowledges and agrees that they have retained SOLIC for the limited purposes set forth in this Agreement, that the rights and obligations of the parties hereto are solely contractual in nature, and that SOLIC has not made any warranties or guarantees of any nature as to the success or satisfactory conclusion of any Transaction or as to the economic, financial, or other results which may be obtained or experienced by the Company as a result thereof.   The Company confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax and other similar advice. The Company, on the one hand, and SOLIC, on the other, each disclaim any intention to impose fiduciary duties or obligations on the other by virtue of the engagement contemplated by this Agreement, and no other person or entity shall have any rights or obligations hereunder except as expressly provided herein.

c.  **Confidentiality.**    SOLIC acknowledges that, in the course of performing its duties and obligations hereunder, it will receive from the Company certain confidential information and/or proprietary information concerning the Company.   SOLIC agrees to keep all such information confidential and to not disclose the same other than to third parties who have expressed to it a legitimate interest in evaluating a possible Transaction with the Company and then only pursuant to a duly executed Confidentiality Agreement, except to the extent disclosure is required by any judicial, administrative or self-regulatory agency or organization. SOLIC and its affiliates are engaged in private equity investments, as well as providing investment banking, restructuring, and financial advisory services.   It is further understood that any advice rendered by SOLIC pursuant to this Engagement, including any advice rendered during the course of participating in negotiations and meetings with management or the Board of Directors of the Company, as well as any written materials provided by SOLIC, are intended solely for the benefit and confidential use of the Company and the Board of Directors and will not be reproduced, summarized, described or referred to, relied upon by or given to any other person for any purpose without SOLIC's prior written consent. Nothing in this Agreement shall be construed to prohibit or limit the ability of SOLIC or its affiliates from pursuing, investigating, analyzing or engaging in investment banking, restructuring, financial advisory and other business relationships with entities other than the Company, notwithstanding that such entities may be engaged in a business which is similar to the business of the Company, and notwithstanding that such entities may have customers, or potential customers, similar or identical to the Company's, or may have been or may be identified as potential merger or acquisition targets or potential candidates for some other business combination, cooperation or relationship.   The Company expressly acknowledges and agrees that it does not claim any proprietary interest in the identity of any other entity in its industry or otherwise, and that the identity of any such entity is not confidential information.   Without limit the foregoing, the Company agrees that the following information shall not be deemed confidential or proprietary:

(i)  Information that at the time of disclosure, or after disclosure, is or subsequently becomes generally available to the public or within the industries in which the Company or SOLIC

48146427.2

Curepoint LLC
November 1, 2022
Page 8

and its affiliates conduct business, other than as a result of a breach by SOLIC of its obligations under this Agreement;

(ii) Information that prior to or at the time of disclosure by the Company, was already in the possession of SOLIC or its affiliates (provided that SOLIC or its affiliates, at the time of such disclosure was not subject to a non-disclosure obligation relating to such information including any non-disclosure obligation under applicable "Insider Trading" laws and regulations) or could have been developed by them from information then in their possession, by the application of other information or techniques in their possession or generally available to the public or available to them, other than from the Company or its agents;

(iii) Information that at the time of disclosure or subsequent to disclosure, is obtained by SOLIC or its affiliates from a third party who is lawfully in possession of the information and who is not in violation of any contractual, legal or fiduciary obligation to the Company with respect to that information; or

(iv) Information that is or was independently developed by SOLIC or its affiliates from information lawfully obtained by SOLIC or its affiliates from parties lawfully in possession of such information and who are not in breach of any contractual, legal or fiduciary obligation to the Company with respect to the information.

d.  **Conflict of Laws.** The terms of this Engagement Letter shall be construed, interpreted and applied in accordance with the laws of the State of Georgia applicable to contracts entered into and wholly to be performed in Georgia. The Company and SOLIC irrevocably submit to the jurisdiction of the Bankruptcy Court for the purpose of any suit, action or other proceeding arising out of this Agreement which is brought by or against the Company. Each of the Company (and, to the extent permitted by law, on behalf of its creditors) and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this Agreement.

e.  **Termination.** Either the Company or SOLIC may terminate this Agreement (the "Termination") upon 3 days written notice, provided however that (i) all fees (including Success Fees) and expenses due through the effective date of termination will be paid within 10 days of the effective date of termination; (ii) no termination of this Agreement will affect SOLIC's right to payment of any expense reimbursement pursuant to this Agreement or the indemnification contemplated by the Indemnity Agreement; (iii) SOLIC shall be entitled to receive any Success Fee  pursuant to this Agreement that would otherwise be payable in connection with any Transaction that closes within 18 months of termination hereof; and (iv) the terms of Sections 3, 4 and 5  hereof will survive termination of this Agreement.

f.  **Notices.** All notices under this Agreement shall be sufficient if delivered by facsimile or overnight mail (to the addresses set forth below) or via email (if addressed to SOLIC, addressed to nluria@soliccapital.com, and if to the Company to DavidWender@eversheds-sutherland.com). Any notice shall be deemed to be given only upon actual receipt.

