

**IT IS ORDERED as set forth below:**

**Date: November 18, 2022**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| CUREPOINT, LLC, | Case No. 22-56501-PMB |
| Debtor. | |

### ORDER (I) APPROVING BIDDING PROCEDURES, (II) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (III) APPROVING THE SCHEDULING OF A SALE OR AUCTION, (IV) SCHEDULING A SALE HEARING TO BE HELD IN PERSON AT 1:00 P.M. EST ON DECEMBER 15, 2022, AND (V) GRANTING RELATED RELIEF

This matter coming before the Court on the *Chapter 11 Trustee's Emergency Motion for*

*(I) an Order (A) Approving Bidding Procedures, (B) Approving Procedures for the Assumption*

*and Assignment or Rejection of Executory Contracts and Unexpired Leases, and (C) Scheduling*

*an Auction and Sale Hearing; (II) an Order Approving (A) the Sale of the Debtor's Assets Free*

*and Clear of Liens, Claims, and Encumbrances and (B) Assumption and Assignment or Rejection*

*of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Doc. No. 124]

(the "Motion").[1] The Court having reviewed the Motion and having considered the statements of counsel and the evidence adduced with respect to the Motion before the Court at the November 17, 2022 hearing (the "Hearing"); and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motion and the Hearing was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; and good and sufficient cause having been shown;

### IT IS HEREBY FOUND THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Trustee has offered good and sufficient reasons for this Court to: (i) approve the Bidding Procedures, attached hereto as **Exhibit 1**, including the Bid Protections set forth therein; (ii) schedule the Bid Deadline, the Auction, and the Hearing; (iii) approve the form and manner of notice of the Auction and Sale Hearing, including the Notice of Auction and Sale Hearing, attached hereto as **Exhibit 2**, (iv) approve the procedures for the assumption and assignment or rejection of the Debtor's executory contracts and unexpired leases, including the form of the Assignment Notice, attached hereto as **Exhibit 3** and Rejection Notice, attached hereto

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or Exhibits to this Order, as applicable.

as **Exhibit 4**, (v) approve the form of the proposed asset purchase agreement (the "APA"), attached hereto as **Exhibit 5**, and (vi) find that timely and proper service of the Motion was given to the Service Parties identified on **Exhibit 6** attached hereto.

C.    The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

D.    The Bidding Procedures are reasonably designed to promote participation and active bidding at and participation in the Auction to ensure that the highest and otherwise best value is generated for the Debtor's assets.

E.    ***Stalking Horse***.    Good and sufficient business reasons exist for the Court to authorize the Trustee to, in his discretion, designate a Stalking Horse Bidder and enter into a corresponding stalking horse agreement ("Stalking Horse APA"), up to seven (7) days before the Bid Deadline.  The Stalking Horse APA will enable the Trustee to secure a fair minimum price for the Sale Assets at the Auction and, accordingly, will provide a clear benefit to the Debtor's estate and its creditors.

F.    ***Bid Protections.***    The Breakup Fee and Expense Reimbursement: (i) shall, if triggered, be deemed actual and necessary costs and expenses of preserving the Debtor's estate, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, with priority over all other administrative priority claims; (ii) are commensurate to the real and substantial benefit conferred upon the Debtor's estate by a Stalking Horse Bidder; (iii) are reasonable and appropriate, including in light of the size and nature of the proposed Sale and comparable transactions, and

(iv) are necessary to induce a Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse APA.

G.     ***Contract Procedures.***  The Contract Procedures set forth in the Motion and Bidding Procedures, including the form of Assignment Notice attached hereto as **Exhibit 3** and Rejection Notice attached hereto as **Exhibit 4**, are reasonably calculated to provide counterparties to any Contracts to be assumed by the Trustee and assigned to the Winning Bidder with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto, or rejection of their Contract if the Winning Bidder shall designate such Contract as a Rejected Contract at any time prior to the Closing Date.

H.     ***Sale Notice.***  The  Notice of Auction and Sale Hearing,  substantially  in  the  form attached  hereto  as **Exhibit 2**, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation:  (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Sale Assets to be sold and the Assumed Liabilities to be assumed; (v) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable APA), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds; (vii) notice of the proposed assumption and assignment of Contracts to the Winning Bidder; and no other or further notice of the Sale shall be required.

### IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      Any objections or responses to the Motion that have not been withdrawn, waived, or settled prior to the entry of this order are hereby OVERRULED.

3.      In accordance with the foregoing, the following dates are hereby approved:[2]

| Event | Date |
|---|---|
| Notice of Auction and Sale Hearing | Two (2) business days from entry of this Order |
| Service of Assignment Notice | December 1, 2022, by 11:59 p.m. EST |
| Deadline for Trustee to Provide Notice of Stalking Horse Bidder | December 2, 2022, by 5:00 p.m. EST |
| Assignment Objection Deadline | December 8, 2022, at 4:00 p.m. EST |
| Deadline to Object to Stalking Horse Bidder Designation | December 9, 2022, at 4:00 p.m. EST |
| Bid Deadline | December 9, 2022, at 4:00 p.m. EST |
| Sale Objection Deadline | December 10, 2022, at 4:00 p.m. EST |
| Deadline for Notification of Qualified Bids | December 11, 2022, at 1:00 p.m. EST |
| Auction Date | December 13, 2022, at 9:30 a.m. EST |
| Notification of Winning Bidder and Submission of Final APA | December 14, 2022, at 4:00 p.m. EST |
| Sale Hearing | December 15, 2022, at 1:00 p.m. EST |
| Sale Closing Date | December 30, 2022 |
| Service of Rejection Notice | January 2, 2023, by 11:59 p.m. EST |
| Rejection Objection Deadline | January 9, 2023, at 4:00 p.m. EST |

---

[2] The chart is intended for the convenience of the parties.  Accordingly, the exclusion from this summary chart of any deadline or other notice period otherwise set forth in the Bidding Procedures, Assignment Notice, Notice of Auction and Sale Hearing, or any other notice or document incorporated herein is hereby approved by this Order.  Moreover, the chart presents the dates by which the Sale is assumed to proceed.  However, such dates may be changed pursuant to other terms of this Order.

4.       *Bidding Procedures.*  The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are hereby approved, are incorporated herein by reference and shall govern all bids (each, a "Bid") and proceedings relating to the Sale of the Sale Assets.  The Trustee is authorized to take any and all actions necessary to implement the Bidding Procedures and to pursue a Sale of the Sale Assets in accordance therewith. Notwithstanding the foregoing, the consummation of the Sale shall remain subject to entry of a further order of this Court (the "Sale Order") which shall serve as an order approving the Sale of the Assets free and clear of any interests under section 363(f) of the Bankruptcy Code.   The Trustee is authorized to amend the dates and deadlines set forth in the Bidding Procedures and the Notice of Auction and Sale Hearing, in an exercise of his business judgment, by providing notice of such to the Service Parties.

5.       *Stalking Horse.*  The Trustee is authorized, in his discretion, to designate a Stalking Horse Bidder and enter into a Stalking Horse APA, so long as the Trustee provides notice of the same by filing with the Court and serving upon the Service Parties, as set forth in **Exhibit 6** to this Order, by no later than seven (7) days prior to the Bid Deadline (unless otherwise ordered by the Court).  Any objections to the Trustee's designation of a Stalking Horse Bidder shall be considered Sale Objections (defined below) and must comply with the requirements for a Sale Objection, provided, however, that an objection to the Trustee's designation of a Stalking Horse Bidder must be filed by the Bid Deadline and shall be heard at a specially set hearing as soon as the Court's schedule permits.

6.       *Bid Protections.*  The Bid Protections, as set forth in the Bidding Procedures, are hereby approved and the Trustee is authorized and directed to pay the Bid Protections in accordance with the terms of the Stalking Horse APA without further order of the Court.  Except for any Breakup Fee and/or Expense Reimbursement that the Trustee may agree to provide to the

6

Stalking Horse Bidder, no person or entity shall be entitled to any expense reimbursement, breakup fee, termination fee, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, including whether by virtue of section 503(b) of the Bankruptcy Code or otherwise. The Break-Up Fee and Expense Reimbursement shall constitute an allowed administrative expense claim against the Debtor's estate pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code with priority over all other administrative priority claims.

7.      ***Bid Deadline.***  The deadline by which all Bids for the Sale Assets must be ***actually received*** by the parties specified in the Bidding Procedures is 4:00 p.m. EST, on December 9, 2022. The Trustee, in consultation with SOLIC, shall have sole discretion to determine whether a Bid is a Qualified Bid.  The Trustee shall provide notice to all Initial Bids of whether their Bid was determined to be a Qualified Bid no later than December 11, 2022 at 1:00 p.m. EST.

8.      ***Auction.***  Within two (2) business days from entry of this Order, the Trustee shall serve on all Service Parties the Notice of Auction and Sale Hearing, in substantially the form attached hereto as **Exhibit 2**.  The Auction, if necessary, will take place at 9:30 a.m. EST on December 13, 2022, at the offices of Eversheds Sutherland (US) LLP, 999 Peachtree Street NE, Suite 2300, Atlanta, Georgia 30309, or such other time as the Trustee may notify Qualified Bidders who have submitted Qualified Bids.  The Trustee shall file a notice identifying the Winning Bidder by 4:00 p.m. EST on the date that is one business day following the date the Auction is closed. Promptly after the conclusion of the Auction, but no later than the Sale Hearing, the Trustee shall file the proposed Sale Order, which shall include approval of the Sale as agreed upon between the Trustee and the Winning Bidder.

9.      ***Sale Hearing.***   The Court will hold an **in-person** hearing regarding the final approval of the Sale at the Sale Hearing on the **15th day of December, 2022, commencing at 1:00 P.M. EST in Courtroom 1202**, **at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303**.  The Sale Hearing may be continued from time to time without further notice or with limited or shortened notice to parties other than the announcement of the adjourned date at the Sale Hearing or any continued hearing.

10.     ***Sale Objections.***   Any objection to the Sale and entry of the Sale Order (a "Sale Objection") must be made on or before December 10, 2022, at 4:00 p.m. EST (the "Sale Objection Deadline").  Objections must comply with the requirements set forth in the Notice of Auction and Sale Hearing.  A party's failure to timely file or make an objection in accordance with this Order shall forever bar the assertion of any objection to entry of the Sale Order, and/or consummation of the Sale with the Winning Bidder pursuant to the applicable APA, including the assumption and assignment of the Contracts to the Winning Bidder pursuant to the APA, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

11.     ***Contract Assignment Procedures.***   By 11:59 p.m. EST on December 1, 2022, the Trustee shall serve the Assignment Notice, substantially in the form attached hereto as **Exhibit 3**, on all non-debtor counterparties to the Debtor's Contracts (the "Contract Notice Parties"), identifying, to the extent applicable: (a) the Contract that may be assumed and assigned; (b) the name of the non-Debtor counterparty to such Contract; (c) the Trustee's asserted cure amount for such Contract if it becomes assumed and assigned; (d) the deadline of December 8, 2022 at 4:00 p.m. EST to file an objection (each, an "Assignment Objection") to the proposed cure amount,

assumption and assignment, or adequate assurance.  Any Assignment Objection shall be heard by the Court at the Sale Hearing if not resolved by the Trustee prior thereto.  The inclusion of any Contract as an Assigned Contract on the Assignment Notice shall not obligate the Trustee to assume and assign such Contract to the Winning Bidder nor guarantee assumption and assignment of any Contract under the Sale Order.  Service of the Assignment Notice constitutes proper and timely notice to all Contract Notice Parties under Bankruptcy Rules 2002 and 6006.   Unless an Assignment Objection is granted by the Court with respect to a particular Assigned Contract, the assumption and assignment of all Assigned Contracts shall be provided for in and effective through entry of the Sale Order without further action by the Trustee or notice to any Contract Notice Party.

12.      ***Contract Rejection Procedures.***   Notwithstanding the foregoing, the Winning Bidder shall have until the Sale Closing to designate any Contract as a Rejected Contract.  Within two (2) business days of the Sale Closing, the Trustee shall serve the Rejection Notice, substantially in the form attached hereto as **Exhibit 4**, on any Contract Notice Party whose Contract is so designated as a Rejected Contract and each such party shall have seven (7) days from receipt of the Rejection Notice to file an objection to the rejection of their respective Contract (the "Rejection Objection") in accordance with the requirements for a Rejection Objection set forth in the Rejection Notice.  Any Rejection Objections shall be heard by the Court at a hearing to be scheduled in the Court's discretion.  In the absence of a Rejection Objection or if any Rejection Objection is withdrawn, waived, or denied by the Court, all Rejected Contracts shall be deemed rejected effective as of the Closing Date without further order or notice by the Court.

13.      The Trustee is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15.     The stay periods under Bankruptcy Rule 6006(h) and 6004(d) are hereby waived.

16.     To the extent the provisions of this Order are inconsistent with the provisions of the Motion or the Bidding Procedures, the provisions of this Order shall control and govern.

17.     The Trustee shall, within two (2) days of the entry of this Order, cause a copy of this Order and all attachments hereto to be served by first class mail, postage prepaid,[3] on all Service Parties, and shall file promptly thereafter a certificate of service confirming such service.

18.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

**END OF ORDER**

*(Remainder of page left blank)*

---

[3] First class mail service is not required if the recipient is a registered ECF user who has agreed to waive all other service in favor of ECF service pursuant to Bankruptcy Local Rule 5005-8, in which case ECF notification shall serve as the required service. The party certifying service should certify ECF service on such recipients.

**Prepared and Presented by:**

EVERSHEDS SUTHERLAND (US) LLP

/s/ *David A. Wender*
David A. Wender (Ga. Bar. No. 748117)
Nathaniel T. DeLoatch (Ga. Bar. No. 216330)
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: 404.853.8175
Facsimile: 404.853.8806
Davidwender@eversheds-sutherland.com
NathanielDeLoatch@eversheds-sutherland.us

    and

Erin E. Broderick (Admitted Pro Hac Vice)
227 W Monroe St., Suite 6000
Chicago, IL 60606
Telephone: 312.585.8793
Facsimile: 312.724.9322
Erinbroderick@eversheds-sutherland.us

*Counsel to the Chapter 11 Trustee*

11

## **DISTRIBUTION LIST**

David A. Wender
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996

Lindsay P. S. Kolba
Office of the U.S. Trustee
Suite 362
75 Ted Turner Drive, S.W.
Atlanta, GA 30303

**EXHIBIT 1 TO SALE PROCEDURES ORDER**

**<u>Bidding Procedures</u>**

# BIDDING PROCEDURES[1]

By motion (the "<u>Motion</u>") dated November 7, 2022, the Chapter 11 Trustee (the "<u>Trustee</u>" or, alternatively, the "<u>Seller</u>") for Curepoint, LLC ("<u>Curepoint</u>") sought, among other things, approval of the process and procedures for soliciting bids for and obtaining approval of one or more transactions for the sale (each, a "<u>Sale</u>") of substantially all of Curepoint's assets (the "<u>Sale Assets</u>").

On [●], 2022, the United States Bankruptcy Court for the Northern District of Georgia (the "<u>Bankruptcy Court</u>") entered an order (the "<u>Sale Procedures Order</u>") that, among other things, authorized the Trustee to pursue the Sale through the bidding procedures set forth below (the "<u>Bidding Procedures</u>").

The Sale is subject to competitive bidding and will be subject to the approval of the Bankruptcy Court, which shall be sought on the date set forth below.

Set forth below are the Bidding Procedures to be employed with respect to the proposed Sale.

## I.    Assets to Be Sold and Excluded Assets

The Seller proposes to sell the Sale Assets pursuant to the terms of an Asset Purchase Agreement, substantially in the form attached as **<u>Exhibit 5</u>** to the Sale Procedures Order (such form shall be referred to herein as the "<u>APA</u>"). The APA will contain a detailed description of the Sale Assets to be acquired and also the assets that will be excluded from the Sale (such excluded assets are referred to as the "<u>Excluded Assets</u>") as well as any liabilities to be assumed (the "<u>Assumed Liabilities</u>"). The APA submitted by a bidder, and the ultimate APA accepted by the Trustee, may vary the terms of the APA only as accepted by the Trustee in his sole discretion.

