

# Curepoint Cancer Center
**Dublin, GA**
**Month at a Glance**
*December 2022*

## Twelve Month Trends



Legend: ■ Net Charges  ■ Net Collections

## Month End Statistics

| | | |
|---|---|---|
| Net Charges | $ | 237,727.56 |
| Net Collections | $ | 306,263.86 |
| Days in A/R (DSO) | | 28 |
| Net Collections Percent | | 129% |
| Accounts Receivable | $ | 309,028.93 |
| A/R Over 90 Days | $ | 87,972.83 |

## Payer and Utilization Mix

| | |
|---|---|
| Number of New Starts | 5 |
| Average Daily Treatments | 18 |
| IMRT Utilization | 80% |
| Medicare Percentage | 60% |



**Curepoint Cancer Center**
**Dublin, GA**
**Summary & Key Performance Indicators**
**December 2022**

| | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 | Average 12 months | Average 2021 | YTD Total 2022 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Charges** | | | | | | | | | | | | | | | |
| Number of Daily Treatments | 362 | 341 | 408 | 341 | 374 | 440 | 287 | 395 | 408 | 469 | 408 | 313 | 379 | 348 | 4546 |
| Gross Charges | $1,657,652.00 | $1,501,842.00 | $1,895,506.00 | $1,499,506.00 | $1,781,060.00 | $1,790,326.00 | $1,365,382.00 | $1,783,865.00 | $1,798,458.00 | $2,004,070.00 | $1,659,612.00 | $1,234,275.00 | $1,664,296.17 | $1,626,800.17 | $19,971,554.00 |
| Adjustments | $1,239,928.87 | $1,198,230.11 | $1,526,083.46 | $1,195,084.24 | $1,430,626.30 | $1,413,949.39 | $1,186,805.93 | $1,417,185.59 | $1,413,603.77 | $1,606,206.84 | $1,296,459.69 | $996,547.44 | $1,326,726.30 | $1,324,488.17 | $15,920,715.63 |
| Net Charges | $417,723.13 | $303,611.89 | $369,422.54 | $304,417.76 | $350,433.70 | $376,376.61 | $178,576.07 | $366,679.41 | $384,854.23 | $397,863.16 | $363,152.31 | $237,727.56 | $337,569.86 | $302,312.00 | $4,050,838.37 |
| **Collections** | | | | | | | | | | | | | | | |
| Payments | $310,682.11 | $296,265.77 | $370,439.09 | $290,518.60 | $278,751.86 | $263,320.71 | $297,893.95 | $334,592.96 | $435,531.80 | $445,369.54 | $378,158.49 | $306,263.86 | $327,422.03 | $311,622.52 | $4,007,788.74 |
| Refunds | $0.00 | $0.00 | $0.00 | $0.00 | $1,066.77 | $0.00 | $0.00 | $360.92 | $0.00 | $0.00 | $405.61 | $0.00 | $152.78 | $425.98 | $1,833.30 |
| Net Collections | $310,682.11 | $296,265.77 | $370,439.09 | $290,518.60 | $277,685.09 | $263,320.71 | $297,893.95 | $334,232.04 | $435,531.80 | $445,369.54 | $377,752.88 | $306,263.86 | $327,269.26 | $311,196.54 | $4,005,955.44 |
| **Write Offs** | | | | | | | | | | | | | | | |
| Bad Debt | $3,700.05 | $6,424.60 | $26,080.00 | $5,662.79 | $9,860.63 | $622.29 | $12,748.47 | $7,167.81 | $12,448.60 | $586.09 | $5,670.66 | $14,269.20 | $8,770.10 | $9,289.51 | $105,241.19 |
| Total Write-Offs | $3,700.05 | $6,424.60 | $26,080.00 | $5,662.79 | $9,860.63 | $622.29 | $12,748.47 | $7,167.81 | $12,448.60 | $586.09 | $5,670.66 | $14,269.20 | $8,770.10 | $9,289.51 | $105,241.19 |
| **Key Performance Indicators** | | | | | | | | | | | | | | | |
| Gross Collections % | 19% | 20% | 20% | 19% | 16% | 15% | 22% | 19% | 24% | 22% | 23% | 25% | 20% | 19% | 20% |
| Net Collections % | 74% | 98% | 100% | 95% | 79% | 70% | 167% | 91% | 113% | 112% | 104% | 129% | 97% | 103% | 99% |
| Bad Debt % Gross | 0% | 0% | 1% | 0% | 1% | 0% | 1% | 0% | 1% | 0% | 0% | 1% | 1% | 1% | 1% |
| 12 Months Bad Debt % | 2% | 2% | 2% | 2% | 2% | 2% | 2% | 2% | 3% | 3% | 2% | 3% | 3% | 3% | 3% |
| Charges/Procedure | $4,579.15 | $4,404.23 | $4,645.85 | $4,397.38 | $4,762.19 | $4,068.92 | $4,757.43 | $4,516.11 | $4,407.99 | $4,273.07 | $4,067.68 | $3,943.37 | $4,393.21 | $4,679.20 | $4,393.21 |
| Payments/Procedure | $858.24 | $868.81 | $907.94 | $851.96 | $745.33 | $598.46 | $1,037.96 | $847.07 | $1,067.48 | $949.62 | $926.86 | $978.48 | $864.29 | $896.33 | $881.61 |
| Days in A/R | 48 | 43 | 37 | 42 | 45 | 55 | 50 | 51 | 45 | 32 | 31 | 28 | 42 | 46 | |
| Total Work RVU | 1004 | 894 | 1122 | 825 | 1154 | 990 | 877 | 965 | 1232 | 1384 | 1171 | 861 | 1,040 | 961 | 12478 |
| Net Charges/Work RVU | $416.10 | $339.72 | $329.38 | $369.10 | $303.71 | $380.23 | $203.62 | $380.02 | $312.38 | $287.47 | $310.12 | $276.11 | $324.65 | $314.43 | $324.65 |
| Payments/Work RVU | $309 | $331 | $330 | $352 | $241 | $266 | $340 | $346 | $354 | $322 | $323 | $356 | $315 | $324 | $321 |
| **Accounts Receivable** | | | | | | | | | | | | | | | |
| 0-30 days | $244,093.78 | $208,232.22 | $225,538.96 | $203,983.88 | $240,844.65 | $317,378.52 | $142,695.44 | $264,635.88 | $258,752.35 | $224,842.64 | $182,702.17 | $150,893.91 | $222,049.53 | $176,073.06 | |
| | 52% | 44% | 51% | 45% | 47% | 50% | 29% | 51% | 56% | 55% | 47% | 49% | 48% | 37% | |
| 31-60 days | $27,296.31 | $70,318.19 | $35,584.96 | $70,167.10 | $59,787.28 | $111,917.32 | $136,835.88 | $53,965.99 | $88,168.21 | $44,878.58 | $50,351.11 | $28,306.52 | $64,798.12 | $49,361.85 | |
| | 6% | 15% | 8% | 15% | 12% | 18% | 27% | 10% | 19% | 11% | 13% | 9% | 14% | 10% | |
| 61-90 days | $16,799.04 | $20,186.63 | $38,529.49 | $23,752.18 | $61,790.92 | $31,295.34 | $55,898.08 | $65,714.38 | $26,993.16 | $44,172.80 | $31,743.19 | $41,855.67 | $38,227.57 | $29,035.32 | |
| | 4% | 4% | 9% | 5% | 12% | 5% | 11% | 13% | 6% | 11% | 8% | 14% | 8% | 6% | |
| 91-120 days | $12,139.70 | $10,696.23 | $22,940.46 | $32,354.59 | $30,663.66 | $48,150.74 | $25,958.61 | $24,099.98 | $15,938.66 | $20,909.98 | $37,056.22 | $28,420.73 | $25,777.46 | $21,029.61 | |
| | 3% | 2% | 5% | 7% | 6% | 8% | 5% | 5% | 3% | 5% | 9% | 9% | 6% | 5% | |
| Over 120 days | $172,399.33 | $164,216.41 | $123,959.26 | $124,531.75 | $124,590.97 | $121,369.17 | $136,656.73 | $114,908.07 | $70,345.75 | $77,301.66 | $89,981.74 | $59,552.10 | $114,984.41 | $193,387.42 | |
| | 36% | 35% | 28% | 27% | 24% | 19% | 27% | 22% | 15% | 19% | 23% | 19% | 25% | 42% | |
| Total A/R | $472,728.16 | $473,649.68 | $446,553.13 | $454,789.50 | $517,677.48 | $630,111.09 | $498,044.74 | $523,324.30 | $460,198.13 | $412,105.66 | $391,834.43 | $309,028.93 | $465,837.10 | $468,887.26 | |
| **Patient Balances** | | | | | | | | | | | | | | | |
| Patient Aging (direct & self pay) | $91,764.74 | $103,394.58 | $93,427.58 | $89,148.61 | $91,183.29 | $81,269.03 | $92,350.53 | $64,706.93 | $91,771.96 | $99,967.21 | $87,698.68 | $49,434.90 | $86,343.17 | $56,719.09 | |
| % of EOM Aging | 19% | 22% | 21% | 20% | 18% | 13% | 19% | 12% | 20% | 24% | 22% | 16% | 19% | 12% | |
| Patient bal > 90 | $43,080.18 | $60,922.32 | $47,248.66 | $63,641.72 | $59,816.75 | $64,146.11 | $75,482.28 | $48,185.90 | $66,360.33 | $69,143.26 | $59,079.49 | $25,445.77 | $56,879.40 | $34,397.79 | |
| % of amt > 90 | 23% | 35% | 32% | 41% | 39% | 38% | 46% | 35% | 77% | 70% | 47% | 29% | 40% | 16% | |
| Patient Collections | $7,154.66 | $12,528.25 | $8,375.12 | $11,946.05 | $3,159.29 | $6,405.69 | $2,545.70 | $8,304.97 | $1,038.58 | $3,695.00 | $4,061.88 | $6,399.46 | $6,301.22 | $4,627.42 | $75,614.65 |
| % of Total Collections | 2.3% | 4.2% | 2.3% | 4.1% | 1.1% | 2.4% | 0.9% | 2.5% | 0.2% | 0.8% | 1.1% | 2.1% | 1.9% | 1% | 2% |

**Radiation Business SOLUTIONS**

## Current Cancer Point

**Dublin, GA**

**CPT Utilization Report**

*December 2022*

Based on Charges Submitted for the Month
Code Summary

| CPT | Description | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 77014 | CT Imaging | 343 | 307 | 411 | 267 | 371 | 415 | 274 | 388 | 396 | 455 | 373 | 261 |
| 77261 | Clinical Tx Plan: S | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77262 | Clinical Tx Plan: I | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77263 | Clinical Tx Plan: C | 12 | 15 | 19 | 15 | 21 | 14 | 16 | 13 | 17 | 19 | 11 | 8 |
| 77280 | Simulation: S | 20 | 18 | 19 | 19 | 18 | 23 | 15 | 4 | 7 | 25 | 17 | 11 |
| 77290 | Simulation: C | 17 | 18 | 21 | 15 | 25 | 19 | 19 | 5 | 4 | 22 | 13 | 9 |
| 77293 | Resp Motion Mgmt | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77295 | Simulation 3D | 6 | 4 | 8 | 12 | 9 | 5 | 2 | 5 | 5 | 2 | 3 | 2 |
| 77300 | Basic Dosimetry Calc | 181 | 107 | 138 | 103 | 142 | 100 | 107 | 131 | 140 | 133 | 100 | 50 |
| 77301 | IMRT Planning | 9 | 7 | 8 | 4 | 13 | 7 | 11 | 10 | 12 | 13 | 8 | 6 |
| 77306 | Isodose Plan: I | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77307 | Isodose Plan: C | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77321 | Special Therapy Plan | 5 | 2 | 1 | 0 | 2 | 5 | 3 | 1 | 0 | 2 | 1 | 1 |
| 77331 | Special Dosimetry | 5 | 3 | 1 | 0 | 2 | 6 | 3 | 1 | 0 | 2 | 1 | 1 |
| 77332 | Treatment Device: S | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77333 | Treatment Device: I | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77334 | Treatment Device: C | 50 | 38 | 67 | 58 | 57 | 44 | 28 | 31 | 38 | 39 | 28 | 23 |
| 77336 | Physics Consultation | 68 | 66 | 74 | 64 | 78 | 88 | 59 | 79 | 78 | 98 | 75 | 66 |
| 77338 | MLC for IMRT | 10 | 11 | 9 | 6 | 14 | 12 | 12 | 16 | 15 | 16 | 8 | 8 |
| 77370 | Special Phys Consult | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 |
| 77372 | SRS Treatment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77373 | SBRT Stereotactic Treatment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77387 | Guidance for Localization | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 28 | 30 |
| 77417 | Port Films | 4 | 2 | 1 | 20 | 3 | 1 | 0 | 2 | 2 | 2 | 1 | 0 |
| 77427 | Weekly Treatment: 5 | 71 | 67 | 76 | 61 | 79 | 83 | 59 | 76 | 77 | 91 | 71 | 68 |
| 77431 | Short Course Treatment <2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77432 | SRS Management | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77435 | SBRT Management | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77470 | Special Tx Procedure | 4 | 2 | 7 | 4 | 4 | 2 | 2 | 2 | 6 | 4 | 5 | 4 |
| 96372 | SQIM Tx, Prophy, Dx | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99201 | New Patient Visit: 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99202 | New Patient Visit: 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99203 | New Patient Visit: 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99204 | New Patient Visit: 4 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99205 | New Patient Visit: 5 | 10 | 15 | 20 | 11 | 21 | 16 | 12 | 7 | 15 | 13 | 11 | 5 |
| 99211 | Follow up visit: 1 | 17 | 23 | 17 | 18 | 10 | 17 | 9 | 4 | 0 | 13 | 15 | 11 |
| 99212 | Follow up visit: 2 | 9 | 7 | 2 | 7 | 4 | 9 | 18 | 10 | 14 | 18 | 11 | 7 |
| 99213 | Follow up visit: 3 | 17 | 14 | 13 | 10 | 6 | 17 | 2 | 2 | 0 | 6 | 0 | 0 |
| 99214 | Follow up visit: 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 99215 | Follow up visit: 5 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| 99221 | Init Pat Care: Low | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99222 | Init Pat Care: Moder | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99223 | Init Pat Care: High | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99231 | Subsequent Patient Care:  Low | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99232 | Subsequent Patient Care: Moder | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99244 | Outpatient Cons: 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99245 | Outpatient Cons: 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99253 | Consult - Inpatient | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| G6012 | Dly Tx C 6 | 20 | 41 | 45 | 35 | 36 | 104 | 29 | 3 | 43 | 39 | 45 | 37 |
| G6013 | Dly Tx C 11 | 149 | 63 | 50 | 86 | 126 | 96 | 59 | 37 | 53 | 77 | 20 | 26 |
| G6015 | IMRT Delivery | 193 | 237 | 313 | 220 | 212 | 240 | 199 | 355 | 312 | 353 | 343 | 250 |
| J9217 | Lupron | | | | | | | | | | | | |
| | | 1220 | 1067 | 1321 | 1035 | 1254 | 1324 | 940 | 1182 | 1234 | 1443 | 1188 | 884 |



**Curepoint Cancer Point**

**Dublin, GA**

**CPT Utilization Report**

*December 2022*

Based on Charges Submitted for the Month
Code Summary

| CPT | Description | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 |
|-----|-------------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| | New Consults | 10 | 15 | 21 | 11 | 21 | 16 | 12 | 7 | 15 | 13 | 11 | 5 |
| | Average Pts Treated & billed | 17 | 17 | 18 | 16 | 18 | 20 | 14 | 17 | 19 | 23 | 20 | 18 |
| | IMRT Treatments | 193 | 237 | 313 | 220 | 212 | 240 | 199 | 355 | 312 | 353 | 343 | 250 |
| | 3D Treatments | 169 | 104 | 95 | 121 | 162 | 200 | 88 | 40 | 96 | 116 | 65 | 63 |
| | Total Treatments | 362 | 341 | 408 | 341 | 374 | 440 | 287 | 395 | 408 | 469 | 408 | 313 |



**Curepoint Cancer Center**
Dublin, GA
Lockbox Detail Report
*December-22*

| Deposit | Lockbox | Medicare | Commercial ACH | Credit card payments | Total Deposits | MSQ Posted | 2406 | UF Posted | Difference | Notes / Weekly Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/2022 | 220.99 | 951.55 | 11,796.86 | 100.00 | 13,069.40 | 320.99 | | 12,748.41 | - | |
| 12/2/2022 | 170.83 | 872.61 | 17,182.18 | 61.43 | 18,287.05 | 130.83 | | 18,156.22 | - | |
| 12/3/2022 | | | | | - | | | | - | |
| 12/4/2022 | | | | | - | | | | - | |
| 12/5/2022 | 700.37 | 1,612.77 | 8,627.38 | | 10,940.52 | 152.79 | | 10,787.73 | - | |
| 12/6/2022 | | | 6,678.58 | 2,574.91 | 9,253.49 | 100.00 | | 9,153.49 | - | |
| 12/7/2022 | | 351.90 | 6,826.37 | 3,600.00 | 10,778.27 | 100.00 | | 10,678.27 | - | |
| 12/8/2022 | | | 17,355.54 | | 17,355.54 | | | 17,355.54 | - | |
| 12/9/2022 | | | 43,297.41 | | 43,297.41 | | | 43,297.41 | - | |
| 12/10/2022 | | | | | - | | | | - | |
| 12/11/2022 | | | | | - | | | | - | |
| 12/12/2022 | 4,083.13 | 2,006.58 | 1,097.47 | | 7,187.18 | 40.00 | | 7,147.18 | - | |
| 12/13/2022 | | 221.77 | 6,914.04 | 600.00 | 7,735.81 | | | 7,735.81 | - | |
| 12/14/2022 | 69.50 | 703.80 | 5,015.44 | 1,138.18 | 6,926.92 | | | 6,926.92 | - | |
| 12/15/2022 | 258.83 | 1,055.27 | 22,136.73 | 56.21 | 23,507.04 | | | 23,507.04 | - | |
| 12/16/2022 | | 1,265.37 | 29,500.17 | | 30,765.54 | | | 30,765.54 | - | |
| 12/17/2022 | | | | | - | | | | - | |
| 12/18/2022 | | | | | - | | | | - | |
| 12/19/2022 | | 351.90 | 2,863.79 | 30.00 | 3,245.69 | | | 3,245.69 | - | |
| 12/20/2022 | 574.36 | 908.97 | 5,351.82 | | 6,835.15 | | | 6,835.15 | - | |
| 12/21/2022 | | 703.80 | 2,393.32 | | 3,097.12 | | 3,097.12 | | - | |
| 12/22/2022 | | 872.61 | 19,181.22 | | 20,053.83 | | 20,053.83 | | - | |
| 12/23/2022 | | | 38,426.26 | 45.00 | 38,471.26 | | 38,471.26 | | - | |
| 12/24/2022 | | | | | - | | | | - | |
| 12/25/2022 | | | | | - | | | | - | |
| Bank Holiday    12/26/2022 | | | | | | | | | - | |
| 12/27/2022 | 303.40 | 4,610.75 | 2,663.74 | 6,327.09 | 13,904.98 | | | 13,904.98 | - | |
| 12/28/2022 | | 1,232.28 | 779.40 | 1,035.71 | 3,047.39 | | | 3,047.39 | - | |
| 12/29/2022 | 573.78 | 966.13 | 2,942.31 | 6,000.60 | 10,482.82 | | | 10,482.82 | - | |
| 12/30/2022 | 8,021.45 | | | | 8,021.45 | 7,478.91 | | 542.54 | - | |
| 12/31/2022 | | | | | - | | | | - | |
| Totals | 14,976.64 | 18,688.06 | 251,030.03 | 21,569.13 | 306,263.86 | 8,323.52 | 89,599.94 | 208,340.40 | - | |

| | | |
|---|---|---|
| Total Lockbox | $ | 14,976.64 |
| Medicare | $ | 18,688.06 |
| Commercial EFT | $ | 251,030.03 |
| CC payments | $ | 21,569.13 |
| Checks Rec'd at site | | |
| Non A/R | $ | - |
| **Total Deposits** | **$** | **306,263.86** |
| **Less non A/R** | **$** | **-** |
| **Total A/R Deposits** | **$** | **306,263.86** |
| | | |
| **RBS System** | **$** | **306,263.86** |
| | | - |
| Difference to reconcile | $ | 0.00 |
| | | |
| **Unreconciled** | | 0.00 |



