1               **IN THE UNITED STATES BANKRUPTCY COURT**

             **FOR THE NORTHERN DISTRICT OF GEORGIA**

2                     **ATLANTA DIVISION**

3  IN RE:              )    Chapter 11

                        )

4  CUREPOINT, LLC       )    Case No. 22-56501-PWB

                        )

5                   )

      Debtor.       )

6

7    **TRANSCRIPT OF HEARING ON SECOND INTERIM APPLICATION FOR**

       **COMPENSATION FOR CHAPTER 11 TRUSTEE'S ATTORNEY**

8            **BEFORE:**   **Judge Paul W. Bonapfel**

             **DATE:**     **June 12, 2023**

9            **PLACE:**    **Courtroom 1202**

                        **United States Bankruptcy Court**

10                      **Atlanta, Georgia**

11  **IN ATTENDANCE:**

12  Counsel for David A. Wender,   Nathaniel DeLoatch

    Chapter 11 Trustee:       Eversheds Sutherland (US)

13                        LLP

                        Suite 2300

14                        999 Peachtree St. NE

                        Atlanta, GA 30309

15

16

17

18

19

20

21    Proceedings recorded by electronic sound recording,

      transcript produced by transcription service

22

23          **YourTranscriptionist.com**

               **P.O. Box 1312**

24        **Fayetteville, GA 30214**

25

**Appearances Cont'd**

| | |
|---|---|
| Counsel for AMOA Finance, LLC | Michael F. Holbein<br>Smith Gambrell & Russell LLP<br>1105 W Peachtree Street NE<br>Suite 1000<br>Atlanta, GA 30309-3695 |
| Counsel for United States Trustee | Lindsay P. S. Kolba<br>Office of the U.S. Trustee<br>Suite 362<br>75 Ted Turner Drive, S.W.<br>Atlanta, GA 30303 |

1                    P R O C E E D I N G S

2                                                          1:20 p.m.

3            THE COURTROOM DEPUTY:  The Court will come to

4    order. Good afternoon, Your Honor. Today is June 12, 2023.

5    The time is now 1:41 p.m. There are two items for the Court

6    to consider this afternoon. They are both from the 1:20 p.m.

7    chapter 11 and 12 miscellaneous matters calendar call. First

8    is item 12, case number 22-56501 Curepoint, LLC for a Second

9    Interim Application for Compensation for Chapter 11

10   Trustee's Attorney.

11           THE COURT:  Alrighty. Mr. Wender, are you gonna do

12   this or I guess Mr. DeLoatch? I'm not sure which.

13           MR. DELOATCH:  Your Honor, I will be handling it.

14           THE COURT:  Okay. Very good.

15           MR. DELOATCH:  For the record I'm Nathan DeLoatch

16   of Eversheds Sutherland, counsel to David Wender, Chapter 11

17   Trustee in this case. Your Honor, as you can tell Mr. Wender

18   is here and available to answer any questions if needed.

19   Your Honor, today we are here on Eversheds' second interim

20   fee application which is at docket 268. And were are seeking

21   interim allowance of compensation for fees in the amount of

22   3,000 - sorry, $322,465.20 and expenses in the amount of

23   $22,299.93 incurred from November 1, 2022 through February

24   28, 2023.

25           Your Honor, after we filed the application you

3

1   received comments from the United States Trustee and, um,

2   regarding certain of the time entries, the descriptions and

3   some concerns there. So following an extensive back and

4   forth and providing supplemental information and answering

5   some of Ms. Kolba's questions, we agreed to further reduce

6   the amount sought by $22,000 which brings it down from

7   $322,465.20 to $300,465.20. While I defer Ms. Kolba who I

8   believe is on the call, I believe that this resolves the

9   United States' concerns that have been addressed and that

10  they have no objection to the application.

11          THE COURT:  Okay. Ms. Kolba is actually here in

12  the courtroom.

13          MR. DELOATCH:  Oh.

14          THE COURT:  Ms. Kolba is that - if you want to

15  take your spot there.