48146427.2

Curepoint LLC
November 1, 2022
Page 9

<u>Personal and Confidential</u>

Curepoint, LLC
11175 Cicero Drive
Suite 100
Alpharetta, GA 30022
ATTN: Mr. David Wender, Chapter 11 Trustee

Neil Luria
Senior Managing Director
SOLIC Capital Advisors, LLC
425 West New England Avenue,
Suite 300
Winter Park, FL 32789

g.  **Assignment.** The Company agrees that it will not enter into an agreement with respect to a possible transaction involving a recapitalization, restructuring, reorganization or other transaction, unless such agreement expressly provides for the unconditional assumption of the Company's obligations to SOLIC under this Agreement and the Indemnity Agreement. This Agreement has been duly and validly executed by the parties hereto and shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors and assigns. This Agreement may not be assigned by either party hereto without the other party's prior written consent, except that SOLIC may assign all or a portion of its rights and responsibilities hereunder to one or more of its affiliated entities.

h.  **PATRIOT Act Disclosure.** The Company acknowledge that, pursuant to the requirements of the USA PATRIOT Act, SOLIC is required to obtain, verify and record information that identifies the Company, its stockholders and Directors, which information includes such persons' names, addresses and certain other information.

l.  **Entire Agreement.** This is the entire agreement between the parties pertaining to its subject matter and supersedes all prior agreements, representations and understandings of the parties. No modification of this Agreement shall be binding unless agreed to in writing by the parties. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

m.  **Indirect, Consequential or Punitive Damages.** None of the parties to this Agreement shall in any event be liable to the other for any indirect, consequential or punitive damages.

48146427.2

Curepoint LLC
November 1, 2022
Page 10

      n.   **Bankruptcy**.  The Company agrees that it will promptly apply to the Bankruptcy Court to obtain approval of our retention pursuant to Section 328 of the U.S. Bankruptcy Code and Retainer nunc pro tunc to the date hereof.  The Company agrees that in connection with the bankruptcy process, it will reimburse SOLIC for its reasonable attorney's fees and expenses related to such retention matters, including the filing and preparation of any fee applications and any preparation or attendance at hearings related thereto.  Notwithstanding anything to the contrary contained herein, after the Company files for bankruptcy protection, the fees and expenses of SOLIC set forth herein shall be reimbursed and paid in accordance with the Bankruptcy and any order approving SOLIC's retention.

Curepoint LLC
November 1, 2022
Page  11


If this Agreement meets with your approval, please indicate your consent and agreement to be bound
by the terms of this Agreement by executing the attached copy and forwarding it to me.

Very truly yours,

SOLIC CAPITAL ADVISORS, LLC


By: _____
          Neil Luria
          Senior Managing Director


SOLIC CAPITAL, LLC


By: _____
          Neil Luria
          Senior Managing Director

This Agreement is accepted and agreed to this ____ day of October 2022.


CUREPOINT, LLC.

By _____
          Name: David Wende
          Title: Chapter 11 Trustee
Date: 11/3/2022


Name:          SOLIC Capital Advisors, LLC


48146427.2



SOLIC Capital Advisors, LLC
425 West New England Ave, Suite 300
Winter Park, FL 32789
(847) 583-1618 phone
(847) 583-1426 fax

<u>EXHIBIT "A"</u>

October 31, 2022

Neil Luria
Managing Director
SOLIC Capital Advisors, LLC
1603 Orrington Avenue,
Suite 1600
Evanston, IL 60201

Ladies and Gentlemen:

This letter will confirm that in connection with the engagement of SOLIC Capital Advisors, LLC ("SOLIC") by Curepoint, LLC. (the "Company") to advise and assist the Company pursuant to the terms of the attached Engagement Letter (the "Engagement Letter"), the Company agrees to indemnify and hold harmless SOLIC and its affiliates and their respective members, officers, directors, employees and agents and each other person, if any, controlling SOLIC or any of its affiliates (each referred to herein as an "Indemnified Person") to the fullest extent possible from and against any losses, claims, damages, obligations, penalties, awards, costs, disbursements or liabilities, including amounts paid in settlement (collectively, "Losses"), based upon, related to, arising out of or in connection with the engagement described in the Engagement Letter (the "Engagement"), and will reimburse each Indemnified Person for all reasonable expenses (including fees and expenses of counsel) ("Expenses") as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation, or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party. Furthermore, the Company will pay SOLIC at its standard hourly rates for any SOLIC professional time incurred in connection with any action, claim, suit, investigation or proceeding described in the foregoing sentence. Notwithstanding the foregoing, in no event shall the Company be responsible for any Losses or Expenses that arise out of or in connection with the Engagement which are finally judicially determined to have resulted solely from the willful misconduct or gross negligence of any Indemnified Person.