## II.    Sale Free of All Interests

The Trustee seeks to sell all of Curepoint's right, title and interest in and to the Sale Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "<u>Encumbrances</u>") to the fullest extent permitted by and in accordance with section 363(f) of the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the Sale.  The Trustee reserves the right to modify the Bidding Procedures, in consultation with SOLIC Capital Advisors, LLC ("<u>SOLIC</u>"), in any manner that will best promote the goals of the Sale, including, but not limited to, authority to consummate the Sale pursuant to or in conjunction with a chapter 11 plan. Nothing in the Bidding Procedures shall prevent the Trustee, in the exercise of his business judgment, from considering bids for the purchase of less than substantially all of the Debtor's assets.

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Sale Procedures Order.

### III.     Sale Procedures

The Trustee, with the advice of SOLIC, shall be in charge of and responsible for managing the marketing of the Sale. The Trustee may choose to sell all or less than all of the Debtor's assets and may choose to sell to multiple parties in order obtain the most value for the Debtor's estate.

Upon execution of a confidentiality agreement in a form acceptable to the Trustee, any bidder that wishes to conduct due diligence on the Debtor or the Sale Assets shall be granted access to all material information that has been or will be provided to other bidders, subject, in all cases, to the terms and conditions of the confidentiality agreement, applicable law or other restrictions the Trustee may deem necessary or appropriate to protect the proprietary information of the Debtor. The due diligence period for bidders will end one (1) business day prior to the Bid Deadline (as defined below). The Debtor shall coordinate all reasonable requests for additional information and due diligence access from potential bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

### IV.     Requirements to Submit an Initial Bid

On or before **December 9, 2022 at 4:00 p.m. EST** (the "Bid Deadline"), each bidder shall submit to SOLIC and the Trustee: (a) a cash deposit equal to the greater of (x) $250,000 or (y) 10% of the purchase price (the "Deposit"); (b) reasonable proof acceptable to the Trustee, in consultation with SOLIC, of the bidder's ability to consummate a purchase of the Sale Assets and assumption of the Assumed Liabilities (as set forth in the APA), including copies of such bidders financial statements, certified to be true, correct and complete in all material respects and evidence of sufficient financing, and (c) an executed APA on substantially the terms, or on more favorable terms, than those set forth in the APA attached to the Sale Procedures Order and such APA shall: (i) specify the amount of cash or other form of consideration acceptable to the Trustee offered by the bidder for the Sale Assets and Assumed Liabilities; (ii) not be subject to unperformed due diligence or obtaining financing nor provide for an expense reimbursement or break-up amount in favor of such bidder (unless preapproved by the Trustee as provided for herein); (iii) constitute an irrevocable offer by such bidder to complete its proposed purchase upon the terms set forth therein, and must be irrevocable until closing of the Sale of the Sale Assets to the Winning Bidder or Back-Up Bidder (as applicable); (iv) seek to acquire the Sale Assets; and (v) be accompanied by a redline version of the APA submitted against the form APA attached to the Sale Procedures Order (each, an "Initial Bid"). The Deposits will be held in escrow by the Trustee's Counsel, David A. Wender, in his attorney trust account, which by law does not bear interest.

### V.     Selection of Stalking Horse Bidder

The Trustee may, in his sole discretion, select a stalking horse bidder (a "Stalking Horse Bidder") and enter into a stalking horse purchase agreement (the "Stalking Horse APA"). If the Trustee designates a Stalking Horse Bidder, the Trustee shall file notice of such designation no later than seven (7) days prior to the Bid Deadline. Any objections to the Trustee's designation of a Stalking Horse Bidder shall be considered Sale Objections and must comply with the requirements for a Sale Objection, provided, however, that an objection to the Trustee's designation of a Stalking Horse Bidder must be filed by the Bid Deadline and shall be heard at a specially set hearing as soon as the Court's schedule permits.

The Trustee is authorized, in an exercise of his business judgment, to provide a Stalking Horse Bidder with a break-up fee not to exceed two percent (2%) of the purchase price provided for under the Stalking Horse APA (the "Breakup Fee") and/or an expense reimbursement of no more than $75,000 for its reasonable, documented and necessary out-of-pocket expenses incurred with professionals and other third parties in connection with submitting an Initial Bid, performing due diligence on the Sale Assets, and submitting the Stalking Horse APA (the "Expense Reimbursement" and with the Breakup Fee, the "Bid Protections"). The Bid Protections shall only be paid to a Stalking Horse Bidder if such Stalking Horse Bidder is not designated as the Winning Bidder and must otherwise comply with the requirements of the Sale Procedures Order and Stalking Horse APA. No later than **4:00 p.m. EST on December 10, 2022**, the Stalking Horse Bidder must provide to the Trustee a detailed accounting of the qualifying out-of-pocket expenses that the Stalking Horse Bidder contends should be included in the Expense Reimbursement. Failure of the Stalking Horse Bidder to submit the detailed accounting by such deadline will result in forfeiture of the Stalking Horse Bidder's right to the Expense Reimbursement. No "insider" of the Debtor (as such term is defined in the Bankruptcy Code) shall be eligible for any Bid Protections notwithstanding that insiders of the Debtor may be selected as a Stalking Horse Bidder.

All bidders submitting bids, other than the Stalking Horse Bidder (if identified and approved), shall bear their own fees and expenses in connection with the bid, the bid process, the Auction and the proposed sale, whether or not such sale is ultimately approved, unless otherwise agreed to by the Trustee and approved by the Court. Further, by submitting a bid, a bidder shall be deemed to waive its right to pursue substantial contribution claim under section 503 of the Bankruptcy Code in any way related to the submission of its bid, the bid process, the Auction or the Sale.

## VI.     Determination of Qualified Bids and Requirements to Participate in the Auction

On or before **December 11, 2022 at 1:00 p.m. EST**, the Trustee shall provide notice to Initial Bidders, via electronic mail, of whether their Initial Bid satisfies all necessary requirements for a qualified bid (a "Qualified Bid"). Only those persons who have submitted a Qualified Bid in compliance with the Sale Procedures Order shall be a "Qualified Bidder." If a bid submitted on or before the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Trustee may work with such bidder in an effort to cure any defects in the Initial Bid and to cause such Initial Bid to become a Qualified Bid, in consultation with SOLIC, prior to the commencement of the Auction.

## VII.     Procedures for the Auction

In the event the Trustee receives more than one Qualified Bid, the Trustee shall conduct an auction (the "Auction") at which each Qualified Bidder may participate. The Auction shall be held at the office of the Trustee (Eversheds Sutherland (US) LLP, 999 Peachtree Street, NE, Suite 2300, Atlanta, GA 30309-3996) and shall commence on **December 13, 2022 at 9:30 a.m. EST.** In the Trustee's sole discretion, the date and time for the Auction may be postponed or adjourned upon notice to all Qualified Bidders. Other than as expressly set forth herein, the Trustee may conduct the Auction in the manner he reasonably determines will result in the highest or otherwise best bid, including holding the Auction virtually by video.

The Stalking Horse Bid, if applicable, shall be the first bid at the Auction. If the Trustee did not identify a Stalking Horse Bidder, immediately prior to the commencement of the Auction, the Trustee will announce the highest and/or best offer of a Qualified Bidder selected, in consultation with SOLIC (the "Initial High Bid"). An "Overbid" is any Bid made at the Auction after the Stalking Horse Bid or Initial High Bid (as applicable). Any Overbid must comply with the following conditions: (a) the first Overbid (the "First Overbid") after the Stalking Horse Bid or Initial High Bid (as applicable) must be for an amount equal to (i) one hundred five percent (105%) of the cash purchase price contained in the Stalking Horse Bid or Initial High Bid (as applicable), plus (ii) the amount of the Expense Reimbursement.  All subsequent Overbids after the first Overbid ("Additional Overbids") shall be at least one hundred five percent (105%) of the previous Overbid.  If the Stalking Horse Bidder submits an Additional Overbid, it will receive a credit equal to the Expense Reimbursement. All Overbids, including the First Overbid and all Additional Overbids, must be on the same terms as set forth in the Stalking Horse APA, unless the Trustee approves the Overbidder's changes to the APA. In his sole discretion, the Trustee may require any Overbidder to provide financial evidence of its ability to close on the amount of any Overbid.

At the conclusion of the Auction, the Trustee shall identify the highest and best Bid for the Sale Assets (each highest and best Auction Bid selected is referred to as a "Winning Bid"). Within one (1) business day after the selection of each Winning Bid at the Auction, the Winning Bidder must submit to the Trustee a revised APA that updates the purchase price to reflect the amount of the Winning Bid. No other changes are to be made to the APA, unless authorized by the Trustee. Each Winning Bid shall be irrevocable and each Winning Bidder will be obligated to promptly close the Sale provided the Bankruptcy Court approves the Sale to such Winning Bidder. In addition, at the conclusion of the Auction, the Trustee may identify the second highest and best bid for the Sale Assets (the "Back-Up Bidder") who shall be required to close on the purchase of the Sale Assets should the Winning Bidder fail to close on or before **December 30, 2022** (the "Closing Date"). The Back-Up Bidder shall be required to leave its Deposit in place until such time as either the Winning Bidder closes on the Sale or the Back-Up Bidder closes on the Sale pursuant to its Back-Up Bid. If the Winning Bidder fails to close, the Trustee shall be authorized to identify the Back-Up Bidder as the new Winning Bidder and proceed with closing of a sale of the Sale Assets to such new Winning Bidder.

## VIII.    Acceptance of Auction Bids

The Trustee shall sell the Sale Assets to each Winning Bidder upon the approval of each Winning Bid by the Bankruptcy Court at the Sale Hearing. The Trustee's presentation of a particular Bid to the Bankruptcy Court for approval does not constitute the Trustee's acceptance of the bid. The Trustee will be deemed to have accepted a Winning Bid only after the Bankruptcy Court enters the final Sale Order approving acceptance of such Winning Bid.

## IX.    Assignment or Rejection of Executory Contracts and Unexpired Leases

By **11:59 p.m. EST on December 1, 2022**, the Trustee shall file with the Bankruptcy Court a notice (the "Assignment Notice"), setting forth those Contracts proposed to be assumed and assigned (the "Assigned Contracts"), with the amounts necessary to cure defaults and/or to provide compensation or adequate assurance of compensation for actual pecuniary loss resulting from a

default under each Assigned Contract (such amounts, "Cure Amount").[2] The Trustee shall serve all counterparties to all Contracts with the Assignment Notice, specifically stating that (a) the Trustee is or may be seeking to assume and assign their respective Contract and (b) notifying such parties that they shall have no later than **4:00 p.m. EST on December 8, 2022** to file with the Bankruptcy Court an objection (an "Assignment Objection") regarding the potential assumption and assignment of their Contract, including any objection related to a Cure Amount or adequate assurance.  Any Assignment Objection must satisfy the requirements set forth in the Assignment Notice and shall be heard by the Court at the Sale Hearing to be held on **December 15, 2022 at 1:00 p.m. EST**.

The Winning Bidder shall have up to the Sale Closing to reclassify any Assigned Contract as a Rejected Contract by amending the applicable schedules to the APA.  Within two (2) business days of the Sale Closing and final designation of any Rejected Contracts, the Trustee shall provide notice to all applicable Contract counterparties of any designated Rejected Contract (substantially in the form attached to the Sale Procedures Order as **Exhibit 4**, the "Rejection Notice").  Parties receiving the Rejection Notice shall have seven (7) days from service of the Rejection Notice to file any objection to the Rejection Notice (the "Rejection Objection") in accordance with the requirements set forth in the Rejection Notice.  The Court will consider any timely filed Rejection Objection at a hearing to be scheduled in its discretion.  In the absence of the timely filed Rejection Objection or if a Rejection Objection is withdrawn, waived, or denied by the Court, any Rejected Contract shall be deemed rejected effective as of the Sale Closing.

## X.    Sale Hearing

The Court will hold an **in-person** hearing regarding the final approval of the Sale at the Sale Hearing on the **15th day of December, 2022, commencing at 1:00 P.M. EST in Courtroom 1202, at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303** (the "Sale Hearing").  The Sale Hearing may be continued from time to time without further notice or with limited or shortened notice to parties other than the announcement of the adjourned date at the Sale Hearing or any continued hearing. The Sale Hearing may be adjourned or rescheduled by the Trustee, subject to the Court's approval, without notice other than by an announcement of the adjourned date at the Sale Hearing.

## XI.    Sale Objections

Responses or objections, if any, to the entry of the Sale Order shall be filed with the Bankruptcy Court and served, so as to be actually received no later than **December 10, 2022 at 4:00 p.m. EST** (the "Sale Objection Deadline") on: (i) the Trustee via hand delivery at Eversheds Sutherland (US) LLP, 999 Peachtree Street, NE, Suite 2300, Atlanta, Georgia 30309, or via electronic mail at Davidwender@eversheds-sutherland.com; (ii) counsel to the Trustee, Nathan DeLoatch via hand delivery at Eversheds Sutherland (US) LLP, 999 Peachtree Street, NE, Suite 2300, Atlanta, Georgia 30309, or via electronic mail at nathanieldeloatch@eversheds-sutherland.com and (iii) the Office of the United States Trustee for the Northern District of Georgia (Attn: Lindsay Kolb, Esq.)

---

[2]  In cases in which the Trustee is unable to establish that a default exists, the relevant Cure Amount shall be set at $0.00 in the Assignment Notice.

## XII.    Return of Deposits

Each Deposit of a Winning Bidder or Back-Up Bidder (if applicable) shall be applied to the purchase price at the Closing of the Sale. Except for the Winning Bidder and the Back-Up Bidder, the Deposits of all other Qualified Bidders shall be returned within three (3) business days after the conclusion of the Sale Hearing.  If the Winning Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Winning Bidder, the Trustee shall be entitled to retain the Deposit as liquidated damages resulting from the breach or failure to perform by the Winning Bidder.

## XIII.    Delivery of Required Documents to SOLIC and the Trustee

All documents required to be delivered to SOLIC hereunder shall be delivered to SOLIC before the applicable deadline hereunder by either (i) via hand delivery at 3284 Northside Parkway, Suite 450, Atlanta, Georgia 30327, Attention: Gregory Hagood or (ii) via electronic mail at ghagood@soliccapital.com.

All documents required to be delivered to the Trustee hereunder shall be delivered to the Trustee before the applicable deadline hereunder by either (i) via hand delivery at Eversheds Sutherland (US) LLP, 999 Peachtree Street, NE, Suite 2300, Atlanta, Georgia 30309, Attention: David Wender, or (ii) via electronic mail at Davidwender@eversheds-sutherland.com

**EXHIBIT 2 TO SALE PROCEDURES ORDER**

**<u>Notice of Auction and Sale Hearing</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CUREPOINT, LLC, | Case No. 22-56501- PMB |
| Debtor. | |

**<u>NOTICE OF AUCTION AND SALE HEARING</u>**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On November 7, 2022 the Chapter 11 Trustee (the "<u>Trustee</u>") filed with the U.S. Bankruptcy Court for the Northern District of Georgia (the "<u>Bankruptcy Court</u>") a Motion for authority to conduct an auction (the "<u>Sale</u>"), free and clear of any and all liens, claims or other encumbrances, of all right, title and interest of Debtor in and to the Sale Assets (as defined therein), to approve bidding procedures governing the Sale, and authority to assume and assign or reject executory contracts and unexpired leases of the Debtor (collectively, the "<u>Contracts</u>"). Contemporaneously therewith, the Trustee filed a form of an Asset Purchase Agreement (the "<u>APA</u>") to be used in submitting bids on the Sale Assets. Certain Excluded Assets (as defined in the APA) are excluded from the Sale.

2.      On [●], 2022, the Bankruptcy Court entered an order authorizing, among other things, the Trustee to conduct the Sale, approving Bidding Procedures, and approving procedures for assumption and assignment or rejection of the Contracts (the "<u>Sale Procedures Order</u>"). More information about the Debtor, its assets, the APA, and the Sale Procedures Order may be obtained from SOLIC Capital, LLC, Attention: Gregory Hagood, by e-mail at ghagood@soliccapital.com.

3.      The Bidding Procedures govern the manner in which the Sale Assets are to be sold. All parties interested in making a bid for the Sale Assets must comply with the terms of the Sale Procedures Order and the Bidding Procedures.

4.      Pursuant to the Bidding Procedures, each Qualified Bidder (as defined therein) shall be invited to participate in an Auction at the office of the Trustee's counsel, Eversheds Sutherland (US) LLP, 999 Peachtree St. NE, Suite 2300, Atlanta, Georgia 30309, which such Auction must be attended in person or in the manner that the Trustee reasonably determines will result in the highest or otherwise best bid and shall commence at **9:30 a.m. EST on December 13, 2022**.