# Curepoint Cancer Center

**Dublin, GA**

**Rollforward Report**

*For Month Ending December 2022*

| Payer Class | % of charges | Beginning Balance | Gross Charges | Payments | Adjustments | Ending Balance |
|---|---|---|---|---|---|---|
| Commercial | 28% | 142,021.59 | 346,879.00 | 180,491.31 | 211,445.25 | 96,964.03 |
| Medicaid | 12% | 20,756.74 | 145,927.00 | 23,276.98 | 124,809.46 | 18,597.30 |
| Medicare + Medicare Replacement | 60% | 141,357.42 | 741,469.00 | 96,096.11 | 636,587.17 | 150,143.14 |
| Patient Direct + Self Pay | 0% | 87,698.68 | - | 6,399.46 | 37,974.76 | 43,324.46 |
| **Totals** | **100.00%** | **391,834.43** | **1,234,275.00** | **306,263.86** | **1,010,816.64** | **309,028.93** |



**Radiation Business SOLUTIONS**

**Curepoint Cancer Center**
Dublin, GA
RVU
*2022*

| | | | Nov-22 | | Dec-22 | | Nov-22 | | Dec-22 | | Dec-22 | |
| | | | Randolph | | Randolph | | Williams | | Williams | | Practice Totals | |
| CPT | Description | Work RVU/Unit | Qty | Work RVU Total | Qty | Work RVU Total | Qty | Work RVU Total | Qty | Work RVU Total | Qty | Work RVU Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 77014 | CT Guidance | 0.85 | 401 | 340.85 | 252 | 214.2 | 0 | 0 | 6 | 5.1 | 258 | 219.3 |
| 77261 | Clinical Treatment Planning: Simple | 1.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77262 | Clinical Treatment Planning: Intermediate | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77263 | Clinical Treatment Planning: Complex | 3.14 | 11 | 34.54 | 7 | 21.98 | 0 | 0 | 0 | 0 | 7 | 21.98 |
| 77280 | Simulation: Simple | 0.7 | 13 | 9.1 | 11 | 7.7 | 0 | 0 | 0 | 0 | 11 | 7.7 |
| 77290 | Simulation: Complex | 1.56 | 3 | 4.68 | 1 | 1.56 | 0 | 0 | 0 | 0 | 1 | 1.56 |
| 77293 | Resp Motion Management Simulation | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77295 | Simulation 3 Dimensional | 4.29 | 3 | 12.87 | 2 | 8.58 | 0 | 0 | 0 | 0 | 2 | 8.58 |
| 77300 | Basic Radiation Dosimetry Calculation | 0.62 | 100 | 62 | 50 | 31 | 0 | 0 | 0 | 0 | 50 | 31 |
| 77301 | IMRT Planning | 7.99 | 8 | 63.92 | 6 | 47.94 | 0 | 0 | 0 | 0 | 6 | 47.94 |
| 77306 | Isodose Plan: Simple | 1.4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77307 | Isodose Plan: Complex | 2.9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77321 | Special Therapy Port Plan | 0.95 | 1 | 0.95 | 1 | 0.95 | 0 | 0 | 0 | 0 | 1 | 0.95 |
| 77331 | Special Dosimetry (eg, TLD) | 0.87 | 1 | 0.87 | 1 | 0.87 | 0 | 0 | 0 | 0 | 1 | 0.87 |
| 77332 | Treatment Devices: Simple | 0.45 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77333 | Treatment Devices: Intermediate | 0.75 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77334 | Treatment Devices: Complex | 1.15 | 28 | 32.2 | 22 | 25.3 | 0 | 0 | 0 | 0 | 22 | 25.3 |
| 77336 | Continuing Medical Physics Consultation | 0 | 75 | 0 | 65 | 0 | 0 | 0 | 0 | 0 | 65 | 0 |
| 77338 | MLC Device | 4.29 | 8 | 34.32 | 8 | 34.32 | 0 | 0 | 0 | 0 | 8 | 34.32 |
| 77370 | Special Medical Physics Consultation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77372 | SRS Treatment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77373 | SBRT Stereotactic Treatment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77387 | Guidance for Localization of Target Volume | 0.85 | 0 | 0 | 30 | 25.5 | 0 | 0 | 0 | 0 | 30 | 25.5 |
| 77417 | Port Verification Films | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77427 | Weekly Treatment Management 5 Treatments | 3.37 | 71 | 239.27 | 63 | 212.31 | 0 | 0 | 1 | 3.37 | 64 | 215.68 |
| 77431 | Short Course Treatment Management | 1.81 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77432 | Stereotactic: Cerebral Lesions 1 Session | 7.92 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77435 | SBRT Management | 11.87 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 77470 | Special Treatment Procedure | 2.03 | 5 | 10.15 | 4 | 8.12 | 0 | 0 | 0 | 0 | 4 | 8.12 |
| 96372 | Ther/injection | 0.17 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99201 | New Patient Visit: 1 | 0.48 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99202 | New Patient Visit: 2 | 0.93 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99203 | New Patient Visit: 3 | 1.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99204 | New Patient Visit: 4 | 2.6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99205 | New Patient Visit: 5 | 3.5 | 10 | 35 | 2 | 7 | 0 | 0 | 2 | 7 | 4 | 14 |
| 99211 | Follow up visit: 1 | 0.18 | 14 | 2.52 | 10 | 1.8 | 0 | 0 | 0 | 0 | 10 | 1.8 |
| 99212 | Follow-up Visit: 2 | 0.7 | 8 | 5.6 | 6 | 4.2 | 2 | 1.4 | 0 | 0 | 6 | 4.2 |
| 99213 | Follow-up Visit: 3 | 1.3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99214 | Follow-up Visit: 4 | 1.92 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99215 | Follow-up Visit: 5 | 2.8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99221 | Initial Patient Care: Low | 1.92 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99222 | Initial Patient Care: Moderate | 2.61 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99223 | Initial Patient Care: High | 3.86 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99231 | Subsequent Patient Care: Low | 0.76 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99232 | Subsequent Patient Care: Moderate | 1.39 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99253 | Consult - Inpatient | 1.5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99244 | Outpatient consult: 4 | 3.02 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 99245 | Outpatient consult: 5 | 3.77 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| G6012 | Daily Tx | 0 | 45 | 0 | 37 | 0 | 0 | 0 | 0 | 0 | 37 | 0 |
| G6013 | Daily Tx | 0 | 20 | 0 | 26 | 0 | 0 | 0 | 0 | 0 | 26 | 0 |
| G6015 | IMRT Delivery Sinlge or Mult Fields | 0 | 343 | 0 | 247 | 0 | 0 | 0 | 0 | 0 | 247 | 0 |
| J9217 | Lupron | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total RVU** | | | 1169 | 888.84 | 851 | 653.33 | 2 | 1.4 | 9 | 15.47 | 860 | 668.8 |



## Curepoint Cancer Center

**Dublin, GA**

**Aging Review Over 90 Days**

*December 2022*

| Aging Overview | |
|---|---|
| $ 309,028.93 | End-of-Month Aging |
| $ 221,056.10 | Current - 90 |
| $ 87,973 | Outstanding AR greater than 91 days |

| Aging Summary Detail | |
|---|---|
| $ 62,067 | Additional Anticipated Reimbursement |
| $ 25,906 | Potential Bad Debt |
| $ 87,973 | |

| Payer | Amount | Status | Anticipated Reimbursement | Potential BD |
|---|---|---|---|---|
| Anthem BC of GA | $ 10,133 | Recoupments initiated, claims reprocessing | $ 10,133 | |
| Self pay & patient direct | $ 25,906 | Protocol being followed. | | $ 25,906 |
| Ambetter | $ 7,208 | Claims being reprocessed. | $ 7,208 | |
| Humana | $ (1,586) | Recoupments initiated. | $ (1,586) | |
| UHC | $ (158) | Recoupments initiated. | $ (158) | |
| VA | $ (66) | Recoupments initiated. | $ (66) | |
| Medicare | $ 215 | Recoupments initiated. | $ 215 | |
| Medicaid | $ 23,013 | Claims resubmitted | $ 23,013 | |
| Health Cost Solutions | $ 22,243 | Slow payer, authorization issue | $ 22,243 | |
| Other | $ 1,064 | Slow payer | $ 1,064 | |
| | $ 87,973 | | $ 62,067 | $ 25,906 |



**Curepoint Cancer Center**

**Dublin, GA**

**Monthly Revenue and Cash by Year**

| Month | 2022 Revenue | 2022 Collections | 2021 Revenue | 2021 Collections | 2020 Revenue | 2020 Collections | 2019 Revenue | 2019 Collections | 2018 Revenue | 2018 Collections |
|---|---|---|---|---|---|---|---|---|---|---|
| January | 417,723.13 | 310,682.11 | 379,856.75 | 306,153.33 | 326,466.63 | 275,415.27 | 306,586.03 | 198,172.97 | | |
| February | 303,611.89 | 296,265.77 | 349,245.17 | 409,336.20 | 262,355.56 | 295,369.76 | 236,643.96 | 144,890.25 | | |
| March | 369,422.54 | 370,439.09 | 305,175.63 | 370,774.15 | 373,966.30 | 272,878.38 | 324,675.74 | 401,103.48 | | |
| April | 304,417.76 | 290,518.60 | 293,180.75 | 338,531.22 | 317,891.67 | 259,175.98 | 441,575.89 | 522,704.88 | | |
| May | 350,433.70 | 279,818.63 | 244,559.93 | 277,017.46 | 256,866.10 | 283,443.33 | 223,340.97 | 206,807.02 | | |
| June | 376,376.61 | 263,320.71 | 312,437.19 | 224,070.14 | 308,444.82 | 289,865.55 | 148,877.72 | 149,438.18 | 220,395.19 | 6,435.25 |
| July | 178,576.07 | 297,893.95 | 200,429.75 | 158,520.62 | 218,172.58 | 274,469.92 | 242,635.52 | 168,478.37 | 448,603.02 | 273,067.53 |
| August | 366,679.41 | 334,953.88 | 414,914.07 | 317,580.44 | 213,704.95 | 173,135.04 | 443,034.73 | 419,576.11 | 462,099.11 | 216,746.76 |
| September | 384,420.31 | 435,531.80 | 361,373.85 | 463,704.76 | 153,886.94 | 145,858.64 | 293,948.98 | 375,140.36 | 171,972.15 | 269,099.98 |
| October | 397,863.16 | 445,269.54 | 299,843.67 | 347,252.00 | 339,882.32 | 187,986.34 | 257,575.76 | 279,041.39 | 219,345.08 | 223,747.00 |
| November | 363,152.31 | 377,752.88 | 195,687.85 | 293,878.62 | 313,237.11 | 344,602.35 | 335,184.91 | 306,633.28 | 144,701.56 | 205,586.15 |
| December | 237,727.56 | 306,263.86 | 271,039.39 | 227,539.51 | 263,497.27 | 311,227.01 | 399,322.01 | 387,607.48 | 213,319.36 | 207,924.06 |
| | | | | | | | | | | |
| **Totals** | 4,050,404.45 | 4,008,710.82 | 3,627,744.00 | 3,734,358.45 | 3,348,372.25 | 3,113,427.57 | 3,653,402.22 | 3,559,593.77 | 1,880,435.47 | 1,402,606.73 |
| **Monthly Average** | 337,533.70 | 334,059.24 | 302,312.00 | 311,196.54 | 279,031.02 | 259,452.30 | 304,450.19 | 296,632.81 | 268,633.64 | 200,372.39 |

**Curepoint LLC**
**Payments to Insiders**
**Dec-22**

| Recipient | Date of Pmt | Amount | Account Used | Reason for Pmt |
|---|---|---|---|---|
| Michael Miles | 12/15/2022 | 3,548.41 | Curepoint Checking *9546; xfer to Eclipse Staffing LLC | Payroll |
| Michael Miles | 12/1/2022 | 2,623.13 | Curepoint Checking *9546; xfer to Eclipse Staffing LLC | Payroll |
| Jamila Dadabhoy | 12/15/2022 | 5,008.14 | Curepoint Checking *9546; xfer to Eclipse Staffing LLC | Payroll |
| Jamila Dadabhoy | 12/1/2022 | 4,249.76 | Curepoint Checking *9546; xfer to Eclipse Staffing LLC | Payroll |
| United Healthcare | | | | |
| Michael Miles | 12/12/2022 | 884.29 | Curepoint Checking *9546; xfer to Eclipse Staffing LLC | Employee Insurance |
| Jamila Dadabhoy | 12/12/2022 | 715.97 | Curepoint Checking *9546; xfer to Eclipse Staffing LLC | Employee Insurance |
| | | $ 17,029.70 | | |

| Account Numb | Post Date | Description | Debit | Credit |
|---|---|---|---|---|
| 9546 | 12/30/2022 | MONTHLY FEE ███ 2005 ██ 1230 CUREPOINT CUREPOINT | 499.00 | |
| 9546 | 12/29/2022 | SPECTRUM SPECTRUM ████ 8726 | 343.57 | |
| 9546 | 12/29/2022 | GPC GPC EFT ███ 5057DUB | 307.32 | |
| 9546 | 12/29/2022 | REF ██ 0804L FUNDS TRANSFER TO DEP ████ 9926 FROM ONLINE FUNDS TRANSFER VIA | 25,531.48 | |
| 9546 | 12/29/2022 | REF ██ 0803L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 25,531.48 |
| 9546 | 12/28/2022 | SPECTRUM SPECTRUM █ 2432 | 386.45 | |
| 9546 | 12/27/2022 | NORCAL MUT INS INSURANCE ████ 0397 | 5,041.00 | |
| 9546 | 12/27/2022 | REF ██ 0706L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 3,000.00 |
| 9546 | 12/22/2022 | PHN/FAX DOM OUT WI | 100.00 | |
| 9546 | 12/22/2022 | RADIATION BUSINESS OLUTIONSREF: CUREP OINT PAYMENT; OCTO RADIATION BUSINESS SOLUTIONS | 41,561.73 | |
| 9546 | 12/22/2022 | REF ██ 1037L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 40,000.00 |
| 9546 | 12/22/2022 | REF ██ 0804L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 5,000.00 |
| 9546 | 12/21/2022 | PITNEY BOWES POSTAGE ████ 2286 | 100.00 | |
| 9546 | 12/21/2022 | CALL EXPERTS CALL EXPER ████ AL2U | 140.40 | |
| 9546 | 12/21/2022 | REF ██ 0627L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 500.00 |
| 9546 | 12/20/2022 | NO AMER BK CO AUTH PAYME ████ D744 ██ D744 | 1,706.68 | |
| 9546 | 12/19/2022 | PHN/FAX DOM OUT WI | 100.00 | |
| 9546 | 12/19/2022 | MEDICAL AND PHARMA LEGALCUREPOINT P HYSICIANS COVERAGE MEDICAL AND PHARMA CY LEGAL | 20,000.00 | |
| 9546 | 12/19/2022 | PHN/FAX DOM OUT WI | 100.00 | |
| 9546 | 12/19/2022 | ERICH RANDOLPHWELL FARGO BANK, NA ERICH RANDOLPH | 20,000.00 | |
| 9546 | 12/19/2022 | REF ██ 0915L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 40,000.00 |
| 9546 | 12/15/2022 | REF ██ 0742L FUNDS TRANSFER TO DEP ████ 9926 FROM ONLINE FUNDS TRANSFER VIA | 26,557.92 | |
| 9546 | 12/15/2022 | REF ██ 0741L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 25,000.00 |
| 9546 | 12/14/2022 | DOMESTIC WIRE OUT | 30.00 | |
| 9546 | 12/14/2022 | SOLIC CAPITAL ADVI RS LLCINVOICE NO 3 617 AND 3665 SOLIC CAPITAL ADVI SORS LLC | 50,000.00 | |
| 9546 | 12/14/2022 | PHN/FAX DOM OUT WI | 100.00 | |
| 9546 | 12/14/2022 | ELEKTA INC DEPOSIT Y ACCOUNTINVOICES ████ 3756 AND 30 ELEKTA INC DEPOSIT ORY ACCOUNT | 25,698.14 | |
| 9546 | 12/14/2022 | PHN/FAX DOM OUT WI | 100.00 | |
| 9546 | 12/14/2022 | ALPHA MEDICAL PHYS S LLCINVOICE D215 9 AND D2158 ALPHA MEDICAL PHYS ICS LLC | 20,300.00 | |
| 9546 | 12/14/2022 | PHN/FAX DOM OUT WI | 100.00 | |
| 9546 | 12/14/2022 | MAJESTIC INTERNATI AL ELECTRONICCUREP OINT PAYMENT MAJESTIC INTERNATI ONAL ELECTRONIC | 3,009.46 | |
| 9546 | 12/14/2022 | REF ██ 1359L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 5,000.00 |
| 9546 | 12/14/2022 | REF ██ 1024L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 96,000.00 |
| 9546 | 12/12/2022 | REF ██ 0639L FUNDS TRANSFER TO DEP ████ 9926 FROM ONLINE FUNDS TRANSFER VIA | 1,600.26 | |
| 9546 | 12/12/2022 | REF ██ 0637L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 2,000.00 |
| 9546 | 12/09/2022 | AUTO OWNERS INS WEB PAY ████ 6680 | 512.65 | |
| 9546 | 12/08/2022 | PREMIER PROPERTI ACH ████ 1606 | 2,500.00 | |
| 9546 | 12/08/2022 | Pitney Purchase DIRECT DEB █ 1208 PBPurchasPwr PBPurchasPwr | 56.83 | |
| 9546 | 12/07/2022 | PHN/FAX DOM OUT WI | 100.00 | |
| 9546 | 12/07/2022 | ROUNTREE LEITMAN K IN AND GEER LLCCUR EPOINT LLC COUNCIL ROUNTREE LEITMAN K LEIN AND GEER LLC | 79,773.24 | |
| 9546 | 12/07/2022 | PHN/FAX DOM OUT WI | 100.00 | |
| 9546 | 12/07/2022 | CUREPOINT DUBLIN L CUREPOINT DUBLIN L LC | 17,000.00 | |
| 9546 | 12/07/2022 | REF ██ 1146L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 100,000.00 |
| 9546 | 12/06/2022 | Infiniti Auto Loan ████ 7656 | 475.14 | |
| 9546 | 12/06/2022 | REF ██ 0611L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 2,000.00 |
| 9546 | 12/05/2022 | TRANSFER TO CUREPOINT LLC ACCOUNT ████ 8751 AT EXT BANK ABA # ███ 1848 | 1,771.61 | |
| 9546 | 12/05/2022 | QUARTERLY FEE PAYMENT ████ 0000 | 1,010.00 | |
| 9546 | 12/05/2022 | QUARTERLY FEE PAYMENT ████ 0000 | 1,010.00 | |
| 9546 | 12/01/2022 | MONTHLY FEE ███ 2009 ██ 1130 CUREPOINT CUREPOINT | 499.00 | |
| 9546 | 12/01/2022 | REF ██ 0815L FUNDS TRANSFER TO DEP ████ 9926 FROM ONLINE FUNDS TRANSFER VIA | 25,969.08 | |
| 9546 | 12/01/2022 | REF ██ 0814L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 25,969.08 |
| | | | 374,190.96 | - |