16          MS. KOLBA:  Good afternoon, Your Honor. Lindsay

17  Kolba on behalf of the United States Trustee. Mr. DeLoatch's

18  announcement is correct. The United States Trustee did

19  provide commentary to Mr. Wender regarding the fee

20  applications. Specifically, the United States Trustee's

21  comments were geared toward making sure that the Trustee's

22  attorney was not billing for tasks which the United States

23  Trustee would consider to be trustee time typical in review

24  of fee applications for chapter 11 trustees and their

25  counsel. We also provided commentary on fee entries which we

4

1  believe may have been excessive in terms of the amount of

2  time billed or where the professional was billing the full

3  attorney rate for performing administrative tasks. So after

4  the adjustments that - for some of those entries Mr. Wender

5  agreed to voluntarily writeoff some time and for others, you

6  know, after again, some back and forth, some additional time

7  was also written off. And then some time was written down

8  just to again, compensate for making sure that

9  administrative tasks were being billed at an administrative

10 rate.

11          So after all of those comments and the United

12 States Trustees questions were resolved it did result in an

13 additional reduction from the fee application as Mr.

14 DeLoatch announced of $22,000 which does resolve the United

15 States Trustees questions, comments, objections, however the

16 Court would like to phrase that. But with that reduction the

17 United States Trustee has no objection to the application

18 with that reduction included.

19          THE COURT:  Okay. Very good. Thank you.

20          MR. DELOATCH:  Yes, Your Honor. Nathan DeLoatch

21 for the record, counsel for the Trustee. I want to point out

22 or highlight a couple of extra things that the $22,000

23 reduction that we agreed to with the United States Trustee

24 is in addition to other reductions that Eversheds made prior

25 to submitting the application. For instance, due to the

1    discounted fees that we agreed to with the Trustee in taking

2    this engagement. That would have been around a $48,000

3    reduction. We also wrote off around $35,000 just in

4    writeoffs prior to submitting the application. And Eversheds

5    has also agreed with the Trustee not to incorporate the

6    firm-wide rate increases so we're still operating on the

7    same rates that the firm was operating on last year and we

8    have not adopted the 2023 rate increases.

9          The application did receive an objection from AMOA

10   Finance and that's at docket 280. Based on our review it

11   appears that the sole basis or the primary basis of this

12   objection is the work that I performed for the benefit of

13   the estate. And in particular, my hourly rate. I would note

14   that the objection does not raise any issue with the

15   substance of the fee app itself and it instead defers to the

16   U.S. Trustee on that issue. So, given the agreement reached

17   with the United States Trustee, it would appear that there

18   are no substantive objections to the fee application itself.

19   Well, at least at this - that we are aware of at this time.

20         With regard to the fee structure, I will note that

21   these were disclosed in the employment application for

22   Eversheds back in October 26, 2022. No objections were filed

23   to that. A fee structure was also disclosed with Eversheds'

24   first interim application for compensation and that's at

25   docket 190 which was filed in December of this year and no

1  objections were raised to any of those. And for those

2  reasons Your Honor we - and for the reasons set forth in the

3  application, we submit that the services provided and the

4  expenses incurred were actual and necessary and that the

5  amount sought are reasonable under Section 330 and the

6  Johnson Factors and other applicable law. Thank you.

7          THE COURT:  All right. Before we get to Mr.

8  Holbein, remind me where is the estate in terms of the

9  ability to pay? What does the estate have on hand?

10         MR. DELOATCH:  Your Honor I would like to defer to

11  Mr. Wender on that question. He can answer it better than I

12  can.

13         MR. WENDER:  For the record, Your Honor, David

14  Wender, Chapter 11 Trustee. As of the - as of Friday the

15  estate was sitting on approximately $5.2 million of proceeds

16  largely resulting from the sale of assets and then also the

17  retention of certain accounts receivables. We're in the

18  process of finalizing actually - it actually hit the docket

19  I believe on Friday, a settlement with one of the equipment

20  lenders. We actually have a mediation and Your Honor, thank

21  you for entering the order regarding mediation with Mr.

22  Holbein and his client. We have the mediation scheduled for

23  June 20th. Hopefully that will resolve the multiple claims

24  asserted by AMOA and its situated entities. And then we have

25  a few pending adversary proceedings related to Merchant Cash

1  Advance Lenders and similar entities.

2        We are hopeful - well, so we are hopeful that

3  those will get resolved soon. And as of current projections

4  there's, there's more than enough money held in reserves to

5  satisfy all secured claims and we're currently doing some

6  math to figure out what a projected distribution is. In view

7  of the resolution with the other equipment lender, the other

8  linear accelerator lender, we've actually started the

9  process of procuring a plan and hoped to have that on file,

10 I would like to say in the middle of July. But I'm cognizant

11 of Eversheds' attorney is not my own time in putting

12 together that liquidated - putting together that, that plan

13 and so my goal is to have it on file with the disclosure

14 statement in mid to late July and moving on - in regard to

15 (indiscernible).