If any litigation, investigation or proceeding is commenced as to which SOLIC proposes to demand indemnification, SOLIC will notify the Company with reasonable promptness; provided, however, that any failure by SOLIC to notify the Company will relieve the Company from its obligations hereunder only to the extent the Company has been materially prejudiced by such failure or delay. SOLIC will have the right to retain counsel (and local counsel, if appropriate) of its own choice to represent it, and the Company will pay the fees, expenses and disbursements of such counsel. The Company retains the right to participate in the defense of such litigation, investigation or proceeding as to which SOLIC seeks indemnification through counsel of the Company's choice (the cost of which will be paid by the Company) and SOLIC will reasonably cooperate with such counsel and the Company (including, to the extent possible and consistent with its own interests, keeping the Company reasonably informed of such defense). The Company will be liable for any settlement of any

Curepoint, LLC
November 1, 2022
Page 13

claim against SOLIC made with the Company's written consent, which consent will not be unreasonably withheld.

If, for any reason, the foregoing indemnification is unavailable to any of the Indemnified Parties or is insufficient to hold them harmless in respect of any Losses or Expenses, then the Company will contribute to the amount paid or payable by any of the Indemnified Parties as a result of such Losses and Expenses in such proportion as is appropriate to reflect the relative benefits (or anticipated benefits) to the Company and its members on the one hand and the Indemnified Parties on the other hand from the possible recapitalization, restructuring, reorganization or other transaction, or if such allocation is not permitted by applicable law, then in such proportion as is appropriate to reflect not only the relative benefits received by the Company and its equityholders and creditors on the one hand and the Indemnified Parties on the other hand, but also the relative fault of the Company, its directors, officers, employees, agents and advisers (other than SOLIC) on the one hand and the Indemnified Parties on the other hand, as well as any other relevant equitable considerations. The relative benefits received (or anticipated to be received) by the Company and its equityholders and creditors on the one hand and by the Indemnified Parties on the other hand will be deemed to be in the same proportion as such benefit bears to the total fees paid to SOLIC pursuant to the Engagement. The relative fault of any party or other person will be determined by reference to such party's or person's knowledge, access to information and opportunity to prevent or correct any misstatement, omission, misconduct or breach of duty. In no event will the amount required to contributed by the Indemnified Parties hereunder exceed the total amount of fees paid to SOLIC pursuant to the Engagement Letter. You and we agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to above. No person found liable for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.

The reimbursement, indemnity and contribution obligations of the Company hereunder will (i) be in addition to any liability which the Company may otherwise have, (ii) survive the completion or termination of SOLIC's engagement under the Engagement and (iii) shall be binding upon any successors and assigns of the Company.

The Company agrees that without the prior written consent of SOLIC, it will not consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claims, suit or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless (i) such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from any and all claims and liabilities arising out of such action, claim, suit or proceeding and (ii) there is no statement in connection therewith as to an admission of fault culpability or failure to act by or on behalf of any Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any written modification thereof signed by the parties and shall remain in full force and effect regardless of any termination or the completion of SOLIC's services under the Engagement.

This agreement will be deemed made in Georgia. The validity and interpretation of this agreement will be governed by, and construed and enforced in accordance with, the laws of the State of Georgia applicable to agreements made and to be fully performed therein (excluding the conflicts of

Curepoint, LLC
November 1, 2022
Page 14

laws rules).  The Company irrevocably submits to the jurisdiction of the Bankruptcy Court for the purpose of any suit, action or other proceeding arising out of this agreement which is brought by or against the Company.  Each of the Company (and, to the extent permitted by law, on behalf of the Company's equity holders and creditors) and SOLIC hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim based upon, arising out of or in connection with this agreement.

Very truly yours,

CUREPOINT, LLC

By: _____

Name: David Wender

Title: Chapter 11 Trustee

Accepted and agreed to:
SOLIC CAPITAL ADVISORS, LLC

By: _____
Neil Luria
Senior Managing Director

SOLIC CAPITAL, LLC

By: _____
Neil Luria
Senior Managing Director

48146427.2