5.      The Court will hold an **<u>in-person</u>** hearing regarding the final approval of the Sale at the Sale Hearing on the **<u>15th day of December, 2022, commencing at 1:00 P.M. EST in Courtroom 1202, at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303</u>** (the "<u>Sale Hearing</u>"). The Sale Hearing may be continued from time to time without further notice or with limited or shortened notice to parties other than the announcement of the adjourned date at the Sale Hearing or any continued

hearing. At the Sale Hearing, the Court will consider approval of the highest and best offer by a Qualified Bidder (the "<u>Winning Bidder</u>") and of the APA by and between the Trustee and the Winning Bidder (the "<u>Sale Order</u>"). The Sale Hearing may be adjourned or rescheduled from time to time without further notice, in the Trustee's reasonable discretion.

6.      A copy of the Sale Procedures Order, the Bidding Procedures, and the APA may be obtained by (a) sending a written request to the Trustee's counsel, Eversheds Sutherland (US) LLP, 999 Peachtree St. NE, Suite 2300, Atlanta, Georgia 30309 (Attn: Nathaniel T. DeLoatch) or (b) by accessing the Bankruptcy Court's docket via Pacer, for a minimal fee.

7.      OBJECTIONS TO THE SALE (OTHER THAN THE PROPOSED ASSUMPTION AND ASSIGNMENT OR REJECTION OF THE DEBTOR'S CONTRACTS, INCLUDING PROPOSED CURE AMOUNTS) MUST BE MADE IN WRITING, FILED WITH THE BANKRUPTCY COURT AND SERVED SO AS TO BE ACTUALLY BE RECEIVED BY **DECEMBER 10, 2022 AT 4:00 P.M**. EASTERN STANDARD TIME (THE "<u>SALE OBJECTION DEADLINE</u>").

8.      ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH THE PRECEDING PARAGRAPH AND APPLICABLE BANKRUPTCY RULES ON THE FOLLOWING PARTIES: (i) the Trustee, c/o Eversheds Sutherland (US) LLP, 999 Peachtree St. NE, Suite 2300, Atlanta, Georgia 30309 (Attn: David A. Wender); (ii) Trustee's Counsel, c/o Eversheds Sutherland (US) LLP, Suite 2300, Atlanta, Georgia 30309 (Attn: Nathaniel Deloatch); (iii) Debtor, c/o Curepoint, LLC, 11175 Cicero Drive, Suite 100, Alpharetta, Georgia 30022; (iv) Debtor's Counsel, c/o Rountree, Leitman, Klein & Geer, LLC, Century Plaza I, 2987 Clairmont Road, Suite 350, Atlanta, Georgia, 30329 (Attn: Will B. Geer); and (v) the Office of the United States Trustee for the Northern District of Georgia, 362 Richard Russell Federal Building, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303 (Attn: Lindsay P.S. Kolba).

9.      The failure of any person or entity to file a Sale Objection on or before the Sale Objection Deadline shall be deemed to consent to the Sale and entry of the Sale Order and be a bar to the assertion of any objection to the Motion, the Sale Procedures Order and the exhibits thereto, including the Bidding Procedures, the Auction, and the Sale.

10.     The Sale Procedures Order approves the Assignment Notice to be provided to all Contract counterparties and Rejection Notice to be provided to all Rejected Contract counterparties, which together provide for (i) the procedure for the assumption and assignment or rejection of the Debtor's Contracts in connection with the Sale and (ii) procedures for any party that wishes to object to the treatment of its Contract.

11.     If a plan election is made after the Sale Objection Deadline, no party in interest that failed to file a timely objection to entry of the Sale Order shall be permitted to object to confirmation of the plan on any grounds that could have formed the basis for an objection to the entry of the Sale Order.

12.     This Notice is subject to the full terms and conditions of the Sale Procedures Order and the Bidding Procedures, which shall control in the event of any conflict. The Trustee

encourages parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: November [●], 2022

Respectfully Submitted,

/s/ _____

David A. Wender (Ga. Bar No. 748117)
Nathaniel T. DeLoatch (Ga. Bar No. 216330)
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: 404.853.8175
Facsimile: 404.853.8806
Davidwender@eversheds-sutherland.com
Nathanieldeloatch@eversheds-sutherland.com

– and –

Erin Broderick (Admitted Pro Hac Vice)
227 W Monroe St., Suite 6000
Chicago, IL 60606
Telephone: 312.585.8793
Facsimile: 312.724.9322
Erinbroderick@eversheds-sutherland.us

*Counsel for the Chapter 11 Trustee*

**EXHIBIT 3 TO SALE PROCEDURES ORDER**

**<u>Assignment Notice</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CUREPOINT, LLC, | Case No. 22-56501- PMB |
| Debtor. | |

**NOTICE OF TRUSTEE'S INTENT TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

PLEASE TAKE NOTICE THAT on August 19, 2022, Curepoint, LLC ("Curepoint" or the "Debtor") filed its voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"). On October 19, 2022, the Court appointed David A. Wender as the chapter 11 trustee (the "Trustee"), tasking him with the operation and management of the Debtor and its business.

PLEASE TAKE FURTHER NOTICE THAT on November 7, 2022, the Trustee filed a motion [Doc. No. 124] (the "Motion") with the Court seeking, among other things, approval of certain procedures (the "Contract Procedures") applicable to the assumption and assignment or the rejection of the Debtor's executory contracts and unexpired leases (collectively, the "Contracts"), in connection with a sale that the Trustee intends to conduct of substantially all of the Debtor's assets (the "Sale").

PLEASE TAKE FURTHER NOTICE THAT, on November [●], 2022, the Court entered an order (the "Order") granting the Motion as set forth therein [Doc. No. ●] and approving the Contract Procedures for the assumption and assignment or rejection of the Contracts. A copy of the Order is attached hereto as **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE THAT the Trustee may seek to assume and assign to the Winning Bidder of the Sale all of the Contracts listed on **Exhibit 2** attached hereto (the "Assigned Contracts") pursuant to section 365 of the Bankruptcy Code. The Trustee has set forth on **Exhibit 2** hereto the amounts due and owing, if any, under the Assigned Contracts through the date hereof (the "Cure Amounts"). The Bankruptcy Code requires that the Cure Amounts (which include any amounts owing on account of the Debtor's prepetition obligations under the Assigned Contracts) be paid in full to the parties owed such amounts upon the Trustee's assumption and assignment of the Assigned Contracts.

PLEASE TAKE FURTHER NOTICE THAT THIS NOTICE DOES NOT OBLIGATE THE TRUSTEE TO ASSUME AND ASSIGN YOUR CONTRACT. THE WINNING BIDDER MAY DECIDE TO REJECT ANY CONTRACT LISTED ON EXHIBIT 2 AT ANY TIME PRIOR TO THE CLOSING OF THE SALE (EXPECTED TO OCCUR ON DECEMBER 30, 2022) FOR ANY REASON IN ITS SOLE DISCRETION. TO THE EXTENT THAT YOUR CONTRACT IS DESIGNATED FOR REJECTION AND IS NO LONGER DESIGNATED AN ASSIGNED CONTRACT, THE TRUSTEE WILL PROVIDE YOU WITH A SEPARATE REJECTION NOTICE NO LATER THAN TWO (2) BUSINESS DAYS AFTER THE SALE CLOSING.

PLEASE TAKE FURTHER NOTICE THAT ANY PARTY SEEKING TO ASSERT AN OBJECTION TO THE ASSUMPTION AND ASSIGNMENT ANY CONTRACT OR TO THE

VALIDITY OF ANY CURE AMOUNT AS DETERMINED BY THE TRUSTEE OR TO OTHERWISE ASSERT THAT ANY OTHER AMOUNTS, DEFAULTS, CONDITIONS OR PECUNIARY LOSSES MUST BE CURED OR SATISFIED UNDER THE ASSIGNED CONTRACTS MUST FILE AND SERVE ITS OBJECTION (AN "ASSIGNMENT OBJECTION") SETTING FORTH ITS OBJECTION WITH SPECIFICITY SO THAT SUCH ASSIGNMENT OBJECTION IS ACTUALLY RECEIVED BY **DECEMBER 8, 2022 AT 4:00 PM., EASTERN STANDARD TIME** (THE "ASSIGNMENT OBJECTION DEADLINE").

PLEASE TAKE FURTHER NOTICE THAT any Assignment Objection must set forth the cure amount or other obligation the objecting party asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment and the support therefor, if any.

PLEASE TAKE FURHTER NOTICE THAT THE INCLUSION OF ANY CONTRACT ON EXHIBIT 2 SHALL NOT CONSTITUTE OR BE DEEMED A DETERMINATION OR ADMISSION BY THE DEBTOR OR THE TRUSTEE THAT A PARTICULAR CONTRACT IS AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITHIN THE MEANING OF THE BANKRUPTCY CODE. ALL RIGHTS WITH RESPECT THERETO ARE RESERVED. REFERENCES TO ANY CONTRACT ARE TO THE APPLICABLE AGREEMENT AND OTHER OPERATIVE DOCUMENTS ON EXHIBIT 2, AS THEY MAY HAVE BEEN AMENDED, MODIFIED OR SUPPLEMENTED FROM TIME TO TIME AND AS MAY BE FURTHER AMENDED, MODIFIED, OR SUPPLEMENTED BY THE PARTIES THERETO.

PLEASE TAKE FURTHER NOTICE THAT ALL ASSIGNMENT OBJECTIONS MUST BE FILED WITH THE COURT AND SERVED ON THE FOLLOWING SO AS TO BE RECEIVED BY THE APPLICABLE DEADLINE SET FORTH ABOVE: (I) THE TRUSTEE, C/O EVERSHEDS SUTHERLAND (US) LLP, 999 PEACHTREE ST. NE, SUITE 2300, ATLANTA, GEORGIA 30309 (ATTN: DAVID A. WENDER); (II) COUNSEL TO THE TRUSTEE, C/O EVERSHEDS SUTHERLAND (US) LLP, SUITE 2300, ATLANTA, GEORGIA 30309 (ATTN: NATHANIEL DELOATCH); (III) THE DEBTOR, C/O CUREPOINT, LLC, 11175 CICERO DRIVE, SUITE 100, ALPHARETTA, GEORGIA 30022; (IV) COUNSEL TO THE DEBTOR, C/O ROUNTREE, LEITMAN, KLEIN & GEER, LLC, CENTURY PLAZA I, 2987 CLAIRMONT ROAD, SUITE 350, ATLANTA, GEORGIA, 30329 (ATTN: WILL B. GEER); AND (V) THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE NORTHERN DISTRICT OF GEORGIA, 362 RICHARD RUSSELL FEDERAL BUILDING, 75 TED TURNER DRIVE, S.W., ATLANTA, GEORGIA 30303 (ATTN: LINDSAY P.S. KOLBA).

PLEASE TAKE FURTHER NOTICE THAT if, as to any Assigned Contract, no Assignment Objection is received by the Assignment Objection Deadline, such Assigned Contract shall be deemed assumed by the Trustee and assigned to the Winning Bidder without further order of the Court or notice to you, effective as of the Sale Closing or such other date specified in the APA. If an Assignment Objection is received by the Assignment Objection Deadline and the Trustee and/or the Winning Bidder is unable to resolve such objection consensually, the Assignment Objection shall be heard by the Court at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU AGREE WITH THE CURE AMOUNTS SET FORTH ON EXHIBIT 2 AND DO NOT OTHERWISE OBJECT TO THE TRUSTEE'S ASSUMPTION AND ASSIGNMENT OF YOUR CONTRACT YOU NEED NOT TAKE ANY FURTHER ACTION.**

PLEASE TAKE FURTHER NOTICE THAT, as noted above, the Winning Bidder shall have until the Sale Closing to provide to the Trustee its final designation of Contracts to be assumed and assigned under the APA and may reclassify any Assigned Contract as a Rejected Contract through the Sale Closing.

2

Within two (2) business days of the Sale Closing, the Trustee shall provide a separate Rejection Notice to any applicable counterparty to a Contract that is designated as a Rejected Contract.  Any party who receives the Rejection Notice shall have seven (7) days from service of the Rejection Notice to file their objection to the Rejection Notice and serve the same upon the Trustee and all other parties entitled to notice thereof under the Bankruptcy Rules.  If a Rejection Objection is received by the applicable deadline and the Trustee and/or the Winning Bidder is unable to resolve such objection consensually, the proposed rejection which is the subject of such Rejection Objection shall be subject to further order of the Court and shall be heard at a hearing to be scheduled by the Court in its discretion.  However, the rejection of any Rejected Contract approved by the Court or otherwise not subject to a Rejection Objection shall be deemed rejected effective as of the Sale Closing.

PLEASE TAKE FURTHER NOTICE THAT the Trustee shall have the right, in his sole discretion, to elect to seek to close the Sale through or in connection with confirmation of a chapter 11 plan (a "Plan Election"). If a Plan Election is made, then, among other things, the Sale Hearing may occur concurrently with the hearing to confirm such chapter 11 plan (the "Confirmation Hearing") and the order confirming such chapter 11 plan (the "Confirmation Order") (and not the Sale Order) would approve the Sale. As such, the Bidding Procedures reserve the Trustee's right to seek approval of the Sale in connection with and pursuant to a chapter 11 plan.

PLEASE TAKE FURTHER NOTICE THAT a complete copy of the Motion and related documentation may be obtained by (a) sending a written request to counsel to the Trustee, (i) Eversheds Sutherland (US) LLP, Suite 2300, Atlanta, Georgia 30309 (Attn: Nathaniel DeLoatch) or (ii) Nathanieldeloatch@eversheds-sutherland.com or (b) through the Bankruptcy Court's docket via Pacer, which can be accessed for a minimal fee.

Dated: [●], 2022

<div style="margin-left:40%">

/s/
David A. Wender (Ga. Bar No. 748117)
Nathaniel T. DeLoatch (Ga. Bar No. 216330)
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: 404.853.8175
Facsimile: 404.853.8806
Davidwender@eversheds-sutherland.com
Nathanieldeloatch@eversheds-sutherland.com

– and –

Erin Broderick (Admitted Pro Hac Vice)
227 W Monroe St., Suite 6000
Chicago, IL 60606
Telephone: 312.585.8793
Facsimile: 312.724.9322
Erinbroderick@eversheds-sutherland.us

*Counsel for the Chapter 11 Trustee*

</div>

3

**Exhibit 1 to the Assignment Notice**

(Sale Procedures Order)

**Exhibit 2 to the Assignment Notice**

(List of Executory Contracts and Unexpired Leases to be Assumed
and Respective Cure Amounts)

**EXHIBIT 4 TO THE SALE PROCEDURES ORDER**

**<u>Rejection Notice</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CUREPOINT, LLC, | Case No. 22-56501- PMB |
| Debtor. | |

**NOTICE OF REJECTION OF CERTAIN EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES**

PLEASE TAKE NOTICE THAT on August 19, 2022, Curepoint, LLC ("Curepoint" or the "Debtor") filed its voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"). On October 19, 2022, the Court appointed David A. Wender as the chapter 11 trustee (the "Trustee"), tasking him with the operation and management of the Debtor and its business.

PLEASE TAKE FURTHER NOTICE THAT on November 7, 2022, the Trustee filed a motion [Doc. No. 124] (the "Motion") with the Court seeking, among other things, approval of certain procedures (the "Contract Procedures") applicable to the assumption and assignment or the rejection of the Debtor's executory contracts and unexpired leases (collectively, the "Contracts"), in connection with a sale that the Trustee intends to conduct of substantially all of the Debtor's assets (the "Sale").

PLEASE TAKE FURTHER NOTICE THAT, on November [●], 2022, the Court entered an order (the "Order") granting the Motion as set forth therein [Doc. No. ●] and approving the Contract Procedures for the assumption and assignment or rejection of the Contracts. A copy of the Order is attached hereto as **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE THAT that, by receiving this notice (the "Rejection Notice"), you are hereby notified that all Contracts set forth on **Exhibit 2** attached hereto are being rejected (the "Rejected Contracts") pursuant to section 365 of the Bankruptcy Code. In the event that a Contract shown on **Exhibit 2** was previously designated an Assigned Contract under the Assignment Notice, such Contract has been reclassified as a Rejected Contract by the Winning Bidder pursuant to the rights and authority granted to it by the Order and Bidding Procedures.