| Account Number | Post Date | Check | Description | Debit | Credit |
|---|---|---|---|---|---|
| 7944 | 12/30/2022 | 93 | ECP  INCLEARING CHECK | 1,110.33 | |
| 7944 | 12/30/2022 | | OFFICE DEPOT PAYMENT ████████ 7396 | 767.13 | |
| 7944 | 12/29/2022 | 94 | ECP  INCLEARING CHECK | 528.00 | |
| 7944 | 12/29/2022 | 92 | ECP  INCLEARING CHECK | 1,279.73 | |
| 7944 | 12/29/2022 | | GPC GPC EFT ██████████ 5028DUB | 409.88 | |
| 7944 | 12/29/2022 | | REF █ 0916L FUNDS TRANSFER FRM DEP ███ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 4,000.00 |
| 7944 | 12/28/2022 | 91 | ECP  INCLEARING CHECK | 1,080.00 | |
| 7944 | 12/28/2022 | | STERICYCLE STERICYCLE ██████████ 8848 | 51.60 | |
| 7944 | 12/27/2022 | 90 | ECP  INCLEARING CHECK | 41.41 | |
| 7944 | 12/21/2022 | | MEDICUSIT PURCHASE █ 1221 CUREPOINT CANCE CUREPOINT CANCE | 1,370.10 | |
| 7944 | 12/21/2022 | | REF █ 0800L FUNDS TRANSFER FRM DEP ███ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 4,000.00 |
| 7944 | 12/19/2022 | 88 | ECP  INCLEARING CHECK | 148.50 | |
| 7944 | 12/19/2022 | 81 | ECP  INCLEARING CHECK | 330.00 | |
| 7944 | 12/19/2022 | | STERICYCLE STERICYCLE ██████████ 8848 | 51.60 | |
| 7944 | 12/15/2022 | 80 | ECP  INCLEARING CHECK | 73.00 | |
| 7944 | 12/15/2022 | 87 | ECP  INCLEARING CHECK | 353.00 | |
| 7944 | 12/15/2022 | 86 | ECP  INCLEARING CHECK | 4,811.30 | |
| 7944 | 12/15/2022 | | LEASE DIRECT WEB PAY ██████████ 7602 | 303.32 | |
| 7944 | 12/14/2022 | 85 | ECP  INCLEARING CHECK | 1,289.00 | |
| 7944 | 12/13/2022 | 79 | ECP  INCLEARING CHECK | 40.00 | |
| 7944 | 12/13/2022 | 83 | ECP  INCLEARING CHECK | 49.45 | |
| 7944 | 12/13/2022 | 84 | ECP  INCLEARING CHECK | 96.79 | |
| 7944 | 12/13/2022 | 78 | ECP  INCLEARING CHECK | 427.50 | |
| 7944 | 12/13/2022 | 89 | ECP  INCLEARING CHECK | 6,375.00 | |
| 7944 | 12/12/2022 | 82 | ECP  INCLEARING CHECK | 83.00 | |
| 7944 | 12/12/2022 | | MEDICUSIT PURCHASE █ 1212 CUREPOINT CANCE CUREPOINT CANCE | 4,502.40 | |
| 7944 | 12/12/2022 | | REF █ 0637L FUNDS TRANSFER FRM DEP ███ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 10,000.00 |
| 7944 | 12/09/2022 | | REF █ 0639L FUNDS TRANSFER FRM DEP ███ 8431 FROM ONLINE FUNDS TRANSFER VIA | | 10,000.00 |
| 7944 | 12/07/2022 | | AFCO AFCO ██████████ 1687 | 1,378.47 | |
| 7944 | 12/07/2022 | | OFFICE DEPOT AUTO PYMT ██████████ 0460 | 55.05 | |
| 7944 | 12/02/2022 | | AMTRUST NA PAYMENT ██████████ 1290 | 688.50 | |
| 7944 | 12/01/2022 | 76 | ECP  INCLEARING CHECK | 1,056.68 | |
| | | | | 28,750.74 | - |

| Account Numb | Post Date | Check | Description | | Debit | Credit |
|---|---|---|---|---|---|---|
| 8431 | 12/01/2022 | | BLUE CROSS GA5F HCCLAIMPMT | 1032 | | 1,968.80 |
| 8431 | 12/01/2022 | | GA DEPT OF COMMU HCCLAIMPMT | 7780A | | 1,329.48 |
| 8431 | 12/01/2022 | | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 951.55 |
| 8431 | 12/01/2022 | | MERCHANT SERVICE MERCH DEP | 1162 | | 100.00 |
| 8431 | 12/01/2022 | | REF 3350814L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 25,969.08 | |
| 8431 | 12/01/2022 | | UNITEDHEALTHCARE HCCLAIMPMT | 9027 | | 6,122.20 |
| 8431 | 12/01/2022 | | UnitedHealthcare HCCLAIMPMT | 9027 | | 2,376.38 |
| 8431 | 12/02/2022 | | AARP Supplementa HCCLAIMPMT | 9027 | | 42.39 |
| 8431 | 12/02/2022 | | BLUE CROSS GA5C HCCLAIMPMT | 5957 | | 11,790.56 |
| 8431 | 12/02/2022 | | BLUE CROSS GA5C HCCLAIMPMT | 5958 | | 4,744.59 |
| 8431 | 12/02/2022 | | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 872.61 |
| 8431 | 12/02/2022 | | MERCHANT SERVICE MERCH DEP | 1162 | | 40.00 |
| 8431 | 12/02/2022 | | MERCHANT SERVICE MERCH FEE | 1162 | 426.18 | |
| 8431 | 12/02/2022 | | UnitedHealthcare HCCLAIMPMT | 9027 | | 604.64 |
| 8431 | 12/05/2022 | | AETNA AS01 HCCLAIMPMT | 0674 | | 1,119.50 |
| 8431 | 12/05/2022 | | BLUE CROSS GA5F HCCLAIMPMT | 4390 | | 2,468.06 |
| 8431 | 12/05/2022 | | HUMANA GOVT BUSI HCCLAIMPMT | 5356 | | 78.69 |
| 8431 | 12/05/2022 | | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 1,612.77 |
| 8431 | 12/05/2022 | | Optum VA CCN Reg HCCLAIMPMT | 9027 | | 4,961.13 |
| 8431 | 12/06/2022 | | AETNA AS01 HCCLAIMPMT | 0674 | | 313.02 |
| 8431 | 12/06/2022 | | BLUE CROSS GA5F HCCLAIMPMT | 1858 | | 55.39 |
| 8431 | 12/06/2022 | | HUMANA GOVT BUSI HCCLAIMPMT | 5381 | | 554.04 |
| 8431 | 12/06/2022 | | HUMANA INS CO HCCLAIMPMT | 5309 | | 2,703.58 |
| 8431 | 12/06/2022 | | MERCHANT SERVICE MERCH DEP | 1162 | | 100.00 |
| 8431 | 12/06/2022 | | Optum VA CCN Reg HCCLAIMPMT | 9027 | | 2,724.30 |
| 8431 | 12/06/2022 | | REF 3400611L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 2,000.00 | |
| 8431 | 12/06/2022 | | UnitedHealthcare HCCLAIMPMT | 9027 | | 328.25 |
| 8431 | 12/06/2022 | | UNLIMITED SYSTEM TRANSFER | I4P4 | | 20.61 |
| 8431 | 12/07/2022 | | AETNA AS01 HCCLAIMPMT | 0674 | | 132.05 |
| 8431 | 12/07/2022 | | AETNA AS01 HCCLAIMPMT | 0674 | | 806.48 |
| 8431 | 12/07/2022 | | Amerigroup GA5C HCCLAIMPMT | 5254 | | 18.33 |
| 8431 | 12/07/2022 | | HUMANA INS CO HCCLAIMPMT | 5309 | | 1,097.12 |
| 8431 | 12/07/2022 | | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 351.90 |
| 8431 | 12/07/2022 | | MERCHANT SERVICE MERCH DEP | 1162 | | 3,600.00 |
| 8431 | 12/07/2022 | | Optum VA CCN Reg HCCLAIMPMT | 9027 | | 4,425.99 |
| 8431 | 12/07/2022 | | REF 3411146L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 100,000.00 | |
| 8431 | 12/07/2022 | | UnitedHealthcare HCCLAIMPMT | 9027 | | 346.40 |
| 8431 | 12/08/2022 | | GA DEPT OF COMMU HCCLAIMPMT | 7780A | | 2,670.93 |
| 8431 | 12/08/2022 | | HUMANA GOVT BUSI HCCLAIMPMT | 9267 | | 154.63 |
| 8431 | 12/08/2022 | | HUMANA INS CO HCCLAIMPMT | 5309 | | 1,733.26 |
| 8431 | 12/08/2022 | | Optum VA CCN Reg HCCLAIMPMT | 9027 | | 1,767.28 |
| 8431 | 12/08/2022 | | UNITEDHEALTHCARE HCCLAIMPMT | 9027 | | 10,849.42 |
| 8431 | 12/08/2022 | | UnitedHealthcare HCCLAIMPMT | 9027 | | 180.02 |
| 8431 | 12/08/2022 | | UNLIMITED SYSTEM TRANSFER | H3K2 | | 2,076.28 |
| 8431 | 12/09/2022 | | AETNA AS01 HCCLAIMPMT | 0674 | | 313.02 |
| 8431 | 12/09/2022 | | BLUE CROSS GA5C HCCLAIMPMT | 3715 | | 30,683.39 |
| 8431 | 12/09/2022 | | BLUE CROSS GA5C HCCLAIMPMT | 3716 | | 6,406.84 |
| 8431 | 12/09/2022 | | BLUE CROSS GA5F HCCLAIMPMT | 3714 | | 171.95 |

| Acct | Date | Description | | Amount |
|------|------|-------------|---|-------:|
| 8431 | 12/09/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | 692.78 |
| 8431 | 12/09/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | 2,209.10 |
| 8431 | 12/09/2022 | REF 0639L FUNDS TRANSFER TO DEP | 7944 FROM ONLINE FUNDS TRANSFER VIA | 10,000.00 |
| 8431 | 12/09/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | 2,820.33 |
| 8431 | 12/09/2022 | UNLIMITED SYSTEM TRANSFER | G6N9 | 304.56 |
| 8431 | 12/12/2022 | HUMANA GOVT BUSI HCCLAIMPMT | 7586 | 309.26 |
| 8431 | 12/12/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | 346.39 |
| 8431 | 12/12/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | 2,006.58 |
| 8431 | 12/12/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | 441.82 |
| 8431 | 12/12/2022 | REF 0637L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 2,000.00 |
| 8431 | 12/12/2022 | REF 0637L FUNDS TRANSFER TO DEP | 7944 FROM ONLINE FUNDS TRANSFER VIA | 10,000.00 |
| 8431 | 12/13/2022 | AETNA AS01 HCCLAIMPMT | 0674 | 626.04 |
| 8431 | 12/13/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | 288.02 |
| 8431 | 12/13/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | 404.34 |
| 8431 | 12/13/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | 221.77 |
| 8431 | 12/13/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | 4,491.05 |
| 8431 | 12/13/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | 1,104.59 |
| 8431 | 12/14/2022 | AETNA AS01 HCCLAIMPMT | 0674 | 313.02 |
| 8431 | 12/14/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | 1,731.95 |
| 8431 | 12/14/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | 703.80 |
| 8431 | 12/14/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | 2,191.07 |
| 8431 | 12/14/2022 | REF 1024L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 96,000.00 |
| 8431 | 12/14/2022 | REF 1359L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 5,000.00 |
| 8431 | 12/14/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | 779.40 |
| 8431 | 12/15/2022 | AARP Supplementa HCCLAIMPMT | 9027 | 55.69 |
| 8431 | 12/15/2022 | GA DEPT OF COMMU HCCLAIMPMT | 7780A | 3,870.46 |
| 8431 | 12/15/2022 | HUMANA GOVT BUSI HCCLAIMPMT | 8033 | 1,118.73 |
| 8431 | 12/15/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | 2,419.70 |
| 8431 | 12/15/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | 1,055.27 |
| 8431 | 12/15/2022 | MERCHANT SERVICE MERCH DEP | 162 | 15.00 |
| 8431 | 12/15/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | 2,627.08 |
| 8431 | 12/15/2022 | REF 0741L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 25,000.00 |
| 8431 | 12/15/2022 | UNITEDHEALTHCARE HCCLAIMPMT | 9027 | 10,849.42 |
| 8431 | 12/15/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | 1,195.65 |
| 8431 | 12/15/2022 | UNLIMITED SYSTEM TRANSFER | 04B5 | 577.20 |
| 8431 | 12/16/2022 | AETNA AS01 HCCLAIMPMT | 0674 | 493.46 |
| 8431 | 12/16/2022 | BLUE CROSS GA5C HCCLAIMPMT | 0946 | 272.88 |
| 8431 | 12/16/2022 | BLUE CROSS GA5C HCCLAIMPMT | 0947 | 22,540.41 |
| 8431 | 12/16/2022 | BLUE CROSS GA5C HCCLAIMPMT | 0948 | 1,958.68 |
| 8431 | 12/16/2022 | BLUE CROSS GA5F HCCLAIMPMT | 0945 | 368.04 |
| 8431 | 12/16/2022 | HEHP GA HCCLAIMPMT | 5309 | 16.80 |
| 8431 | 12/16/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | 1,480.79 |
| 8431 | 12/16/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | 1,265.37 |
| 8431 | 12/16/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | 1,820.74 |
| 8431 | 12/16/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | 548.37 |
| 8431 | 12/16/2022 | UNLIMITED SYSTEM TRANSFER | X6U4 | 1,094.90 |
| 8431 | 12/19/2022 | AARP Supplementa HCCLAIMPMT | 9027 | 10.69 |
| 8431 | 12/19/2022 | AETNA AS01 HCCLAIMPMT | 0674 | 313.02 |
| 8431 | 12/19/2022 | FORTE | E56B | 30.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3431 | 12/19/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 351.90 | |
| 3431 | 12/19/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | | 2,540.08 | |
| 3431 | 12/19/2022 | REF 0915L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 40,000.00 | | |
| 3431 | 12/19/2022 | UNLIMITED SYSTEM TRANSFER | W8Z7 | | 39.64 | |
| 3431 | 12/20/2022 | AETNA AS01 HCCLAIMPMT | 0674 | | 313.02 | |
| 3431 | 12/20/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | | 692.78 | |
| 3431 | 12/20/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | | 750.73 | |
| 3431 | 12/20/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 908.97 | |
| 3431 | 12/20/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | | 1,767.28 | |
| 3431 | 12/20/2022 | TRANSFER TO DEPOSIT ACCOUNT 01017378140 | | 100.00 | | |
| 3431 | 12/20/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | | 1,828.01 | |
| 3431 | 12/21/2022 | AETNA AS01 HCCLAIMPMT | 0674 | | 313.02 | 81,949.80 |
| 3431 | 12/21/2022 | AETNA AS01 HCCLAIMPMT | 0674 | | 313.02 | 83,401.34 |
| 3431 | 12/21/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 703.80 | |
| 3431 | 12/21/2022 | Optum VA CCN Reg HCCLAIMPMT | 9027 | | 1,767.28 | |
| 3431 | 12/21/2022 | REF 0627L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 500.00 | | |
| 3431 | 12/21/2022 | REF 000L FUNDS TRANSFER TO DEP | 7944 FROM ONLINE FUNDS TRANSFER VIA | 4,000.00 | | |
| 3431 | 12/22/2022 | BLUE CROSS GA5F HCCLAIMPMT | 7288 | | 226.71 | |
| 3431 | 12/22/2022 | GA DEPT OF COMMU HCCLAIMPMT | 7780A | | 7,774.34 | |
| 3431 | 12/22/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 872.61 | |
| 3431 | 12/22/2022 | REF 0804L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 5,000.00 | | |
| 3431 | 12/22/2022 | REF 037L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 40,000.00 | | |
| 3431 | 12/22/2022 | UNITEDHEALTHCARE HCCLAIMPMT | 9027 | | 8,942.02 | |
| 3431 | 12/22/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | | 2,238.15 | |
| 3431 | 12/23/2022 | ANALYSIS ACTIVITY FOR 11/22 | | 49.08 | | |
| 3431 | 12/23/2022 | BLUE CROSS GA5C HCCLAIMPMT | 9396 | | 34,698.15 | |
| 3431 | 12/23/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | | 692.78 | |
| 3431 | 12/23/2022 | MERCHANT SERVICE MERCH DEP | 162 | | 45.00 | |
| 3431 | 12/23/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | | 3,035.33 | |
| 3431 | 12/27/2022 | BLUE CROSS GA5F HCCLAIMPMT | 4738 | | 1,826.40 | |
| 3431 | 12/27/2022 | HUMANA INS CO HCCLAIMPMT | 5309 | | 404.34 | |
| 3431 | 12/27/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 4,610.75 | |
| 3431 | 12/27/2022 | REF 0706L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 3,000.00 | | |
| 3431 | 12/27/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | | 433.00 | |
| 3431 | 12/28/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 1,232.28 | |
| 3431 | 12/28/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | | 779.40 | |
| 3431 | 12/29/2022 | 36  TREAS 310 MISC PAY | 0012 | | 10.69 | |
| 3431 | 12/29/2022 | AARP Supplementa HCCLAIMPMT | 9027 | | 10.69 | |
| 3431 | 12/29/2022 | GA DEPT OF COMMU HCCLAIMPMT | 7780A | | 1,014.53 | |
| 3431 | 12/29/2022 | MAC PTB ALGATN HCCLAIMPMT | 0674 | | 966.13 | |
| 3431 | 12/29/2022 | MERCHANT SERVICE MERCH DEP | 162 | | 50.00 | |
| 3431 | 12/29/2022 | REF 0803L FUNDS TRANSFER TO DEP | 9546 FROM ONLINE FUNDS TRANSFER VIA | 25,531.48 | | |
| 3431 | 12/29/2022 | REF 0916L FUNDS TRANSFER TO DEP | 7944 FROM ONLINE FUNDS TRANSFER VIA | 4,000.00 | | |
| 3431 | 12/29/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | | 548.37 | |
| 3431 | 12/29/2022 | UnitedHealthcare HCCLAIMPMT | 9027 | | 1,358.03 | |
| 3431 | 12/29/2022 | UNLIMITED SYSTEM TRANSFER | Y9G4 | | 6,086.63 | |
| 3431 | 12/30/2022 | UNLIMITED SYSTEM TRANSFER | N6N7 | | 996.35 | |
| | | | | 475.26 | 284,894.26 | |

| Account Number | Post Date | Check | Description | Debit | Credit | |
|---|---|---|---|---|---|---|
| 7951 | 12/29/2022 | | LOCK BOX DEPOSIT | | 573.78 | |
| 7951 | 12/23/2022 | | ANALYSIS ACTIVITY FOR 11/22 | 364.99 | | |
| 7951 | 12/23/2022 | 2168 | LOCK BOX DEPOSIT | | 303.40 | |
| 7951 | 12/21/2022 | 2168 | LOCK BOX DEPOSIT | | 574.36 | 1,451.54 |
| 7951 | 12/15/2022 | 2168 | LOCK BOX DEPOSIT | | 258.83 | |
| 7951 | 12/14/2022 | 2168 | LOCK BOX DEPOSIT | | 69.50 | |
| 7951 | 12/12/2022 | 2168 | LOCK BOX DEPOSIT | | 40.00 | |
| 7951 | 12/05/2022 | 2168 | LOCK BOX DEPOSIT | | 700.37 | |
| 7951 | 12/02/2022 | 2168 | LOCK BOX DEPOSIT | | 170.83 | |
| 7951 | 12/01/2022 | 2168 | LOCK BOX DEPOSIT | | 220.99 | |
| | | | | 364.99 | 2,912.06 | |
| | | | | 403,781.95 | 287,806.32 | |

# SYNOVUS®

P.O. Box 2646-R, Columbus, GA 31902

## Statement of Account

| | |
|---|---|
| Last statement: | November 30, 2022 |
| This statement: | December 31, 2022 |

Total days in statement period: 31

| | 794-4 | 031 | 165 |
|---|---|---|---|

Page    1 of 2

Direct inquiries to:
888-796-6887

CUREPOINT LLC
DAVID A WENDER AS CHAP. 11 TRUSTEE
3180 MATHIESON DR UNIT 712
ATLANTA GA 30005-0000

## Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Pro Business Checking | 794-4 | $2,842.00 |

## Pro Business Checking                     Account Number ██████ 794-4

| | | | |
|---|---|---|---|
| Beginning balance | 3,592.74 | | |
| Deposits/Credits | 28,000.00 | Low balance | 414.04 |
| Withdrawals/Debits | 28,750.74 | Average balance | 4,165.63 |
| Ending balance | 2,842.00 | Average collected balance | 4,165.00 |

### Checks

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 76 | 12/01 | 1,056.68 | 87 | 12/15 | 353.00 |
| 78 * | 12/13 | 427.50 | 88 | 12/19 | 148.50 |
| 79 | 12/13 | 40.00 | 89 | 12/13 | 6,375.00 |
| 80 | 12/15 | 73.00 | 90 | 12/27 | 41.41 |
| 81 | 12/19 | 330.00 | 91 | 12/28 | 1,080.00 |
| 82 | 12/12 | 83.00 | 92 | 12/29 | 1,279.73 |
| 83 | 12/13 | 49.45 | 93 | 12/30 | 1,110.33 |
| 84 | 12/13 | 96.79 | 94 | 12/29 | 528.00 |
| 85 | 12/14 | 1,289.00 | * *Skip in check sequence* | | |
| 86 | 12/15 | 4,811.30 | | | |

### Other Debits

| Date | Transaction Type | Description | Amount |
|---|---|---|---|
| 12-02 | Preauthorized Wd | AMTRUST NA PAYMENT ██████ 290 | 688.50 |
| 12-07 | Preauthorized Wd | OFFICE DEPOT AUTO PYMT ██ 207 | 55.05 |
| 12-07 | Preauthorized Wd | AFCO AFCO ██████ 687 | 1,378.47 |
| 12-12 | Preauthorized Wd | MEDICUSIT PURCHASE ██ 1212 CUREPOINT CANCE | 4,502.40 |
| 12-15 | Preauthorized Wd | LEASE DIRECT WEB PAY ██ 7602 | 303.32 |
| 12-19 | Preauthorized Wd | STERICYCLE STERICYCLE ██████ 8848 | 51.60 |



P.O. Box 2646-R, Columbus, GA 31902



December 31, 2022

████ 794-4
CUREPOINT LLC

## Other Debits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 12-21 | Preauthorized Wd | MEDICUSIT PURCHASE ████ 1221 CUREPOINT CANCE | 1,370.10 |
| 12-28 | Preauthorized Wd | STERICYCLE STERICYCLE ████ 8848 | 51.60 |
| 12-29 | Preauthorized Wd | GPC GPC EFT ████ 229 | 409.88 |
| 12-30 | Preauthorized Wd | OFFICE DEPOT PAYMENT ████ 1230 | 767.13 |

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 12-09 | Transfer | REF ████ 0639L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | 10,000.00 |
| 12-12 | Transfer | REF ████ 0637L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | 10,000.00 |
| 12-21 | Transfer | REF ████ 0800L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | 4,000.00 |
| 12-29 | Transfer | REF ████ 0916L FUNDS TRANSFER FRM DEP ████ 8431 FROM ONLINE FUNDS TRANSFER VIA | 4,000.00 |

## Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 11-30 | 3,592.74 | 12-12 | 15,828.64 | 12-21 | 4,110.08 |
| 12-01 | 2,536.06 | 12-13 | 8,839.90 | 12-27 | 4,068.67 |
| 12-02 | 1,847.56 | 12-14 | 7,550.90 | 12-28 | 2,937.07 |
| 12-07 | 414.04 | 12-15 | 2,010.28 | 12-29 | 4,719.46 |
| 12-09 | 10,414.04 | 12-19 | 1,480.18 | 12-30 | 2,842.00 |



**Checks and Debits Outstanding**

| Check No. | Amount |
|-----------|--------|
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
| **Total** |        |

Follow these easy steps to reconcile your checkbook to the "Ending Balance" shown on the front of this statement:

(1) Make sure that all the transactions listed on this statement have also been entered in your checkbook register, including all deposits, credits, checks, check card transactions, ATM transactions and other debits. Make sure the amounts are the same in both places.