16       THE COURT:  Okay. Very good. All right. Mr.

17 Holbein?

18       MR. HOLBEIN:  Sorry about that I had to find my

19 cursor. On three monitors it got lost. Thank you, Your

20 Honor. So I take issue with the assertion and I have

21 substantive issues with the fee application. There are -

22 there are no issues with any particular time entry, but I

23 think the substantive law here, the Johnson Factors, we

24 have, we have a (indiscernible) issue. We don't think that,

25 uh, um, we don't think that these rates are commensurate.

8

1    The rates charged by the lawyers are commensurate in a way

2    that complies with the Johnson Factors and that's kind of

3    the second part. Really I feel like we can probably punt on

4    this because of what the Court just mentioned and that's

5    where are we?

6         So in order to know where we are its helpful to

7    ask (indiscernible). Let's look at where we've been. My

8    client was one of two petitioning creditors for the

9    appointment of the trustee. We filed a motion. I tried that

10   case, uh, before Judge Cavender. In is ruling, Judge

11   Cavender highlighted the existence of $2.7 million in

12   fraudulent transfers by Philip Miles who was (indiscernible)

13   apparent fraudulent transfer (indiscernible). That were -

14   was probably one of the biggest reasons underlying his

15   decision to appoint a trustee and so naturally it was my

16   client's hope that when this case rolled in - when we got a

17   trustee appointed, we had no idea who it would be, it would

18   be that's - we don't get that luxury. But, um, then that

19   would be kind of, I don't know, that would be at the top of

20   the list especially with - when you're dealing with

21   allegations of fraud. Money like that can, can even if you

22   get a judgment if you wait too long, judgement is

23   foreclosed.

24      We had hoped to see a lot more activity on bringing

25   money into the estate. And, instead we have seen some

1   shuffle and that's, that's still fine. We've seen the 9019

2   Motion that would purport to reduce a secured claim by a

3   half million dollars. That's fantastic. That would - it

4   would add 500,000. The same $500,000 we could drop right

5   back into the unsecured creditors pool. So, it's not, it's

6   not like it's free money, but it does free up money and a

7   considerable percentage of money for the distribution for

8   the secured creditors.

9        The problem is that $500,000, that's not gonna

10  leave anything (indiscernible) to the professional fees that

11  have been spent since this case was converted six months

12  ago. Six months ago we spent more than half a million

13  dollars in professional fees between the Trustee's attorney

14  and (indiscernible). And that was, that was getting a sale

15  that was already in the pan. They sold to the same

16  purchaser. Now at the last hearing we brought this up and,

17  and I hoped it would - you know, I know there probably

18  wasn't an appetite to hear a lot of things because it was

19  really more of a (indiscernible) motion with a $1500 or

20  $3800 whatever. A very small amount of money to employ an

21  appraiser and it has - and to the Trustee's credit it's paid

22  off with respect to the extent that, that influenced the,

23  uh, the, the bank that he's just settled with. Okay, that's

24  great. It's fantastic. Assuming that was one of the items

25  appraised. The - although, you know, the (indiscernible) it

1   certainly means that of that larger sales price there's more

2   to be allocated to my client on a better machine.

3          The - but the, the concern that we have is that we

4   have a $6,000,000 (indiscernible) is what the Debtor had

5   before we moved to appoint the Trustee. The primary reason

6   we wanted to appoint the Trustee is because we thought there

7   we were almost $3,000,000 in fraudulent transfers out there

8   in addition to this asset that we could sell. And it was

9   rolling along making money actually after the fraudsters

10  were removed post-petition. But then the sale just in like

11  the deal the Trustee entered into was, was worth

12  considerably less than the deal that was on the table.

13         The price was much lower. It was $575,000 low and

14  and then the Trustee left an additional $250,000 cash with

15  the Debtor. The sale that proceeded the appointment of the

16  Trustee was for - only had $50,000 in cash staying with the

17  Debtor. The Trustee still had 300,000. So we're 800 grand

18  and kind of in the hole, right? And, um, and then, since

19  then, we've had between the Trustee and (indiscernible)

20  we've had over almost $600,000 in fee application.