PLEASE TAKE FURHTER NOTICE THAT THE INCLUSION OF ANY CONTRACT ON EXHIBIT 2 SHALL NOT CONSTITUTE OR BE DEEMED A DETERMINATION OR ADMISSION BY THE DEBTOR OR THE TRUSTEE THAT A PARTICULAR CONTRACT IS AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITHIN THE MEANING OF THE BANKRUPTCY CODE. ALL RIGHTS WITH RESPECT THERETO ARE RESERVED. REFERENCES TO ANY CONTRACT ARE TO THE APPLICABLE AGREEMENT AND OTHER OPERATIVE DOCUMENTS ON EXHIBIT 2, AS THEY MAY HAVE BEEN AMENDED, MODIFIED OR SUPPLEMENTED FROM TIME TO TIME AND AS MAY BE FURTHER AMENDED, MODIFIED, OR SUPPLEMENTED BY THE PARTIES THERETO.

PLEASE TAKE NOTICE THAT you shall have until **4:00 p.m. EST on January 9, 2023** to file an objection to the Rejection Notice (a "Rejection Objection").  If a Rejection Objection is timely filed and the Trustee and/or the Winning Bidder is unable to consensually resolve a Rejection Objection, the Rejection Objection shall be subject to further order of the Court and shall be heard at a hearing to be scheduled in the Court's discretion.  In the absence of a timely filed Rejection Objection or if a Rejection Objection is withdrawn, waived, or denied by the Court, all Rejected Contracts shall be deemed rejected effective as of the Closing Date without further order or notice by the Court.  You will be provided with information regarding filing a proof of claim for damages arising from the rejection of your Contract by separate notice.

PLEASE TAKE FURTHER NOTICE THAT ALL REJECTION OBJECTIONS MUST BE FILED WITH THE COURT AND SERVED ON THE FOLLOWING SO AS TO BE RECEIVED BY THE APPLICABLE DEADLINE SET FORTH ABOVE: (I) THE TRUSTEE, C/O EVERSHEDS SUTHERLAND (US) LLP, 999 PEACHTREE ST. NE, SUITE 2300, ATLANTA, GEORGIA 30309 (ATTN: DAVID A. WENDER); (II) COUNSEL TO THE TRUSTEE, C/O EVERSHEDS SUTHERLAND (US) LLP, SUITE 2300, ATLANTA, GEORGIA 30309 (ATTN: NATHANIEL DELOATCH); (III) THE DEBTOR, C/O CUREPOINT, LLC, 11175 CICERO DRIVE, SUITE 100, ALPHARETTA, GEORGIA 30022; (IV) COUNSEL TO THE DEBTOR, C/O ROUNTREE, LEITMAN, KLEIN & GEER, LLC, CENTURY PLAZA I, 2987 CLAIRMONT ROAD, SUITE 350, ATLANTA, GEORGIA, 30329 (ATTN: WILL B. GEER); AND (V) THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE NORTHERN DISTRICT OF GEORGIA, 362 RICHARD RUSSELL FEDERAL BUILDING, 75 TED TURNER DRIVE, S.W., ATLANTA, GEORGIA 30303 (ATTN: LINDSAY P.S. KOLBA).

PLEASE TAKE FURTHER NOTICE THAT a complete copy of the Motion and related documentation may be obtained by (a) sending a written request to counsel to the Trustee, (i) Eversheds Sutherland (US) LLP, Suite 2300, Atlanta, Georgia 30309 (Attn: Nathaniel DeLoatch) or (ii) Nathanieldeloatch@eversheds-sutherland.com or (b) through the Bankruptcy Court's docket via Pacer, which can be accessed for a minimal fee.

Dated: January [●], 2023

/s/
David A. Wender (Ga. Bar No. 748117)
Nathaniel T. DeLoatch (Ga. Bar No. 216330)
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: 404.853.8175
Facsimile: 404.853.8806
Davidwender@eversheds-sutherland.com
Nathanieldeloatch@eversheds-sutherland.com

– and –

Erin Broderick (Admitted Pro Hac Vice)
227 W Monroe St., Suite 6000
Chicago, IL 60606
Telephone: 312.585.8793
Facsimile: 312.724.9322
Erinbroderick@eversheds-sutherland.us

*Counsel for the Chapter 11 Trustee*

**Exhibit 1 to the Rejection Notice**

(Sale Procedures Order)

**Exhibit 2 to the Rejection Notice**

(Rejected Contracts Schedule)

**EXHIBIT 5 TO SALE PROCEDURES ORDER**

**Proposed Asset Purchase Agreement**

**ASSET PURCHASE AGREEMENT**

**by and between**

**_____**

**AND**

**DAVID A. WENDER, NOT INDIVIDUALLY, BUT SOLELY AS THE CHPATER 11 TRUSTEE FOR CUREPOINT, LLC**

**_____, 2022**

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of _____ __, 2022, is made and entered into between _____ (together with any affiliate or permitted assignee, the "Purchaser"), and David A. Wender, not individually and solely in his capacity as the chapter 11 trustee (the "Trustee" or "Seller") of the bankruptcy estate of Curepoint, LLC ("Curepoint" or the "Debtor"). The Purchaser and Seller are sometimes individually referred to herein as a "Party" and collectively as the "Parties."

### WITNESSETH

WHEREAS, Curepoint is engaged in the business of operating a radiation center that provides radiation treatment for cancer patients (the "Business");

WHEREAS, on August 19, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code;

WHEREAS, on September 9, 2022, the Debtor filed its Schedules and Statement of Financial Affairs [Doc. No. 37] and, on October 6, 2022, Debtor filed its supplemental Schedules and Statement of Financial Affairs [Doc. No. 82];

WHEREAS, on October 13, 2022, the Court entered an Order [Doc. No. 96] granting Mark W. McCord, M.D.'s Motion to Appoint Chapter 11 Trustee [Doc. No. 52] and AMOA Finance, LLC's Motion to Appoint Chapter 11 Trustee [Doc. No. 54] and directing the United States Trustee to appoint a chapter 11 trustee in the Case;

WHEREAS, on October 17, 2022, the United States Trustee filed the Notice of Appointment of Chapter 11 Trustee and Setting of Bond [Doc. No. 104], which, among other things, appointed the Trustee as chapter 11 trustee for the Debtor's estate.  On October 18, 2022, the Trustee filed his Acceptance of Appointment as Chapter 11 Trustee. [Doc. No. 106].  The Court approved the appointment of the Trustee on October 19, 2022. [Doc. No. 108];

WHEREAS, this Agreement, the Acquisition (defined below) and the other transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court pursuant to sections 105, 363 and 365 of title 11 of the United States Code (11 U.S.C. § 101, *et seq*.) (the "Bankruptcy Code");

WHEREAS, the Parties desire to enter into this Agreement pursuant to which Seller proposes to sell to Purchaser, and Purchaser proposes to purchase from Seller, substantially all of the assets used or held for use by Curepoint in the operation of the Business, in each case free and clear of any and all Liens of any kind or nature whatsoever (other than Permitted Liens and other than Assumed Liabilities) (the "Acquisition"); and

WHEREAS, the Parties desire to make certain representations, warranties, agreements, and covenants in connection with the Acquisition and the other transactions contemplated hereby;

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants, agreements and conditions hereinafter set forth, and intending to be legally bound hereby, each Party hereby agrees as follows:

# ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

1.1 <u>Definitions</u>. Unless otherwise defined herein, terms used herein shall have the meanings set forth on **<u>Exhibit A</u>** attached hereto and incorporated herein by this reference.

1.2 <u>Accounting Terms</u>. All accounting terms not specifically defined herein shall be construed in accordance with GAAP.

1.3 <u>Rules of Construction</u>. Unless the context otherwise clearly indicates, in this Agreement:

(a) the singular includes the plural;

(b) "includes" and "including" are not limiting;

(c) "may not" is prohibitive and not permissive; and

(d) "or" is not exclusive.

# ARTICLE II

## PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES

2.1 <u>Purchase and Sale of Assets</u>. Subject to the terms and conditions hereof, at the Closing and except as otherwise specifically provided in this Article II, Seller, as consideration for the payment of the Purchase Price in accordance with Section 3.1 and the other agreements and covenants made by the Purchaser herein, shall grant, sell, assign, transfer, convey and deliver to Purchaser, and Purchaser shall purchase and acquire from Seller, all right, title and interest of Curepoint in and to the Sale Assets (as defined in Section 2.2), free and clear of any and all Liens of any kind or nature whatsoever (other than Permitted Liens and the Assumed Liabilities).

2.2 <u>Assets</u>. Except for the Excluded Assets, the "<u>Sale Assets</u>" shall consist of all of the assets, properties and rights of Curepoint of every type and description, whether real, personal or mixed, tangible or intangible, and wherever located, including the following:

(a) all inventory, including supplies, drugs, controlled substances, disposables, consumables, office and other supplies, spare, replacement and component parts (the "<u>Inventory</u>");

(b) all tangible personal property of Curepoint, including all equipment, vehicles, furniture, machinery, office furnishings and other personal property owned by Curepoint, wherever located;

(c) all Company Intellectual Property;

(d) all rights of Curepoint under the Assigned Contracts, including all rights of setoff and recoupment and all rights and claims arising under (or relating to) the Assigned Contracts, whether under federal or state law and whether arising by way of counterclaim or otherwise;

(e)    all deposits posted under Assigned Contracts and all advances, pre-paid expenses and credits for the benefit of Curepoint;

(f)    all rights in and under all express or implied guarantees, warranties, representations, covenants, indemnities and similar rights in favor of Curepoint relating to the other Sale Assets;

(g)    to the extent transferable, all Licenses relating to the Business;

(h)    subject to Section 2.3(f) below, all information (but excluding information subject to Curepoint's attorney-client or other similar privilege), files, correspondence, records, data, plans, reports, and recorded knowledge, including, to the extent permitted by applicable Laws, all patient medical records and medical staff records, including all patient lists, files, patient billing records and other patient records, and copies of financial records and files (copied at Purchaser's sole expense), employee records, supplier lists, price and mailing lists, and copies of all accounting or other books and records (copied at Purchaser's sole expense), which were generated, maintained, used and/or stored in the course of operations of the Business, provided however, Seller shall retain all rights to access to Curepoint's books and records as provided in Section 6.2 below;

(i)    all prepaid expenses, credits and security and other deposits;

(j)    all goodwill of Curepoint as a going concern; and

(k)    all accounts receivable, patient receivables and trade receivables and all other rights of Curepoint to payment from third parties, and the full benefit of all security for such receivables or rights to payment, in each case arising or accruing on or before the Closing Date (collectively, "Accounts Receivable").

2.3    Excluded Assets.

(a)    all cash;

(b)    any bank accounts of Curepoint;

(c)    minute books and organizational documents;

(d)    any shares of stock, membership interests or other equity interests held by Curepoint in any other Person;

(e)    all Causes of Action asserted or existing as of the Closing Date, including any actual or potential claims by or through Curepoint against any of its Affiliates;

(f)    all Avoidance Actions;

(g)    all information, files, correspondence, records, data, plans, reports, and recorded knowledge, including, to the extent permitted by applicable Laws, and copies of

3

all accounting or other books and records that the Trustee identifies as being necessary to analyze, preserve or otherwise pursue the Avoidance Actions and Causes of Action;[1]

    (h)    any Licenses that applicable Law prohibits Seller from transferring;

    (i)    all Benefit Plans and assets attributable thereto; and

    (j)    all rights of Seller arising under this Agreement.

2.4    <u>Assumption of Liabilities</u>. Subject to the terms and conditions set forth in this Agreement, including Section 2.5 hereto, Purchaser shall only assume from Seller and thereafter be responsible for the payment, performance or discharge of the Liabilities and obligations of Seller arising under or in connection with the Assigned Contracts after the Closing Date. To the extent that any Assigned Contract is subject to a Cure Cost, Purchaser shall be responsible for such Cure Costs. Purchaser shall have until the Closing Date to remove any Contract or Lease from the Assigned Contract list on <u>Schedule 2.2(e)</u>.

2.5    <u>Excluded Liabilities</u>.  Specifically, and without in any way limiting the generality of Section 2.4, the Assumed Liabilities shall not include, and in no event shall Purchaser assume, agree to pay, discharge or satisfy any Liability or Claim hereunder or otherwise have any responsibility for any Liability or Claim (together with all other Claims and Liabilities that are not Assumed Liabilities, the "<u>Excluded Liabilities</u>"):

    (a)    relating to, resulting from, or arising out of the operation of the Business prior to the Effective Date;

    (b)    relating to, resulting from, or arising out of, (i) claims made in pending or future suits, actions, investigations or other legal, governmental or administrative proceedings or (ii) claims based on violations of law, breach of contract, employment practices or environmental, health and safety matters or any other actual or alleged failure of Curepoint to perform any obligation, in each case arising out of, or relating to, (A) events, acts or omissions that have occurred, (B) services performed, or (C) the operation of the Business, in each case prior to the Effective Date;

    (c)    pertaining to any Excluded Asset; and

    (d)    of Curepoint or the Trustee arising or incurred in connection with the negotiation, preparation and execution hereof and the transactions contemplated hereby and any fees and expenses of counsel, accountants, brokers, financial advisors or other experts of Curepoint or the Trustee.

Such Excluded Liabilities shall include all claims, actions, litigation and proceedings relating to any or all of the foregoing and all costs and expenses in connection therewith.

2.6    <u>Deemed Consents</u>. Seller shall include in the proposed Sale Order submitted to the Court that any Contract or Lease counterparty that is served an Assignment Notice and fails to file a timely and proper objection thereto shall be deemed to consent to and approve of the assumption

---

[1]    If Purchaser believes that information set forth in Section 2.3(f) is necessary to the continued operation of the Business after Closing, the Purchaser may obtain copies of such information at its sole expense; provided, however, for the avoidance of doubt, that the Avoidance Actions and Causes of Action themselves shall remain Excluded Assets.

and assignment of its Assigned Contract to Purchaser and the sale and transfer of all of Curepoint's rights, title, and interest in the Sale Assets free and clear of all liens, claims, and interests, encumbrances.

# ARTICLE III

# BASIC TRANSACTION

3.1    Payment of Purchase Price. As consideration for the sale, transfer, conveyance and assignment of the Sale Assets to Purchaser at the Closing and the assumption and assignment to Purchaser of the Assigned Contracts, Purchaser shall (collectively, the "Purchase Price"):

(a)    pay to Seller cash in immediately available funds in an amount equal to $_____, less the Good Faith Deposit (defined below); and

(b)    assume the Assumed Liabilities at the Closing (including the obligation to pay the Cure Costs.

3.2    Allocation of Purchase Price. Purchaser shall, within 120 days after the Closing Date, prepare and deliver to Seller a schedule allocating the Purchase Price (and any other items that are required for federal income tax purposes to be treated as part of the purchase price) among the Sale Assets in accordance with the requirements of section 1060 of the Code (such schedule, the "Allocation"). Purchaser and Seller shall report and file all Tax Returns (including amended Tax Returns and claims for refund) consistent with the Allocation, and shall take no position contrary thereto or inconsistent therewith (including in any audits or examinations by any Governmental Authority or any other proceeding). Purchaser and Seller shall cooperate in the filing of any forms (including Form 8594 under section 1060 of the Code) with respect to such Allocation.

3.3    Good Faith Deposit. Pursuant to the Bidding Procedures Order, concurrently with the execution of this Agreement, Purchaser shall pay to Seller a good faith deposit in an amount equal to the greater of (a) $250,000 and (b) 10% of the proposed cash portion of the Purchase Price (the "Good Faith Deposit") by wire transfer of immediately available funds.  The Good Faith Deposit shall be held in a separate escrow account under the custody and control of Seller or its counsel. The Good Faith Deposit shall not be deemed to constitute property of the Bankruptcy Estate, and the Bankruptcy Estate shall have no interest of any kind (equitable or otherwise) in the Good Faith Deposit unless and until such deposit is released from escrow to Seller in accordance with this Agreement. If the Closing occurs, then the Good Faith Deposit shall be released from escrow to Seller at Closing in accordance with this Agreement. If this Agreement is validly terminated pursuant to Section 10.1(b), the Good Faith Deposit shall be released from Escrow to Seller, it being understood that the Good Faith Deposit shall be deemed liquidated damages in favor of Seller and shall not be construed as a penalty.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF SELLER

Trustee represents and warrants to Purchaser as follows as of the date hereof and the Closing Date:

4.1 <u>Organization</u>. To the best of Trustee's Knowledge, Curepoint is registered as a Georgia limited liability company control number 14054680, according to the records of the Secretary of State of Georgia, which records reflect that Curepoint is active and in good standing.