(2) Mark the checks and other debits in your checkbook that have been paid by the bank; mark the credits in your checkbook that have cleared the bank.

(3) Enter all the items that have not yet been paid by the bank and are still outstanding. These are items that are not shown on this statement and have not appeared on any previous statement.

(4) Enter the "Ending Balance" shown on this statement    $_____

(5) Add (+) deposits not shown on this statement (if any)    +_____

(6) Subtract(-) checks and/or other outstanding debits    -_____

(7) Balance should equal the balance in your checkbook    $_____

---

If your account does not balance, please check the following:

• Have you added and subtracted correctly – both in your checkbook register and in steps 3-6 above?

• Have you correctly entered the amounts of each deposit, credit, check, check card transaction or other debit in your checkbook?

• Do all checks and other debits you have marked as paid appear on this statement? Are any still outstanding that you have marked as paid?

• Have all deposits been added to your checkbook record and do the amounts agree with the amounts on this statement?

• Have you carried the correct balance forward from one checkbook register page to the next?

• Are you sure that all items you show as outstanding are not on this statement or any previous statement?

**ADDITIONAL WAYS TO MANAGE YOUR ACCOUNT**

To check your balance between statements and track pending credits or debits. take advantage of:

• Internet Banking
• Mobile Banking
• Touchtone Banking

Information on these convenient options is available from your banker and through our website.

**ELECTRONIC FUND TRANSFERS PREAUTHORIZED CREDITS**

If you have arranged to have direct deposits made to your account, you can call us at the telephone number indicated on page one of this statement to find out whether or not the deposits have been made.

**ELECTRONIC FUND TRANSFER DISCLOSURE**

In case of errors or questions about your electronic transfers: If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, please telephone us at the number or write us at the address indicated on page one of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number.

(2) Describe the error or the transfer you are unsure about. Explain as clearly as you can why you believe there is an error or why you need more information.

(3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. For consumer/personal accounts, if we take more than 10 business days to do this, we will recredit your account for the amount you think is in error so that you may have use of the money during the time it takes us to complete the investigation.

**ORDER OF PAYMENT**

*This section describes our general practice for paying transactions from your account. We may vary the order of payment if items are presented that cannot be returned unpaid. We reserve the right to change how we pay transactions from your account and will provide you notice of these changes.*

After the close of the business day, we add your deposits and other credits to your account. We then deduct any fees and charges owed to the bank. Finally, we deduct all items presented for payment The order these items are deducted from your account balance is based upon the type of transaction and, for electronic transactions, when the transaction was performed by you or was received by us.

First, we pay outgoing wire transactions in the order they were made. Then, we pay electronic transactions (First, we pay preauthorized ACH debits, then ATM transactions, and then check card transactions.) in the order they were performed by you or were received by us. Next, we pay unnumbered checks and other items drawn on your account by dollar amount in ascending order. Finally, we pay checks drawn on your account in ascending check number order. **For business and commercial accounts:** All checks and other items drawn on your account are paid by dollar amount in descending order.

**BILLING RIGHTS SUMMARY**
*(Personal Reserve Account Only)*

In case of errors or questions about your statement: If you think your statement is wrong or if you need more information about a transaction on the statement, write us (on a separate sheet) at the address indicated on page one of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

(1) State your name and account number.

(2) Describe the error and explain as clearly as you can why you believe there is an error. If you need more information, describe the item you are unsure about.

(3) Tell us the dollar amount of the suspected error.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

**SYNOVUS**®

P.O. Box 2646-R, Columbus, GA 31902

## Statement of Account

| | |
|---|---|
| Last statement: | November 30, 2022 |
| This statement: | December 31, 2022 |

Total days in statement period: 31

954-6          031          165

Page    1 of 3

Direct inquiries to:
888-796-6887

CUREPOINT LLC
DAVID A WENDER AS CHAP. 11 TRUSTEE
3180 MATHIESON DR UNIT 712
ATLANTA GA 30005

## Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Pro Business Checking | 954-6 | $100.21 |

| **Pro Business Checking** | | Account Number | 954-6 |
|---|---|---|---|
| Beginning balance | 4,290.61 | | |
| Deposits/Credits | 370,000.56 | Low balance | 0.00 |
| Withdrawals/Debits | 374,190.96 | Average balance | 2,168.29 |
| Ending balance | 100.21 | Average collected balance | 2,168.00 |

### Other Debits

| Date | Transaction Type | Description | Amount |
|---|---|---|---|
| 12-01 | Transfer | REF 0815L FUNDS TRANSFER TO DEP 9926 FROM ONLINE FUNDS TRANSFER VIA | 25,969.08 |
| 12-01 | Preauthorized Wd | MONTHLY FEE 2009 1130 CUREPOINT | 499.00 |
| 12-05 | Preauthorized Wd | QUARTERLY FEE PAYMENT 5 0000 | 1,010.00 |
| 12-05 | Preauthorized Wd | QUARTERLY FEE PAYMENT 0000 | 1,010.00 |
| 12-05 | Automatic Transfer | TRANSFER TO CUREPOINT LLC ACCOUNT 8751 AT EXT BANK ABA # 848 | 1,771.61 |
| 12-06 | Preauthorized Wd | Infiniti Auto Loan 206 | 475.14 |
| 12-07 | Phn/Fax Dom Out Wire | CUREPOINT DUBLIN L CUREPOINT DUBLIN L LC | 17,000.00 |
| 12-07 | Service Charge | PHN/FAX DOM OUT WI | 100.00 |
| 12-07 | Phn/Fax Dom Out Wire | ROUNTREE LEITMAN K IN AND GEER LLCCUR EPOINT LLC COUNCILROUNTREE LEITMAN K LEIN AND GEER LLC | 79,773.24 |
| 12-07 | Service Charge | PHN/FAX DOM OUT WI | 100.00 |
| 12-08 | Preauthorized Wd | Pitney Purchase DIRECT DEB 208 PBPurchasPwr | 56.83 |
| 12-08 | Preauthorized Wd | PREMIER PROPERTI ACH 208 | 2,500.00 |
| 12-09 | Preauthorized Wd | AUTO OWNERS INS WEB PAY 6680 | 512.65 |



P.O. Box 2646-R, Columbus, GA 31902



December 31, 2022
954-6
CUREPOINT LLC

## Other Debits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|-------:|
| 12-12 | Transfer | REF    0639L FUNDS TRANSFER TO DEP    9926 FROM ONLINE FUNDS TRANSFER VIA | 1,600.26 |
| 12-14 | Phn/Fax Dom Out Wire | MAJESTIC INTERNATI AL ELECTRONICCUREP OINT PAYMENT MAJESTIC INTERNATI ONAL ELECTRONIC | 3,009.46 |
| 12-14 | Service Charge | PHN/FAX DOM OUT WI | 100.00 |
| 12-14 | Phn/Fax Dom Out Wire | ALPHA MEDICAL PHYS S LLCINVOICE  D215 9 AND D2158 ALPHA MEDICAL PHYS ICS LLC | 20,300.00 |
| 12-14 | Service Charge | PHN/FAX DOM OUT WI | 100.00 |
| 12-14 | Phn/Fax Dom Out Wire | ELEKTA INC DEPOSIT Y ACCOUNTINVOICES: 3756 AND 30 ELEKTA INC DEPOSIT ORY ACCOUNT | 25,698.14 |
| 12-14 | Service Charge | PHN/FAX DOM OUT WI | 100.00 |
| 12-14 | Domestic Wire Out | SOLIC CAPITAL ADVI RS LLCINVOICE NO 3 617 AND 3665 SOLIC CAPITAL ADVI SORS LLC | 50,000.00 |
| 12-14 | Service Charge | DOMESTIC WIRE OUT | 30.00 |
| 12-15 | Transfer | REF    0742L FUNDS TRANSFER TO DEP    9926 FROM ONLINE FUNDS TRANSFER VIA | 26,557.92 |
| 12-19 | Phn/Fax Dom Out Wire | ERICH RANDOLPHWELL FARGO BANK, NA ERICH RANDOLPH | 20,000.00 |
| 12-19 | Service Charge | PHN/FAX DOM OUT WI | 100.00 |
| 12-19 | Phn/Fax Dom Out Wire | MEDICAL AND PHARMA LEGALCUREPOINT  P HYSICIANS COVERAGEMEDICAL AND PHARMA CY LEGAL | 20,000.00 |
| 12-19 | Service Charge | PHN/FAX DOM OUT WI | 100.00 |
| 12-20 | Preauthorized Wd | NO AMER BK CO AUTH PAYME D744 | 1,706.68 |
| 12-21 | Preauthorized Wd | CALL EXPERTS CALL EXPER AL2U | 140.40 |
| 12-21 | Preauthorized Wd | PITNEY BOWES POSTAGE 2286 | 100.00 |
| 12-22 | Phn/Fax Dom Out Wire | RADIATION BUSINESS OLUTIONSREF: CUREP OINT PAYMENT; OCTORADIATION BUSINESS SOLUTIONS | 41,561.73 |
| 12-22 | Service Charge | PHN/FAX DOM OUT WI | 100.00 |
| 12-27 | Preauthorized Wd | NORCAL MUT INS INSURANCE 0397 | 5,041.00 |
| 12-28 | Preauthorized Wd | SPECTRUM SPECTRUM 228 | 386.45 |
| 12-29 | Transfer | REF 3630804L FUNDS TRANSFER TO DEP    9926 FROM ONLINE FUNDS TRANSFER VIA | 25,531.48 |
| 12-29 | Preauthorized Wd | GPC GPC EFT 1229 | 307.32 |
| 12-29 | Preauthorized Wd | SPECTRUM SPECTRUM 1229 | 343.57 |
| 12-30 | Preauthorized Wd | MONTHLY FEE    2005 1230 CUREPOINT | 499.00 |



P.O. Box 2646-R, Columbus, GA 31902

December 31, 2022
954-6
CUREPOINT LLC

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 12-01 | Transfer | REF ▒0814L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 25,969.08 |
| 12-06 | Transfer | REF ▒0611L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 2,000.00 |
| 12-07 | Transfer | REF ▒1146L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 100,000.00 |
| 12-12 | Transfer | REF ▒0637L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 2,000.00 |
| 12-14 | Transfer | REF ▒1024L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 96,000.00 |
| 12-14 | Transfer | REF ▒1359L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 5,000.00 |
| 12-15 | Transfer | REF ▒0741L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 25,000.00 |
| 12-19 | Transfer | REF ▒0915L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 40,000.00 |
| 12-21 | Transfer | REF ▒0627L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 500.00 |
| 12-22 | Transfer | REF ▒0804L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 5,000.00 |
| 12-22 | Transfer | REF ▒1037L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 40,000.00 |
| 12-27 | Transfer | REF ▒0706L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 3,000.00 |
| 12-29 | Transfer | REF ▒0803L FUNDS TRANSFER FRM DEP ▒8431 FROM ONLINE FUNDS TRANSFER VIA | 25,531.48 |

## Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 11-30 | 4,290.61 | 12-09 | 1,482.14 | 12-21 | 339.28 |
| 12-01 | 3,791.61 | 12-12 | 1,881.88 | 12-22 | 3,677.55 |
| 12-05 | 0.00 | 12-14 | 3,544.28 | 12-27 | 1,636.55 |
| 12-06 | 1,524.86 | 12-15 | 1,986.36 | 12-28 | 1,250.10 |
| 12-07 | 4,551.62 | 12-19 | 1,786.36 | 12-29 | 599.21 |
| 12-08 | 1,994.79 | 12-20 | 79.68 | 12-30 | 100.21 |



Checks and Debits Outstanding

| Check No. | Amount |
|-----------|--------|
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
|           |        |
| **Total** |        |

Follow these easy steps to reconcile your checkbook to the "Ending Balance" shown on the front of this statement:

(1) Make sure that all the transactions listed on this statement have also been entered in your checkbook register, including all deposits, credits, checks, check card transactions, ATM transactions and other debits. Make sure the amounts are the same in both places.

(2) Mark the checks and other debits in your checkbook that have been paid by the bank; mark the credits in your checkbook that have cleared the bank.

(3) Enter all the items that have not yet been paid by the bank and are still outstanding. These are items that are not shown on this statement and have not appeared on any previous statement.

(4) Enter the "Ending Balance" shown on this statement    $_____

(5) Add (+) deposits not shown on this statement (if any)    +_____

(6) Subtract(-) checks and/or other outstanding debits    -_____

(7) Balance should equal the balance in your checkbook    $_____

---

If your account does not balance, please check the following:

- Have you added and subtracted correctly – both in your checkbook register and in steps 3-6 above?
- Have you correctly entered the amounts of each deposit, credit, check, check card transaction or other debit in your checkbook?
- Do all checks and other debits you have marked as paid appear on this statement? Are any still outstanding that you have marked as paid?
- Have all deposits been added to your checkbook record and do the amounts agree with the amounts on this statement?
- Have you carried the correct balance forward from one checkbook register page to the next?
- Are you sure that all items you show as outstanding are not on this statement or any previous statement?

## ADDITIONAL WAYS TO MANAGE YOUR ACCOUNT

To check your balance between statements and track pending credits or debits. take advantage of:

- Internet Banking
- Mobile Banking
- Touchtone Banking

Information on these convenient options is available from your banker and through our website.

## ELECTRONIC FUND TRANSFERS PREAUTHORIZED CREDITS

If you have arranged to have direct deposits made to your account, you can call us at the telephone number indicated on page one of this statement to find out whether or not the deposits have been made.

## ELECTRONIC FUND TRANSFER DISCLOSURE

In case of errors or questions about your electronic transfers: If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, please telephone us at the number or write us at the address indicated on page one of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number.

(2) Describe the error or the transfer you are unsure about. Explain as clearly as you can why you believe there is an error or why you need more information.

(3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. For consumer/personal accounts, if we take more than 10 business days to do this, we will recredit your account for the amount you think is in error so that you may have use of the money during the time it takes us to complete the investigation.

## ORDER OF PAYMENT

*This section describes our general practice for paying transactions from your account. We may vary the order of payment if items are presented that cannot be returned unpaid. We reserve the right to change how we pay transactions from your account and will provide you notice of these changes.*

After the close of the business day, we add your deposits and other credits to your account. We then deduct any fees and charges owed to the bank. Finally, we deduct all items presented for payment The order these items are deducted from your account balance is based upon the type of transaction and, for electronic transactions, when the transaction was performed by you or was received by us.

First, we pay outgoing wire transactions in the order they were made. Then, we pay electronic transactions (First, we pay preauthorized ACH debits, then ATM transactions, and then check card transactions.) in the order they were performed by you or were received by us. Next, we pay unnumbered checks and other items drawn on your account by dollar amount in ascending order. Finally, we pay checks drawn on your account in ascending check number order. **For business and commercial accounts:** All checks and other items drawn on your account are paid by dollar amount in descending order.

## BILLING RIGHTS SUMMARY
*(Personal Reserve Account Only)*

In case of errors or questions about your statement: If you think your statement is wrong or if you need more information about a transaction on the statement, write us (on a separate sheet) at the address indicated on page one of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

(1) State your name and account number.

(2) Describe the error and explain as clearly as you can why you believe there is an error. If you need more information, describe the item you are unsure about.

(3) Tell us the dollar amount of the suspected error.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

# SYNOVUS®

P.O. Box 2646-R, Columbus, GA 31902

## Statement of Account

| Last statement: | November 30, 2022 |
| This statement: | December 31, 2022 |

Total days in statement period: 31

| | 795-1 | 031 | 165 |

Page   1 of 1

Direct inquiries to:
888-796-6887

CUREPOINT LLC
LOCKBOX 2
DAVID A WENDER AS CHAP. 11 TRUSTEE
3180 MATHIESON DR UNIT 712
ATLANTA GA 30005-0000

## Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Commercial Checking | 795-1 | $54,546.67 |

## Commercial Checking                    Account Number    795-1

| Beginning balance | 51,999.60 | | |
| Deposits/Credits | 2,912.06 | Low balance | 52,220.59 |
| Withdrawals/Debits | 364.99 | Average balance | 53,445.46 |
| Ending balance | 54,546.67 | Average collected balance | 53,274.00 |

### Other Debits

| Date | Transaction Type | Description | Amount |
|---|---|---|---|
| 12-23 | Maintenance Fee | ANALYSIS ACTIVITY FOR 11/22 | 364.99 |

### Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|---|---|---|---|
| 12-01 | Lock Box Deposit | | 220.99 |
| 12-02 | Lock Box Deposit | | 170.83 |
| 12-05 | Lock Box Deposit | | 700.37 |
| 12-12 | Lock Box Deposit | | 40.00 |
| 12-14 | Lock Box Deposit | | 69.50 |
| 12-15 | Lock Box Deposit | | 258.83 |
| 12-21 | Lock Box Deposit | | 574.36 |
| 12-23 | Lock Box Deposit | | 303.40 |
| 12-29 | Lock Box Deposit | | 573.78 |

### Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 11-30 | 51,999.60 | 12-12 | 53,131.79 | 12-21 | 54,034.48 |
| 12-01 | 52,220.59 | 12-14 | 53,201.29 | 12-23 | 53,972.89 |
| 12-02 | 52,391.42 | 12-15 | 53,460.12 | 12-29 | 54,546.67 |
| 12-05 | 53,091.79 | | | | |



If your account does not balance, please check the following:

- Have you added and subtracted correctly – both in your checkbook register and in steps 3-6 above?
- Have you correctly entered the amounts of each deposit, credit, check, check card transaction or other debit in your checkbook?
- Do all checks and other debits you have marked as paid appear on this statement? Are any still outstanding that you have marked as paid?
- Have all deposits been added to your checkbook record and do the amounts agree with the amounts on this statement?
- Have you carried the correct balance forward from one checkbook register page to the next?
- Are you sure that all items you show as outstanding are not on this statement or any previous statement?

## ADDITIONAL WAYS TO MANAGE YOUR ACCOUNT

To check your balance between statements and track pending credits or debits. take advantage of:

- Internet Banking
- Mobile Banking
- Touchtone Banking

Information on these convenient options is available from your banker and through our website.

## ELECTRONIC FUND TRANSFERS PREAUTHORIZED CREDITS

If you have arranged to have direct deposits made to your account, you can call us at the telephone number indicated on page one of this statement to find out whether or not the deposits have been made.