21  (Indiscernible) got a success fee for about the

22  (indiscernible) they started with. And now the Trustee is

23  billing about $120,000 a month which, it strikes terror in

24  the hearts of unsecured creditors who see, you know, an

25  estate with as of right now (indiscernible) nobody got moved

1  around - fourteen million dollars in unsecured claims. And

2  what we had, you know, 5,000,000 you gotta pay some stuff,

3  we get it. But what's - you know is the squeeze gonna be

4  worth the juice with this regime in place. And in my

5  opinion, my opinion, maybe they'll hit a home run with

6  fraudulent transfers and maybe they'll hit a home run with

7  the - us and they'll reduce, you know, their end. And the

8  distribution will look better when they're done than it

9  would have if they would have just distributed money the

10  they (indiscernible), maybe. But because of the burn that

11  year, I don't think we can pay - it's simply not prudent to

12  pay fees on an interim basis.

13        This is - and I said it in the last hearing, I'll

14  say it again. This is a lot more like a chapter 7 than - at

15  this point. There's no business to run. It's just, it's just

16  litigation. We don't have a plan. It gives me

17  (indiscernible) palpitations to think what that's gonna cost

18  especially since it's a plan and its just gonna restate the

19  distribution priorities in the Bankruptcy Code, right? I

20  mean it's - so they, you know, does this belong in chapter

21  7? Probably. And, you know, maybe if we're a creditor in

22  this case for much longer that's where we'll head, but, um,

23  until we get there and until we get to that issue, it just

24  seems like the prudent course here is, is, you know, to

25  punt.

1          If Eversheds comes back with a bunch more money

2   and they've earned their $125,000 a month in a $5,000,000

3   case then fantastic. I'll be shocked, but fantastic. But

4   until then, it doesn't make sense to pay. So, that's kind of

5   the biggest issue. But Mr. DeLoatch did mentioned another

6   issue and this is a genuine issue of concern in cases like

7   this, of this size. And one of the Johnson Factors has to do

8   with the rate. What is the rate? How does it look compared

9   to other practitioners in matters of similar complexity in

10  (indiscernible).

11          Six hundred dollars $600 an hour is - if  that

12  where Mr. Wender's rate, I would say oh that's pretty good.

13  That sounds about right. He's an experienced lawyer in a

14  case like this in Atlanta, very small business,

15  (indiscernible), okay. I don't know how much experience he

16  has as a trustee. I have not seen him as a trustee in a case

17  here before, but okay. That, that would be high I think if

18  we - if you looked around at what trustees with a lot of

19  experience billed that would be high for any of their

20  lawyers, but I would - but a lawyer that's been in private

21  practice for less than three years that's, you know - and,

22  and so, then and the (indiscernible) the response was well -

23  and this Trustee (indiscernible).

24          It's problematic as a trustee because as a trustee

25  you're a fiduciary. So you're not playing Dutch. You're not

13

1   ah, we've got that in and he didn't say anything. Right? As

2   Trustee you have fiduciary duties. And so the, um, the

3   reference to well, the general fee, uh, in general, our

4   applications for retention actually doesn't say anything

5   about third-year associate billing $600 in the application

6   for retention for the  (indiscernible). It gives a fee range

7   of the lawyers from 445 to 1200. It doesn't say who. It

8   doesn't say anything about it in the affidavit. It doesn't

9   give a resume or CV, not that I saw and I'm just - I'm

10  looking at it now. So, but even if it did, we have to see

11  what the work (indiscernible) is done. Because if they come

12  in and untangle some incredibly complicated, um,

13  (indiscernible) level of fraudulent transfer, then maybe it

14  is worth it, but pushing stuff, pushing paper around on a

15  done deal, that's not worth $600 an hour.

16          I'm glad to see the U.S. Trustee came in and, and

17  pointed to some stuff. I, I, I raised my concerns with the

18  U.S. Trustee the day this application was filed. I followed

19  up with her a week ago. She said she was in talks, beginning

20  of her indication (indiscernible). Now she, now I hear today

21  how the Trustee says, you know that they've agreed the

22  administrative tasks will be billed at a more perfect rate.

23  I've not heard what that more perfect rate is. I've not

24  heard what passes that (indiscernible).

25          So, I mean, you know, we're a big creditor in this

14

 1   case and, and if we lose or settle, we're gonna have the

 2   largest unsecured claim. And this was an estate with real

 3   money in the bank on day one. So, or at the very - it's a

 4   very bankable asset that was quickly turned into money. And

 5   so we haven't - every dollar that goes out is of concern.

 6   And, and particularly now, I think if Mr. DeLoatch's rate

 7   were cut in half that would make sense to me based on what

 8   other people in this area charge for similar work in a

 9   similar case. And I'm happy to have (indiscernible) here.