4.2 <u>Authorization</u>. Subject to the applicable provisions of the Bankruptcy Code and the approval of this Agreement by the Bankruptcy Court in the Bankruptcy Case pursuant to the Sale Order, the Trustee has full power and authority to execute and deliver this Agreement and the Ancillary Documents to which he is a party and, upon entry and effectiveness of the Sale Order, will have all authority necessary to perform the obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution and delivery of this Agreement and the Ancillary Documents by the Trustee, and the performance by the Trustee of his obligations hereunder and thereunder, and subject to the entry and effectiveness of the Sale Order and any applicable Bankruptcy Code provision, the consummation of the transactions provided for herein and therein have been duly and validly authorized by all necessary action on the part of the Trustee. Subject to entry of the Sale Order approving this Agreement in the Bankruptcy Case, this Agreement has been and the Ancillary Documents will be as of the Closing Date, duly executed and delivered by the Trustee and does or shall, as the case may be, constitute the valid and binding agreements of the Trustee, enforceable against the Trustee in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium or other similar Laws affecting or relating to claims against the Trustee.

4.3 <u>Absence of Restrictions and Conflicts</u>. To the best of Trustee's Knowledge, subject to entry of the Sale Order in the Bankruptcy Case and other approvals by any Governmental Authority required by applicable Laws, the execution, delivery and performance of this Agreement and the Ancillary Documents, the consummation of the transactions contemplated hereby and thereby and the fulfillment of and compliance with the terms and conditions hereof and thereof do not or will not (as the case may be), with the passing of time or the giving of notice or both, violate or conflict with, constitute a breach of or default under, result in the loss of any benefit under, permit the acceleration of any obligation under, or create in any party the right to terminate, modify or cancel, or result in the creation of any Lien under, (a) any term or provision of the charter documents of Curepoint, (b) any judgment, decree or order of any Governmental Authority to which Curepoint is a party or by which Curepoint or any of its properties or assets is bound, (c) any statute, law, rule or regulation applicable to Curepoint or the Business or (d) any Contract to which Curepoint is a party or by which Curepoint or any of its properties is bound.

4.4 <u>Assets</u>. Pursuant to the Sale Order approving this Agreement, at the Closing, Purchaser shall pay to Trustee the Purchase Price and the Trustee shall convey to Purchaser, all of Curepoint's right, title and interest in and to the Assets, free and clear of any and all Liens of any kind or nature whatsoever (other than Permitted Liens).

4.5     <u>Compliance with Law</u>. To the best of Trustee's Knowledge, Curepoint has not been charged with, and, to Trustee's Knowledge, Curepoint is not currently under investigation with respect to, a violation of any applicable Law.

4.6     <u>Licenses</u>. To the best of Trustee's Knowledge, the Trustee has no reason to believe that the Facilities, equipment, staffing and operations of the Business fail to satisfy the applicable licensing requirements of any Governmental Authority.

4.7     <u>Labor Relations</u>. To the best of Trustee's Knowledge: (a), no employee of Curepoint who provided services at, for or on behalf of the Business is represented by any labor union or other labor organization in connection with their employment by Curepoint; (b) there is no representation election petition involving Curepoint pending or threatened before the NLRB or any other labor relations board; and (c) there is no labor strike, dispute, slowdown, stoppage, handbilling or other "concerted action" actually pending or threatened against or involving Curepoint.

4.8     <u>Brokers, Finders and Investment Bankers</u>. To the best of Trustee's Knowledge, neither Curepoint, nor any officer, member, director or employee on behalf of Curepoint, has employed any broker, finder or investment banker or incurred any Liability for any investment banking fees, financial advisory fees, brokerage fees or finders' fees in connection with the transactions contemplated hereby other than SOLIC Capital, LLC.

4.9     <u>Section 4.9 Disclaimers of Other Representations and Warranties</u>. EXCEPT AS EXPRESSLY SET FORTH IN THIS ARTICLE 4, SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, IN RESPECT OF ANY OF THE ASSETS (INCLUDING THE SALE ASSETS), LIABILITIES OR OPERATIONS, INCLUDING, WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, OR NON-INFRINGEMENT, AND ANY SUCH OTHER REPRESENTATIONS OR WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED. PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT TO THE EXTENT SPECIFICALLY SET FORTH IN THIS ARTICLE 4, PURCHASER IS PURCHASING THE SALE ASSETS ON AN "AS-IS, WHERE-IS" BASIS.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as follows:

5.1     <u>Organization</u>. Purchaser is a [●] duly organized, validly existing and in good standing under the Laws of the State of [●] and has all requisite limited liability company power and authority to own, lease and operate its properties and to carry on its business as now being conducted.

5.2     <u>Authorization</u>. Purchaser has full power and authority to execute and deliver this Agreement and the Ancillary Documents and, subject to entry of the Sale Order in the Bankruptcy Case, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Ancillary Documents by Purchaser, the performance by Purchaser of its obligations hereunder and thereunder, and the consummation of the transactions provided for herein and therein have been

duly and validly authorized by all necessary action on the part of Purchaser. Subject to entry of the Sale Order in the Bankruptcy Case, this Agreement has been, and the Ancillary Documents will be as of the Closing Date, duly executed and delivered by Purchaser and, provided this Agreement and the Ancillary Documents are executed by Seller and subject to entry of the Sale Order in the Bankruptcy Case, do or shall, as the case may be, constitute the valid and binding agreements of Purchaser, enforceable against Purchaser in accordance with their respective terms, subject to applicable bankruptcy, insolvency and other similar Laws affecting the enforceability of creditors' rights generally, general equitable principles and the discretion of courts in granting equitable remedies.

5.3    Absence of Restrictions and Conflicts.  The execution, delivery and performance of this Agreement and the Ancillary Documents, the consummation of the transactions contemplated hereby and thereby and the fulfillment of, and compliance with, the terms and conditions hereof and thereof do not or will not (as the case may be), with the passing of time or the giving of notice or both, violate or conflict with or constitute a breach of or default under, (a) any term or provision of the charter documents of Purchaser, (b) any material Contract to which Purchaser is a party, (c) any judgment, decree or order of any Governmental Authority to which Purchaser is a party or by which Purchaser or any of its properties or assets is bound or (d) any statute, law, rule or regulation applicable to Purchaser.

5.4    Ability to Perform.   Purchaser represents and warrants that it has the financial wherewithal necessary to consummate this transaction.  Immediately after giving effect to the transactions contemplated hereby, Purchaser shall be solvent and shall: (a) be able to pay its debts as they become due; (b) own property that has a fair saleable value greater than the amounts required to pay its debts (including a reasonable estimate of the amount of all Liabilities); and (c) have adequate capital to carry on its business. In connection with the transactions contemplated hereby, Purchaser has not incurred, nor plans to incur, debts beyond its ability to pay as they become absolute and matured.

5.5    Brokers. Purchaser has incurred no Liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

5.6    Investigation. The Purchaser has or will make its own investigation concerning the physical condition of the Sale Assets and the Business, Seller's title to or any other matter pertaining to the Sale Assets, and Purchaser acknowledges that it has been provided adequate access to the personnel, properties, assets, premises, books and records and other documents and data of Curepoint for such purpose. Other than the specific representations made by Seller pursuant to this Agreement, Purchaser is not relying on any representations, warranties or inducements of Seller (or any representative of Seller) with respect to the physical or other condition of the Sale Assets, Seller's title to the Sale Assets or any other matter pertaining to the Sale Assets or related business.

5.7    Litigation.   There are no Claims, actions, lawsuits or other legal proceedings pending or, to Buyer's knowledge, threatened against or by Purchaser that challenge or seek to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.

5.8    No Other Representations or Warranties. Except for the representations and warranties contained in this Agreement, Purchaser does not make any other express or implied

8

representation or warranty with respect to the transactions contemplated hereby, and Purchaser disclaims any other representations or warranties, whether made by it or any of its Affiliates, officers, directors, employees, agents or representatives.

## ARTICLE VI

## COVENANTS OF SELLER; OTHER AGREEMENTS

6.1  <u>Conduct of Business</u>. Except as expressly required hereby, except as otherwise consented to in advance in writing by Purchaser, and except as prohibited by or otherwise required under the Bankruptcy Code, from the date of this Agreement until the Closing Date, Trustee shall exercise his best efforts to:

(a)  conduct the Business in the Ordinary Course of Business;

(b)  not knowingly or intentionally take action that would adversely affect the existence and good standing of Curepoint in its jurisdiction of organization and in each jurisdiction as it existed on the Petition Date;

(c)  not knowingly and intentionally amend or modify the charter documents of Curepoint;

(d)  not knowingly and intentionally permit any event or condition that with or without notice or lapse of time or both would constitute a default under, any Assigned Contract (except those being contested in good faith) and not amend any Assigned Contract, in each case other than such defaults that existed prior to or arose as a result of the filing of the Bankruptcy Case;

(e)  not knowingly and intentionally dispose of or permit to lapse any right to the use of any patent, trademark, trade name, service mark, License or copyright of Curepoint, or dispose of or disclose to any Person any trade secret, formula, process, technology or know-how of Curepoint not heretofore a matter of public knowledge;

(f)  not knowingly and intentionally (i) sell any Sale Asset, (ii) create, incur or assume any indebtedness secured by the Sale Assets, (iii) grant, create, incur or suffer to exist any Lien on the Sale Assets that did not exist on the date hereof, (iv) incur any Liability outside the Ordinary Course of Business, except as agreed to in writing by Purchaser, (v) make any commitment for any capital expenditure to be made on or following the date hereof without the written consent of Purchaser, or (ix) enter into any material Contract without the written consent of Purchaser;

(g)  not knowingly and intentionally recognize any collective bargaining representative, consent to any representation election, or enter into a new collective bargaining agreement; and

(h)  not knowingly and intentionally authorize, or commit or agree (i) not to take any of the actions required in Sections 6.1(a), or (ii) to take any of the actions prohibited in Sections 6.1(b)-(g).

6.2  <u>Inspection and Access to Information</u>. Seller agrees that, prior to the Closing Date, Purchaser and its representatives (including its accountants, advisors, consultants and legal

9

counsel) shall, upon reasonable notice to the Trustee, and so long as such access does not unreasonably interfere with the operations of the Business, have reasonable access during normal business hours to all Facilities and shall be entitled to make such reasonable investigation of the properties, businesses and operations of Curepoint (including to conduct a physical inventory of the Inventory) and such examination of the books and records and financial condition of Curepoint as it reasonably requests and to make extracts and copies to the extent necessary of the books and records.

6.3    <u>Notices of Certain Events</u>.  Seller shall promptly notify Purchaser of:

(a)    any notice or other communication personally received by Trustee from any Person alleging that the consent of such Person is or may be required in connection with the transactions contemplated hereby;

(b)    any notice or other communication received by Trustee from any Governmental Authority in connection with the transactions contemplated hereby; and

(c)    (i) the damage or destruction by fire or other casualty of any material Asset or part thereof, or (ii) any material Asset or part thereof becoming the subject of any proceeding (or, to the Knowledge of Trustee, threatened proceeding) for the taking thereof or of any right relating thereto by condemnation, eminent domain or other similar governmental action.

6.4    <u>Reimbursement</u>. If, after the Closing Date, Seller receives a payment with respect to any Accounts Receivable, Seller shall forward to Purchaser any such payment.

6.5    <u>Notification of Certain Matters</u>. Seller shall add Purchaser, and Purchaser's counsel, to Seller's so-called "Rule 2002 notice list" and otherwise provide notice to Purchaser of all matters that are required to be served on Seller's creditors pursuant to the Bankruptcy Code and Rules.

6.6    <u>Further Assurances</u>. Subject to the other provisions hereof, Purchaser and Seller shall each execute all documents and take all actions as may be reasonably required to carry out the provisions of this Agreement and the transactions contemplated hereby. Purchaser and Seller shall each use commercially reasonable efforts to fulfill or obtain the fulfillment of the conditions set forth in Article VIII and Article IX, respectively, of this Agreement.

6.7    <u>Conditional Validity and Enforceability of Agreement.</u>

(a)    Purchaser and Seller acknowledge that the Sale Assets will be sold at Auction in accordance with the Bidding Procedures Order and therefore, that except as expressly set forth herein, unless and until Seller's bid as embodied in this agreement as subsequently modified by agreement of Purchaser and Seller, is approved as a Winning Bid pursuant to the Sale Order, this Agreement will not be binding or enforceable by either Seller or Purchaser or any party claiming through either.

(b)    The Trustee may, in an exercise of his sole discretion, select Purchaser as the Stalking Horse Bidder in accordance with the Bidding Procedures order, in which event Purchaser shall be entitled to the Expense Reimbursement provided in the Bidding Procedures Order.

6.8     Other Bids/Auction. Purchaser acknowledges that pursuant to the Bidding Procedures Order, Seller will solicit competing Bids and conduct an Auction of the Sale Assets.

6.9     Taxes.

(a)     On or prior to the Closing (or after the Closing when due and payable, to the extent such Taxes are due and payable after the Closing), Seller shall pay all sales taxes, use taxes, payroll taxes, and Taxes which will be owed by Seller or Curepoint and attributable to periods prior to the Closing.

(b)     Any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use or other Taxes and recording charges due and which may be payable by reason of the sale of the Sale Assets or the assumption of the Assumed Liabilities under this Agreement or the transactions contemplated herein shall be borne and timely paid by Purchaser, and Purchaser shall prepare and timely file all Tax Returns required to be filed in connection with such payments.

(c)     Seller shall cooperate in the preparation, execution and filing of all returns, questionnaires, applications and other documents regarding Taxes and all transfer, recording, registration and other fees that become payable in connection with the transactions contemplated hereby that are required or permitted to be filed at or prior to the Closing.

## ARTICLE VII

## COVENANTS OF PURCHASER

7.1     Assumed Liabilities. Subsequent to the Closing, Purchaser agrees to be responsible for the payment and performance of the Assumed Liabilities.

7.2     Operation. Purchaser shall be obligated to discharge, pay, perform and satisfy all of the duties, liabilities and obligations arising, from and after the Closing, from the ownership, maintenance, operation, use, development, sale or leasing of, or other operation of business with respect to the Sale Assets and the Assigned Contracts.

7.3     Further Assurances. Subject to the other provisions hereof, Purchaser shall use its reasonable, good faith efforts to perform its obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable Law to obtain all consents required and all regulatory approvals and to satisfy all conditions to its obligations hereunder and to cause the transactions contemplated herein to be effected as soon as practicable in accordance with the terms hereof and shall cooperate fully with Seller and other designees in connection with any step required to be taken as a part of its obligations hereunder.

7.4     Release of Trustee. Purchaser shall release the Trustee from and on account of any demands, suits, or claims of any sort arising out of or in connection with the sale of the Sale Assets hereunder.

7.5     Taxes and Expenses. Any Taxes (other than income Taxes) or recording fees payable as a result of the Acquisition or any other action contemplated hereby shall be paid by the Purchaser.   Purchaser shall cooperate in the preparation, execution and filing of all returns,

questionnaires, applications and other documents regarding Taxes and all transfer, recording, registration and other fees that become payable in connection with the transactions contemplated hereby that are required or permitted to be filed at or prior to the Closing.

7.6 <u>Confidential Information</u>. Subject to the requirements of applicable Law, including the Bankruptcy Code, related rules of procedure, and orders of the Bankruptcy Court, Purchaser shall hold in confidence at all times following the date hereof all Confidential Information and shall not disclose, publish or make use of Confidential Information at any time following the date hereof without the prior written consent of Seller. In the event the transactions contemplated hereby are not consummated for any reason, without limiting the other rights and/or remedies of the Parties, the Purchaser shall promptly return to Seller, or, with Seller's written permission, destroy, all documents and other materials and all copies of the foregoing that were furnished to the Purchaser to date in connection with its due diligence investigation of the Business and the Sale Assets, as provided therein.