## ELECTRONIC FUND TRANSFER DISCLOSURE

In case of errors or questions about your electronic transfers: If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, please telephone us at the number or write us at the address indicated on page one of this statement as soon as possible. We must hear from you no later than 60 days after we sent the FIRST statement on which the error or problem appeared.

(1)   Tell us your name and account number.
(2)   Describe the error or the transfer you are unsure about. Explain as clearly as you can why you believe there is an error or why you need more information.
(3)   Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. For consumer/personal accounts, if we take more than 10 business days to do this, we will recredit your account for the amount you think is in error so that you may have use of the money during the time it takes us to complete the investigation.

## ORDER OF PAYMENT

*This section describes our general practice for paying transactions from your account. We may vary the order of payment if items are presented that cannot be returned unpaid. We reserve the right to change how we pay transactions from your account and will provide you notice of these changes.*

After the close of the business day, we add your deposits and other credits to your account. We then deduct any fees and charges owed to the bank. Finally, we deduct all items presented for payment The order these items are deducted from your account balance is based upon the type of transaction and, for electronic transactions, when the transaction was performed by you or was received by us.

First, we pay outgoing wire transactions in the order they were made. Then, we pay electronic transactions (First, we pay preauthorized ACH debits, then ATM transactions, and then check card transactions.) in the order they were performed by you or were received by us. Next, we pay unnumbered checks and other items drawn on your account by dollar amount in ascending order. Finally, we pay checks drawn on your account in ascending check number order. **For business and commercial accounts:** All checks and other items drawn on your account are paid by dollar amount in descending order.

## BILLING RIGHTS SUMMARY
*(Personal Reserve Account Only)*

In case of errors or questions about your statement: If you think your statement is wrong or if you need more information about a transaction on the statement, write us (on a separate sheet) at the address indicated on page one of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

(1)   State your name and account number.
(2)   Describe the error and explain as clearly as you can why you believe there is an error. If you need more information, describe the item you are unsure about.
(3)   Tell us the dollar amount of the suspected error.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.



P.O. Box 2646-R, Columbus, GA 31902

## Statement of Account

Last statement:        November 30, 2022
This statement:        December 31, 2022
Total days in statement period: 31

| ▮▮▮▮843-1 | 031 | 165 |
|---|---|---|

Page    1 of 7

Direct inquiries to:
888-796-6887

CUREPOINT LLC
LOCKBOX ACCT
DAVID A WENDER AS CHAP. 11 TRUSTEE
3180 MATHIESON DR UNIT 712
ATLANTA GA 30005-0000

## Summary of Account Balance

| Account | Number | Ending Balance |
|---|---|---|
| Commercial Checking | ▮▮▮-843-1 | $510,123.73 |

## Commercial Checking                          Account Number ▮▮▮843-1

| | | | |
|---|---|---|---|
| Beginning balance | 623,805.29 | | |
| Deposits/Credits | 284,894.26 | Low balance | 483,905.44 |
| Withdrawals/Debits | 398,575.82 | Average balance | 556,561.74 |
| Ending balance | 510,123.73 | Average collected balance | 556,561.00 |

### Other Debits

| Date | Transaction Type | Description | Amount |
|---|---|---|---|
| 12-01 | Transfer | REF ▮▮0814L FUNDS TRANSFER TO<br>DEP ▮▮▮9546 FROM ONLINE<br>FUNDS TRANSFER VIA | 25,969.08 |
| 12-02 | Preauthorized Wd | MERCHANT SERVICE MERCH FEE<br>221201 ▮▮▮1162 | 426.18 |
| 12-06 | Transfer | REF ▮▮0611L FUNDS TRANSFER TO<br>DEP ▮▮▮9546 FROM ONLINE<br>FUNDS TRANSFER VIA | 2,000.00 |
| 12-07 | Transfer | REF ▮▮1146L FUNDS TRANSFER TO<br>DEP ▮▮▮9546 FROM ONLINE<br>FUNDS TRANSFER VIA | 100,000.00 |
| 12-09 | Transfer | REF ▮▮0639L FUNDS TRANSFER TO<br>DEP ▮▮▮7944 FROM ONLINE<br>FUNDS TRANSFER VIA | 10,000.00 |
| 12-12 | Transfer | REF ▮▮0637L FUNDS TRANSFER TO<br>DEP ▮▮▮9546 FROM ONLINE<br>FUNDS TRANSFER VIA | 2,000.00 |
| 12-12 | Transfer | REF ▮▮0637L FUNDS TRANSFER TO<br>DEP ▮▮▮7944 FROM ONLINE<br>FUNDS TRANSFER VIA | 10,000.00 |
| 12-14 | Transfer | REF ▮▮1024L FUNDS TRANSFER TO<br>DEP ▮▮▮9546 FROM ONLINE<br>FUNDS TRANSFER VIA | 96,000.00 |
| 12-14 | Transfer | REF ▮▮1359L FUNDS TRANSFER TO<br>DEP ▮▮▮9546 FROM ONLINE<br>FUNDS TRANSFER VIA | 5,000.00 |



P.O. Box 2646-R, Columbus, GA 31902

December 31, 2022
█████843-1
CUREPOINT LLC

## Other Debits

| Date | Transaction Type | Description | Amount |
|---|---|---|---|
| 12-15 | Transfer | REF █████0741L FUNDS TRANSFER TO DEP █████9546 FROM ONLINE FUNDS TRANSFER VIA | 25,000.00 |
| 12-19 | Transfer | REF █████0915L FUNDS TRANSFER TO DEP █████9546 FROM ONLINE FUNDS TRANSFER VIA | 40,000.00 |
| 12-20 | Transfer Debit | TRANSFER TO DEPOSIT ACCOUNT (█████3140 | 100.00 |
| 12-21 | Transfer | REF █████0627L FUNDS TRANSFER TO DEP █████9546 FROM ONLINE FUNDS TRANSFER VIA | 500.00 |
| 12-21 | Transfer | REF █████0800L FUNDS TRANSFER TO DEP █████7944 FROM ONLINE FUNDS TRANSFER VIA | 4,000.00 |
| 12-22 | Transfer | REF █████0804L FUNDS TRANSFER TO DEP █████9546 FROM ONLINE FUNDS TRANSFER VIA | 5,000.00 |
| 12-22 | Transfer | REF █████1037L FUNDS TRANSFER TO DEP █████9546 FROM ONLINE FUNDS TRANSFER VIA | 40,000.00 |
| 12-23 | Maintenance Fee | ANALYSIS ACTIVITY FOR 11/22 | 49.08 |
| 12-27 | Transfer | REF █████0706L FUNDS TRANSFER TO DEP █████9546 FROM ONLINE FUNDS TRANSFER VIA | 3,000.00 |
| 12-29 | Transfer | REF █████0803L FUNDS TRANSFER TO DEP █████9546 FROM ONLINE FUNDS TRANSFER VIA | 25,531.48 |
| 12-29 | Transfer | REF █████0916L FUNDS TRANSFER TO DEP █████7944 FROM ONLINE FUNDS TRANSFER VIA | 4,000.00 |

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|---|---|---|---|
| 12-01 | Preauthorized Credit | MERCHANT SERVICE MERCH DEP █████1162 | 100.00 |
| 12-01 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT █████2326~ | 951.55 |
| 12-01 | Preauthorized Credit | GA DEPT OF COMMU HCCLAIMPMT █████2972~ | 1,329.48 |
| 12-01 | Preauthorized Credit | BLUE CROSS GA5F HCCLAIMPMT █████3390\ | 1,968.80 |
| 12-01 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT █████7726\ | 2,376.38 |
| 12-01 | Preauthorized Credit | UNITEDHEALTHCARE HCCLAIMPMT █████7726\ | 6,122.20 |
| 12-02 | Preauthorized Credit | AARP Supplementa HCCLAIMPMT █████6273\ | 42.39 |
| 12-02 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT █████7726\ | 604.64 |
| 12-02 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT █████2326~ | 872.61 |
| 12-02 | Preauthorized Credit | BLUE CROSS GA5C HCCLAIMPMT █████3390\ | 4,744.59 |



P.O. Box 2646-R, Columbus, GA 31902

December 31, 2022
███████843-1
CUREPOINT LLC

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 12-02 | Preauthorized Credit | BLUE CROSS GA5C HCCLAIMPMT ████████8390\ | 11,790.56 |
| 12-02 | Preauthorized Credit | MERCHANT SERVICE MERCH DEP ████████1162 | 40.00 |
| 12-05 | Preauthorized Credit | HUMANA GOVT BUSI HCCLAIMPMT ████████1225*WPSEAST \ | 78.69 |
| 12-05 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ████████3492\ | 1,119.50 |
| 12-05 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ████████2326~ | 1,612.77 |
| 12-05 | Preauthorized Credit | BLUE CROSS GA5F HCCLAIMPMT ████████8390\ | 2,468.06 |
| 12-05 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ████████1265*0000VACCN\ | 4,961.13 |
| 12-06 | Preauthorized Credit | UNLIMITED SYSTEM TRANSFER ████████2I4P4 | 20.61 |
| 12-06 | Preauthorized Credit | BLUE CROSS GA5F HCCLAIMPMT ████████8390\ | 55.39 |
| 12-06 | Preauthorized Credit | MERCHANT SERVICE MERCH DEP ████████1162 | 100.00 |
| 12-06 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ████████3492\ | 313.02 |
| 12-06 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ████████7726\ | 328.25 |
| 12-06 | Preauthorized Credit | HUMANA GOVT BUSI HCCLAIMPMT ████████1225*WPSEAST \ | 554.04 |
| 12-06 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ████████3473\ | 2,703.58 |
| 12-06 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ████████265*0000VACCN\ | 2,724.30 |
| 12-07 | Preauthorized Credit | Amerigroup GA5C HCCLAIMPMT ████████5189\ | 18.33 |
| 12-07 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ████████3492\ | 132.05 |
| 12-07 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ████████7726\ | 346.40 |
| 12-07 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ████████2326~ | 351.90 |
| 12-07 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ████████3492\ | 806.48 |
| 12-07 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ████████3473\ | 1,097.12 |
| 12-07 | Preauthorized Credit | MERCHANT SERVICE MERCH DEP ████████1162 | 3,600.00 |
| 12-07 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ████████1265*0000VACCN\ | 4,425.99 |
| 12-08 | Preauthorized Credit | HUMANA GOVT BUSI HCCLAIMPMT ████████225*WPSEAST \ | 154.63 |
| 12-08 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ████████7726\ | 180.02 |
| 12-08 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ████████3473\ | 1,733.26 |
| 12-08 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ████████265*0000VACCN\ | 1,767.28 |



P.O. Box 2646-R, Columbus, GA 31902

December 31, 2022
███ 843-1
CUREPOINT LLC

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 12-08 | Preauthorized Credit | UNLIMITED SYSTEM TRANSFER ███ H3K2 | 2,076.28 |
| 12-08 | Preauthorized Credit | GA DEPT OF COMMU HCCLAIMPMT ███ 2972~ | 2,670.93 |
| 12-08 | Preauthorized Credit | UNITEDHEALTHCARE HCCLAIMPMT ███ 7726\ | 10,849.42 |
| 12-09 | Preauthorized Credit | BLUE CROSS GA5F HCCLAIMPMT ███ 8390\ | 171.95 |
| 12-09 | Preauthorized Credit | UNLIMITED SYSTEM TRANSFER ███ G6N9 | 304.56 |
| 12-09 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ███ 3492\ | 313.02 |
| 12-09 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ███ 3473\ | 692.78 |
| 12-09 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ███ 1265*0000VACCN\ | 2,209.10 |
| 12-09 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ███ 7726\ | 2,820.33 |
| 12-09 | Preauthorized Credit | BLUE CROSS GA5C HCCLAIMPMT ███ 8390\ | 6,406.84 |
| 12-09 | Preauthorized Credit | BLUE CROSS GA5C HCCLAIMPMT ███ 8390\ | 30,683.39 |
| 12-12 | Preauthorized Credit | HUMANA GOVT BUSI HCCLAIMPMT ███ 1225*WPSEAST \ | 309.26 |
| 12-12 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ███ 3473\ | 346.39 |
| 12-12 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ███ 1265*0000VACCN\ | 441.82 |
| 12-12 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ███ 2326~ | 2,006.58 |
| 12-13 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ███ 2326~ | 221.77 |
| 12-13 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ███ 3473\ | 288.02 |
| 12-13 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ███ 3473\ | 404.34 |
| 12-13 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ███ 3492\ | 626.04 |
| 12-13 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ███ 7726\ | 1,104.59 |
| 12-13 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ███ 1265*0000VACCN\ | 4,491.05 |
| 12-14 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ███ 3492\ | 313.02 |
| 12-14 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ███ 2326~ | 703.80 |
| 12-14 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ███ 7726\ | 779.40 |
| 12-14 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ███ 3473\ | 1,731.95 |
| 12-14 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ███ 1265*0000VACCN\ | 2,191.07 |
| 12-15 | Preauthorized Credit | HUMANA GOVT BUSI HCCLAIMPMT ███ 1225*WPSEAST \ | 1,118.73 |



P.O. Box 2646-R, Columbus, GA 31902

December 31, 2022
████ 843-1
CUREPOINT LLC

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|-----------------|-------------|-------:|
| 12-15 | Preauthorized Credit | MERCHANT SERVICE MERCH DEP<br>████1162 | 15.00 |
| 12-15 | Preauthorized Credit | AARP Supplementa HCCLAIMPMT<br>████6273\ | 55.69 |
| 12-15 | Preauthorized Credit | UNLIMITED SYSTEM TRANSFER<br>████U4B5 | 577.20 |
| 12-15 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT<br>████2326~ | 1,055.27 |
| 12-15 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT<br>████7726\ | 1,195.65 |
| 12-15 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT<br>████3473\ | 2,419.70 |
| 12-15 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT<br>████1265*0000VACCN\ | 2,627.08 |
| 12-15 | Preauthorized Credit | GA DEPT OF COMMU HCCLAIMPMT<br>████2972~ | 3,870.46 |
| 12-15 | Preauthorized Credit | UNITEDHEALTHCARE HCCLAIMPMT<br>████7726\ | 10,849.42 |
| 12-16 | Preauthorized Credit | HEHP GA HCCLAIMPMT<br>████9549\ | 16.80 |
| 12-16 | Preauthorized Credit | BLUE CROSS GA5C HCCLAIMPMT<br>████8390\ | 272.88 |
| 12-16 | Preauthorized Credit | BLUE CROSS GA5F HCCLAIMPMT<br>████8390\ | 368.04 |
| 12-16 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT<br>████3492\ | 493.46 |
| 12-16 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT<br>████7726\ | 548.37 |
| 12-16 | Preauthorized Credit | UNLIMITED SYSTEM TRANSFER<br>████X6U4 | 1,094.90 |
| 12-16 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT<br>████2326~ | 1,265.37 |
| 12-16 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT<br>████3473\ | 1,480.79 |
| 12-16 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT<br>████1265*0000VACCN\ | 1,820.74 |
| 12-16 | Preauthorized Credit | BLUE CROSS GA5C HCCLAIMPMT<br>████8390\ | 1,958.68 |
| 12-16 | Preauthorized Credit | BLUE CROSS GA5C HCCLAIMPMT<br>████8390\ | 22,540.41 |
| 12-19 | Preauthorized Credit | AARP Supplementa HCCLAIMPMT<br>████6273\ | 10.69 |
| 12-19 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT<br>████3492\ | 313.02 |
| 12-19 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT<br>████2326~ | 351.90 |
| 12-19 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT<br>████1265*0000VACCN\ | 2,540.08 |
| 12-19 | Preauthorized Credit | FORTE 219787<br>████E56B | 30.00 |
| 12-19 | Preauthorized Credit | UNLIMITED SYSTEM TRANSFER<br>████W8Z7 | 39.64 |
| 12-20 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT<br>████3492\ | 313.02 |



P.O. Box 2646-R, Columbus, GA 31902

December 31, 2022

███████843-1
CUREPOINT LLC

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|------|------------------|-------------|--------|
| 12-20 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ██████3473\ | 692.78 |
| 12-20 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ██████3473\ | 750.73 |
| 12-20 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ██████2326~ | 908.97 |
| 12-20 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ██████1265*0000VACCN\ | 1,767.28 |
| 12-20 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ██████7726\ | 1,828.01 |
| 12-21 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ██████3492\ | 313.02 |
| 12-21 | Preauthorized Credit | AETNA AS01 HCCLAIMPMT ██████3492\ | 313.02 |
| 12-21 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ██████2326~ | 703.80 |
| 12-21 | Preauthorized Credit | Optum VA CCN Reg HCCLAIMPMT ██████1265*0000VACCN\ | 1,767.28 |
| 12-22 | Preauthorized Credit | BLUE CROSS GA5F HCCLAIMPMT ██████3390\ | 226.71 |
| 12-22 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ██████2326~ | 872.61 |
| 12-22 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ██████7726\ | 2,238.15 |
| 12-22 | Preauthorized Credit | GA DEPT OF COMMU HCCLAIMPMT ██████2972~ | 7,774.34 |
| 12-22 | Preauthorized Credit | UNITEDHEALTHCARE HCCLAIMPMT ██████7726\ | 8,942.02 |
| 12-23 | Preauthorized Credit | MERCHANT SERVICE MERCH DEP ██████1162 | 45.00 |
| 12-23 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ██████3473\ | 692.78 |
| 12-23 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ██████7726\ | 3,035.33 |
| 12-23 | Preauthorized Credit | BLUE CROSS GA5C HCCLAIMPMT ██████3390\ | 34,698.15 |
| 12-27 | Preauthorized Credit | HUMANA INS CO HCCLAIMPMT ██████3473\ | 404.34 |
| 12-27 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ██████7726\ | 433.00 |
| 12-27 | Preauthorized Credit | BLUE CROSS GA5F HCCLAIMPMT ██████3390\ | 1,826.40 |
| 12-27 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ██████2326~ | 4,610.75 |
| 12-28 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ██████7726\ | 779.40 |
| 12-28 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ██████2326~ | 1,232.28 |
| 12-29 | Preauthorized Credit | AARP Supplementa HCCLAIMPMT ██████6273\ | 10.69 |
| 12-29 | Preauthorized Credit | 36 TREAS 310 MISC PAY ██████0012 | 10.69 |
| 12-29 | Preauthorized Credit | MERCHANT SERVICE MERCH DEP ██████1162 | 50.00 |



P.O. Box 2646-R, Columbus, GA 31902

December 31, 2022
█████843-1
CUREPOINT LLC

## Deposits/Other Credits

| Date | Transaction Type | Description | Amount |
|---|---|---|---|
| 12-29 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ████████7726\ | 548.37 |
| 12-29 | Preauthorized Credit | MAC PTB ALGATN HCCLAIMPMT ████████2326~ | 966.13 |
| 12-29 | Preauthorized Credit | GA DEPT OF COMMU HCCLAIMPMT ████████2972~ | 1,014.53 |
| 12-29 | Preauthorized Credit | UnitedHealthcare HCCLAIMPMT ████████7726\ | 1,358.03 |
| 12-29 | Preauthorized Credit | UNLIMITED SYSTEM TRANSFER ████████Y9G4 | 6,086.63 |
| 12-30 | Preauthorized Credit | UNLIMITED SYSTEM TRANSFER ████████N6N7 | 996.35 |

## Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 11-30 | 623,805.29 | 12-12 | 598,308.68 | 12-21 | 508,851.61 |
| 12-01 | 610,684.62 | 12-13 | 605,444.49 | 12-22 | 483,905.44 |
| 12-02 | 628,353.23 | 12-14 | 510,163.73 | 12-23 | 522,327.62 |
| 12-05 | 638,593.38 | 12-15 | 508,947.93 | 12-27 | 526,602.11 |
| 12-06 | 643,392.57 | 12-16 | 540,808.37 | 12-28 | 528,613.79 |
| 12-07 | 554,170.84 | 12-19 | 504,093.70 | 12-29 | 509,127.38 |
| 12-08 | 573,602.66 | 12-20 | 510,254.49 | 12-30 | 510,123.73 |
| 12-09 | 607,204.63 | | | | |



| Checks and Debits Outstanding | |
|---|---|
| **Check No.** | **Amount** |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total** | |

Follow these easy steps to reconcile your checkbook to the "Ending Balance" shown on the front of this statement:

(1) Make sure that all the transactions listed on this statement have also been entered in your checkbook register, including all deposits, credits, checks, check card transactions, ATM transactions and other debits. Make sure the amounts are the same in both places.

(2) Mark the checks and other debits in your checkbook that have been paid by the bank; mark the credits in your checkbook that have cleared the bank.