10   But right now, you know, I do think that its too much, but I

11   think we could punt on that and, and just - Eversheds - it's

12   not like Eversheds is gonna go out of business if they don't

13   get this interim money. So there's no need to be paying

14   interim fee applications. It's just not. It, it's imprudent.

15   That money is gone. So, that is our objection. We object to

16   allowance right now and we object to payment.

17            THE COURT:  All right. Mr. DeLoatch?

18            MR. DELOATCH:  Yes, Your Honor. Nathan DeLoatch,

19   counsel for the Trustee just for the record. A couple of

20   things. And forgive me for being redundant. The Trustee is

21   well aware and I don't know how I'm gonna try to not

22   disclose things inappropriately, but the Trustee is well

23   aware of the causes of action that he has - is in the

24   process of investigating those and taking the necessary

25   steps to those. I know Mr. Holbein raises that at almost

1  every hearing we have and the Trustee is aware and taking

2  the necessary steps there. He also wants to relitigate the

3  sale. The Trustee came in, the parties were expecting a

4  quick sale, the Trustee did everything within its power to

5  effectuate a successful sale and the cards fell where they

6  landed. The buyers that were present and the offer that was

7  present in the first instance was not there. I think part of

8  that was probably due to the fact that they wanted to bring

9  the Trustee in, but I can't speak to that. That's in the

10 past.

11        Another thing is that Mr. Holbein is just

12 incorrect that we're - that the rates are $125,000 a month.

13 If you look at the fee application, at least around two-

14 thirds of what's being sought right now was incurred within

15 November, December and relates specifically to the sale, all

16 the processes and the motions that were necessary to make

17 that happen. In February, it decreased dramatically. It was

18 around 70,000 for the month. In March it was 37,000, you

19 know approximately $37,000. So, Mr. Holbein's point that

20 it's just gonna continue to rack up month after month, it's

21 just not actually shown in what we presented.

22        Let's see. With respect to disclosing the rates,

23 the employment application does give a range of rates which

24 tells you the associates for Eversheds bill at starting at

25 400 up to X amount. (indiscernible) counsel and so forth.

1  The first interim application that was submitted expressly

2  discloses all the rates of all attorneys that put time into

3  this matter. So, Mr. Holbein had the opportunity and was

4  aware at that time of what the rates were.

5          I would argue that the rates that, that Eversheds'

6  rates are commensurate with firms of its size and of the

7  attorneys it has and, and in, um, in dealing with matters

8  like this. And I think that's - unless Mr. Wender has

9  anything additional, that's all I have.

10          THE COURT:  Okay.

11          MR. WENDER:  Yes, Your Honor. For the record,

12  David Wender, Chapter 11 Trustee. And I was hoping not to

13  speak today, but unfortunately I am unfortunately I'm

14  getting a little tired of some of the accusations about me

15  not fulfilling my fiduciary duties. I did not file the

16  motion seeking the appointment of a trustee. I did not raise

17  concerns about insiders. That was Mr. Holbein and others who

18  raised those concerns. The United State Trustee among, among

19  the moving parties. When I was retained and interviewed the

20  rates were (indiscernible) of discussion. And on the front

21  end as disclosed on the retention application, we agreed to

22  a discount off of Eversheds Sutherland's fees. And, and in

23  express acknowledgment of my limited role in the case.

24  While, while Mr. - and I think the objection speaks to the

25  percentage of time spent by Mr. DeLoatch when my - when,

1   when, when my trustee application comes in and my time

2   entries are submitted, you will see that behind most of Mr.

3   DeLoatch's entries is David Wender, Chapter 11 Trustee,

4   recording time as a non-billable chapter 11 trustee matter

5   and that's one way that the efficiencies of a firm like mine

6   is able to, to provide the services to a debtor.

7          Next I wanna add, Mr. DeLoatch while he is a

8   third-year practicing lawyer he did spend three years

9   clerking and is more than familiar and has his extent of

10  experiential matters similar to these both before the

11  courts, and I think trying to (indiscernible) the amount of

12  (indiscernible) he has behind, behind the desk is - its

13  inappropriate. Finally, Your Honor and Mr. DeLoatch kind of

14  highlighted this little bit. I am not (indiscernible).