## ARTICLE VIII

## CONDITIONS TO CLOSING

8.1 <u>Conditions to Obligations of Purchaser</u>. The obligations of Purchaser to consummate the transactions contemplated hereby shall be subject to the fulfillment at or prior to the Closing of each of the following conditions:

(a) <u>Injunction</u>. There shall be no effective injunction, writ or preliminary restraining order or any order of any nature issued by a Governmental Authority of competent jurisdiction to the effect that the Acquisition may not be consummated as provided herein, and no proceeding or lawsuit shall have been commenced by any Governmental Authority for the purpose of obtaining any such injunction, writ or preliminary restraining order.

(b) <u>Representations and Warranties</u>. The representations and warranties of Seller set forth in <u>Article IV</u> shall have been true and correct in all material respects as of the date hereof and shall be true and correct in all material respects as of the Closing as though made at and as of the Closing (other than those made as of a specified date, in which case as of such specified date), except that those representations and warranties that by their terms are qualified by materiality shall be true and correct in all respects.

(c) <u>Performance of Obligations of Seller</u>. Seller shall have performed in all material respects all covenants and agreements required to be performed by Seller hereunder at or prior to the Closing.

(d) <u>Ancillary Documents</u>. Seller shall have delivered, or caused to be delivered, to Purchaser the following:

i. executed deeds, bills of sale, instruments of assignment, certificates of title and other conveyance documents, dated as of the Closing Date, transferring to Purchaser all of Curepoint's right, title and interest in and to the Sale Assets, together with possession of the Sale Assets, including a Trustee Bill of Sale, in form and substance reasonably acceptable to Purchaser (the "<u>Bill of Sale</u>"); and

12

ii.        all other documents required to be entered into by Trustee pursuant hereto or reasonably requested by Purchaser to convey the Sale Assets to Purchaser or to otherwise consummate the transactions contemplated hereby.

(e)        Bankruptcy Court Orders. (i) The Bankruptcy Court shall have entered the Sale Order substantially in the form set forth as **Exhibit B** hereto, with any changes thereto that affect (directly or indirectly) the Purchaser, satisfactory to the Purchaser and Seller, and (ii) as of the Closing Date, the Sale Order shall be in full force and effect, shall not then be stayed, and shall not have been vacated, reversed, modified or amended without Purchaser's prior written consent (which may be given or withheld in the sole discretion of the Purchaser).

8.2        Conditions to Obligations of Trustee.  The obligations of Seller to consummate the transactions contemplated hereby shall be subject to the fulfillment at or prior to the Closing of each of the following conditions, provided that Seller may waive any of the following conditions:

(a)        Injunction. There shall be no effective injunction, writ or preliminary restraining order or any order of any nature issued by a Governmental Authority of competent jurisdiction to the effect that the Acquisition may not be consummated as provided herein, and no proceeding or lawsuit shall have been commenced by any Governmental Authority for the purpose of obtaining any such injunction, writ or preliminary restraining order;

(b)        Representations and Warranties. The representations and warranties of Purchaser set forth in Article V shall have been true and correct in all material respects as of the date hereof and shall be true and correct in all material respects as of the Closing as though made at and as of the Closing (other than those made as of a specified date, in which case as of such specified date), except that those representations and warranties that by their terms are qualified by materiality shall be true and correct in all respects;

(c)        Performance of Obligations by Purchaser. Purchaser shall have performed in all material respects all covenants and agreements required to be performed by it hereunder on or prior to the Closing Date.

(d)        Ancillary Documents. Purchaser shall have delivered, or caused to be delivered, to Seller the following:

i.        documents evidencing the assumption of the Assigned Contracts and the acceptance of the assignable Licenses and the Assumed Liabilities, including the Assignment and Assumption Agreement;

ii.        a certificate by the Secretary of Purchaser, dated the Closing Date, as to (1) the good standing of Purchaser in its jurisdiction of incorporation and (2) the effectiveness of the resolutions of the [manager] of Purchaser authorizing the execution, delivery and performance hereof by Purchaser passed in connection herewith and the transactions contemplated hereby; and

iii.        all other documents required to be entered into or delivered by Purchaser at or prior to the Closing pursuant hereto.

13

(e)    Sale Order. The Bankruptcy Court shall have entered the Sale Order substantially in the form set forth as **Exhibit B** hereto, with any changes thereto reasonably satisfactory to the Trustee and Purchaser.

8.3    Bankruptcy Conditions.

(a)    The Sale Order shall have been entered finding Purchaser to be a Winning Bidder, as defined in the Bidding Procedures approved by the Bankruptcy Court.

(b)    The Sale Order shall approve and authorize the assumption and assignment of the Assigned Contracts and the Assigned Contracts shall have been actually assumed and assigned to Purchaser such that the Assigned Contracts will be in full force and effect from and after the Closing with non-debtor parties being barred and enjoined from asserting against Purchaser, among other things, defaults, breaches or claims (including, without limitation, cure claims under section 365 of the Bankruptcy Code, except as otherwise specifically provided in the Sale Order) existing as of the Closing or by reason of the Closing.

## ARTICLE IX

## CLOSING

The Closing shall occur within five (5) Business Days following the satisfaction or waiver (to the extent waivable) of the conditions set forth in Article VIII, or on such other date as the Parties may agree. The Closing shall take place at such place as the Parties may agree. The Closing shall be effective as of 12:01 a.m. Eastern Standard Time on the Closing Date (such time, the "Effective Time").

## ARTICLE X

## TERMINATION; TERMINATION PAYMENT

10.1    Termination. This Agreement may be terminated prior to the Closing as follows:

(a)    by mutual written agreement of Purchaser and Seller;

(b)    by written notice from Seller to Purchaser, in the event Purchaser (i) fails to perform in any material respect any of its agreements contained herein required to be performed by it at or prior to the Closing or (ii) breaches any of its representations and warranties contained herein such that any such breach would result in a failure of the condition in Section 8.2(c), which failure or breach is not cured within ten (10) days following Seller having notified Purchaser of its intent to terminate this Agreement;

(c)    by either Purchaser or Seller if there shall be in effect a Final Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; and

(d)    by Purchaser or Seller if the Bankruptcy Court enters an order approving the sale of the Sale Assets to another purchaser and such transaction has closed.

14

10.2    Effect of Termination.  In the event of termination of this Agreement pursuant to this Article XI, this Agreement shall thereupon become void and there shall be no liability on the part of any Party or its Affiliates, officers, directors, employees or representatives; provided, however, the provisions of Section 3.3, 7.6 and Article XI all shall survive the Termination Date. Notwithstanding the foregoing, nothing contained herein shall relieve any Party from liability for any willful breach of this Agreement prior to termination.

10.3    Liquidated Damages.   In the event that this Agreement is terminated by Seller pursuant to Section 10.1(b), the Good Faith Deposit shall be retained by Seller, as Seller's liquidated damages and as Seller's sole remedy for Purchaser's breach hereunder. THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE AND EXTREMELY DIFFICULT TO ASCERTAIN THE ACTUAL DAMAGES SUFFERED BY SELLER AS A RESULT OF PURCHASER'S FAILURE TO COMPLETE THE PURCHASE OF THE SALE ASSETS PURSUANT TO THIS AGREEMENT, AND THAT UNDER THE CIRCUMSTANCES EXISTING AS OF THE DATE OF THIS AGREEMENT, THE LIQUIDATED DAMAGES PROVIDED FOR IN THIS SECTION REPRESENT A REASONABLE ESTIMATE OF THE DAMAGES WHICH SELLER AND THEIR AFFILIATES WOULD INCUR AS A RESULT OF SUCH FAILURE. THE PARTIES ACKNOWLEDGE THAT THE PAYMENT OF SUCH LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER. EACH PARTY HEREBY AGREES TO WAIVE ANY AND ALL RIGHTS WHATSOEVER TO CONTEST THE VALIDITY OF THE LIQUIDATED DAMAGE PROVISIONS FOR ANY REASON WHATSOEVER, INCLUDING THAT SUCH PROVISION WAS UNREASONABLE UNDER CIRCUMSTANCES EXISTING AT THE TIME THIS AGREEMENT WAS MADE. THE PARTIES FURTHER AGREE THAT CUREPOINT SHALL HAVE NO REMEDY FOR ANY BREACH OF THIS AGREEMENT BY PURCHASER.

## ARTICLE XI

## MISCELLANEOUS

11.1    Survival. The representations and warranties contained in this Agreement shall not survive the Closing. Each of the covenants and obligations of Purchaser and Seller in this Agreement and in the other Ancillary Documents shall survive in accordance with their respective terms.

11.2    Schedules and Exhibits.  The Schedules and Exhibits are hereby incorporated into this Agreement and are hereby made a part hereof as if set out in full herein.

11.3    Expenses. Except as set forth in the Bidding Procedures Order, each Party hereto shall bear its own costs and expenses, including attorneys' fees, with respect to the transactions contemplated hereby. Notwithstanding the foregoing, in the event of any action or proceeding to interpret or enforce this Agreement, the prevailing party in such action or proceeding (i.e., the party who, in light of the issues contested or determined in the action or proceeding, was more successful) shall be entitled to have and recover from the non-prevailing party such costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing party may incur in the pursuit or defense thereof.

11.4    <u>Amendment</u>. This Agreement may not be amended, modified or supplemented except by a written instrument signed by Seller and Purchaser.

11.5    <u>Captions</u>. The titles, captions and table of contents contained herein are inserted herein only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

11.6    <u>Notices</u>. All notices, communications and deliveries hereunder shall be made in writing signed by or on behalf of the Party making the same, shall specify the Section pursuant to which it is given or being made, and shall be delivered personally or by UPS Next Day Air or other nationally recognized overnight courier service (with evidence of delivery and postage and other fees prepaid) as follows:

To Seller:              Mr. David A. Wender
                        Eversheds Sutherland (US) LLP
                        999 Peachtree Street, NE, Suite 2300,
                        Atlanta, GA 30309-3996
                        (404) 853-8175

With a copy to:         Mr. Nathaniel T. DeLoatch
                        Eversheds Sutherland (US) LLP
                        999 Peachtree Street, NE, Suite 2300,
                        Atlanta, GA 30309-3996
                        (404) 853-8356

To Purchaser:           [●]

With a copy to:         [●]

or to such other individual or address as a Party hereto may designate for itself by notice given as herein provided.

11.7    <u>Severability</u>. Any provision hereof that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by Law, each Party hereby waives any provision of law that renders any such provision prohibited or unenforceable in any respect.

11.8    <u>Waivers</u>. The failure of a Party hereto at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same. No waiver by a Party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing by Seller in the case of a waiver by Seller, or Purchaser, in the case of any waiver by Purchaser, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver of any such condition or breach of other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

16

11.9    <u>Counterparts and Execution</u>. This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any counterpart may be executed by facsimile signature and such facsimile signature shall be deemed an original.

11.10    <u>SUBMISSION TO JURISDICTION</u>. THE PARTIES HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT OR THE OTHER AGREEMENTS CONTEMPLATED HEREIN SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT.

11.11    <u>Governing Law</u>. Unless governed by the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with the Laws of the State of Georgia without regards to any conflict of Law principles as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies.

11.12    <u>Binding Nature; Assignment</u>. Subject to approval of the Bankruptcy Court, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the Parties hereto without prior written consent of the other Party (which shall not be unreasonably withheld or delayed); except that (a) Purchaser may assign any of its rights and obligations hereunder to any Affiliate or subsidiary of Purchaser (whether wholly owned or otherwise) or as collateral to its lenders and, following the Closing, in whole or in part to any successor-in-interest to any Person acquiring all or any portion of the Business or the Sale Assets; (b) this Agreement may be assigned to any entity appointed as a successor to Seller pursuant to a confirmed Chapter 11 plan; and (c) that the terms of this Agreement shall be binding upon any subsequent trustee appointed under Chapter 11 or Chapter 7 of the Bankruptcy Code.

11.13    <u>No Third Party Beneficiaries</u>. This Agreement is solely for the benefit of the Parties hereto and nothing contained herein, express or implied, is intended to confer on any Person other than the Parties hereto or their successors and permitted assigns and any Persons named as an indemnitee herein, any rights, remedies, obligations, Claims, or causes of action under or by reason of this Agreement.

11.14    <u>Construction</u>. Unless the context of this Agreement otherwise clearly requires, (a) references to the plural include the singular, and references to the singular include the plural, (b) references to any gender include the other genders, (c) the words "include," "includes" and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation", (d) the term "or" has the inclusive meaning represented by the phrase "and/or", (e) the terms "hereof", "herein", "hereunder", "hereto" and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement, (f) the terms "day" and "days" mean and refer to calendar day(s) and (g) the terms "year" and "years" mean and refer to calendar year(s). Unless otherwise set forth herein, references in this Agreement to (i) any document, instrument or agreement (including this Agreement) (A) includes and incorporates all exhibits, schedules and other attachments thereto, (B) includes all documents, instruments or agreements issued or executed in replacement thereof and (C) means such document, instrument or agreement, or replacement or predecessor thereto, as

17

amended, modified or supplemented from time to time in accordance with its terms and in effect at any given time, and (ii) a particular Law (as hereinafter defined) means such Law as amended, modified, supplemented or succeeded, from time to time and in effect at any given time.  All Article, Section, Exhibit and Schedule references herein are to Articles, Sections, Exhibits and Schedules of this Agreement, unless otherwise specified.  This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if all Parties had prepared it.

11.15    Public Announcements. Except as required by this Agreement and/or permitted by the Bidding Procedures Order, applicable Law or in connection with the Chapter 11 Case, neither Seller nor Purchaser shall issue any press release or public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the other Party hereto relating to the contents and manner of presentation and publication thereof, which approval will not be unreasonably withheld, delayed or conditioned. Prior to making any public disclosure required by applicable Law, Seller shall give Purchaser a copy of the proposed disclosure and reasonable opportunity to comment on the same and shall use its best efforts to include Purchaser's comments in such public disclosure. For purposes of clarity, the reference to "applicable Law" in the preceding sentence does not include filings in the Chapter 11 Case.

11.16    Entire Understanding. This Agreement, the other Ancillary Documents the Disclosure Schedules and the Bidding Procedures Order set forth the entire agreement and understanding of the Parties hereto in respect to the transactions contemplated hereby and the Agreement and the Disclosure Schedules supersede all prior agreements, arrangements and understandings relating to the subject matter hereof and are not intended to confer upon any other Person any rights or remedies hereunder.

11.17    Closing Actions. All deliveries, payments and other transactions and documents relating to the Closing shall be interdependent, and none shall be effective unless and until all are effective (except to the extent that the Party entitled to the benefit thereof has waived satisfaction or performance thereof as a condition precedent to the Closing).

11.18    Cooperation Following the Closing. Following the Closing, each Party shall deliver to the other Parties such further information and documents and shall execute and deliver to the other Parties such further instruments and agreements as any other Party shall reasonably request to consummate or confirm the transactions provided for herein, to accomplish the purpose hereof or to assure to any other Party the benefits hereof.

11.19    Conflict between Transaction Documents. The Parties hereto agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other agreement or document referred to herein, this Agreement shall govern and control.

[Signature Page Follows]

IN WITNESS WHEREOF, the Parties hereto have caused this Asset Purchase Agreement to be executed and delivered on the date first above written.

**PURCHASER:**

_____

By:_____
Name:_____
Title:_____

**SELLER:**

David A Wender, not individually, but solely as the chapter 11 trustee of the bankruptcy estate of Curepoint, LLC

By:_____
     David A. Wender, Chapter 11 Trustee

**SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT**

19

## <u>EXHIBIT A</u>

### Definitions

"<u>Accounts Receivable</u>" shall mean all rights of Curepoint to payment, refunds, or other forms of remuneration that arose before the Closing Date.

"<u>Affiliate</u>" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities or otherwise.

"<u>Affiliated Group</u>" means an affiliated group as defined in section 1504 of the Code (or any analogous combined, consolidated or unitary group defined under state, local or foreign income Tax Law) of which Curepoint is or has been a member.

"<u>Agreement</u>" means this Asset Purchase Agreement, including all the Disclosure Schedules hereto, as the same may be amended, modified or waived from time to time in accordance with its terms.

"<u>Allocation</u>" shall have the meaning set forth in <u>Section 3.2</u> hereof.

"<u>Ancillary Documents</u>" means any certificate, agreement, document or other instrument, other than this Agreement, to be executed and delivered by any Party in connection with the transactions contemplated hereby.

"<u>Assigned Contracts</u>" means all Contracts and Leases identified in <u>Schedule 2.2(e)</u>.