(3) Enter all the items that have not yet been paid by the bank and are still outstanding. These are items that are not shown on this statement and have not appeared on any previous statement.

(4) Enter the "Ending Balance" shown on this statement    $_____

(5) Add (+) deposits not shown on this statement (if any)    +_____

(6) Subtract(-) checks and/or other outstanding debits    -_____

(7) Balance should equal the balance in your checkbook    $_____

---

If your account does not balance, please check the following:

- Have you added and subtracted correctly – both in your checkbook register and in steps 3-6 above?
- Have you correctly entered the amounts of each deposit, credit, check, check card transaction or other debit in your checkbook?
- Do all checks and other debits you have marked as paid appear on this statement? Are any still outstanding that you have marked as paid?
- Have all deposits been added to your checkbook record and do the amounts agree with the amounts on this statement?
- Have you carried the correct balance forward from one checkbook register page to the next?
- Are you sure that all items you show as outstanding are not on this statement or any previous statement?

### ADDITIONAL WAYS TO MANAGE YOUR ACCOUNT

To check your balance between statements and track pending credits or debits. take advantage of:

- Internet Banking
- Mobile Banking
- Touchtone Banking

Information on these convenient options is available from your banker and through our website.

### ELECTRONIC FUND TRANSFERS PREAUTHORIZED CREDITS

If you have arranged to have direct deposits made to your account, you can call us at the telephone number indicated on page one of this statement to find out whether or not the deposits have been made.

### ELECTRONIC FUND TRANSFER DISCLOSURE

In case of errors or questions about your electronic transfers: If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, please telephone us at the number or write us at the address indicated on page one of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

(1) Tell us your name and account number.

(2) Describe the error or the transfer you are unsure about. Explain as clearly as you can why you believe there is an error or why you need more information.

(3) Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. For consumer/personal accounts, if we take more than 10 business days to do this, we will recredit your account for the amount you think is in error so that you may have use of the money during the time it takes us to complete the investigation.

### ORDER OF PAYMENT

*This section describes our general practice for paying transactions from your account. We may vary the order of payment if items are presented that cannot be returned unpaid. We reserve the right to change how we pay transactions from your account and will provide you notice of these changes.*

After the close of the business day, we add your deposits and other credits to your account. We then deduct any fees and charges owed to the bank. Finally, we deduct all items presented for payment The order these items are deducted from your account balance is based upon the type of transaction and, for electronic transactions, when the transaction was performed by you or was received by us.

First, we pay outgoing wire transactions in the order they were made. Then, we pay electronic transactions (First, we pay preauthorized ACH debits, then ATM transactions, and then check card transactions.) in the order they were performed by you or were received by us. Next, we pay unnumbered checks and other items drawn on your account by dollar amount in ascending order. Finally, we pay checks drawn on your account in ascending check number order. **For business and commercial accounts:** All checks and other items drawn on your account are paid by dollar amount in descending order.

### BILLING RIGHTS SUMMARY
*(Personal Reserve Account Only)*

In case of errors or questions about your statement: If you think your statement is wrong or if you need more information about a transaction on the statement, write us (on a separate sheet) at the address indicated on page one of this statement as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

(1) State your name and account number.

(2) Describe the error and explain as clearly as you can why you believe there is an error. If you need more information, describe the item you are unsure about.

(3) Tell us the dollar amount of the suspected error.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

ASSET PURCHASE AGREEMENT


by and between


2406 CANCER CARE, LLC


AND


DAVID A. WENDER, NOT INDIVIDUALLY, BUT SOLELY AS THE CHPATER 11 TRUSTEE
FOR CUREPOINT, LLC


December 16, 2022

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of December 16, 2022, 2022, is made and entered into between 2406 CANCER CARE, LLC (together with any affiliate or permitted assignee, the "Purchaser"), and David A Wender, not individually, but solely as the chapter 11 trustee (the "Trustee" or "Seller") of the bankruptcy estate of Curepoint, LLC ("Curepoint" or "Debtor"). The Purchaser and Seller are sometimes individually referred to herein as a "Party" and collectively as the "Parties."

### WITNESSETH

WHEREAS, Curepoint is engaged in the business of operating a radiation center that provides radiation treatment for cancer patients (the "Business");

WHEREAS, on August 19, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code;

WHEREAS, on September 9, 2022, the Debtor filed its Schedules and Statement of Financial Affairs [Docket No. 37] and, on October 6, 2022, Debtor filed its supplemental Schedules and Statement of Financial Affairs [Docket No. 82];

WHEREAS, on October 13, 2022, the Court entered an Order [Doc. No. 96] granting Mark W. McCord, M.D.'s Motion to Appoint Chapter 11 Trustee [Doc. No. 52] and AMOA Finance, LLC's Motion to Appoint Chapter 11 Trustee [Doc. No. 54] and directing the United States Trustee to appoint a chapter 11 trustee in the Case;

WHEREAS, on October 17, 2022, the United States Trustee filed the Notice of Appointment of Chapter 11 Trustee and Setting of Bond [Doc. No. 104], which, among other things, appointed the Trustee as chapter 11 trustee for the Debtor's estate.  On October 18, 2022, the Trustee filed his Acceptance of Appointment as Chapter 11 Trustee. [Doc. No. 106].  The Court approved the appointment of the Trustee on October 19, 2022. [Doc. No. 108];

WHEREAS, this Agreement, the Acquisition (defined below) and the other transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court pursuant to Sections 105, 363 and 365 of title 11 of the United States Code (11 U.S.C. § 101, *et seq.*) (the "Bankruptcy Code");

WHEREAS, the Parties desire to enter into this Agreement pursuant to which Seller proposes to sell to Purchaser, and Purchaser proposes to purchase from Seller, substantially all of the assets used or held for use by Curepoint in the operation of the Business, in each case free and clear of any and all Liens of any kind or nature whatsoever (other than Permitted Liens and other than Assumed Liabilities) (the "Acquisition"); and

WHEREAS, the Parties desire to make certain representations, warranties, agreements, and covenants in connection with the Acquisition and the other transactions contemplated hereby;

2

48301228.2

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants, agreements and conditions hereinafter set forth, and intending to be legally bound hereby, each Party hereby agrees as follows:

## ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

1.1    <u>Definitions</u>. Unless otherwise defined herein, terms used herein shall have the meanings set forth on <u>Exhibit A</u> attached hereto and incorporated herein by this reference.

1.2    <u>Accounting Terms</u>. All accounting terms not specifically defined herein shall be construed in accordance with GAAP.

1.3    <u>Rules of Construction</u>. Unless the context otherwise clearly indicates, in this Agreement:

(a) the singular includes the plural;

(b) "includes" and "including" are not limiting;

(c) "may not" is prohibitive and not permissive; and

(d) "or" is not exclusive.

## ARTICLE II

## PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES

2.1    <u>Purchase and Sale of Assets</u>. Subject to the terms and conditions hereof, at the Closing and except as otherwise specifically provided in this Article II, Seller, as consideration for the payment of the Purchase Price in accordance with Section 3.1 and the other agreements and covenants made by the Purchaser herein, shall grant, sell, assign, transfer, convey and deliver to Purchaser, and Purchaser shall purchase and acquire from Seller, all right, title and interest of Curepoint in and to the Sale Assets (as defined in Section 2.2), free and clear of any and all Liens of any kind or nature whatsoever (other than Permitted Liens and the Assumed Liabilities).

2.2    <u>Assets</u>. Except for the Excluded Assets, the "<u>Sale Assets</u>" shall consist of all of the assets, properties and rights of Curepoint of every type and description, whether real, personal or mixed, tangible or intangible, and wherever located, including the following:

(a)    All cash up to $300,000;

(b)    all inventory, including supplies, drugs, controlled substances, disposables, consumables, office and other supplies, spare, replacement and component parts (the "<u>Inventory</u>");

(c)    all tangible personal property of Curepoint, including all equipment, vehicles, furniture, machinery, office furnishings and other personal property owned by Curepoint, wherever located;

3

48301228.2

(d)     all Company Intellectual Property;

(e)     all rights of Curepoint under the Assigned Contracts (listed on Schedule 2.2(e) hereto), including all rights of setoff and recoupment and all rights and claims arising under (or relating to) the Assigned Contracts, whether under federal or state law and whether arising by way of counterclaim or otherwise;

(f)     all deposits posted under Assigned Contracts and all advances, pre-paid expenses and credits for the benefit of Curepoint;

(g)     all rights in and under all express or implied guarantees, warranties, representations, covenants, indemnities and similar rights in favor of Curepoint relating to the other Sale Assets;

(h)     to the extent transferable, all Licenses relating to the Business;

(i)     subject to Section 2.3(f) below, all information (but excluding information subject to Curepoint's attorney-client or other similar privilege), files, correspondence, records, data, plans, reports, and recorded knowledge, including, to the extent permitted by applicable Laws, all patient medical records and medical staff records, including all patient lists, files, patient billing records and other patient records, and copies of financial records and files (copied at Purchaser's sole expense), employee records, supplier lists, price and mailing lists, and copies of all accounting or other books and records (copied at Purchaser's sole expense), which were generated, maintained, used and/or stored in the course of operations of the Business, provided however, Seller shall retain all rights to access to Curepoint's books and records as provided in Section 6.2 below;

(j)     all prepaid expenses, credits and security and other deposits;

(k)     all goodwill of Curepoint as a going concern; and

(l)     all accounts receivable, patient receivables and trade receivables and all other rights of Curepoint to payment from third parties, and the full benefit of all security for such receivables or rights to payment, in each case arising or accruing on or before the Closing Date (collectively, "Accounts Receivable").

2.3    Excluded Assets.

(a)     all cash as described in Section 2.2(a) above;

(b)     any bank accounts of Curepoint;

(c)     minute books and organizational documents;

(d)     any shares of stock, membership interests or other equity interests held by Curepoint in any other Person;

(e)     All Causes of Action asserted or existing as of the Closing Date, including any actual or potential claims by or through Curepoint against any of its Affiliates;

4



(f)      All Avoidance Actions;

(g)      All information, files, correspondence, records, data, plans, reports, and recorded knowledge, including, to the extent permitted by applicable Laws, and copies of all accounting or other books and records that the Trustee identifies as being necessary to analyze, preserve or otherwise pursue the Avoidance Actions and Causes of Action;[1]

(h)      any Licenses that applicable Law prohibits Seller from transferring;

(i)      All copiers identified in the "Copier Listing"; including, the property identified and/or referenced in the Motion for Relief from the Automatic Stay filed by Arvest Bank [Doc. No. 57] and those copiers identified in Proofs of Claim Nos. 6, 8, 9, 10, and 11;

(j)      all Benefit Plans and assets attributable thereto; and

(k)      all rights of Seller arising under this Agreement.

2.4      <u>Assumption of Liabilities</u>. Subject to the terms and conditions set forth in this Agreement, including <u>Section 2.5</u> hereto, Purchaser shall only assume from Seller and thereafter be responsible for the payment, performance or discharge of the Liabilities and obligations of Seller arising under or in connection with the Assigned Contracts set forth on Schedule 2.2(e) after the Closing Date. To the extent that any Assigned Contract is subject to a Cure Cost, Purchaser shall be responsible for such Cure Costs.

2.5      <u>Excluded Liabilities</u>.  Specifically, and without in any way limiting the generality of <u>Section 2.4</u>, the Assumed Liabilities shall not include, and in no event shall Purchaser assume, agree to pay, discharge or satisfy any Liability or Claim hereunder or otherwise have any responsibility for any Liability or Claim (together with all other Claims and Liabilties that are not Assumed Liabilities, the "<u>Excluded Liabilities</u>"):

(a)      relating to, resulting from, or arising out of the operation of the Business prior to the Effective Date - particularly the  AMOA Finance Lease;

(b)      relating to, resulting from, or arising out of, (i) claims made in pending or future suits, actions, investigations or other legal, governmental or administrative proceedings or (ii) claims based on violations of law, breach of contract, employment practices or environmental, health and safety matters or any other actual or alleged failure of Curepoint to perform any obligation, in each case arising out of, or relating to, (A) events, acts or omissions that have occurred, (B) services performed, or (C) the operation of the Business, in each case prior to the Effective Date;

(c)      pertaining to any Excluded Asset; and

(d)      of Curepoint or the Trustee arising or incurred in connection with the negotiation, preparation and execution hereof and the transactions contemplated hereby and any fees and

---

[1]      For the avoidance of doubt, if Purchaser believes that information set forth in Section 23(f) is necessary to the continued operation of the Business post Closing, the Purchase may obtain copies of such at its sole expense.

48301228.2



expenses of counsel, accountants, brokers, financial advisors or other experts of Curepoint or the Trustee.

Such Excluded Liabilities shall include all claims, actions, litigation and proceedings relating to any or all of the foregoing and all costs and expenses in connection therewith.

2.6     <u>Deemed Consents</u>. Seller shall request that by providing notice of its intent to assume and assign any Contract or Lease (a "<u>Cure Notice</u>"), that the Bankruptcy Court deem the non-debtor party to such Contract or Lease to have consented to the sale if, and to the extent that, pursuant to the Sale Order or other Order of the Bankruptcy Court, Seller is authorized to assume and assign to Purchaser and Purchaser is authorized to accept such Assigned Contracts pursuant to section 365 of the Bankruptcy Code.

## ARTICLE III

## BASIC TRANSACTION

3.1     <u>Payment of Purchase Price</u>. As consideration for the sale, transfer, conveyance and assignment of the Sale Assets to Purchaser at the Closing and the assumption and assignment to Purchaser of the Assigned Contracts, Purchaser shall (collectively, the "<u>Purchase Price</u>"):

(a)     pay to Seller cash in immediately available funds in an amount equal to $5,425,000 (five million, four hundred twenty-five thousand dollars), less the Good Faith Deposit (defined below); and

(b)     assume the Assumed Liabilities at the Closing (including the obligation to pay the Cure Costs.

3.2     <u>Allocation of Purchase Price</u>. Purchaser shall, within 120 days after the Closing Date, prepare and deliver to Seller a schedule allocating the Purchase Price (and any other items that are required for federal income tax purposes to be treated as part of the purchase price) among the Sale Assets in accordance with the requirements of section 1060 of the Code (such schedule, the "<u>Allocation</u>"). Purchaser and Seller shall report and file all Tax Returns (including amended Tax Returns and claims for refund) consistent with the Allocation, and shall take no position contrary thereto or inconsistent therewith (including in any audits or examinations by any Governmental Authority or any other proceeding). Purchaser and Seller shall cooperate in the filing of any forms (including Form 8594 under section 1060 of the Code) with respect to such Allocation.

3.3     <u>Good Faith Deposit</u>. Pursuant to the Bidding Procedures Order, concurrently with the execution of this Agreement, Purchaser shall pay to Seller a good faith deposit in an amount of 10% of the proposed cash portion of the Purchase Price (the "<u>Good Faith Deposit</u>") by wire transfer of immediately available funds. The Good Faith Deposit shall be held in a separate escrow account under the custody and control of Seller or its counsel. The Good Faith Deposit shall not be deemed to constitute property of the Bankruptcy Estate, and the Bankruptcy Estate shall have no interest of any kind (equitable or otherwise) in the Good Faith Deposit unless and until such deposit is released from escrow to Seller in accordance with this Agreement. If the Closing occurs, then the Good Faith Deposit shall be released from escrow to Seller at Closing in accordance with this Agreement. If this Agreement is validly



terminated pursuant to Section 10.1(b), the Good Faith Deposit shall be released from Escrow to Seller, it being understood that the Good Faith Deposit shall be deemed liquidated damages in favor of Seller and shall not be construed as a penalty.

**ARTICLE IV**

**REPRESENTATIONS AND WARRANTIES OF SELLER**

Trustee represents and warrants to Purchaser as follows as of the date hereof and the Closing Date:

4.1     Organization. To the best of Trustee's Knowledge, Curepoint is registered as a Georgia limited liability company control number 14054680, according to the records of the Secretary of State of Georgia, which records reflect that Curepoint is active and in good standing.

4.2     Authorization. Subject to the applicable provisions of the Bankruptcy Code and the approval of this Agreement by the Bankruptcy Court in the Bankruptcy Case pursuant to the Sale Order, the Trustee has full power and authority to execute and deliver this Agreement and the Ancillary Documents to which he is a party and, upon entry and effectiveness of the Sale Order, will have all authority necessary to perform the obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution and delivery of this Agreement and the Ancillary Documents by the Trustee, and the performance by the Trustee of his obligations hereunder and thereunder, and subject to the entry and effectiveness of the Sale Order and any applicable Bankruptcy Code provision, the consummation of the transactions provided for herein and therein have been duly and validly authorized by all necessary action on the part of the Trustee. Subject to entry of the Sale Order approving this Agreement in the Bankruptcy Case, this Agreement has been and the Ancillary Documents will be as of the Closing Date, duly executed and delivered by the Trustee and does or shall, as the case may be, constitute the valid and binding agreements of the Trustee, enforceable against the Trustee in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, moratorium or other similar Laws affecting or relating to claims against the Trustee.

4.3     Absence of Restrictions and Conflicts. To the best of Trustee's Knowledge, subject to entry of the Sale Order in the Bankruptcy Case and other approvals by any Governmental Authority required by applicable Laws, the execution, delivery and performance of this Agreement and the Ancillary Documents, the consummation of the transactions contemplated hereby and thereby and the fulfillment of and compliance with the terms and conditions hereof and thereof do not or will not (as the case may be), with the passing of time or the giving of notice or both, violate or conflict with, constitute a breach of or default under, result in the loss of any benefit under, permit the acceleration of any obligation under, or create in any party the right to terminate, modify or cancel, or result in the creation of any Lien under, (a) any term or provision of the charter documents of Curepoint, (b) any judgment, decree or order of any Governmental Authority to which Curepoint is a party or by which Curepoint or any of its properties or assets is bound, (c) any statute, law, rule or regulation applicable to Curepoint or the Business or (d) any Contract to which Curepoint is a party or by which Curepoint or any of its properties is bound.

7

4.4 <u>Assets</u>. Pursuant to the Sale Order approving this Agreement, at the Closing, Purchaser shall pay to Trustee the Purchase Price and the Trustee shall convey to Purchaser, all of Curepoint's right, title and interest in and to the Assets, free and clear of any and all Liens of any kind or nature whatsoever (other than Permitted Liens). Further, Purchaser will be allowed for a period of 180 days from the purchase date or Purchaser's receipt of Billing Contracts for Purchaser to bill under Curepoint's tax ID number and Medicare provider number.

4.5 <u>Compliance with Law</u>. To the best of Trustee's Knowledge, Curepoint has not been charged with, and, to Trustee's Knowledge, Curepoint is not currently under investigation with respect to, a violation of any applicable Law.

4.6 <u>Licenses</u>. To the best of Trustee's Knowledge, the Trustee has no reason to believe that the Facilities, equipment, staffing and operations of the Business fail to satisfy the applicable licensing requirements of any Governmental Authority. Curepoint will continue the uninterrupted conduct of the Business until Closing. Curepoint will take no action with regard to, or communicate with, the Georgia Department of Community Health, the federal Centers for Medicare and Medicaid Services or any fiscal intermediary thereof, or any accrediting organization prior to Closing, without the prior, express consent of the Purchaser.

4.7 <u>Labor Relations</u>. To the best of Trustee's Knowledge: (a), no employee of Curepoint who provided services at, for or on behalf of the Business is represented by any labor union or other labor organization in connection with their employment by Curepoint; (b) there is no representation licensing petition involving Curepoint pending or threatened before the NLRB or any other labor relations board; and (c) there is no labor strike, dispute, slowdown, stoppage, handbilling or other "concerted action" actually pending or threatened against or involving Curepoint.

4.8 <u>Brokers, Finders and Investment Bankers</u>. Other than the Trustee's proposed retention of SOLIC Capital Advisors, LLC ("SCA") and SOLIC Capital, LLC ("SC", and together with SCA, "SOLIC"), the Trustee has not employed any broker, finder or investment banker or incurred any Liability for any investment banking fees, financial advisory fees, brokerage fees or finders' fees in connection with the transactions contemplated hereby.

4.9 <u>Section 4.9 Disclaimers of Other Representations and Warranties</u>. EXCEPT AS EXPRESSLY SET FORTH IN THIS ARTICLE 4, SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, IN RESPECT OF ANY OF THE ASSETS (INCLUDING THE SALE ASSETS), LIABILITIES OR OPERATIONS, INCLUDING, WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, OR NON-INFRINGEMENT, AND ANY SUCH OTHER REPRESENTATIONS OR WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED. PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT TO THE EXTENT SPECIFICALLY SET FORTH IN THIS ARTICLE 4, PURCHASER IS PURCHASING THE SALE ASSETS ON AN "AS-IS, WHERE-IS" BASIS.