15  Unfortunately, for one reason or the other some litigation

16  has, (indiscernible) necessity of the sale or otherwise

17  needed to go first. And to be honest we needed to make sure

18  that for example, if an expert is needed to prosecute

19  preferential transfers, avoidable transfers, that there is

20  estate monies to do so without overburdening a bunch of your

21  creditors and the like of trying to show that and some

22  analysis needed to be done as to probability in certain

23  actions. So I'm not going to go into the steps that we're

24  taking now, but I think it's fair to say that Mr. DeLoatch

25  has already made reference during, during his statements.

1  And if the litigation is in process and will be prosecuted

2  as determined by me as an estate fiduciary, for the benefit

3  of the estate, period full stop. At bottom we've done our

4  job. We billed the rate that we said we would. We in fact,

5  written off significant amounts of time and addressed the

6  concerns. And, and so, Your Honor, I believe although again,

7  we would, we would prefer significantly more money from the

8  sale.

9         I was told that Mr. Holbein's client would have

10  paid $8 million for the assets. They didn't. So, we were

11  left with the one (indiscernible) physician, who was the

12  buyer and that was getting our desire to get

13  (indiscernible). So, Your Honor we're here. We put in the

14  work as we said that we would at the rates that we said that

15  we would charge and we obtained, we obtained - while was it

16  a home run out of the park? I'd say no because I didn't get

17  $8 million plus for a sale, but that's the one thing that a

18  chapter 11 trustee can't have - do on his own is get a

19  higher buyer. Your Honor, so with that unless the Court has

20  any questions for me with the presentation of Mr. DeLoatch

21  I'm not sure there's anything further.

22         THE COURT:  All right. Mr. Holbein, you wish to

23  ...

24         MR. HOLBEIN:  I do. And I'll - I'm gonna try to be

25  methodical about this, because I wanna just stick with these

1  - but I wanna specifically address concerns. I'm not trying

2  to relitigate the sale. We are here on a fee application. It

3  covers a period of time in which its (indiscernible) and

4  that fee application isn't just showing up punching a clock

5  and then punching the clock and then you get paid that no

6  matter what happens. It's look at what was done, right? And

7  I'm not saying disallow the fees. I'm saying punt. So if

8  there's this super secret litigation strategy that's gonna

9  to result in millions of dollars then awesome. Let's look

10  forward to that happening. But there are some things that -

11  and, and and going back, I haven't - I don't (indiscernible)

12  personally have any real - I'm not losing any sleep at night

13  over what people are or aren't tired about hearing. But

14  everything that I've said is pertinent to an objection on

15  the fee application today.

16        So, I have not denigrated Mr. DeLoatch. In fact I

17  took great pains not to, but when Mr. Wender says that its

18  inappropriate for me to bring up his experience that ignores

19  the literal law on this that says you look at someone's

20  experience. That's literally what we're tasked with doing

21  in, in evaluating a fee application. What was the experience

22  of the practitioner doing it? There's - I'm not asking that

23  anybody go get chained. I'm not asking that anybody get

24  publicly flawed. I'm saying that when you come and you ask

25  in an estate for over a quarter million dollars over

1   $500,000 plus in total professional fees, it is fair for the

2   creditors who will get the money that isn't spent by lawyers

3   to say what are we getting for that? Why are we paying them?

4   And so it is inappropriate to say it's not appropriate to

5   talk about the experience of practitioners. That is in fact

6   what the substantive law mandates. So I have to go into

7   experience.

8            And when, when the Trustee talks about and this is

9   a bit of a (indiscernible), when he talks about, you know, I

10  can only get what I get. I get that. I understand that you

11  can only get what you get. I get it. You do in fact have

12  ways to get more and employing an investment banker is a

13  specific strategy to get more. Like that's why you do it.

14  You don't do it because you feel like throwing money around.

15  And then finally, when I was calculating the loan rate here,

16  I was doing it based on this fee application and the amount

17  of time that it covers.

18            Now if they're submitting their bills and I'm not

19  seeing them, then I'm wrong. I have not seen a $70,000

20  February bill or a $37,000 March and so to say that this is

21  consistent with what we've submitted. I haven't seen that

22  submitted. I mean I could be missing it. I'll totally

23  acknowledge that I'm missing it, but I haven't seen it. I'm

24  commenting on the fee application before the Court. Three

25  hundred plus - $322,000 for three months of time. Yeah,

1   that's not exactly 125. I'm not a math guy, but it's, it's,

2   $100,000 plus a month in, in, in a very short period of

3   time. And if it turns out things slow down and if money

4   starts flowing in fantastic, and they get paid.