"<u>Assignment Notice</u>" means that notice given by Seller to all counterparties to the Contracts on or about December 1, 2022 setting forth Seller's best estimate of the monetary payment needed to cure any default under the Contract substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 3</u>.

"<u>Assumed Liabilities</u>" means all obligations of Curepoint that the Purchaser expressly assumes in this Agreement, including the obligations of Curepoint arising under or in connection with the Assigned Contracts after the Closing and payment of any Cure Costs.

"<u>Auction</u>" shall have the meaning set forth in the Bidding Procedures Order.

"<u>Avoidance Actions</u>" means a right to recover, or to obtain other relief arising under or referenced in: § 550 of the Bankruptcy Code; the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act as enacted in any state, or any other law providing for recovery of consideration given, or reversal of any transfer by or for the benefit of Seller.

"<u>Bankruptcy Code</u>" means Title 11 of the United States Code.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Georgia.

"<u>Benefit Plan</u>" means any benefit, retirement, vacation, paid time off, welfare and fringe-benefit agreement, plan, policy and program in effect and covering one or more employees, former employees of Curepoint, current or former directors of Curepoint or the beneficiaries or dependents of any such Persons, and is maintained, sponsored, contributed to, or required to be

contributed to by Curepoint, or under which Curepoint has any material Liability for premiums or benefits.

"Bid" or "Bids" shall have the meaning set forth in the Bidding Procedures Order.

"Bidding Procedures" shall mean the bidding procedures approved pursuant to the Bidding Procedures Order.

"Bidding Procedures Order" means the Order of the Bankruptcy Court entered on November __, 2022 [Doc. No.__].

"Business" means the business activities carried on by or on behalf of Curepoint.

"Chapter 11 Case" means Case No. 22-56501 under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Closing" means the consummation of the transactions contemplated by Article II and the consummation of the transactions contemplated herein.

"Closing Date" means the date on which the Closing occurs.

"Code" means the United States Internal Revenue Code of 1986, as amended.

"Company Intellectual Property" means any Intellectual Property that is owned by or licensed to Curepoint and used in connection with the Business, including the Company Software.

"Confidential Information" means any data or information of Curepoint (including trade secrets) that is valuable to the operation of the Business and not generally known to the public or competitors.

"Contract" means any agreement, contract, commitment or other binding arrangement or understanding, whether written or oral, to which Curepoint is a party and which Curepoint is permitted under the Bankruptcy Code and applicable law to assume and assign.

"Cure Costs" means the amounts necessary to cure all defaults, if any, and to pay all actual pecuniary losses, if any, that have resulted from such defaults, under the Assigned Contracts, in each case as of the Closing Date and to the extent required by Section 365 of the Bankruptcy Code and any order of the Bankruptcy Court; provided, however, that Cure Costs shall only include those amounts listed in a schedule of Cure Costs circulated to counterparties to contracts that Purchaser designates as Assigned Contracts.

"Disclosure Schedules" or "Schedules" mean those schedules attached to this Agreement and made a part hereof.

"Dollars" or "$" means dollars of the United States of America.

"Excluded Assets" shall have the meaning set forth in Section 2.3 hereof.

"Expense Reimbursement" shall have the meaning set forth in the Bidding Procedures Order.

"Facilities" means collectively the premises at which Curepoint operates the Business.

"Final Order" means an Order as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

"GAAP" means, at a given time, United States generally accepted accounting principles, consistently applied.

"Governmental Authority" means any United States federal, state or local or any foreign government, governmental regulatory or administrative authority, agency or commission or any court, tribunal or judicial or arbitral body.

"Intellectual Property" means all of the following in any jurisdiction throughout the world including: (i) inventions (whether or not patentable or reduced to practice), all improvements thereto, and patents, patent applications and patent disclosures, together with all reissuances, continuations, continuations-in-part, revisions, extensions, reexaminations and counterparts thereof; (ii) trademarks, service marks, trade dress, logos, slogans, trade names, corporate names and all other indicia of origin, together with all translations, derivations and combinations thereof, and together with all goodwill associated therewith, and all applications, registrations and renewals in connection therewith; (iii) internet domain names and social media account or user names (including "handles"), whether or not trademarked, all associated web addresses, URLs, websites and web pages, social media accounts and pages, and all content and data thereon or relating thereto, whether or not Copyrights; (iv) works of authorship (whether or not copyrightable), and copyrights, mask works and copyrightable works, and applications, registrations and renewals in connection therewith; (v) trade secrets, know-how and other confidential, proprietary or business information (including ideas, research and development, formulas, compositions, manufacturing, production and other processes and techniques, methods, designs, technical and other data, charts, plans, diagrams, drawings and specifications, customer and supplier lists and business, marketing and other plans, studies and proposals); (vi) computer software (including source code, executable code data, databases and documentation) and systems; (vii) copies and tangible embodiments of any of the foregoing in whatever form or medium; (viii) all other intellectual property and proprietary rights; and (ix) the right to sue and recover for any past, present or future infringement, misappropriation, dilution or any other causes of action, and to recover or collect any damages, proceeds, income, royalties or other payments in connection with or relating to any of the foregoing.

"Knowledge" with respect to Trustee means all facts actually and personally known by the Trustee as to Curepoint, with no duty of inquiry with respect to the matters at hand.

"Law" means any law, statute, regulation, ruling, or Order of, administered or enforced by or on behalf of, any Governmental Authority, or common law.

"Lease" means any agreement pursuant to which Curepoint is a lessee of personal property or a lessee or tenant with respect to real property and/or improvements therein, in each instances as to which the leasehold period has not expired and the Seller is permitted under the Bankruptcy Code and applicable law to assume and assign.

"Liability" means any liability or obligation (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due and regardless of when asserted), including any liability for Taxes.

"<u>License</u>" means all notifications, licenses, permits (including environmental, construction and operation permits), franchises, certificates, certificates of need, accreditations, approvals, exemptions, waivers, classifications, registrations and other similar documents and authorizations issued by any Governmental Authority, and applications therefor; including, without limitation, all certificate of needs applicable to the Business and its National Provider Number (CurePoint NPI: 1891190674, PTAN: 0457).

"<u>Lien</u>" or "<u>Liens</u>" means any lien (statutory or otherwise), hypothecation, encumbrance, Claim, Liability, security interest, interest, mortgage, pledge, restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option, right of recovery, Tax (including foreign, federal, state and local Tax), Order of any Governmental Authority, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claim based on any theory that the Purchaser is a successor, transferee or continuation of Curepoint, Seller or the Business, and (iv) any leasehold interest, License or other right, in favor of a Third Party or a seller, to use any portion of the Sale Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

"<u>Order</u>" means any decree, order, injunction, rule, judgment, consent of or by any Governmental Authority.

"<u>Ordinary Course of Business</u>" means the operation of the Business by Curepoint in the usual and ordinary course in a manner substantially similar to the manner in which Curepoint operated, consistent with past practice prior to the date hereof, subject to any obligations as a debtor under the Bankruptcy Code or any order of the Bankruptcy Court.

"<u>Party</u>" shall have the meaning ascribed to it in the Preamble hereof.

"<u>Permitted Liens</u>" means Liens of record on real property, leasehold estates or personalty that do not in any material respect detract from the value thereof and do not individually or in the aggregate in any material respect interfere with the present use of the property subject thereto.

"<u>Person</u>" means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"<u>Purchase Price</u>" shall have the meaning set forth in <u>Section 3.1(a)</u> hereof.

"<u>Purchaser</u>" shall have the meaning set forth in the preamble hereof.

"<u>Rule</u>" or "<u>Rules</u>" means the Federal Rules of Bankruptcy Procedure.

"<u>Sale Hearing</u>" means the hearing of the Bankruptcy Court to approve this Agreement and the transactions contemplated herein.

"<u>Sale Motion</u>" means the motion filed by Seller in the Bankruptcy Court seeking the sale of the Sale Assets and assumption of the Assigned Contracts pursuant to Sections 363 and 365 of the Bankruptcy Code, filed on November 7, 2022 at Docket No. __ in the Bankruptcy Case.

"<u>Sale Order</u>" means the Final Order of the Bankruptcy Court in respect of the Sale Motion, in form and substance acceptable to the Purchaser and Seller to be entered by the Bankruptcy Court

pursuant to sections 363 and 365 of the Bankruptcy Code that is not subject to Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

"Sale Assets" shall have the meaning set forth in Section 2.1(a) hereof.

"Seller" shall have the meaning set forth in the preamble hereof.

"Stalking Horse Bidder" shall have the meaning set forth in the Bidding Procedures Order.

"Tax" and, with correlative meaning, "Taxes" mean with respect to any Person (i) all federal, state, local, county, foreign and other taxes, assessments or other government charges, including any income, alternative or add-on minimum tax, estimated gross income, gross receipts, sales, use, *ad valorem*, value added, transfer, capital stock franchise, profits, license, registration, recording, documentary, intangibles, conveyancing, gains, withholding, payroll, employment, social security (or similar), unemployment, disability, excise, severance, stamp, occupation, premium, real property, personal property, unclaimed property, environmental or windfall profit tax, custom duty or other tax, governmental fee or other like assessment, charge, or tax of any kind whatsoever, together with any interest, penalty, addition to tax or additional amount imposed by any Governmental Authority responsible for the imposition of any such tax (domestic or foreign) whether such Tax is disputed or not, (ii) Liability for the payment of any amounts of the type described in clause (i) above relating to any other Person as a result of being party to any agreement to indemnify such other Person, being a successor or transferee of such other Person, or being a member of the same affiliated, consolidated, combined, unitary or other group with such other Person, or (iii) Liability for the payment of any amounts of the type described in clause (i) arising as a result of being (or ceasing to be) a member of any Affiliated Group (or being included (or required to be included) in any Tax Return relating thereto).

"Tax Return" means any report, return, declaration, claim for refund or other information or statement relating to Taxes, including any schedules or attachments thereto and any amendments thereof.

"Third Party" means any Person other than Seller, Curepoint, Buyer or any of their respective Affiliates.

"Trustee" shall have the meaning ascribed to it in the Preamble hereof.

## **EXHIBIT B**

**Proposed Sale Order**

**DISCLOSURE SCHEDULES TO ASSET PURCHASE AGREEMENT**

(all Disclosure Schedules shall be updated as of the Closing Date)

Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to such terms in the Agreement.

These Disclosure Schedules are being delivered in accordance with, and are incorporated into and made part of, the Agreement.

These Schedules relate to certain matters concerning the transactions contemplated by the Agreement. Except as otherwise set forth herein, information disclosed in any Schedule shall be deemed to be disclosed on any other Schedule to the extent that it is reasonably apparent from the face of such disclosure that such disclosure is applicable to such other Schedule or Disclosure Schedules.

Nothing in these Schedules will be deemed or will constitute an admission of any Liability of any party to any third party, nor an admission to any third party against the interests of any or all of the parties. Headings have been inserted on and within this Schedule for convenience of reference only and will not change the express description of the corresponding sections of the Agreement. The numbering of these Schedules reflect the corresponding numbering in the Agreement.

**Schedule 2.2(e) – Assigned Contracts**

| Name and Address of Counterparty | Description of Contract | Proposed Cure Amount |
| --- | --- | --- |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

**EXHIBIT 6 TO THE SALE PROCEDURES ORDER**

**<u>Service Parties</u>**

**3333 Old Milton Hyperbaric, LLC**
**3333 Old Milton Parkway, Suite 360**
**Alpharetta, GA 30005**

**3333 Physical Therapy, LLC**
**3333 Old Milton Parkway Suite 180**
**Alpharetta, GA 30005**

**ACS Cleaning Services LLC**
**1509 Telfair Street**
**Dublin, GA 31021**

**Aetna, Inc. (Attn: Aaron McCollough)**
**c/o McGuireWoods LLP**
**77 West Wacker Drive Suite 4100**
**Chicago, IL 60601-1818**

**Aire Serv of Dublin, GA**
**1804 Academy Avenue**
**Dublin, GA 31021**

**Alder Opportunity LP**
**300 Galleria PKWY, #600**
**Atlanta, GA 30339**

**Alder Opportunity LP c/o Marna Friedman**
**3405 Dallas Highway, Suite 827**
**Marietta, GA 30064-6429**

**Aldridge Pite, LLP (Attn: John G. McCullough )**
**Suite 500, Fifteen Piedmont Center**
**3575 Piedmont Road, N.E.**
**Atlanta, GA 30305-1636**

**Alexander's Office Center**
**517 Academy Ave**
**Dublin, GA 31021**

**Alpha Medical Physics, LLC**
**4025 Brooksview Rd**
**Lenoir City, TN 37772**

**Alpharetta Weightloss & Counseling, LLC**
**3333 Old Milton Parkway, Suite 200**
**Alpharetta, GA 30005**

**AM Terminal Holding, LLC**
**189 American Grain St**
**East Saint Louis, IL 62206**

**AMOA Finance LLC.**
**3330 Preston Ridge RD**
**Alpharetta, GA 30005**

**AMOA Finance LLC. (Attn: Michael F. Holbein)**
**Smith Gambrell & Russell, LLP**
**1105 W. Peachtree St., N.E.**
**Suite 1000**
**Atlanta, GA  30309-3592**

**AOA Cares Inc.**
**3330 PRESTON RIDGE ROAD, Suite 300**
**Alpharetta, GA 30005**

**AOA-AMC, LLC**
**3330 Preston Ridge Road Suite 300**
**Alpharetta, GA 30005**

**ARROW CAPITAL SOLUTIONS, INC.**
**9201 EAST DRY CREEK ROAD**
**Englewood, CO 80112-2818**

**Arvest Bank c/o Leslie M. Pineyro**
**699 Piedmont Avenue NE**
**Atlanta, GA 30308-1400**

**Arvest Equipment Finance**
**PO Box 11110**
**Fort Smith, AR 72917-1110**

**Azzure Capital, LLC**
**c/o REGISTERED AGENTS INC.**
**90 State Street Suite 700, Office 40**
**Albany, NY 12207-1707**

BANKERS HEALTHCARE GROUP LLC

(ATTN: BANKRUPTCY DEPT)

201 SOLAR STREET

SYRACUSE, NY 13204-1425

Bankers Healthcare Group, LLC

Attn:  Bankruptcy Dept

201 Solar Street

Syracuse, NY 13204-201

Bankers Healthcare Group, LLC

(ATTN: Albert Crawford)

10234 W State Road 84

Fort Lauderdale, FL 33324

Brown Business Development, LLC

11175 Cicero Drive, Suite 100

Alpharetta, GA 30022

CHESAPEAKE BANK

97 N. MAIN ST.

Kilmarnock, VA 22482-8501

CHTD COMPANY

P.O. BOX 2576

Springfield, IL 62708-2576

Cigna HealthCare of Georgia, Inc.