8

48301228.2

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as follows:

5.1     Organization. Purchaser is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Delaware and has all requisite limited liability company power and authority to own, lease and operate its properties and to carry on its business as now being conducted.

5.2     Authorization. Purchaser has full power and authority to execute and deliver this Agreement and the Ancillary Documents and, subject to entry of the Sale Order in the Bankruptcy Case, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Ancillary Documents by Purchaser, the performance by Purchaser of its obligations hereunder and thereunder, and the consummation of the transactions provided for herein and therein have been duly and validly authorized by all necessary action on the part of Purchaser.  Subject to entry of the Sale Order in the Bankruptcy Case, this Agreement has been, and the Ancillary Documents will be as of the Closing Date, duly executed and delivered by Purchaser and, provided this Agreement and the Ancillary Documents are executed by Seller and subject to entry of the Sale Order in the Bankruptcy Case, do or shall, as the case may be, constitute the valid and binding agreements of Purchaser, enforceable against Purchaser in accordance with their respective terms, subject to applicable bankruptcy, insolvency and other similar Laws affecting the enforceability of creditors' rights generally, general equitable principles and the discretion of courts in granting equitable remedies.

5.3     Absence of Restrictions and Conflicts.  The execution, delivery and performance of this Agreement and the Ancillary Documents, the consummation of the transactions contemplated hereby and thereby and the fulfillment of, and compliance with, the terms and conditions hereof and thereof do not or will not (as the case may be), with the passing of time or the giving of notice or both, violate or conflict with or constitute a breach of or default under, (a) any term or provision of the charter documents of Purchaser, (b) any material Contract to which Purchaser is a party, (c) any judgment, decree or order of any Governmental Authority to which Purchaser is a party or by which Purchaser or any of its properties or assets is bound or (d) any statute, law, rule or regulation applicable to Purchaser.

5.4     Ability to Perform.   Purchaser represents and warrants that it has the financial wherewithal necessary to consummate this transaction.  Immediately after giving effect to the transactions contemplated hereby, Purchaser shall be solvent and shall: (a) be able to pay its debts as they become due; (b) own property that has a fair saleable value greater than the amounts required to pay its debts (including a reasonable estimate of the amount of all Liabilities); and (c) have adequate capital to carry on its business. In connection with the transactions contemplated hereby, Purchaser has not incurred, nor plans to incur, debts beyond its ability to pay as they become absolute and matured.

5.5     Brokers. Purchaser has incurred no Liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby.

9

5.6     <u>Investigation</u>. The Purchaser has or will make its own investigation concerning the physical condition of the Sale Assets and the Business, Seller's title to or any other matter pertaining to the Sale Assets, and Purchaser acknowledges that it has been provided adequate access to the personnel, properties, assets, premises, books and records and other documents and data of Curepoint for such purpose. Other than the specific representations made by Seller pursuant to this Agreement, Purchaser is not relying on any representations, warranties or inducements of Seller (or any representative of Seller) with respect to the physical or other condition of the Sale Assets, Seller's title to the Sale Assets or any other matter pertaining to the Sale Assets or related business.

5.7     <u>Litigation</u>.  There are no Claims, actions, lawsuits or other legal proceedings pending or, to Buyer's knowledge, threatened against or by Purchaser that challenge or seek to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.

5.8     <u>No Other Representations or Warranties</u>. Except for the representations and warranties contained in this Agreement, Purchaser does not make any other express or implied representation or warranty with respect to the transactions contemplated hereby, and Purchaser disclaims any other representations or warranties, whether made by it or any of its Affiliates, officers, directors, employees, agents or representatives.

## ARTICLE VI

## COVENANTS OF SELLER; OTHER AGREEMENTS

6.1     <u>Conduct of Business</u>. Except as expressly required hereby, except as otherwise consented to in advance in writing by Purchaser, and except as prohibited by or otherwise required under the Bankruptcy Code, from the date of this Agreement until the Closing Date, Trustee shall exercise his best efforts to:

    (a)     conduct the Business in the Ordinary Course of Business;

    (b)     not knowingly or intentionally take action that would adversely affect the existence and good standing of Curepoint in its jurisdiction of organization and in each jurisdiction as it existed on the Petition Date;

    (c)     not knowingly and intentionally amend or modify the charter documents of Curepoint;

    (d)     not knowingly and intentionally permit any event or condition that with or without notice or lapse of time or both would constitute a default under, any Assigned Contract (except those being contested in good faith) and not amend any Assigned Contract, in each case other than such defaults that existed prior to or arose as a result of the filing of the Bankruptcy Case;

    (e)     not knowingly and intentionally dispose of or permit to lapse any right to the use of any patent, trademark, trade name, service mark, License or copyright of Curepoint, or dispose of or disclose to any Person any trade secret, formula, process, technology or know-how of Curepoint not heretofore a matter of public knowledge;

10



       (f)    not knowingly and intentionally (i) sell any Sale Asset, (ii) create, incur or assume any indebtedness secured by the Sale Assets, (iii) grant, create, incur or suffer to exist any Lien on the Sale Assets that did not exist on the date hereof, (iv) incur any Liability outside the Ordinary Course of Business, except as agreed to in writing by Purchaser, (v) make any commitment for any capital expenditure to be made on or following the date hereof without the written consent of Purchaser, or (ix) enter into any material Contract without the written consent of Purchaser;

       (g)    not knowingly and intentionally recognize any collective bargaining representative, consent to any representation election, or enter into a new collective bargaining agreement; and

       (h)    not knowingly and intentionally authorize, or commit or agree (i) not to take any of the actions required in Sections 6.1(a), or (ii) to take any of the actions prohibited in Sections 6.1(b)-(g).

6.2    <u>Inspection and Access to Information</u>. Seller agrees that, prior to the Closing Date, Purchaser and its representatives (including its accountants, advisors, consultants and legal counsel) shall, upon reasonable notice to the Trustee, and so long as such access does not unreasonably interfere with the operations of the Business, have reasonable access during normal business hours to all Facilities and shall be entitled to make such reasonable investigation of the properties, businesses and operations of Curepoint (including to conduct a physical inventory of the Inventory) and such examination of the books and records and financial condition of Curepoint as it reasonably requests and to make extracts and copies to the extent necessary of the books and records.

6.3    <u>Notices of Certain Events</u>. Seller shall promptly notify Purchaser of:

       (a)    any notice or other communication personally received by Trustee from any Person alleging that the consent of such Person is or may be required in connection with the transactions contemplated hereby;

       (b)    any notice or other communication received by Trustee from any Governmental Authority in connection with the transactions contemplated hereby; and

       (c)    (i) the damage or destruction by fire or other casualty of any material Asset or part thereof, or (ii) any material Asset or part thereof becoming the subject of any proceeding (or, to the Knowledge of Trustee, threatened proceeding) for the taking thereof or of any right relating thereto by condemnation, eminent domain or other similar governmental action.

6.4    <u>Reimbursement</u>. If, after the Closing Date, Seller receives a payment with respect to any Accounts Receivable, Seller shall forward to Purchaser any such payment within three (3) Business Days of receipt.

6.5    <u>Notification of Certain Matters</u>. Seller shall add Purchaser, and Purchaser's counsel, to Seller's so-called "Rule 2002 notice list" and otherwise provide notice to Purchaser of all matters that are required to be served on Seller's creditors pursuant to the Bankruptcy Code and Rules.

48301228.2



6.6    Further Assurances. Subject to the other provisions hereof, Purchaser and Seller shall each execute all documents and take all actions as may be reasonably required to carry out the provisions of this Agreement and the transactions contemplated hereby. Purchaser and Seller shall each use commercially reasonable efforts to fulfill or obtain the fulfillment of the conditions set forth in Article VIII and Article IX, respectively, of this Agreement.

6.7    Conditional Validity and Enforceability of Agreement.

(a)    Purchaser and Seller acknowledge that the Sale Assets will be sold at Auction in accordance with the Bidding Procedures Order and therefore, that except as expressly set forth herein, unless and until Seller's bid as embodied in this agreement as subsequently modified by agreement of Purchaser and Seller, is approved as a Winning Bid pursuant to the Sale Order, this Agreement will not be binding or enforceable by either Seller or Purchaser or any party claiming through either.

(b)    The Trustee may, in an exercise of his sole discretion, select Purchaser as the Stalking Horse Bidder in accordance with the Bidding Procedures order, in which event Purchaser shall be entitled to the Bid Protections provided in the Bidding Procedures Order.

6.8    Other Bids/Auction. Purchaser acknowledges that pursuant to the Bidding Procedures Order, Seller will solicit competing Bids and conduct an Auction of the Sale Assets.

6.9    Taxes.

(a)    On or prior to the Closing (or after the Closing when due and payable, to the extent such Taxes are due and payable after the Closing), Seller shall pay all sales taxes, use taxes, payroll taxes, and Taxes which will be owed by Seller or Curepoint and attributable to periods prior to the Closing.

(b)    Any sales, use, purchase, transfer, franchise, deed, fixed asset, stamp, documentary stamp, use or other Taxes and recording charges due and which may be payable by reason of the sale of the Sale Assets or the assumption of the Assumed Obligations under this Agreement or the transactions contemplated herein shall be borne and timely paid by Purchaser, and Purchaser shall prepare and timely file all Tax Returns required to be filed in connection with such payments.

(c)    Seller shall cooperate in the preparation, execution and filing of all returns, questionnaires, applications and other documents regarding Taxes and all transfer, recording, registration and other fees that become payable in connection with the transactions contemplated hereby that are required or permitted to be filed at or prior to the Closing.

**ARTICLE VII**

**COVENANTS OF PURCHASER**

7.1    Assumed Liabilities. Subsequent to the Closing, Purchaser agrees to be responsible for the payment and performance of the Assumed Liabilities.

12

7.2     <u>Operation</u>. Purchaser shall be obligated to discharge, pay, perform and satisfy all of the duties, liabilities and obligations arising, from and after the Closing, from the ownership, maintenance, operation, use, development, sale or leasing of, or other operation of business with respect to the Sale Assets and the Assigned Contracts.

7.3     <u>Further Assurances</u>. Subject to the other provisions hereof, Purchaser shall use its reasonable, good faith efforts to perform its obligations hereunder and to take, or cause to be taken, and do, or cause to be done, all things necessary, proper or advisable under applicable Law to obtain all consents required and all regulatory approvals and to satisfy all conditions to its obligations hereunder and to cause the transactions contemplated herein to be effected as soon as practicable in accordance with the terms hereof and shall cooperate fully with Seller and other designees in connection with any step required to be taken as a part of its obligations hereunder.

7.4     <u>Release of Chief Sales Officer</u>. Purchaser shall release the Trustee from and on account of any demands, suits, or claims of any sort arising out of or in connection with the sale of the Sale Assets hereunder.

7.5     <u>Taxes and Expenses</u>. Any Taxes (other than income Taxes) or recording fees payable as a result of the Acquisition or any other action contemplated hereby shall be paid by the Purchaser. Purchaser shall cooperate in the preparation, execution and filing of all returns, questionnaires, applications and other documents regarding Taxes and all transfer, recording, registration and other fees that become payable in connection with the transactions contemplated hereby that are required or permitted to be filed at or prior to the Closing.

7.6     <u>Confidential Information</u>. Subject to the requirements of applicable Law, including the Bankruptcy Code, related rules of procedure, and orders of the Bankruptcy Court, Purchaser shall hold in confidence at all times following the date hereof all Confidential Information and shall not disclose, publish or make use of Confidential Information at any time following the date hereof without the prior written consent of Seller. In the event the transactions contemplated hereby are not consummated for any reason, without limiting the other rights and/or remedies of the Parties, the Purchaser shall promptly return to Seller, or, with Seller's written permission, destroy, all documents and other materials and all copies of the foregoing that were furnished to the Purchaser to date in connection with its due diligence investigation of the Business and the Sale Assets, as provided therein.

## ARTICLE VIII

## CONDITIONS TO CLOSING

8.1     <u>Conditions to Obligations of Purchaser</u>. The obligations of Purchaser to consummate the transactions contemplated hereby shall be subject to the fulfillment at or prior to the Closing of each of the following conditions:

(a)     <u>Injunction</u>. There shall be no effective injunction, writ or preliminary restraining order or any order of any nature issued by a Governmental Authority of competent jurisdiction to the effect that the Acquisition may not be consummated as provided herein, and no proceeding or lawsuit shall have been commenced by any Governmental Authority for the purpose of obtaining any such injunction, writ or preliminary restraining order.

13

(b)    <u>Representations and Warranties</u>. The representations and warranties of Seller set forth in <u>Article IV</u> shall have been true and correct in all material respects as of the date hereof and shall be true and correct in all material respects as of the Closing as though made at and as of the Closing (other than those made as of a specified date, in which case as of such specified date), except that those representations and warranties that by their terms are qualified by materiality shall be true and correct in all respects.

(c)    <u>Performance of Obligations of Seller</u>. Seller shall have performed in all material respects all covenants and agreements required to be performed by Seller hereunder at or prior to the Closing.

(d)    <u>Ancillary Documents</u>. Seller shall have delivered, or caused to be delivered, to Purchaser the following:

i.    executed deeds, bills of sale, instruments of assignment, certificates of title and other conveyance documents, dated as of the Closing Date, transferring to Purchaser all of Curepoint's right, title and interest in and to the Sale Assets, together with possession of the Sale Assets, including a Trustee Bill of Sale, in form and substance reasonably acceptable to Purchaser (the "<u>Bill of Sale</u>"); and

ii.    all other documents required to be entered into by Trustee pursuant hereto or reasonably requested by Purchaser to convey the Sale Assets to Purchaser or to otherwise consummate the transactions contemplated hereby.

(e)    <u>Bankruptcy Court Orders</u>. (i) The Bankruptcy Court shall have entered the Sale Order substantially in the form set forth as Exhibit B hereto, with any changes thereto that affect (directly or indirectly) the Purchaser, satisfactory to the Purchaser and Seller, and (ii) as of the Closing Date, the Sale Order shall be in full force and effect, shall not then be stayed, and shall not have been vacated, reversed, modified or amended without Purchaser's prior written consent (which may be given or withheld in the sole discretion of the Purchaser).

8.2    <u>Conditions to Obligations of Trustee</u>.   The obligations of Seller to consummate the transactions contemplated hereby shall be subject to the fulfillment at or prior to the Closing of each of the following conditions, provided that Seller may waive any of the following conditions:

(a)    <u>Injunction</u>. There shall be no effective injunction, writ or preliminary restraining order or any order of any nature issued by a Governmental Authority of competent jurisdiction to the effect that the Acquisition may not be consummated as provided herein, and no proceeding or lawsuit shall have been commenced by any Governmental Authority for the purpose of obtaining any such injunction, writ or preliminary restraining order;

(b)    <u>Representations and Warranties</u>. The representations and warranties of Purchaser set forth in <u>Article V</u> shall have been true and correct in all material respects as of the date hereof and shall be true and correct in all material respects as of the Closing as though made at and as of the Closing (other than those made as of a specified date, in which case as of such specified date), except that those representations and warranties that by their terms are qualified by materiality shall be true and correct in all respects;

14

(c)    Performance of Obligations by Purchaser. Purchaser shall have performed in all material respects all covenants and agreements required to be performed by it hereunder on or prior to the Closing Date.

(d)    Ancillary Documents. Purchaser shall have delivered, or caused to be delivered, to Seller the following:

i.    documents evidencing the assumption of the Assigned Contracts and the acceptance of the assignable Licenses and the Assumed Liabilities, including the Assignment and Assumption Agreement;

ii.    a certificate by the Secretary of Purchaser, dated the Closing Date, as to (1) the good standing of Purchaser in its jurisdiction of incorporation and (2) the effectiveness of the resolutions of the [manager] of Purchaser authorizing the execution, delivery and performance hereof by Purchaser passed in connection herewith and the transactions contemplated hereby; and

iii.    all other documents required to be entered into or delivered by Purchaser at or prior to the Closing pursuant hereto.

(e)    Sale Order. The Bankruptcy Court shall have entered the Sale Order in a form reasonably satisfactory to the Trustee and Purchaser.

8.3    Bankruptcy Conditions.

(a)    The Sale Order shall have been entered finding Purchaser to be a Winning Bidder, as defined in the Bidding Procedures approved by the Bankruptcy Court.

(b)    The Sale Order shall approve and authorize the assumption and assignment of the Assigned Contracts and the Assigned Contracts shall have been actually assumed and assigned to Purchaser such that the Assigned Contracts will be in full force and effect from and after the Closing with non-debtor parties being barred and enjoined from asserting against Purchaser, among other things, defaults, breaches or claims (including, without limitation, cure claims under section 365 of the Bankruptcy Code, except as otherwise specifically provided in the Sale Order) existing as of the Closing or by reason of the Closing.


# ARTICLE IX

## CLOSING

The Closing shall occur within five (5) Business Days following the satisfaction or waiver (to the extent waivable) of the conditions set forth in Article VIII, or on such other date as the Parties may agree.  The Closing shall take place at such place as the Parties may agree. The Closing shall be effective as of 12:01 a.m. Eastern time on the Closing Date (such time, the "Effective Time").

15

48301228.2

## ARTICLE X

## TERMINATION; TERMINATION PAYMENT

10.1    <u>Termination</u>. This Agreement may be terminated prior to the Closing as follows:

(a)    by mutual written agreement of Purchaser and Seller;

(b)    by written notice from Seller to Purchaser, in the event Purchaser (i) fails to perform in any material respect any of its agreements contained herein required to be performed by it at or prior to the Closing or (ii) breaches any of its representations and warranties contained herein such that any such breach would result in a failure of the condition in Section 8.2(c), which failure or breach is not cured within ten (10) days following Seller having notified Purchaser of its intent to terminate this Agreement;

(c)    by either Purchaser or Seller if there shall be in effect a Final Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; and

(d)    by Purchaser or Seller if the Bankruptcy Court enters an order approving the sale of the Sale Assets to another purchaser and such transaction has closed.

10.2    <u>Effect of Termination</u>.  In the event of termination of this Agreement pursuant to this Article XI, this Agreement shall thereupon become void and there shall be no liability on the part of any Party or its Affiliates, officers, directors, employees or representatives; <u>provided</u>, <u>however</u>, the provisions of Section 3.3, 7.6 and Article XI all shall survive the Termination Date. Notwithstanding the foregoing, nothing contained herein shall relieve any Party from liability for any willful breach of this Agreement prior to termination.

10.3    <u>Liquidated Damages</u>.  In the event that this Agreement is terminated by Seller pursuant to Section 10.1(b), the Good Faith Deposit shall be retained by Seller, as Seller's liquidated damages and as Seller's sole remedy for Purchaser's breach hereunder. THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE AND EXTREMELY DIFFICULT TO ASCERTAIN THE ACTUAL DAMAGES SUFFERED BY SELLER AS A RESULT OF PURCHASER'S FAILURE TO COMPLETE THE PURCHASE OF THE SALE ASSETS PURSUANT TO THIS AGREEMENT, AND THAT UNDER THE CIRCUMSTANCES EXISTING AS OF THE DATE OF THIS AGREEMENT, THE LIQUIDATED DAMAGES PROVIDED FOR IN THIS SECTION REPRESENT A REASONABLE ESTIMATE OF THE DAMAGES WHICH SELLER AND THEIR AFFILIATES WOULD INCUR AS A RESULT OF SUCH FAILURE. THE PARTIES ACKNOWLEDGE THAT THE PAYMENT OF SUCH LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER. EACH PARTY HEREBY AGREES TO WAIVE ANY AND ALL RIGHTS WHATSOEVER TO CONTEST THE VALIDITY OF THE LIQUIDATED DAMAGE PROVISIONS FOR ANY REASON WHATSOEVER, INCLUDING THAT SUCH PROVISION WAS UNREASONABLE UNDER CIRCUMSTANCES EXISTING AT THE TIME THIS AGREEMENT WAS MADE. THE PARTIES FURTHER AGREE THAT CUREPOINT SHALL HAVE NO REMEDY FOR ANY BREACH OF THIS AGREEMENT BY PURCHASER.

16



# ARTICLE XI

## MISCELLANEOUS

     11.1   <u>Survival</u>. The representations and warranties contained in this Agreement shall not survive the Closing. Each of the covenants and obligations of Purchaser and Seller in this Agreement and in the other Ancillary Documents shall survive in accordance with their respective terms.