5         Finally, and we come back to this. And this is a

6   point that needs to sink in and maybe, maybe $5 million

7   business trustee (indiscernible) the thing that Eversheds

8   needs to focus on. I mean maybe that doesn't work for their

9   business model. It wouldn't shock me if it didn't, but you

10   can't say we, we applied for this bill or, or we applied to

11   be retained and we gave you our range and you could never,

12   ever, ever say anything about it again because you didn't

13   object to our retention. Nonsense. First off, it does not

14   say 445 to associates on up. It says attorneys including

15   associates, 445 to $1200. Twelve hundred dollars

16   (indiscernible).

17         THE COURT: Well, let me, let me stop you there.

18   So if attorneys are 445 to $1200 and Mr. DeLoatch has been

19   practicing a little less than three years and has three

20   years of clerking, so we'll give him, you know, I'm sure

21   they can give him three years of experience for three years

22   of clerking. We'll say he's like a fourth year associate.

23   Where in that range did you think he fell?

24         MR. HOLBEIN: It doesn't matter where I thought he

25   fell. I needed to see his fee (indiscernible) for this

1   interim application. I'm not going to object to an

2   employment of counsel. At the early stages of the case you

3   go in and say yeah, I wanna know exactly what his range is.

4   That's not --

5           THE COURT:  But if you're gonna complaint about

6   the rate they charge, isn't that the time to do it?

7           MR. HOLBEIN:  I think it's the Judge's - the

8   Court's responsibility to make sure the estate is spending -

9   that money isn't flying out of the estate because we're

10  paying too much. You don't need to look hard in this

11  district to find a case where this isn't happening. It's

12  every other case. There's not a case like this, like this, a

13  little bit. Instead, the U.S. Trustee is going after

14  trustees' counsels that are billing a third - two-thirds of

15  this. Cracking apart every little entry. It, it - I mean,

16  nowhere in the Bankruptcy Code does it say object to the

17  application of the retention or lose your opportunity to

18  contest the rates under the Johnson Factors. It doesn't say

19  it anywhere. It doesn't say it anywhere in a case law

20  either. And I wanna see the case that says that. That says

21  if you don't object to retention and a range, then you are

22  forever foreclosed from arguing that a certain attorney is

23  billing way too much for a certain task.

24          THE COURT:  Oh, no wait. Now wait. That's a

25  different question.

1          MR. HOLBEIN:  Not it isn't. It's the question

2    before the Court.

3          THE COURT:  Billed, billed too much time for a

4    certain task is not something you have said. In fact, you

5    punted that entirely to the United States Trustee, as I

6    recall.

7          MR. HOLBEIN:  Charging too much money. Charging

8    too much for the task. I have to see the task. Maybe there's

9    something that Mr. DeLoatch can do that's worth $600 an

10   hour. I just don't think the Court can wash its hands of

11   this at the retention stage.

12         MR. WENDER:  Your Honor, again David Wender. And I

13   apologize for interrupting, but I wanted to clarify one

14   thing is that the fee application is from November, as Mr.

15   Deloatch commented and as the application says, November 1

16   through February 28th. Mr. Holbein keeps saying three

17   months. It's actually four months. Just, just, just to

18   clarify the record.

19         THE COURT:  Okay.

20         MR. HOLBEIN:  I apologize.

21         MR. WENDER:  (Indiscernible, crosstalk).

22         MR. HOLBEIN:  Eighty grand is still too much, 70

23   grand, whatever (indiscernible). It's still too much. In an

24   estate where there is no new money coming in, none. No new

25   money. Just money going out. Like I said, I'm not saying

1   disallow it. I'm saying kick it down the road. Go see what

2   they do.

3          THE COURT:  Well, an interim approval of it is not

4   a final allowance of it, right?

5          MR. HOLBEIN:  Yeah, but it's money that's leaving

6   the estate. Why? How many interim applications do we get in

7   a little chapter 11. Maybe I'm - maybe I've been doing it

8   wrong. But in a case like this --

9          THE COURT:  Every 120 days, I think is what the

10  Rule says.

11         MR. HOLBEIN:  It's what the Rule allows, but how

12  often do you see where the trustee hasn't brought any assets

13  into the estate? He's coming in with a fee application that

14  is a material percentage or material value in the estate.

15         THE COURT:  I don't mean to argue with you, Mr.

16  Holbein, but the Trustee parachuted into this case and sold

17  the assets in, I forget, three or four weeks.