(Attn: Director of Provider Contracting)

3500 Piedmont Road, Suite 200

Atlanta, GA 30305

CITI CAPITAL NY, LLC

90 STATE STREET, SUITE 700, OFFICE 40

Albany, NY 12207-1707

City of Atlanta Fund, LLC

11175 Cicero Drive, Suite 100

Alpharetta, GA 30022

CLG Servicing, LLC

Gillman, Bruton& Capone, LLC

770 Amboy Avenue

Edison, NJ 08837-3224

**Click Capital Group, LLC**
**7901 4th St N., Ste 300**
**Saint Petersburg, FL 33702-4399**

**Coles Barton LLP (Attn: Aaron P.M. Tady)**
**Suite 100, 150 South Perry Street**
**Lawrenceville, GA 30046-4857**

**Coles Barton LLP (Attn: Thomas M. Barton)**
**150 South Perry Street, Suite 100**
**Lawrenceville, GA 30046-4857**

**CoreCivic of Tennessee, LLC (Attn: General Counsel)**
**5501 Virginia Way, Suite 110**
**Brentwood, TN 37027**

**CoreCivic of Tennessee, LLC (Attn: VP Health Services)**
**5501 Virginia Way, Suite 110**
**Brentwood, TN 37027**

**Culhane Meadows PLLC**
**3330 Cumberland Blvd SE #500**
**Atlanta, GA 30339**

**Curepoint Dublin, LLC (c/o Michael Miles)**
**300 Hayward Lane**
**Alpharetta, GA 30022**

**Curepoint LLC**
**11175 Cicero Drive Suite 100**
**Alpharetta, GA 30022-1179**

**Diverse Capital LLC**
**750 Main Street Suite 906**
**Hartford, CT 6103**

**Dooley Investment Holdings**
**1071 Ridge Pointe**
**Athens, GA 30606**

**DTL Investments, LLC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**Dublin Construction Co.**
**305 S Washintong St**
**Dublin, GA 31021**

**Eclipse Advisors, LLC**
**11175 Cicero Drive Suite 100**
**Alpharetta, GA 30022**

**Eclipse Staffing, LLC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022-1179**

**Elekta, Inc.**
**400 Perimeter Center Ter NE, Ste. 50**
**Atlanta, GA 30346**

**Eversheds Sutherland (US) LLP (Attn: David Wender)**
**Suite 2300, 999 Peachtree St., NE**
**Atlanta, GA 30309-3996**

**Eversheds Sutherland, LLP (Attn: David A. Wender, Chapter 11 Trustee)**
**999 Peachtree St, NE Ste 2300**
**Altanta, GA 30309-4416**

**Eyewonder, Inc.**
**191 Peachtree ST NE**
**Atlanta, GA 30303-1740**

**First American Commercial Bancorp, Inc.**
**211 High Point Drive**
**Victor, NY 14564-1061**

First Liberty Building and Loan
PO Box 2567
Newnan, GA 30264-2567

First Liberty Capital Partners, LLC
c/o The Wachter Law Firm
106 Hammond Drive NE
Atlanta, GA 30328-4806

GEL Funding, LLC
5308 13TH AVENUE, SUITE 324
Brooklyn, NY 11219-5198

Georgia Department of Labor
148 Andrew Young Inter. Blvd Room 738
Atlanta, GA 30303-1733

Georgia Department of Revenue
ARCS – Bankruptcy
1800 Century Blvd NE
Atlanta, GA 30345

Georgia Department of Revenue
ARCS – Bankruptcy
1800 Century Blvd NE, Suite 9100
Atlanta, GA 30345

Georgia Department of Revenue
ARCS – Bankruptcy
1800 Century Blvd NE, Suite 1900
Atlanta, GA 30345

Georgia Department of Revenue
Compliance Division
ARCS Bankruptcy
1800 Century Blvd NE, Suite 9100
Atlanta, GA 30345-3202

Georgia Dept. of Labor
Suite 826
148 Andrew Young Inter. Blvd., NE
Atlanta, GA 30303-1751

Georgia Dept. of Labor
Suite 910
148 Andrew Young Inter. Blvd., NE
Atlanta, GA 30303-1751

Gillman, Bruton & Capone, LLC
770 Amboy Avenue
Edison, NJ 08837-3224

Gillman, Bruton & Capone, LLC
(Attn: Justin M. Gillman)
770 Amboy Avenue
Edison, NJ 08837-3224

Glass Doctor- Dublin
109 S. Union St
Dublin, GA 31021

Hangers Cleaners
1101-A Hillcrest Pkwy
Dublin, GA 31021

Harvey Lee Simpson, III, MD
500 GA Highway 22 W
Milledgeville, GA 31061-8122

Health Resources and Services Administration
c/o Greg Bongiovanni
61 Forsyth St SW, Suite 5M60 AFC
Atlanta, GA 30303-8931

Hewlett-Packard Financial Services Company
200 Connell Drive
Berkeley Heights, NJ 07922-2816

HI BAR CAPITAL LLC
1825 65TH ST
Brooklyn, NY 11204-3819

HST, Inc.
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022

Hunter Maclean Exley & Dunn P.C.
(Attn: Francesca Macchiaverna)
P. O. Box 9848
Savannah, GA 31412-0048

**Hunter Maclean Exley & Dunn, P.C.**
**(Attn: Taylor L. Dove)**
**200 E. Saint Julian Street, P.O. Box 9848**
**Savannah, GA 31412-0048**

**IBS of America**
**3732 Profit Way**
**Chesapeake, VA 23323**

**IBS Solutions, Inc.**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**Innovative Business Practices, Inc.**
**11175 Cicero Drive**
**Alpharetta, GA 30022**

**Innovatum Capital Partners , LLC**
**4590 Macarthur Blvd Ste 500**
**Newport Beach, CA 92660**

**Innovatum Capital Partners LLC**
**1664 Tustin Avenue**
**West Covina, CA 92627**

**Intelligent Network Solutions, Inc.**
**11175 CiceroDrive STE 100**
**Alpharetta, GA 30022**

**Internal Revenue Service**
**P. O. Box 7346**
**Philadelphia, PA 19101-7346**

**Internal Revenue Service, CIO**
**P.O. Box 7346**
**Philadelphia, PA 19101-7346**

**James Seward**
**1101 Hillcrest Pkwy Suite 103**
**Dublin, GA 31021**

JCFJR Holdings, LLC
24 Drayton St., Suite 213
Savannah, GA 31401

Jeri L. Miller
236 Ridge Circle
Dublin, GA 31021

Jones and Walden, LLC
(Attn: Leslie M. Pineyro)
699 Piedmont Avenue NE
Atlanta, GA 30308-1400

Junior Raiders Baseball, Inc.
PO Box 3206
Alpharetta, GA 30023-3206

Kinetic Subsidiary, Inc.
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022

Knowledge Republic Holdings, LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022

Lafayette Bank
340 West Main Street
Mayo, FL 32066-4166

LaFayette State Bank
340 West Main Street
P.O. Box 108
Mayo, FL 32066-0108

LaFayette State Bank
(Attn: David A. Garland)
2829 Old Dawson Road
Albany, GA 31707-1402

Landauer
2 Science Road
Glenwood, IL 60425

Law Office of J. Michael Levengood, LLC
(Attn: J. Michael Levengood)
Suite 208, 150 S. Perry Street
Lawrenceville, GA 30046-4857

Lori Miles
300 Hayward Lane
Alpharetta, GA 30022

Los Locos Amigos Cantina, LLC
1030 BROADWAY
Columbus, GA 31901

Macey, Wilensky & Hennings, LLP
(Attn: Todd Eugene Hennings, Chapter 11
Subchapter V Trustee)
5500 Interstate North Parkway, Suite 435
Sandy Springs, GA 30328-4690

Mark McCord
2007 Breckinridge Lane
Alpharetta, GA 30005-3409

Mark Miles
12720 N Douglas Blvd
Jones, OK 73049

Mark W. McCord
2007 Breckenridge Lane
Alpharetta, GA 30005-3409

McKesson Medical-Surgical, Inc.
6651 Gate Parkway
Jacksonville, FL 32256-8075

MEC Capital, Inc.
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022-1179

MEC Capital, Inc.
c/o Michael Miles
300 Hayward Lane
Alpharetta, GA 30022-6440

**Medical Management Institute**
**3180 MATHIESON DR UNIT 712**
**Alpharetta, GA 30022**

**Medical Management Institute, Inc.**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022-1179**

**Medical Management Institute, Inc.**
**c/o Micha**
**250 Pharr Road NE Unit 212**
**Atlanta, GA 30305-2271**

**Medical Management Institute, Inc.**
**c/o Michael Miles**
**250 Pharr Road NE, Unit 212**
**Atlanta, GA 30305**

**Medicus IT, LLC (Attn: Chris Jann)**
**100 North Point Center East, Suite 150**
**Alpharetta, GA 30022**

**Michael Miles**
**300 Hayward Lane**
**Alpharetta, GA 30022**

**Middle Georgia Business Products**
**909 Hillcrest Parkway Ste. C**
**Dublin, GA 31021**

**Mills Floral Co.**
**4550 PEACHTREE LAKES DR**
**Duluth, GA 30096-3092**

**Milner**
**5125 Peachtree Industrial Blvd**
**Norcross, GA 30092**

**Milo Sussex, LLC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

Milo Sussex, LLC
3180 Mathienson Drive Suite 712
Atlanta, GA 30305

Mittere Inc.
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022

Mittere Tax & Advisory, LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022-1179

Mittere, Inc.
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022-1179

MMI Educational Technologies, LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022

Moore, Clarke, DuVall & Rodgers, PC
(Attn: David A. Garland)
2829 Old Dawson Road
PO Drawer 71727
Albany, GA 31708-1727

Morris Bank
301 Bellevue Avenue
Dublin, GA 31021-6105

Morris Bank
301 Bellevue Avenue
Dublin, GA 31040-0520

MRT Acquisition, LLC
2813 HIGHWAY 64
Apex, NC 27502

Newtek Small Business Finance
c/o Corporation Service Company
2 SUN COURT, Suite 400
Norcross, GA 30092-2865

**Newtek Small Business Finance**
**4800 T-Rex Avenue, Suite 120**
**Boca Raton, FL 33431-4479**

**Newtek Small Business Finance, LLC**
**1981 Marcus Avenue, Suite 130**
**Lake Success, NY 11042-1046**

**NFG Advance, LLC**
**1308 KINGS HWY**
**Brooklyn, NY 11229-1904**

**NORTH AMERICAN BANKING COMPANY**
**9260 HUDSON RD**
**Saint Paul, MN 55125-9103**

**Northwinds Leasing, LLC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022-1179**

**Northwinds Leasing, LLC**
**c/o Michael Miles**
**300 Hayward Lane**
**Alpharetta, GA 30022-6440**

**ODK Capital, LLC**
**1400 Broadway**
**New York, NY 10018-5300**

**Office of the U.S. Trustee**
**(Attn: Lindsay P. S. Kolba )**
**Suite 362, 75 Ted Turner Drive, S.W.**
**Atlanta, GA 30303-3330**

**OnDeck Capital**
**1400 Broadway**
**New York, New York 10018**

**Parkview Advance**
**400 Main Street**
**Stamford, CT 06901-3000**

**Phillip Miles**
**300 Hayward Lane**
**Alpharetta, GA 30022**

**Phillips Healthcare**
**13560 Morris Rd**
**Alpharetta, GA 30004**

**Physician Financial Partners, LLC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022-1179**

**Pineland Telephone Cooperative, Inc.**
**30 S Rountree St**
**Metter, GA 30439**

**Pitney Bowes Global Financial Services LLC**
**3001 Summer Street**
**Stamford, CT 6926**

**Plexe, LLC**
**6295 Greenwood Plaza Blvd Suite 100**
**Greenwood Village, CO 80111-4978**

**PointOne Capital, LLC**
**1825 65th Street**
**Brooklyn, NY 11204-3819**

**PointOne Capital, LLC**
**90 STATE STREET, SUITE 700**
**Office 40**
**Albany, NY 12207-1707**

**Premier Imaging Medical Systems, Inc.**
**100 North Ave NE**
**Rome, GA 30161**

**Premium Merchant Funding 18, LLC**
**55 Water Street, 50th FL**
**New York, NY 10041-3203**

**Premium Merchant Funding, LLC**
**40 Wall St. 5th Floor**
**New York, NY 10005-1472**

**PRSOG LLC**
**11175 Cicero Drive Suite 100**
**Alpharetta, GA 30022**

**Qfix**
**440 Church Road**
**Avondale, PA 19311**

**Quench USA, Inc**
**630 Allendale Rd, Ste. 200**
**King of Prussia, PA 19406**

**Radiation Business Solutions, Inc.**
**1044 Jackson Felts Rd**
**Joelton, TN 37080**

**RJJ Capital, Inc.**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**RJJ Capital, Inc.**
**2757 GROVE ST NE**
**Atlanta, GA 30319**

**Rountree Leitman Klein & Geer, LLC**
**(Attn: Caitlyn Powers)**
**Suite 350, 2987 Clairmont Road**
**Atlanta, GA 30329-4435**

**Rountree Leitman Klein & Geer, LLC**
**(Attn: William A. Rountree)**
**Century Plaza I, Suite 350, 2987 Clairmont Road**
**Atlanta, GA 30329-4406**

**Rountree, Leitman, Klein & Geer, LLC**
**(Attn: Will B. Geer )**
**Century Plaza I, 2987 Clairmont Road, Suite 350**
**Atlanta, GA 30329-4435**

**RS&A, Inc**
**465 Forum Parkway**
**Rural Hall, NC 27045**

**Schorr Line Enterprises, Inc.**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**Secretary of the Treasury**
**15th & Pennsylvania Avenue, NW**
**Washington, DC 20200**

**Secure Capital, LLC**
**323 Sunny Isles Beach Blvd., Ste. 503**
**Sunny Isles Beach, FL 33160**

**Shanna M. Kaminski**
**P.O. Box 247**
**Grass Lake, MI 49240-0247**

**Smith Gambrell & Russell, LLP**
**1105 W. Peachtree St., N.E., Suite 1000**
**Atlanta, GA 30309-3592**

**Smith, Gambrell & Russell, LLP**
**(Attn: Brian P. Hall)**
**1105 W. Peachtree Street NE Suite 1000**
**Atlanta, GA 30309-3592**

**Smith, Gambrell & Russell, LLP**
**(Attn: Michael F. Holbein)**
**1105 West Peachtree St., N.E. Suite 1000**
**Atlanta, GA 30309-3592**

**SPARK FUNDING, LLC DBA FUNDAMENTAL CAPITAL**
**100 GARDEN CITY PLAZA #410**
**Garden City, NY 11530-3216**

**Stericycle, Inc.**
**2355 Waukegan Rd**
**Bannockburn, IL 60015**

**Sterling Capital Group, LLC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**Sun Nuclear Corporation**
**3275 Suntree Blvd.**
**Melbourne, FL 32940**

**The Locklear Company**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**The Locklear Company**
**3180 Mathieson Drive Suite 712**
**Atlanta, GA 30305**

**The Wachter Law Firm (Attn: Fred B. Wachter)**
**106 Hammond Drive NE**
**Atlanta, GA 30328-4806**

**Thomas M. Barton**
**Coles Barton LLP**
**150 South Perry Street Suite 100**
**Lawrenceville, GA 30046-4857**

**U. S. Securities and Exchange Commission**
**Office of Reorganization**
**Suite 900**
**950 East Paces Ferry Road, NE**
**Atlanta, GA 30326-1382**

**U.S. Bank, N.A. d/b/a U.S. Bank Equipment Fi**
**1310 Madrid Street**
**Marshall, MN 56258-4099**

**U.S. Small Business Administration**
**200 West Santa Ana Blvd., Ste 740**
**Santa Ana, CA 92701-7534**

**United States Attorney**
**Northern District of Georgia**
**75 Ted Turner Drive SW, Suite 600**
**Atlanta, GA 30303-3309**

**United States Trustee**
**362 Richard Russell Federal Building**
**75 Ted Turner Drive, SW**
**Atlanta, GA 30303-3315**

**US Bank, N.A.**
**1310 Madrid Street**
**Marshall, MN 56258-4099**

**US Bank, N.A.**
**6730 VIP Parkway**
**Syracuse, NY 13211-7326**

**US Small Business Administration**
**233 Peachtree St. NE., Suite 300**
**Atlanta, GA 30303-1553**

**Wallace Family Enterprise, LLC**
**421 NW 13th Street Suite 210**
**Oklahoma City, OK 73103**

**Water Machine, LLC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**World Business Solutions**
**1801 NE 123rd St. STE 314, North**
**North Miami, FL 33181**

**Z.E.R.O. Holding Co., LLC**
**2132 JACKSON PKWY**
**Atlanta, GA 30318**

**Zen Capital**
**3131 NE 7th**
**Miami, FL 33137**

**Zen Capital c/o Trevor Talbot**
**602 NE 38th Street**
**Fort Lauderdale, FL 33334-2928**

**Zeroholding LLC d/b/a Zeroholding OKC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**Zeroholding LLC d/b/a Zerorez**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022**

**Zeroholding, LLC**
**11175 Cicero Drive, Suite 100**
**Alpharetta, GA 30022-1179**

**ZFS Inc.**
**4282 Segovia Terrace**
**Las Vegas, NV 89121**

**ZFS Inc. d/b/a ZFS Inc Huntsville**
**4282 Segovia Terrace**
**Las Vegas, NV 89121**

**ZFS Inc. d/b/a ZFS Inc Nashville**
**4282 Segovia Terrace**
**Las Vegas, NV 89121**

**ZFS Inc. d/b/a ZFS Inc Oklahoma**
**4282 Segovia Terrace**
**Las Vegas, NV 89121**

**Vivieon Kelly Jones**
**Assistant U.S. Attorney**
**United States Attorney's Office**
**75 Ted Turner Drive SW, Suite 600**
**Atlanta, GA  30303**

**Brian J. Malcom**
**Waller Lansden Dortch & Davis, LLP**
**1901 6th Avenue North, Suite 1400**
**Birmingham, AL  35203**