     11.2   <u>Schedules and Exhibits</u>.  The Schedules and Exhibits are hereby incorporated into this Agreement and are hereby made a part hereof as if set out in full herein.

     11.3   <u>Expenses</u>. Except as set forth in the Bidding Procedures Order, each Party hereto shall bear its own costs and expenses, including attorneys' fees, with respect to the transactions contemplated hereby. Notwithstanding the foregoing, in the event of any action or proceeding to interpret or enforce this Agreement, the prevailing party in such action or proceeding (i.e., the party who, in light of the issues contested or determined in the action or proceeding, was more successful) shall be entitled to have and recover from the non-prevailing party such costs and expenses (including all court costs and reasonable attorneys' fees) as the prevailing party may incur in the pursuit or defense thereof.

     11.4   <u>Amendment</u>. This Agreement may not be amended, modified or supplemented except by a written instrument signed by Seller and Purchaser.

     11.5   <u>Captions</u>.  The titles, captions and table of contents contained herein are inserted herein only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

     11.6   <u>Notices</u>. All notices, communications and deliveries hereunder shall be made in writing signed by or on behalf of the Party making the same, shall specify the Section pursuant to which it is given or being made, and shall be delivered personally or by UPS Next Day Air or other nationally recognized overnight courier service (with evidence of delivery and postage and other fees prepaid) as follows:

To Seller:                Mr. David A. Wender
                            Eversheds Sutherland (US) LLP
                            999 Peachtree Street, NE, Suite 2300,
                            Atlanta, GA 30309-3996
                            (404) 853-8175

         With a copy to:      Mr. Nathan T. DeLoatch
                            Eversheds Sutherland (US) LLP
                            999 Peachtree Street, NE, Suite 2300,
                            Atlanta, GA 30309-3996
                            (404) 853-8356

17



To Purchaser:

> 2406 CANCER CARE, LLC
> Attn: Erich Randolph, M.D.
> 159 The Prado, NE
> Atlanta, Georgia 30309
> (404) 234-6473

With a copy to:

> Milton D. Jones, Esq.
> PO Box 533
> Lovejoy, GA 30350
> (770) 899-8486

or to such other individual or address as a Party hereto may designate for itself by notice given as herein provided.

    11.7    <u>Severability</u>. Any provision hereof that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by Law, each Party hereby waives any provision of law that renders any such provision prohibited or unenforceable in any respect.

    11.8    <u>Waivers</u>. The failure of a Party hereto at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same. No waiver by a Party of any condition or of any breach of any term, covenant, representation or warranty contained in this Agreement shall be effective unless in writing by Seller in the case of a waiver by Seller, or Purchaser, in the case of any waiver by Purchaser, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver of any such condition or breach of other instances or a waiver of any other condition or breach of any other term, covenant, representation or warranty.

    11.9    <u>Counterparts and Execution</u>. This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any counterpart may be executed by facsimile signature and such facsimile signature shall be deemed an original.

    11.10    <u>SUBMISSION TO JURISDICTION</u>. THE PARTIES HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT OR THE OTHER AGREEMENTS CONTEMPLATED HEREIN SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT.

18

48301228.2



11.11  <u>Governing Law</u>. Unless governed by the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with the Laws of the State of Georgia without regards to any conflict of Law principles as to all matters, including but not limited to matters of validity, construction, effect, performance and remedies.

11.12  <u>Binding Nature; Assignment</u>. Subject to approval of the Bankruptcy Court, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the Parties hereto without prior written consent of the other Party (which shall not be unreasonably withheld or delayed); except that (a) Purchaser may assign any of its rights and obligations hereunder to any Affiliate or subsidiary of Purchaser (whether wholly owned or otherwise) or as collateral to its lenders and, following the Closing, in whole or in part to any successor-in-interest to any Person acquiring all or any portion of the Business or the Sale Assets; (b) this Agreement may be assigned to any entity appointed as a successor to Seller pursuant to a confirmed Chapter 11 plan; and (c) that the terms of this Agreement shall be binding upon any subsequent trustee appointed under Chapter 11 or Chapter 7 of the Bankruptcy Code.

11.13  <u>No Third Party Beneficiaries</u>. This Agreement is solely for the benefit of the Parties hereto and nothing contained herein, express or implied, is intended to confer on any Person other than the Parties hereto or their successors and permitted assigns and any Persons named as an indemnitee herein, any rights, remedies, obligations, Claims, or causes of action under or by reason of this Agreement.

11.14  <u>Construction</u>. Unless the context of this Agreement otherwise clearly requires, (a) references to the plural include the singular, and references to the singular include the plural, (b) references to any gender include the other genders, (c) the words "include," "includes" and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation", (d) the term "or" has the inclusive meaning represented by the phrase "and/or", (c) the terms "hereof", "herein", "hereunder", "hereto" and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement, (f) the terms "day" and "days" mean and refer to calendar day(s) and (g) the terms "year" and "years" mean and refer to calendar year(s). Unless otherwise set forth herein, references in this Agreement to (i) any document, instrument or agreement (including this Agreement) (A) includes and incorporates all exhibits, schedules and other attachments thereto, (B) includes all documents, instruments or agreements issued or executed in replacement thereof and (C) means such document, instrument or agreement, or replacement or predecessor thereto, as amended, modified or supplemented from time to time in accordance with its terms and in effect at any given time, and (ii) a particular Law (as hereinafter defined) means such Law as amended, modified, supplemented or succeeded, from time to time and in effect at any given time. All Article, Section, Exhibit and Schedule references herein are to Articles, Sections, Exhibits and Schedules of this Agreement, unless otherwise specified. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if all Parties had prepared it.

11.15  <u>Public Announcements</u>. Except as required by this Agreement and/or permitted by the Bidding Procedures Order, applicable Law or in connection with the Chapter 11 Case, neither Seller nor Purchaser shall issue any press release or public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the other Party hereto

19

<u>QW</u>

relating to the contents and manner of presentation and publication thereof, which approval will not be unreasonably withheld, delayed or conditioned. Prior to making any public disclosure required by applicable Law, Seller shall give Purchaser a copy of the proposed disclosure and reasonable opportunity to comment on the same and shall use its best efforts to include Purchaser's comments in such public disclosure. For purposes of clarity, the reference to "applicable Law" in the preceding sentence does not include filings in the Chapter 11 Case.

11.16    Entire Understanding. This Agreement, the other Ancillary Documents the Disclosure Schedules and the Bidding Procedures Order set forth the entire agreement and understanding of the Parties hereto in respect to the transactions contemplated hereby and the Agreement and the Disclosure Schedules supersede all prior agreements, arrangements and understandings relating to the subject matter hereof and are not intended to confer upon any other Person any rights or remedies hereunder.

11.17    Closing Actions. All deliveries, payments and other transactions and documents relating to the Closing shall be interdependent, and none shall be effective unless and until all are effective (except to the extent that the Party entitled to the benefit thereof has waived satisfaction or performance thereof as a condition precedent to the Closing).

11.18    Cooperation Following the Closing. Following the Closing, each Party shall deliver to the other Parties such further information and documents and shall execute and deliver to the other Parties such further instruments and agreements as any other Party shall reasonably request to consummate or confirm the transactions provided for herein, to accomplish the purpose hereof or to assure to any other Party the benefits hereof.

11.19    Conflict between Transaction Documents. The Parties hereto agree and acknowledge that to the extent any terms and provisions of this Agreement are in any way inconsistent with or in conflict with any term, condition or provision of any other agreement or document referred to herein, this Agreement shall govern and control.

[Signature Page Follows]

20

48301228.2

IN WITNESS WHEREOF, the Parties hereto have caused this Asset Purchase Agreement to be executed and delivered on the date first above written.

**PURCHASER__**

By:_____
Name:_____
Title:_____

**SELLER:**

David A Wender, not individually, but solely as the chapter 11 trustee of the bankruptcy estate of Curepoint, LLC

By:_____
David A. Wender, Chapter 11 Trustee

**SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT**

21

48301228.2

IN WITNESS WHEREOF, the Parties hereto have caused this Asset Purchase Agreement to be executed and delivered on the date first above written.

**PURCHASER**

By: _Erol S. Randolf MD_

Name: _ERICA G. RANDULCH MD_

Title: _MANAGER 2406 CANCER CARE LLC_

**SELLER:**

David A Wender, not individually, but solely as the chapter 11 trustee of the bankruptcy estate of Curepoint, LLC

By:_____

David A. Wender, Chapter 11 Trustee

**SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT**

21

48301228.2

## EXHIBIT A

### Definitions

"<u>Accounts Receivable</u>" shall mean all rights of Curepoint to payment, refunds, or other forms of remuneration that arose before the Closing Date.

"<u>Affiliate</u>" of any particular Person means any other Person controlling, controlled by or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities or otherwise.

"<u>Affiliated Group</u>" means an affiliated group as defined in section 1504 of the Code (or any analogous combined, consolidated or unitary group defined under state, local or foreign income Tax Law) of which Curepoint is or has been a member.

"<u>Agreement</u>" means this Asset Purchase Agreement, including all the Disclosure Schedules hereto, as the same may be amended, modified or waived from time to time in accordance with its terms.

"<u>Allocation</u>" shall have the meaning set forth in <u>Section 3.2</u> hereof .

"<u>Ancillary Documents</u>" means any certificate, agreement, document or other instrument, other than this Agreement, to be executed and delivered by any Party in connection with the transactions contemplated hereby.

"<u>Assigned Contracts</u>" means all Contracts and Leases identified in <u>Schedule 2.2(e)</u>.

"<u>Assumed Liabilities</u>" means all obligations of Curepoint that the Purchaser expressly assumes in this Agreement, including the obligations of Curepoint arising under or in connection with the Assigned Contracts after the Closing.

"<u>Auction</u>" shall have the meaning set forth in the Bidding Procedures Order.

"<u>Avoidance Actions</u>" means a right to recover, or to obtain other relief arising under or referenced in: § 550 of the Bankruptcy Code; the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act as enacted in any state, or any other law providing for recovery of consideration given, or reversal of any transfer by or for the benefit of Seller.

"<u>Bankruptcy Code</u>" means Title 11 of the United States Code.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Northern District of Georgia.

"<u>Benefit Plan</u>" means any benefit, retirement, vacation, paid time off, welfare and fringe-benefit agreement, plan, policy and program in effect and covering one or more employees, former employees of Curepoint, current or former directors of Curepoint or the beneficiaries or dependents of any such Persons, and is maintained, sponsored, contributed to, or required to be contributed to by Curepoint, or under which Curepoint has any material Liability for premiums or benefits.

"<u>Bid</u>" or "<u>Bids</u>" shall have the meaning set forth in the Bidding Procedures Order.

"<u>Bidding Procedures</u>" shall mean the bidding procedures approved pursuant to the Bidding Procedures Order.

"<u>Bidding Procedures Order</u>" means the Order of the Bankruptcy Court entered on November __, 2022 [Doc. No.__].

"Business" means the business activities carried on by or on behalf of Curepoint.

"Chapter 11 Case" means Case No. 22-56501 under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Closing" means the consummation of the transactions contemplated by Article II and the consummation of the transactions contemplated herein.

"Closing Date" means the date on which the Closing occurs.

"Code" means the United States Internal Revenue Code of 1986, as amended.

"Company Intellectual Property" means any Intellectual Property that is owned by or licensed to Curepoint and used in connection with the Business, including the Company Software.

"Confidential Information" means any data or information of Curepoint (including trade secrets) that is valuable to the operation of the Business and not generally known to the public or competitors.

"Contract" means any agreement, contract, commitment or other binding arrangement or understanding, whether written or oral, to which Curepoint is a party and which Curepoint is permitted under the Bankruptcy Code and applicable law to assume and assign.

"Cure Costs" means the amounts necessary to cure all defaults, if any, and to pay all actual pecuniary losses, if any, that have resulted from such defaults, under the Assigned Contracts, in each case as of the Closing Date and to the extent required by Section 365 of the Bankruptcy Code and any order of the Bankruptcy Court; provided, however, that Cure Costs shall only include those amounts listed in a schedule of Cure Costs circulated to counterparties to contracts that Purchaser designates as Assigned Contracts.

"Cure Notice" means that notice given by Seller to all counterparties to the Contracts on or about November __, 2022 setting forth Seller's best estimate of the monetary payment needed to cure any default under the Contract.

"Disclosure Schedules" or "Schedules" mean those schedules attached to this Agreement and made a part hereof.

"Dollars" or "$" means dollars of the United States of America.

"Excluded Assets" shall have the meaning set forth in Section 2.3 hereof.

"Expense Reimbursement" shall have the meaning set forth in the Bidding Procedures Order.

"Facilities" means collectively the premises at which Curepoint operates the Business.

"Final Order" means an Order as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

"GAAP" means, at a given time, United States generally accepted accounting principles, consistently applied.

"Governmental Authority" means any United States federal, state or local or any foreign government, governmental regulatory or administrative authority, agency or commission or any court, tribunal or judicial or arbitral body.

23



"Intellectual Property" means all of the following in any jurisdiction throughout the world including: (i) inventions (whether or not patentable or reduced to practice), all improvements thereto, and patents, patent applications and patent disclosures, together with all reissuances, continuations, continuations-in-part, revisions, extensions, reexaminations and counterparts thereof; (ii) trademarks, service marks, trade dress, logos, slogans, trade names, corporate names and all other indicia of origin, together with all translations, derivations and combinations thereof, and together with all goodwill associated therewith, and all applications, registrations and renewals in connection therewith; (iii) internet domain names and social media account or user names (including "handles"), whether or not trademarked, all associated web addresses, URLs, websites and web pages, social media accounts and pages, and all content and data thereon or relating thereto, whether or not Copyrights; (iv) works of authorship (whether or not copyrightable), and copyrights, mask works and copyrightable works, and applications, registrations and renewals in connection therewith; (v) trade secrets, know-how and other confidential, proprietary or business information (including ideas, research and development, formulas, compositions, manufacturing, production and other processes and techniques, methods, designs, technical and other data, charts, plans, diagrams, drawings and specifications, customer and supplier lists and business, marketing and other plans, studies and proposals); (vi) computer software (including source code, executable code data, databases and documentation) and systems; (vii) copies and tangible embodiments of any of the foregoing in whatever form or medium; (viii) all other intellectual property and proprietary rights; and (ix) the right to sue and recover for any past, present or future infringement, misappropriation, dilution or any other causes of action, and to recover or collect any damages, proceeds, income, royalties or other payments in connection with or relating to any of the foregoing.

"Knowledge" with respect to Trustee means all facts actually and personally known by the Trustee as to Curepoint, with no duty of inquiry with respect to the matters at hand.

"Law" means any law, statute, regulation, ruling, or Order of, administered or enforced by or on behalf of, any Governmental Authority, or common law.

"Lease" means any agreement pursuant to which Curepoint is a lessee of personal property or a lessee or tenant with respect to real property and/or improvements therein, in each instances as to which the leasehold period has not expired.

"Liability" means any liability or obligation (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due and regardless of when asserted), including any liability for Taxes.

"License" means all notifications, licenses, permits (including environmental, construction and operation permits), franchises, certificates, certificates of need, accreditations, approvals, exemptions, waivers, classifications, registrations and other similar documents and authorizations issued by any Governmental Authority, and applications therefor; including, without limitation, all certificate of needs applicable to the Business and its National Provider Number (CurePoint NPI: 1891190674, PTAN: 0457).

"Lien" or "Liens" means any lien (statutory or otherwise), hypothecation, encumbrance, Claim, Liability, security interest, interest, mortgage, pledge, restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option, right of recovery, Tax (including foreign, federal, state and local Tax), Order of any Governmental Authority, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claim based on any theory that the Purchaser is a successor, transferee or continuation of Curepoint, Seller or the Business, and (iv) any leasehold interest, License or other right, in favor of a

24

Third Party or a seller, to use any portion of the Sale Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

"Order" means any decree, order, injunction, rule, judgment, consent of or by any Governmental Authority.

"Ordinary Course of Business" means the operation of the Business by Curepoint in the usual and ordinary course in a manner substantially similar to the manner in which Curepoint operated, consistent with past practice prior to the date hereof, subject to any obligations as a debtor under the Bankruptcy Code or any order of the Bankruptcy Court.

"Party" shall have the meaning ascribed to it in the Preamble hereof.

"Permitted Liens" means Liens of record on real property, leasehold estates or personalty that do not in any material respect detract from the value thereof and do not individually or in the aggregate in any material respect interfere with the present use of the property subject thereto.

"Person" means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"Purchase Price" shall have the meaning set forth in Section 3.1(a) hereof.

"Purchaser" shall have the meaning set forth in the preamble hereof.

"Rule" or "Rules" means the Federal Rules of Bankruptcy Procedure.

"Sale Hearing" means the hearing of the Bankruptcy Court to approve this Agreement and the transactions contemplated herein.

"Sale Motion" means the motion filed by Seller in the Bankruptcy Court seeking the sale of the Sale Assets and assumption of the Assigned Contracts pursuant to Sections 363 and 365 of the Bankruptcy Code, filed on _____ __, 2022 at Docket No. __ in the Bankruptcy Case.

"Sale Order" means the Final Order of the Bankruptcy Court in respect of the Sale Motion, in form and substance acceptable to the Purchaser and Seller to be entered by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code that is not subject to Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

"Sale Assets" shall have the meaning set forth in Section 2.1(a) hereof.

"Seller" shall have the meaning set forth in the preamble hereof.

"Stalking Horse Bidder" shall have the meaning set forth in the Bidding Procedures Order.

"Tax" and, with correlative meaning, "Taxes" mean with respect to any Person (i) all federal, state, local, county, foreign and other taxes, assessments or other government charges, including any income, alternative or add-on minimum tax, estimated gross income, gross receipts, sales, use, *ad valorem*, value added, transfer, capital stock franchise, profits, license, registration, recording, documentary, intangibles, conveyancing, gains, withholding, payroll, employment, social security (or similar), unemployment, disability, excise, severance, stamp, occupation, premium, real property, personal property, unclaimed property, environmental or windfall profit tax, custom duty or other tax, governmental fee or other like assessment, charge, or tax of any kind whatsoever, together with any interest, penalty, addition to tax or additional amount imposed by any Governmental Authority responsible for the imposition of any such tax (domestic or foreign) whether such Tax is disputed or not, (ii) Liability for the payment of any amounts of the type described in clause (i) above relating to any other

25

Person as a result of being party to any agreement to indemnify such other Person, being a successor or transferee of such other Person, or being a member of the same affiliated, consolidated, combined, unitary or other group with such other Person, or (iii) Liability for the payment of any amounts of the type described in clause (i) arising as a result of being (or ceasing to be) a member of any Affiliated Group (or being included (or required to be included) in any Tax Return relating thereto).

"Tax Return" means any report, return, declaration, claim for refund or other information or statement relating to Taxes, including any schedules or attachments thereto and any amendments thereof.

"Third Party" means any Person other than Seller, Curepoint, Buyer or any of their respective Affiliates.

"Trustee" shall have the meaning ascribed to it in the Preamble hereof.

26



**DISCLOSURE SCHEDULES TO ASSET PURCHASE AGREEMENT**

27

(all Disclosure Schedules shall be updated as of the Closing Date)

Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to such terms in the Agreement.

These Disclosure Schedules are being delivered in accordance with, and are incorporated into and made part of, the Agreement.

These Schedules relate to certain matters concerning the transactions contemplated by the Agreement. Except as otherwise set forth herein, information disclosed in any Schedule shall be deemed to be disclosed on any other Schedule to the extent that it is reasonably apparent from the face of such disclosure that such disclosure is applicable to such other Schedule or Disclosure Schedules.

Nothing in these Schedules will be deemed or will constitute an admission of any Liability of any party to any third party, nor an admission to any third party against the interests of any or all of the parties. Headings have been inserted on and within this Schedule for convenience of reference only and will not change the express description of the corresponding sections of the Agreement. The numbering of these Schedules reflect the corresponding numbering in the Agreement.

28

**Schedule 2.2(e) – Assigned Contracts**

| | | | | | |
|---|---|---|---|---|---|
| CurePoint Dublin LLC | 2406 Bellevue Rd | Dublin | GA | 31021 | - |
| Erich Randolph | 159 The Prado NE | Atlanta | GA | 30309 | 80,000.00 |
| Phillips Healthcare | 13560 Morris Rd | Alpharetta | GA | 30004 | 9,855.00 |
| Radiation Business Solutions, Inc. | 1044 Jackson Felts Rd | Joelton | TN | 37080 | $0.00 |
| Sun Nuclear Corporation | 3275 Suntree Blvd. | Melbourne | FL | 32940 | 29,474.66 |

48301228.2