18         MR. HOLBEIN:  To the guy who was already ready to

19  buy.

20         THE COURT:  At your request.

21         MR. HOLBEIN:  I requested a trustee. I didn't

22  request a trustee that was gonna spend too much money. I

23  mean, again...

24         THE COURT:  All right. Well, you have, you

25  mentioned the Johnson Factor, so why don't we talk about

1  them. Time and labor required. I didn't hear - and again,

2  referring back to your objection. I didn't see that you

3  objected to any specific time or amount of time. And it

4  seems to me that the time otherwise spent as addressed by

5  the U.S. Trustee is appropriate. The novelty and difficulty

6  of the questions. I don't know. As I said, parachuting into

7  an active chapter 11 case where an immediate sale is sought.

8  As I recall, I think the Debtor wanted to agree to the sale

9  and then turn it over to the Trustee to close. So, you don't

10 you don't encounter that every day.

11         The skill requisite to perform legal services

12 properly. Again, closing of a chapter 11 transaction in an -

13 on expedited basis requires a fair amount of skill. The

14 preclusion of other employment by the attorney. Don't really

15 know so much about that, although obviously Mr. Wender was

16 no doubt relatively fully engaged in this during the time

17 that it was available. The customary fee, I think, is the

18 part where your concerns may fall. And I suppose it means -

19 it depends on what you mean by customary. And in this

20 circumstance, having engaged a significant firm in town to

21 pursue this matter that I'm sure if you compared Mr.

22 DeLoatch's rates to rates of similarly barred associates at

23 King and Spalding or Alston and Bird, or where I could name

24 a bunch more that his fee - his hourly rate would not be out

25 of the range. And it's certainly in the range of the fees

1    the Court approved when this case started.

2         Whether the fee is fixed or contingent, it seems,

3    Mr. Holbein, that you would almost like to make this a

4    contingent fee where the Trustee only gets paid if he

5    produces additional assets. You know, he, I think engaged in

6    a good faith effort to try and produce a buyer in a limited

7    time. By hiring a highly experienced professional who was

8    unable to find anyone else it seemed like to bid on the

9    assets. Time limitations imposed by client or circumstances.

10   There were certainly a lot of those. Again, most of these

11   services were provided on a highly expedited basis.

12        The amount involved and the results obtained. I

13   think I don't remember exactly what the purchase price was,

14   but it sounds like we still have $5 million leftover and

15   remaining. The sale did not produce what it sounds like most

16   of the constituent parties wanted it to produce. But you

17   know, assets sold on an expedited basis. I mean, these are -

18   well, I'd call them highly specialized assets located in a

19   relatively unusual location. So, not surprising, maybe that

20   if you have to try to sell them fast, that it may be

21   difficult to realize all that you thought they might have

22   realize. The experienced reputation and ability of the

23   attorneys. I think both Mr. DeLoatch and Mr. Wender are

24   certainly highly qualified attorneys at their relative

25   experience levels. I don't think the case was undesirable at

1  all. The nature and length of the professional relationship,

2  you know well, I guess the Trustee has - well, the Trustee

3  hasn't really been at this firm all that long. But in any

4  event, typically it doesn't apply in bankruptcy cases

5  because usually the professionals seeking compensation have

6  only met the client recently. And awards in similar cases,

7  as you point out Mr. Holbein, there aren't a whole lot of

8  similar cases around here, at least, certainly not recently.

9  Not that we don't wish there were more.

10           So, having examined the Johnson Factors and in

11  light of the firm's agreement with the United States Trustee

12  to reduce their fees to $300,000, I'm gonna approve the fees

13  as reduced.

14           MR. DELOATCH:  Thank you, Your Honor. We'll submit

15  an order.

16           THE COURT:  If you would.

17           MR. HOLBEIN:  Thank you, Your Honor.

18  [END OF AUDIO]

19

20

21

22                    **YourTranscriptionist.com**
                      **P.O. Box 1312**
23                    **Fayetteville, GA 30214**

24

25

1                       **C E R T I F I C A T E**

2          I, Felicia A. Harris, court approved transcriber,

3    certify that pages 1 through 28 represent a true and correct

4    transcript from the official electronic sound recording of

5    the proceedings in the above-entitled matter; that this

6    transcript was done to the best of my ability based on what

7    I heard on the audio recording itself.

8          This 6th day of July, 2023.

9

10                                   /s/ Felicia A. Harris
                                     Felicia A. Harris
11                                   YourTranscriptionist.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25