**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CUREPOINT, LLC, | Case No. 22-56501- PMB |
| Debtor. | |

## CHAPTER 11 PLAN OF LIQUIDATION FOR CUREPOINT, LLC

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTOR, THE ESTATE OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.  PRIOR TO CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT, YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED HEREIN, OR THE TERMS OF THIS PLAN FOR ANY PURPOSE.

# TABLE OF CONTENTS

ARTICLE I.    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ................................................................6

    A.    Defined Terms, Rules of Interpretation and Computation of Time ...............................6

    B.    Governing Law .................................................................................................6

    C.    References to Monetary Figures ........................................................................7

ARTICLE II.    ADMINISTATIVE CLAIMS AND PRIORITY TAX CLAIMS ......................7

    A.    Administrative Claims .....................................................................................7

    B.    Priority Tax Claims .........................................................................................8

    C.    Statutory Fees ................................................................................................8

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...9

    A.    Classification of Claims and Interests ................................................................9

    B.    Summary of Classification ...............................................................................9

    C.    Treatment of Claims and Interests ...................................................................10

    D.    Special Provisions Governing Claims that are Not Impaired ...............................13

    E.    Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code .......14

    F.    Subordinated Claims .....................................................................................14

    G.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ...........14

    H.    Controversy Concerning Impairment ...............................................................14

    I.    Acceptance or Rejection of the Plan .................................................................14

ARTICLE IV.    MEANS FOR IMPLEMENTATION OF THE PLAN ...................................15

    A.    Sources of Consideration for Plan Distributions ................................................15

    B.    Vesting of Assets ..........................................................................................15

    C.    Liquidation Trust ..........................................................................................15

    D.    Dissolution of Liquidation Trust......................................................................19

    E.    Liquidation Trust Security Matters ..................................................................19

    F.    Tax Returns ..................................................................................................19

    G.    Cancellation of Existing Securities ..................................................................19

    H.    Indemnification Obligations ...........................................................................20

    I.    Effectuating Documents; Further Transactions ..................................................20

    J.    Exemption from Certain Taxes and Fees...........................................................20

    K.    Treatment of Causes of Action ........................................................................20

L.      Ability to Seek and Retain Discovery ..........................................................21

M.     Debtor's Directors, Officers, and Managers ...............................................21

N.      Debtor's Existence ........................................................................................21

O.      Corporate Authority ......................................................................................22

ARTICLE V.       FUNDING AND DISBURSEMENTS ...............................................22

A.      Distributions Generally ................................................................................22

B.      Cash Payments ..............................................................................................22

C.      Distribution for Allowed Claims .................................................................22

D.      Interest and Charges .....................................................................................23

E.      Compliance with Tax Requirements ............................................................23

F.      Fractional Dollars: De Minimis Distributions ............................................23

G.      Delivery of Distributions to Holders of Allowed Claims ...........................24

H.      Unclaimed Distributions ..............................................................................24

I.      No Penalty Claims ........................................................................................24

J.      Setoffs and Recoupment ..............................................................................25

K.      Distributions by Liquidation Trust ..............................................................25

L.      Claims Paid or Payable by Third Parties .....................................................25

ARTICLE VI.      TREATMENT OF EXECUTORY CONTRATS AND UNEXPIRED
                 LEASES .............................................................................................26

A.      Rejection of Executory Contracts and Unexpired Leases............................26

B.      Claims Based on Rejection of Executory Contract or Unexpired Leases ...................26

C.      Insurance Policies .........................................................................................26

ARTICLE VII.     SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
                 PROVISIONS ....................................................................................27

A.      Settlement, Compromise, and Releases of Claims and Interests .................27

B.      Liabilities to, and Rights of, Governmental Units ......................................28

C.      Exculpation ...................................................................................................28

D.      Releases of the Debtor and Chapter 11 Trustee...........................................28

E.      Injunction ......................................................................................................29

F.      Term of Injunctions or Stays........................................................................30

ARTICLE VIII.   CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN .......30

A.      Conditions Precedent to the Effective Date .................................................30

B.      Waiver of Conditions ....................................................................................31

C.      Effect of Failure of Conditions .............................................................31
ARTICLE IX.      MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN....31
A.      Modification and Amendments.............................................................31
B.      Effect of Confirmation on Modifications ............................................31
C.      Revocation or Withdrawal of Plan ......................................................32
ARTICLE X.      RETNTION OF JURISDICTION..............................................................32
ARTICLE XI.      MISCELLANEOUS PROVISIONS ..........................................................32
A.      Immediate Binding Effect....................................................................32
B.      Additional Documents .........................................................................32
C.      Reservation of Rights...........................................................................33
D.      Successors and Assigns.........................................................................33
E.      Time ......................................................................................................33
F.      Notices ..................................................................................................33
G.      Entire Agreement ................................................................................34
H.      Exhibits ................................................................................................35
I.      Severability of Plan Provisions ...........................................................35
J.      Closing of the Chapter 11 Case ..........................................................35
K.      No Admission against Interest .............................................................35
L.      No Waiver .............................................................................................35
M.      Headings ...............................................................................................36
N.      Conflicts ...............................................................................................36
O.      Post-Confirmation Reporting...............................................................36
P.      No Discharge ........................................................................................36
Q.      Post-Effective Date Limitation of Notice ...........................................36
R.      Application of Bankruptcy Rule 7068 .................................................36
S.      Substantial Consummation of the Plan ...............................................37


Appendix I:    Plan Definitions

**Plan Exhibits:**

Schedule A:    Liquidation Analysis

Schedule B:    Estate Causes of Action

Schedule C:    Liquidation Trust Agreement

Schedule D:    *Proposed* Notice of Effective Date

## INTRODUCTION

Curepoint, LLC, through the Chapter 11 Trustee, David A. Wender ("**Chapter 11 Trustee**" or "**Plan Proponent**") in the above-captioned Chapter 11 Case proposes this chapter 11 plan of liquidation.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, and assets, as well as a summary and description of this Plan and certain related matters.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A. *Defined Terms, Rules of Interpretation and Computation of Time.*

For purposes of this Plan, (1) defined terms are as set forth in Appendix I hereto and the Disclosure Statement; (2) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (3) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (4) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (5) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (6) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (7) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable law, including the Bankruptcy Code and the Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rules 9006(a) shall apply in computing any period of time prescribed or allowed herein.

B. *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Georgia, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

C.    *References to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise specifically provided.

## ARTICLE II.
## ADMINISTATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including Professional Fee Claims, Priority Tax Claims, and Quarterly Fees have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims.*

1.    Administrative Claims.

Except to the extent that a holder of an Allowed Administrative Claim and the Plan Proponent agree to less favorable treatment with respect to such Allowed Administrative Claim or such Allowed Administrative Claim was assumed by the Buyer under the Asset Purchase Agreement, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.   Any Section 503(b)(9) Claim assumed by the Buyer shall not be entitled to recovery under this Plan.

2.    Professional Fee Claims.

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve pursuant to Bankruptcy Rule 2002, an application for final allowance of such Professional Fee Claim no later than thirty-five (35) days after the Effective Date (with an objection period of at least twenty-one (21) days for objections, if any, to such application); *provided, however* that any Professional who may receive compensation or reimbursement of expenses may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, in accordance with the Bankruptcy Court's ordinary compensation procedures.  Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim.  The Professional Fee Claim Reserve shall be maintained

by the Liquidation Trustee to be held for distribution on Allowed Professional Fee Claims. Upon entry of a Final Order approving such application for such Professional Fee Claim, the Liquidation Trustee shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim. To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of Allowed Professional Fee Claims, the Liquidation Trustee shall promptly transfer any such remaining Cash to the Liquidation Trust and such Cash shall become Liquidation Trust Assets and be treated in accordance with the Liquidation Trust Agreement, the Plan and the Confirmation Order. To the extent there are insufficient funds in the Professional Fee Claims Reserve to pay all Allowed Professional Fee Claims in full, the Liquidation Trustee shall pay any shortfall from the Liquidation Trust Assets.

       3.     <u>Administrative Claim Bar Date.</u>

Requests for payment of Administrative Claims must be Filed on or before the Administrative Claim Bar Date. Except as otherwise ordered by the Bankruptcy Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed released against the Debtor as of the Effective Date. For the avoidance of doubt, Governmental Units asserting Administrative Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code shall not be required to File a request for payment prior to the Administrative Claims Bar Date.

       B.     *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment or such Allowed Priority Tax Claim is assumed by the Buyer under the Asset Purchase Agreement, in exchange for full and final satisfaction, settlement, and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Liquidation Trustee, one of the following treatments: (i) Cash in an amount equal to the amount of the Allowed Priority Tax Claim, plus interests at the federal judgment rate in effect as of the Petition Date and to the extent provided by section 511 of the Bankruptcy Code; or (ii) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (i) of this section) as may be agreed upon by such holder and the Liquidation Trustee or otherwise determined upon an order of the Bankruptcy Court. Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (i) the Effective Date; (ii) the date on which such Priority Tax Claim against the Debtor becomes an Allowed Priority Tax Claim; or (iii) such date as may be ordered by the Bankruptcy Court.

       C.     *Statutory Fees.*

All Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtor or the Chapter 11 Trustee from Cash on hand, or by the Liquidation Trustee out of the Liquidation Trust Claims Reserve on the Effective Date or as soon as reasonably practicable thereafter. On

and after the Effective Date, the Liquidation Trust shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) all Quarterly Fees for the Chapter 11 Case until the entry of a Final Decree or until such Chapter 11 Case is closed or dismissed.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. All Claims and Interests, except for Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Quarterly Fees are classified in the Classes set forth in this Article III. A Claim or Interest qualifies within the description of a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purposes of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

The classification of Claims against and Interests in the Debtor pursuant to the Plan is set forth below. All of the potential Classes for the debtor are set forth herein.

B.    *Summary of Classification.*

The following chart summarizes the classification of Claims and Interest pursuant to the Plan.

| Class | Claim/ Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Secured Loan Claims | Unimpaired | Deemed to Accept |
| 4 | Prepetition Equipment Claims | Impaired | Entitled to Vote |
| 5 | Claims of the AMOA Parties | Impaired | Entitled to Vote |
| 6 | Lafayette Bank Claim | Impaired | Entitled to Vote |
| 7 | MCA Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Interests | Impaired | Deemed to Reject |

C.      *Treatment of Claims and Interests.*

　　　　To the extent a Class contains Allowed Claims or Allowed Interests with respect to the Debtor, the treatment provided for the holders of Allowed Claims or Allowed Interests within each Class is specified below.

1.      <u>Class 1 – Secured Tax Claims.</u>

　　　　　　　(a)      *Classification.*  This Class consists of Claims that, absent their Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.  As of the Petition Date, the Debtor owed approximately $0.00 on account of Secured Tax Claims.

　　　　　　　(b)      *Treatment.*  To the extent not assumed by the Buyer under the Asset Purchase Agreement and unless a holder of a Class 1 Secured Tax Claim agrees to less favorable treatment, in exchange for a full and final satisfaction, settlement and release of its Allowed Class 1 Claim, each holder of an Allowed Secured Tax Claim shall receive, at the option of the Liquidation Trustee: (a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or (b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five (5) years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the federal judgment rate in effect as of the Petition Date, subject to the option of the Liquidation Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

　　　　　　　(c)      *Voting.*  Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 1 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.      <u>Class 2:  Other Priority Claims.</u>

　　　　　　　(a)      *Classification.*  This Class consists of Allowed Claims against the Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code. On the Petition Date, the Debtor owed approximately $513.62 in Other Priority Claims.

(b)    *Treatment.*  To the extent not assumed by the Buyer under the Asset Purchase Agreement and unless a holder of a Allowed Class 2 Other Priority Claim agrees to less favorable treatment, in exchange for a full and final satisfaction, settlement, and release of its Claim, each holder of a Class 2 Allowed Other Priority Claim shall receive payment in full in Cash of such holder's Allowed Other Priority Claim on the Effective Date of the Plan, or as soon as reasonably practical thereafter, or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

(c)    *Voting.*  Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Therefore, holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3: Prepetition Secured Loan Claims

(a)    *Classification.*  Class 3 consists of the Prepetition Secured Loan Claims held by Bankers Healthcare, the U.S. SBA and CLG.

(b)    *Treatment.*  Except to the extent that a holder of Class 3 Prepetition Secured Loan Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of its Allowed Class 3 Claim, each holder of such Allowed Prepetition Secured Loan Claim shall receive payment in Cash on the Effective Date of the Plan, or as soon as reasonably practicable thereafter, or such other treatment rendering each holder's Allowed Prepetition Secured Loan Claim Unimpaired.

(c)    *Voting.*  Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Prepetition Secured Loan Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Class 3 Prepetition Secured Loan Claims are not entitled to vote to accept or reject the Plan.

4.    Class 4: Prepetition Equipment Claims

(a)    *Classification.* Class 4 consists of the Prepetition Equipment Claims held by Arvest, HP, U.S. Bank, First American, and North American.

(b)    *Treatment.*  Except to the extent that a holder of a Class 4 Prepetition Equipment Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of its Allowed Class 4 Claim, each holder of such Allowed Prepetition Equipment Claim shall receive the return of its Collateral (to the extent their respective Collateral has not

previously been returned) on the Effective Date of the Plan, or as soon as reasonably practical thereafter, and a Deficiency Claim for the difference between the value of the equipment and the balance of its loan amount.

(c)    *Voting.*  Class 4 is Impaired by the Plan.  Holders of Prepetition Equipment Claims are entitled to vote to accept or reject the Plan.

5.    Class 5: Claims of the AMOA Parties

(a)    *Classification.* Class 5 consists of the Claims of the AMOA Parties.

(b)    *Treatment.*  Except to the extent that the AMOA Parties agree to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of their Allowed Class 5 Claims, the AMOA Parties shall receive payment in full of the Secured portion of the AMOA Finance Claim and AMOA CP Acquisition Claim (up the $995,000.00) in Cash on the Effective Date of the AMOA Settlement, and shall waive all Claims, including any right the AMOA Parties may have to a Deficiency Claim for the difference between the value of their Collateral and the total amount of their Claims.

(c)    *Voting.*  Class 5 is Impaired by the Plan.  The AMOA Parties are entitled to vote to accept or reject the Plan.

6.    Class 6: Lafayette Bank Claim

(a)    *Classification.*  Class 6 consists of the Claim of Lafayette Bank.

(b)    *Treatment.* Except to the extent that Lafayette Bank agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of its Allowed Class 6 Claim and pursuant to the Lafayette Bank Settlement, Lafayette Bank shall receive payment in full in Cash of the Secured portion of its Claim, as approved in the Lafayette Bank Settlement, on the Effective Date of the Plan, or as soon as reasonably practicable thereafter, and a Deficiency Claim for the difference between the value of its Collateral and the total amount of its Claim.

(c)    *Voting.*  Class 6 is Impaired by the Plan.  Lafayette Bank is entitled to vote to accept or reject the Plan.

7.    Class 7: MCA Claims

(a)    *Classification.* Class 7 consists of the Claims of the MCAs.

(b)    *Treatment.*  Except to the extent that a holder of a Class 7 MCA

Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of its Allowed Class 7 Claim, each holder of such Allowed MCA Claim shall receive Cash in an amount equal to the percentage claim each MCA held against the Debtor's Prepetition AR on a pro rata basis, or as soon as reasonably practicable thereafter, and a Deficiency Claim for the difference between its percentage of the Debtor's Prepetition AR on a pro rata basis and the total amount of its Claim.

(c)    *Voting.*  Class 7 is Impaired by the Plan, and each holder of a Class 7 MCA Claim is entitled to vote to accept or reject the Plan.

8.    Class 8: General Unsecured Claims

(a)    *Classification.*  This Class consists of all General Unsecured Claims against the Debtor, including any Deficiency Claims.

(b)    *Treatment.*  Except to the extent that a holder of an Allowed General Unsecured Claims agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the Liquidation Trust Assets.

(c)    *Voting.*  Class 8 is Impaired by the Plan, and each holder of a Class 8 Claim is entitled to vote to accept or reject the Plan.

9.    Class 9: Interests.

(a)    *Classification.*  This Class consists of all Interests in the Debtor.

(b)    *Treatment.*  Holders of Interests in the Debtor will receive no distribution under the Plan, and all Interests shall be cancelled.

(c)    *Voting.*  Class 9 is Impaired by the Plan, and each holder of Class 9 Interests is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 9 Interests are not entitled to vote to accept or reject the Plan.

D.    *Special Provisions Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Claims or Interests that are not Impaired, including all rights of Debtor in respect of legal and equitable defenses to or setoffs or recoupments against any such Claim or Interests that are not Impaired.

13

E.    *Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(1) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Plan Proponent shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Plan Proponent reserves the right to modify the Plan in accordance with Article IX of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F.    *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and confirm to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principle of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Chapter 11 Trustee and the Liquidation Trust reserve the right to request that the Bankruptcy Court reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.    *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interests or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. If a Class contains Claims of Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

H.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.    *Acceptance or Rejection of the Plan.*

1.    Voting Classes

Classes 4, 5, 6, 7 and 8 are entitled to vote on the Plan. Solicitation Packages are being

distributed to holders of Claims in these Voting Classes.

       2.       <u>Presumed Acceptance of the Plan.</u>

       Pursuant to section 1126(f) of the Bankruptcy Code, Classes 1, 2, and 3 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. Holders of Claims in Classes 1, 2, and 3 will not receive Solicitation Packages.

       3.       <u>Presumed Rejection of the Plan.</u>

       Pursuant to section 1126(g) of the Bankruptcy Code, Class 9 is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan. Holders of Interests in Class 9 will not receive Solicitation Packages.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

       A.       *Sources of Consideration for Plan Distributions.*

       Distributions under the Plan, other than distributions on account of Beneficial Trust Interests, will be funded by Cash currently held by the Chapter 11 Trustee or from the Liquidation Trust Claims Reserve. Professional Fee Claims will be funded by the Chapter 11 Trustee in accordance with the provisions of the Plan. On or prior to the Effective Date, the Chapter 11 Trustee (if prior to the Effective Date) or the Liquidation Trustee (if on or after the Effective Date) shall fund the Liquidation Trust Claims Reserve in full from Cash on hand. On or prior to the Effective Date, either the Chapter 11 Trustee (if prior to the Effective Date) or the Liquidation Trustee (on or after the Effective Date) shall set aside funds in his IOLTA account in an amount sufficient to pay all Allowed Professional Fee Claims. Distributions under the Plan on account of Beneficial Trust Interests will be funded by the Liquidation Trust Assets.

       B.       *Vesting of Assets.*

       Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated into the Plan, on the Effective Date, all of the Liquidation Trust Assets shall immediately vest in the Liquidation Trust.

       C.       *Liquidation Trust.*

       1.       <u>Creation of Liquidation Trust.</u> On the Effective Date, the Liquidation Trust shall be created in accordance with the Liquidation Trust Agreement for the benefit of holders of Beneficial Trust Interests. The Liquidation Trust Agreement shall (a) be in form and substance consistent in all respects with this Plan and (b) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidation Trust as a grantor trust and the holders of Beneficial Trust Interests as the grantors and owners thereof for U.S. federal tax purposes. On the Effective Date,

the Liquidation Trust Assets shall be conveyed or assigned to the Liquidation Trust, including (i) remaining Cash on hand after paying, funding, reserving against or satisfying (A) unclassified Claims and all Claims in Classes 1 through 7; (B) Professional Fee Claims; (C) the Liquidation Trust Claims Reserve; and (D) Quarterly Fees; (ii) the Retained Causes of Action; and (iii) all Insurance Policies.  All relevant parties (including the Debtor, the Chapter 11 Trustee, the Liquidation Trustee, and the holders of Beneficial Trust Interests) will take all actions necessary to cause title to the Liquidation Trust Assets to be transferred to the Liquidation Trust.  The powers, authority, responsibilities, and duties of the Liquidation Trust and the Liquidation Trustee are set forth and will be governed by the Liquidation Trust Agreement, the Plan and the Confirmation Order.

2.      <u>Transfers to the Liquidation Trust.</u>  On the Effective Date, the Debtor and its Estate shall transfer and shall be deemed to have irrevocably transferred to the Liquidation Trust, the Liquidation Trust Assets, which transfer shall be free and clear of Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided herein.

3.      <u>Purpose of the Liquidation Trust.</u>  The Liquidation Trust shall be established for the primary purpose of liquidating its assets and making distributions to holders of Allowed Claims in accordance with the Plan, the Confirmation Order, and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidation Trust. The Liquidation Trust, acting through the Liquidation Trustee, shall be authorized to exercise and perform the rights, powers, and duties held by the Estate with respect to the Liquidation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, or any similar official who has been appointed to take control of, supervise, manage, or liquidate the Debtor, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidation Trust Assets.

4.      <u>Administration of the Liquidation Trust.</u>   The Liquidation Trust shall be administered by the Liquidation Trustee pursuant to the Liquidation Trust Agreement and the Plan. In the event of any inconsistency between the Plan or the Confirmation Order and the Liquidation Trust Agreement as such conflict relates to anything other than the establishment of the Liquidation Trust, the Plan or Confirmation Order shall control.

5.      <u>Appointment of Liquidation Trustee.</u>  As of the Effective Date, the Liquidation Trustee shall be appointed as trustee of the Liquidation Trust pursuant to the Liquidation Trust Agreement, the Plan, the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code and shall have all of the rights, powers, authority, and obligations set forth in the Liquidation Trust Agreement, the Plan, the Confirmation Order, and the Bankruptcy Code.  The Liquidation Trustee shall be the exclusive trustee of the Estate under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3).

6.      <u>Compensation of the Liquidation Trustee.</u>  The Liquidation Trustee shall be compensated in the ordinary course pursuant to the terms of the Liquidation Trust Agreement. Any professionals retained by the Liquidation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, subject to approval by the Liquidation Trustee.  The payment of fees and expenses of the Liquidation Trustee and its professionals shall be made in the ordinary course of business from the Liquidation Trust Expense Reserve, or such other amounts available to the Liquidation Trustee, and shall not be subject to Bankruptcy Court approval.  The identity of the proposed Liquidation Trustee is David A. Wender and his proposed compensation is $800.00 per hour.

7.      <u>Responsibilities of the Liquidation Trustee.</u>  The responsibilities of the Liquidation Trustee under the Liquidation Trust Agreement and this Plan shall include those set forth in the Liquidation Trust Agreement, including, without limitation, the following: (a) satisfying all unclassified Claims and Claims in Classes 1 through 7 Allowed as of the Effective Date from Cash on hand at the Effective Date; (b) the establishment and maintenance of such operating, reserve, and trust account(s) (or sub-accounts) as are necessary and appropriate to carry out the terms of the Plan and Liquidation Trust, including (i) funding and maintaining the Liquidation Trust Claims Reserve from Cash on hand at the Effective Date in amounts sufficient to satisfy all unpaid unclassified Claims and Claims in Classes 1 through 7; (ii) satisfying Professional Fee Claims; and (iii) funding the Liquidation Trust Expense Reserve from Liquidation Trust Assets; (c) the receipt of the Liquidation Trust Assets; (d) the investment of Cash that is a Liquidation Trust Asset; (e) the pursuit of objections to, estimations of, and settlements of all Claims, regardless of whether any such Claim is listed on the Debtor's Schedules, other than Claims that are specifically Allowed pursuant to the Plan; (f) the prosecution, settlement, or abandonment of any Retained Causes of Action; (g) unless otherwise provided in the Plan, the calculation of all distributions to be made under this Plan; (h) authorizing and making all distributions to be made under this Plan; (i) winding down the Debtor's affairs; and (j) such other responsibilities as may be vested in the Liquidation Trustee pursuant to this Plan, the Liquidation Trust Agreement, the Confirmation Order, other Bankruptcy Court Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan.

8.      <u>Powers of the Liquidation Trustee.</u>  The powers of the Liquidation Trustee shall be as set forth in the Liquidation Trust Agreement attached hereto as Schedule C.

9.      <u>Tax Treatment of the Liquidation Trust.</u>  The Liquidation Trust shall be structured to qualify and is intended to be treated as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-95 with no objective to continue or engage in the conduct of a trade or business, and thus, as a "grantor trust" within the meaning Sections 671 through 679 of the Tax Code.

10.     <u>Tax Reporting.</u>

(a)    The Liquidation Trustee shall file tax returns treating the Liquidation Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and in accordance with the applicable sections of the Plan.  The Liquidation Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items allocable to any assets allocable to, or retained on account of, Disputed Claims) will be allocated to each holder in accordance with their relative ownership of Beneficial Trust Interests.

(b)    As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of the Liquidation Trust Assets, and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes.  The Liquidation Trust shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Governmental Unit for taxing purposes.

(c)    The Liquidation Trust shall be responsible for payment, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any "disputed ownership fund") or the Liquidation Trust Assets. In accordance therewith, any taxes imposed on any disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund and netted against any subsequent distribution in respect of the allowance or disallowances of such Claims.

(d)    The Liquidation Trustee (a) may timely elect to treat any Liquidation Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including the Liquidation Trustee and the holders of Beneficial Trust Interests) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing.   The Liquidation Trustee shall be the administrator of any such applicable "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9(b)(2) and file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall withhold, as applicable, and pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit or loss allocable thereto.

11.    <u>Retained Causes of Action.</u>  The Liquidation Trustee shall have the sole right to pursue any existing or potential Retained Cause of Action, by informal demand and/or commencement or continuation of litigation or prosecution of any Adversary Proceeding or other proceeding.

12.    <u>Costs and Expenses of the Liquidation Trust.</u>    The costs and expenses of the Liquidation Trust, including the fees and expenses of the Liquidation Trustee and other professionals retained on behalf of the Liquidation Trust, shall be paid out of the Liquidation Trust Expense Reserve, subject to the terms of the Liquidation Trust Agreement.

13.    <u>Effective Date.</u>    On the Effective Date, the Liquidation Trustee shall have the rights and powers set forth herein, in the Confirmation Order and in the Liquidation Trust Agreement to carry out and implement the purposes and intent of the Plan.

D.    *Dissolution of Liquidation Trust.*

The Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion made prior to the fifth (5th) anniversary without the need for a favorable letter ruling from the IRS that any further extension would not adversely affect the status of either as a Liquidation Trust for U.S. federal income tax purposes, determines that a fixed period extension, not to exceed five (5) years, is necessary to facilitate or complete the recovery on and liquidation of the Liquidation Trust Assets.  Upon the filing of any motion for an extension of the date of dissolution, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such motion or such motion is withdrawn.

E.    *Liquidation Trust Security Matters.*

To the extent that the Beneficial Trust Interests are deemed to be "securities," the issuance of such interests under this Plan are exempt pursuant to section 1145 of the Bankruptcy Code, and from registration under the Securities Act of 1933, as amended, and any applicable U.S. federal, state, and local laws requiring registration of securities.  It is currently anticipated that the Beneficial Trust Interests will be uncertificated and non-transferable except to the extent expressly provided otherwise in the Liquidation Trust Agreement.

F.    *Tax Returns.*

After the Effective Date, the Liquidation Trustee shall complete and file all final or otherwise required U.S. federal, state, and local tax returns for the Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request a determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

G.    *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated into the Plan, on the Effective Date, the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, and purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor related thereto shall be cancelled and deemed null and

void; *provided, however,* notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against the Debtor shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; *provided further, however*, that the proceeding provisions shall not result in any expense or liability to the Debtor, the Chapter 11 Trustee or the Liquidation Trustee except to the extent set forth in or provide for under this Plan.

H.    *Indemnification Obligations.*

Except as otherwise provided in the Plan, the Confirmation Order, any and all indemnification obligations of the Debtor, whether pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or other document or applicable law, shall be rejected as of the Effective Date of the Plan.

I.    *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtor and the Chapter 11 Trustee are and, after the Effective Date, the post-Effective Date Debtor and the Liquidation Trustee are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtor, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

J.    *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording fee, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall forego collection of such tax or governmental assessment and to accept for filing and recordation of any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

K.    *Treatment of Causes of Action.*

Unless any of Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, sold, or settled in the Plan or pursuant to a Bankruptcy Court order, the Debtor reserves and assigns to the Liquidation Trust, any and all Retained Causes of Action, whether arising before or after the Petition Date, and preserves the right to commence, continue, prosecute, or settle such Retained Causes of Action, notwithstanding the occurrence of the Effective Date.  The Liquidation Trustee, on behalf of the Liquidation Trust, may pursue such

Retained Causes of Action, in its sole discretion.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Causes of Action against them as any indication that the Liquidation Trust will not pursue any and all available Retained Causes of Action against them.   No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation. For the avoidance of doubt, the Retained Causes of Action are expressly preserved notwithstanding any release or exculpation language contained in this Plan.

       L.     *Ability to Seek and Retain Discovery.*

From and after the Effective Date, the Liquidation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

       M.    *Debtor's Directors, Officers, and Managers*

On the Effective Date, all officers, directors, and managers of the Debtor shall be deemed to have resigned and shall be discharged from any further duties or responsibilities in such capacity.  On and after the Effective Date, the Liquidation Trustee shall serve as the sole officer, sole director, or sole manager of the Debtor, but he or she shall retain and enforce Retained Causes of Action as the representative of the Estate in his or her capacity as the Liquidation Trustee under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not an officer, director, or manager of the Debtor.  Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment.

       N.    *Debtor's Existence.*

From and after the Effective Date, the Debtor shall continue in existence for the purpose of winding up its affairs as expeditiously as practicable.  Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Debtor without any requirement of further action by the Debtor.  On and after the Effective Date, the Debtor's remaining assets and affairs shall be administered and managed by the Liquidation Trustee in accordance with the Plan.

The Liquidation Trustee shall have the authority to take all necessary action to dissolve the Debtor in conjunction with issuance of entry of a Final Decree closing the Chapter 11 Case or thereafter.   Further, upon the aforementioned certification and entry of Final Decree, the Liquidation Trustee shall be authorized, in his or her sole discretion, to discard or destroy any and all of the Debtor's books and records but in doing so, the Liquidation Trustee must comply with any requirements of the Sale Order.  Upon the Effective Date, the Debtor and its officers, directors,

members, professionals or other representatives shall turn over its books and records to the Liquidation Trustee.

O.     *Corporate Authority.*

The Confirmation Order shall constitute full and complete authority for the Debtor, the Chapter 11 Trustee and Liquidation Trust to take all other actions that may be necessary, useful, or appropriate to consummate the Plan without any further judicial or corporate authority.

## ARTICLE V.
## FUNDING AND DISBURSEMENTS

A.     *Distributions Generally.*

The Liquidation Trustee, shall make all distributions under the Plan on account of Allowed Claims against the Debtor pursuant to the terms of the Plan, Confirmation Order and the Liquidation Trust Agreement. All Allowed Professional Fee Claims shall be paid out of an IOLTA Account maintained for the benefit of the Chapter 11 Trustee at Eversheds Sutherland (US) LLP. All Allowed Claims, other than Class 8 Claims, not Allowed as of the Effective Date shall be paid out of the Liquidation Trust Claims Reserve. All distributions to holders of Beneficial Trust Interests pursuant to Class 8 of the Plan shall be from the Liquidation Trust Assets. The Distribution Agent, in the event one is appointed, shall act at the direction of the Liquidation Trustee.

B.     *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Liquidation Trustee shall determine in his or her sole discretion.

C.     *Distribution for Allowed Claims.*

Except as otherwise provide in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to holders of Allowed Claims shall be made on the Distribution Date.

No holder of a Disputed Claim shall be entitled to a distribution from the Liquidation Trustee, the Liquidation Trust, the Debtor, or the Estate with respect to such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim except as provided in the Plan. The Liquidation Trustee shall establish a reserve in Cash in the full amount of any distributions that would otherwise be payable upon any Disputed Claims if they were Allowed Claims until such time as Disputed Claims are determined by Final Order to be Allowed or not Allowed.

D.    *Interest and Charges.*

No interest shall accrue or be paid on Allowed Claims unless specifically provided for herein.

E.    *Compliance with Tax Requirements.*

In connection with the plan, to the extent applicable, the Liquidation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provisions in the Plan to the contrary, the Liquidation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidation Trust reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The Liquidation trust shall not be required to make distributions on any Allowed Claim if the holder thereof has not provide all documentation, that in the Liquidation Trustee's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within sixty (60) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Property.

F.    *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Liquidation Trust shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar. In addition, the Liquidation Trustee shall not be required to make any distribution in an amount less than $50.00. To the extent that such a distribution shall be called for as any part of any interim distribution, the Liquidation Trust shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time. The Liquidation Trust shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims, in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement.

G.    *Delivery of Distributions to Holders of Allowed Claims.*

Distributions to holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by Proofs of Claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if the Liquidation Trustee has been notified in writing of a change of address.   If the distribution to any holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Article V, Section (H) of the Plan.

H.    *Unclaimed Distributions.*

If any distribution to holders of an Allowed Claim or Beneficial Trust Interest is unclaimed or returned as undeliverable, such Unclaimed Property shall be held by the Liquidation Trustee in the Unclaimed Property Reserve for a period of sixty (60) days.  Once the distribution to holders of Allowed Claims or Beneficial Trust Interests becomes Unclaimed Property, the Liquidation Trustee shall, subject to the limitations set forth herein, (i) hold such Unclaimed Property in the Unclaimed Property Reserve solely for the benefit of such holder or holders who have failed to claim such Unclaimed Property, and (ii) release Unclaimed Property from the Unclaimed Property Reserve and deliver to the holder entitled thereto upon presentation of proper proof by such holder of its entitlement thereto.  After the expiration of sixty (60) days, the holders of Allowed Claims or Beneficial Trust Interests entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims shall be deemed disallowed and expunged in their entirety and the funds shall become Liquidation Trust Assets and redistributed to the holders of Allowed Claims in accordance with the terms of this Plan, Confirmation Order, and Liquidation Trust Agreement.  Such funds shall not be subject to escheat laws of any state.

If there is any residual Unclaimed Property at the time of dissolution of the Liquidation Trust, such residual Unclaimed Property shall be available for a subsequent distribution on a pro rata basis to holders of Beneficial Trust Interest or donated to a charitable organization at the sole discretion of the Liquidation Trustee.

Nothing contained in the Liquidation Trust Agreement, the Plan, or the Confirmation Order shall require the Debtor, the Chapter 11 Trustee, the Liquidation Trustee, the Liquidation Trust or the Distribution Agent to attempt to locate any holder of an Allowed Claim or Beneficial Trust Interest.

I.    *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

24

J.      *Setoffs and Recoupment.*

The Liquidation Trustee may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Chapter 11 Trustee or the Liquidation Trust of any such Claim it may have against the holder of such Claim.

K.      *Distributions by Liquidation Trust.*

The Liquidation Trust shall not be obligated to make a distribution on account of the Beneficial Trust Interests that would impair the ability of the Liquidation Trust to pay the expenses incurred by the Liquidation Trust.

L.      *Claims Paid or Payable by Third Parties.*

1.      <u>Claims Paid by Third Parties.</u>  The Liquidation Trustee shall reduce Claim in full or in part (as applicable), and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full or in part on account of such Claim from a party that is not the Debtor, the Chapter 11 Trustee or Liquidation Trust.  To the extent a holder of such Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor, the Chapter 11 Trustee or the Liquidation Trust on account of such Claim, such holder shall repay, return, or deliver any distribution to the Liquidation Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The Liquidation Trust and the Debtor's Estate reserve all of their rights, remedies, claims, and actions against any such holders who fail to repay or return any such distribution.

2.      <u>Claims Payable by Third Parties.</u>  Distributions to each holder of an Insured Claim shall be made on account of an Allowed Claim that is payable pursuant to the Debtor's Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one of more of the Debtor's Insurers agrees to satisfy in full or in part a Claim, then immediately upon such Insurer's agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      <u>Applicability of Insurance Policies.</u>  Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRATS AND UNEXPIRED LEASES

    A.    *Rejection of Executory Contracts and Unexpired Leases*

Except as set forth in Article VI, Section C, on the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date of the Plan, unless such Executory Contract or Unexpired Lease was: (i) previously assumed or rejected by the Debtor or the Chapter 11 Trustee; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been assumed and assigned to the Buyer.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, rejection of such Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

    B.    *Claims Based on Rejection of Executory Contract or Unexpired Leases.*

Proofs of Claim with respect to Rejection Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Confirmation Order, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after the earlier of (a) service of Notice of the Effective Date, or (b) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto.  The Notice of Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the four clauses set forth in Article VI.A hereof are deemed rejected as of the Effective Date.  The Notice of Effective Date shall also set forth the deadline for filing Proofs of Claim with respect to the same.  Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan.  Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with Class 8 of the Plan, which information shall be included in the Notice of Effective Date.

    C.    *Insurance Policies.*

Each of the Debtor's Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  On the Effective Date, (a) the Debtor shall be deemed to have assumed all Insurance Policies and agreements, documents, and instruments related to coverage of any Claim or Cause of Action and (b) such Insurance Policies and any agreements, documents, or instruments relating thereto shall revest in the Liquidation Trust.

1.      <u>No Impairment.</u>  Except as set forth in Article VI of the Plan, nothing in this Plan, the Plan Supplement (if any), the Disclosure Statement, the Confirmation Order, or any other Order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such Insurance Policies or (ii) alters or modifies the duty, if any, that the Insurers or third party administrators have to pay claims covered by such Insurance Policies and their right to seek payment or reimbursement from the Debtor or the Liquidation Trust or draw on any Collateral or security therefore or assert any claim or defense to coverage.  For the avoidance of doubt, Insurers and third party administrators shall not need to nor be required to file or serve a cure objection or a request, application, Proof of Claim, or motion for payment and shall not be subject to any bar date or similar deadline governing cure claims.

2.      <u>Assignment to Liquidation Trust.</u>  Nothing in the Plan Documents, including the Liquidation Trust Agreement, shall impair or prevent the Debtor from transferring Insurance Policies to the Liquidation Trust in accordance with the Plan Documents and such transfer shall explicitly be authorized in the Confirmation Order and the Insurance Policies shall vest unaltered in their entirety in the Liquidation Trust, provided that the Confirmation Order provides that the Liquidation Trustee shall be bound by this neutrality section and all terms and conditions of the Insurance Policies and Debtor's obligations thereunder and under applicable state law and bankruptcy law, and that such transfer is subject to all of Insurers', Debtor's and Debtor's successors, including the Chapter 11 Trustee's and the Liquidation Trust's rights and defenses under the Insurance Policies and applicable state and bankruptcy law, notwithstanding anything to the contrary in the Plan Documents, including the Liquidation Trust Agreement.  Notwithstanding anything to the contrary herein, nothing in this section shall be construed as or be deemed to allow or disallow a claim in favor of any Insurer against the Debtor's Estate or to determine whether any Entity is a successor of the Debtor.

## ARTICLE VII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Settlement, Compromise, and Releases of Claims and Interests.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, or in any contract, instrument, or other agreement or document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be in complete settlement, compromise, and release, effective as the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever (other than the Reserved Cause of Action), including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims and Interests relate to services performed by

employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kinds specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holders of such a Claim or Interest has accepted the Plan.  Subject to the occurrence of the Effective Date, the Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests against the Debtor.

B.    *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

C.    *Exculpation.*

**Effective as the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability from any Exculpated Claim; *provided, however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct *and provided further*, that no Retained Cause of Action is an Exculpated Claim and not target of a Retained Cause of Action is an Exculpated Party.**

D.    **_Releases of the Debtor and Chapter 11 Trustee._**
**For good and valuable consideration, the adequacy of which is hereby confirmed, each Creditor, shall be deemed to forever release, waive, and discharge the Debtor and the Chapter 11 Trustee of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, whether direct or derivative, known, or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, including, without limitation, any of the foregoing based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase, sale, or any other transaction relating to any Security of the Debtor, the Debtor, the Debtor's restructuring efforts, the Chapter 11 Case, the Plan, the subject matter of, or the transactions**

or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Creditor, the negotiation and consummation of any sale of the Debtor's assets during the Chapter 11 Case, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Creditor on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing releases shall (i) have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, and (ii) shall not release any entitlement that a Creditor may have to receive a distribution as provide for herein, and (iii) that nothing in this provision shall be deemed to release any Retained Cause of Action.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Plan Effective Date obligations of any party or Entity under the Plan, or any document, instrument or agreement executed in conjunction with the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of holders of Claims and Interests, which includes by reference, each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by Creditors; (3) in the best interests of the Debtor and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any Creditor asserting any Claim released by the release herein by any of the Released Parties.

     E.    *Injunction.*

     Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold any Interest in the Debtor or a Claim, Cause of Action, or other debt or liability against the Debtor or against any Released Party that have been released and/or exculpated under this Plan (the "Released Claims and Interests") are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Chapter 11 Trustee, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets or the Released Parties or their respective predecessors, successors and assigns, subsidiaries, Affiliates, current (as of the Effective Date) directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, investment bankers, consultants, representatives, and other Professionals solely in their capacities as such or any property of the same, on

account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and  (v) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; *provided, however*, that the foregoing injunction shall have no effect on the liability of any Person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, *and provided further,* that no Retained Cause of Action is subject to this Plan injunction.

      F.     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

      A.     *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

      1.     The Bankruptcy Court shall have entered the Confirmation Order; *provided* that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

      2.     All documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

      3.     The Liquidation Trust Claims Reserve and the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

      4.     The Liquidation Trust shall have been established in accordance with the Liquidation Trust Agreement and shall have been funded with the Liquidation Trust Assets; and

5.      All actions, documents, certificates, and agreements to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

B.      *Waiver of Conditions.*

The conditions to Consummation set forth in Article VIII of the Plan may be waived only by prior written consent of the Plan Proponent, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  Upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article VIII of the Plan, the Plan Proponent shall immediately declare the Effective Date and file the Notice of Effective Date.

C.      *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur on or before the date that is one hundred and eighty (180) days following the Confirmation Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtor, any holders or any other Entity; (2) prejudice in any manner the rights of the Plan Proponent, any holders or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking by the Plan Proponent, any holder of any Claim or any other Entity in any respect.

## ARTICLE IX.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Plan Proponent reserves the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Plan Proponent expressly reserves his rights, to revoke or withdraw, to alter, amend or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or may remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of Plan.*

The Plan Proponent reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file a subsequent plan.  If the Plan Proponent revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including fixing or limiting to an amount certain any of the Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Plan Proponent, any holder of a Claim or Interest; or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Plan Proponent, any holder or other Entity.

## ARTICLE X.
## RETNTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case pursuant to sections 105(a) and 1142 of the Bankruptcy Code; *provided, however*, that nothing herein shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date.  The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matters not inconsistent with the Bankruptcy Code.

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Plan Proponent and any and all present and former holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan or are receiving or retaining property under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor, and each of the respective successors and assigns of the foregoing Persons and Entities.

B.    *Additional Documents.*

On or before the Effective Date, the Plan Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Plan Proponent and all holders receiving

distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

        C.    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Plan Proponent, with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be deemed to be an admission or waiver of any of their respective rights with respect to holders of Claims and Interests or each other before the Effective Date.

        D.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executory, administrator, successor, or assign, if any, of such Entity.

        E.    *Time*

To the extent that any time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

        F.    *Notices.*

To be effective, all notices, requests, and demands to or upon the Plan Proponent shall be in writing.  Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

        1.    <u>The Chapter 11 Trustee / Plan Proponent</u>:

              David A. Wender, Esq.
              Eversheds Sutherland (US) LLP
              999 Peachtree Street, NE, Suite 2300
              Atlanta, GA 30309-3996
              Telephone: 404.853.8175
              Facsimile: 404.853.8806
              Davidwender@eversheds-sutherland.com

              With a mandated copy (which shall not constitute notice) to:
              Nathaniel T. DeLoatch

Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: 404.853.8175
Facsimile: 404.853.8806
Davidwender@eversheds-sutherland.com
Nathanieldeloatch@eversheds-sutherland.com

2.    The Debtor:

Curepoint, LLC
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022

With a mandated copy (which shall not constitute notice) to:

Attn: Will B. Geer, Caitlyn Powers and William Rountree
Rountree, Leitman, Klein & Geer, LLC
Century I Plaza
2987 Clairmont Road, Suite 350
Atlanta, GA 30329
Telephone: 404.584.1238
wgeer@rlkglaw.com, cpower@rlkglaw.com, wrountree@rlkglaw.com

3.    The Liquidation Trustee:

David A. Wender, Esq.
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: 404.853.8175
Facsimile: 404.853.8806
Davidwender@eversheds-sutherland.com

With a mandated copy (which shall not constitute notice) to:
Nathaniel T. DeLoatch
Eversheds Sutherland (US) LLP
999 Peachtree Street, NE, Suite 2300
Atlanta, GA 30309-3996
Telephone: 404.853.8175
Facsimile: 404.853.8806
Davidwender@eversheds-sutherland.com
Nathanieldeloatch@eversheds-sutherland.com

G.    *Entire Agreement.*

34

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

        H.       *Exhibits.*

All exhibits and documents included in the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.ganb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

        I.       *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holdings, alterations or interpretations, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holders, alterations or interpretations. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) non-severable and mutually dependent.

        J.       *Closing of the Chapter 11 Case.*

The Liquidation Trust shall promptly, after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, any Local Rule, and any applicable order necessary to close the Chapter 11 Case that has been fully administered.

        K.       *No Admission against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relief upon in any manner in any suit, action, proceeding, or controversy within or outside the Bankruptcy Court involving the Debtor or the Chapter 11 Trustee.

        L.       *No Waiver.*

35

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights, or Causes of Action against any Person other than the Debtor.

M.    *Headings*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor does any affect the terms, provisions or interpretation of the Plan.

N.    *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of any other documents or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "**Plan Related Documents**") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided* that, with respect to any conflict or inconsistency between the Plan and the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern.

O.    *Post-Confirmation Reporting.*

After the Effective Date, in accordance with the Guidelines established by the U.S. Trustee, the Liquidation Trust will file quarterly operating reports with the Bankruptcy Court.

P.    *No Discharge.*

As set forth in Bankruptcy Code section 1141(d)(3), the Plan does not grant the Debtor a discharge.

Q.    *Post-Effective Date Limitation of Notice*

After the Effective Date, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, Persons and Entities must file with the Bankruptcy Court a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidation Trustee is authorized to limit the list of Persons and Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons and Entities that have filed with the Bankruptcy Court such a renewed request *provided, however*, that parties in interest shall also serve those parties directly affected by, or having a direct interest in, the particular filing in accordance with either Bankruptcy Rules and/or Local Rules.

R.    *Application of Bankruptcy Rule 7068.*

The Debtor, before the Effective Date, and the Liquidation Trustee following the Effective Date, are authorized to serve upon a holder of Disputed Claim an offer to allow judgment to be taken on account of such Disputed Claim, and, pursuant to Bankruptcy Rule 7068 and 9014,

Federal Rule of Civil Procedure 68 shall apply to such offer of judgment.  To the extent the holder of a Disputed Claim must pay the costs incurred by the Debtor or the Liquidation Trustee after the making of such offer, the Debtor and the Liquidation Trustee are entitled to set off such amounts against the amount of any Distribution to be paid to such holder without any further notice to or action, order, or approval of the Bankruptcy Court.

S.    *Substantial Consummation of the Plan.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under section 1101 and 1127(b) of the Bankruptcy Code.

Dated:   August 29, 2023

Respectfully submitted,

/s/ *David A. Wender*
Chapter 11 Trustee of Curepoint, LLC

**<u>APPENDIX I – DEFINED TERMS</u>**

As used in this Plan, capitalized terms have the following meanings[1]:

1.     *"Accelerator Financing"* means that certain Equipment Finance Agreement dated May 9, 2019 between the Debtor and Progress Leasing for the Debtor's purported lease of a particular linear accelerator (which was assigned to Lafayette Bank).

2.     *"Administrative Claim"* means any Claim against the Debtor or its Estate for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, provided that any Administrative Claim shall expressly exclude any Professional Fee Claim.

3.     *"Administrative Claims Bar Date"* means the date that is twenty-one (21) days from service of the Notice of Effective Date or such other date as ordered by the Bankruptcy Court.

4.     *"Adversary Proceeding"* means any Claim, action or Cause of Action brought by the Debtor, the Chapter 11 Trustee or the Liquidation Trustee pursuant to Bankruptcy Rule 7001.

5.     *"Allowed"* means with respect to any Claim against the Debtor or its Estate (including any Administrative Claims) or portion thereof: (a) a Claim that is listed on the Debtor's Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Case, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to the allowance thereof, or Challenge or action to reclassify, subordinate, or otherwise limit recovery with respect thereto, shall have been Filed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is allowed pursuant to the terms of the Plan or by Final Order of the Bankruptcy Court or by agreement of the Liquidation Trustee following the Effective Date; or (c) a Claim as to which a Proof of Claim has been Filed and as to which no objection has been Filed or Challenge or action to reclassify, subordinate, or otherwise limit recovery with respect thereto has been Filed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Except for any Claim that is expressly Allowed, any Claim that (i) has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim was Filed on or prior to the Claims Bar Date or (ii) has been assumed by the Buyer pursuant to the Asset Purchase Agreement and the Sale Order, is not considered Allowed and any Person or Entity holding such Claim shall not be treated as Creditor with respect to such Claim for the purposes of voting and distributions under the Plan.

6.     *"AMOA CP Acquisition"* means AMOA CP Acquisition, LLC, successor-in-interest to Morris Bank.

7.     *"AMOA CP Acquisition Claim"* means the Proof of Claim filed by AMOA CP Acquisition (Claim No. 15).

8.     *"AMOA Finance"* means AMOA Finance, LLC.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Bankruptcy Code.

9.      *"AMOA Finance Adversary Proceeding"* means Adversary Proceeding No. 22-05170-pmb commenced by the Chapter 11 Trustee against AMOA Finance.

10.      *"AMOA Finance Claim"* means the Proof of Claim filed by AMOA Finance against the Debtor (Claim Nos. 14).

11.       *"AMOA Parties"* means each of AMOA Finance, AMOA CP Acquisition, Dr. McCord, their Affiliates and each of their respective partners, principals, employees, successors, assigns and agents.

12.      *"AMOA Settled Claim"* means the AMOA Finance Claim, the Morris Bank Claim, the Dr. McCord Claim and any and all Claims of the AMOA Parties.

13.      *"Arvest"* means Arvest Equipment Finance.

14.      *"Arvest Claims"* means, collectively, the Proofs of Claim filed by Arvest (Claim Nos. 8 and 9).

15.      *"Assets"* means any and all of the right, title and interest of the Debtor in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, and any other general intangibles of the Debtor, as the case may be, including, without limitation, the Debtor's Estate; *provided, however*, that any Assets sold to the Buyer pursuant to the Asset Purchase Agreement and the Sale Order shall not be considered Assets of the Estate under this Plan.

16.      *"Asset Purchase Agreement"* or *"APA"* means that certain Asset Purchase Agreement, by and between the Debtor and the Buyer dated as of December 9, 2022, together with all amendments and schedules thereto, and related documents [Doc. No. 193, Ex. 3].

17.      *"Avoidance Actions"* means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation or an Adversary Proceeding has been commenced with respect to such Cause of Action as of the Effective Date.

18.      *"Bankers Healthcare"* means Bankers Healthcare Group, LLC.

19.      *"Bankers Healthcare Claim"* means the Proof Claim filed by Bankers Healthcare (Claim No. 1).

---

Additional terms may be defined in the Disclosure Statement.

20.    ***"Bankruptcy Code"*** means title 11 of the United States Code, 11 U.S.C. § 101, *et seq*.

21.    ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the Northern District of Georgia having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the Northern District of Georgia.

22.    ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure promulgated under section 2705 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

23.    ***"Beneficial Trust Interest"*** means a beneficial interest in the Liquidation Trust, which interest shall be uncertificated and which shall be non-transferrable except as otherwise provided in the Liquidation Trust Agreement.

24.    ***"Business Day"*** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

25.    ***"Buyer"*** or ***"Cancer Care"*** means 2406 Cancer Care, LLC, together with any Affiliate or permitted assignee as provided for in the APA.

26.    ***"Cash"*** means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks, and legal tender of the United States of America or equivalents thereof.

27.    ***"Causes of Action"*** means each and every Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively of the Debtor or the Estate, whether arising before, on or after the Petition Date, in contract or tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim, recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any Challenge; (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim; and *subject, however*, to any releases provided in this Plan, the Confirmation Order, the Sale Order, or any other Final Order of the Bankruptcy Court. For the avoidance of doubt, unless specifically identified as a Retained Cause of Action, the Causes of Action shall not include any Causes of Action against the Released Parties or specifically acquired by the Buyer under the Asset Purchase Agreement.

28.    ***"City Capital"*** means City Capital NY in its capacity as a MCA Lender.

29.    ***"Challenge"*** means to object to, challenge, contest or otherwise invalidate or

reduce.

30.    *"Chapter 11 Case"* means the case pending for the Debtor under chapter 11 of the Bankruptcy Code administered under Case No. 22-56501-pmb.

31.    *"Chapter 11 Trustee"* means David A. Wender, not individually, but solely in his capacity as Trustee, appointed pursuant to Order of the Bankruptcy Court [Doc. Nos. 104, 106 and 108].

32.    *"Claims Bar Date"* means January 31, 2023; the date or dates established by the Bankruptcy Court as the deadline by which Proofs of Claim must be filed.

33.    *"Class"* mean pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims or Interests in the Debtor as set forth in Article III hereof.

34.    *"Clerk"* means the Clerk of the Bankruptcy Court, Vania S. Allen and any deputy clerks of the Bankruptcy Court.

35.    *"CLG"* means CLG Servicing, LLC.

36.    *"CLG Adversary Proceeding"* means the Adversary Proceeding No. 22-05171-pmb commenced by the Chapter 11 Trustee against CLG.

37.    *"CLG Claim"* means the Proof of Claim filed by CLG (Claim No. 20-2).

38.    *"Click Capital"* means Click Capital Group, LLC in its capacity as an MCA Lender.

39.    *"Collateral"* means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not avoided under the Bankruptcy Code or applicable state laws.

40.    *"Confirmation"* means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Case.

41.    *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

42.    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

43.    *"Confirmation Order"* means the order of the Bankruptcy Court, in form and substance acceptable to the Plan Proponent, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

44.     **"*Consummation*"** means the occurrence of the Effective Date.

45.     **"*Dadabhoy*"** means Jamila Dadabhoy.

46.     **"*Debtor*"** means Curepoint, LLC, as debtor and debtor in possession in the Chapter 11 Case.

47.     **"*Deficiency Claim*"** means that portion of a Claim secured by a Lien on property that exceeds the value of the underlying Collateral securing such Claim and which is classified as a General Unsecured Claim.

48.     **"*Disclosure Statement*"** means the Disclosure Statement for the Chapter 11 Plan of Liquidation for Curepoint, LLC pursuant to Chapter 11 of the Bankruptcy Code, dated August 29, 2023, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

49.     **"*Disputed*"** means, any Claim against or Interest in the Debtor that is (a) listed in the Schedules as disputed, contingent, or unliquidated and for which a Proof of Claim has not been Filed; (b) subject to an objection, Challenge, and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection, Challenge and/or request for estimation has not been withdrawn or determined by Final Order; (c) held by a party that is adverse to the Debtor in any litigation, contested matter or Adversary Proceeding and as to which no Final Order resolving such litigation or contested matter has been entered; or (d) disallowed pursuant to section 502(d) of the Bankruptcy Code.  A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount until it is no longer a Disputed Claim or Disputed Interest.

50.     **"*Distribution Agent*"** means, from the Effective Date, any Person(s), if any, selected by the Liquidation Trustee to make or to facilitate distributions required by this Plan.  In the event that no Distribution Agent is identified, the Liquidation Trustee shall serve as the Distribution Agent.

51.     **"*Distribution Date*"** means, with respect to (a) any Claim that is Allowed and payable as of the Effective Date, the date that is soon as reasonably practicable after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date as soon as reasonably practicable after the date on which such Claim becomes Allowed.

52.     **"*Dooley Investment*"** means Dooly Investment Holdings, Inc.

53.     **"*Dooley*"** means Daniel Dooley.

54.     **"*Dr. McCord*"** means Dr. Mark McCord.

55.     **"*Dr. McCord Claim*"** means the one or more Proofs of Claim filed by Dr. McCord

against the Debtor (Claim No. 7).

56.      *"Effective Date"* means, with respect to the Plan, the date that is a Business Day selected by the Plan Proponent, on which (a) the conditions to the occurrence of the Effective Date and Consummation have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

57.      *"Estate"* means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

58.      *"Exculpated Claim"* means any Cause of Action, arising during the period commencing on the Petition Date through the Effective Date, related to any act or omission derived from, based upon, relating to or arising from (a) the Chapter 11 Case; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Case, the Disclosure Statement, the Plan, and/or the Plan Supplement; (c) the formulation, preparation, or negotiation of any documents with respect to, or the consummation of, the Sale of the Debtor's assets during the Chapter 11 Case; (d) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the foregoing subsections (a), (b), or (c); (e) the pursuit of Consummation of the Plan; and/or (f) the filing, administration, and/or implementation of the Chapter 11 Case, the Plan, or the distribution of property in connection therewith or thereunder.

59.      *"Exculpated Party"* means each of: (a) the Debtor; (b) the Estate, (c) the Chapter 11 Trustee; and (d) with respect to each of the foregoing Persons and/or Entities in clauses (b) and (c), such Person's and/or Entity's financial advisors, professionals, and attorneys, but only to the extent that such party served in such capacity during the Chapter 11 Case by the Chapter 11 Trustee, and except as otherwise set forth in the Plan including with respect to any Retained Causes of Action.

60.      *"Executory Contract"* means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

61.      *"File"* or *"Filed"* means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

62.      *"Final Decree"* means the Order of the Bankruptcy Court closing the Chapter 11 Case.

63.      *"Final Distribution"* means the distribution under this Plan which, (a) after giving effect to such distribution, results in remaining assets held by such Liquidation Trust, including Cash, of a value less than $500, or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

64.      *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court

or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal, or seek *certiorari* has expired and no request for reconsideration or relief from judgment, appeal, or petition for *certiorari* has been timely taken, or to which any appeal that has been taken or any petition for *certiorari* that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which *certiorari* could be sought or the reconsideration, relief from judgment, new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

65.     ***"First American"*** means First American Commercial Bancorp, Inc.

66.     ***"First American Claim***" means the Proof of Claim filed by First American (Claim No. 10).

67.     ***"General Unsecured Claim"*** means any Claim against the Debtor that is (i) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court; and (ii) not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Priority Claim, a Prepetition Secured Loan Claim, a Prepetition Equipment Claim, the AMOA Finance Claim, the Lafayette Bank Claim, a MCA Claim, or an Interest.

68.     ***"Governmental Claim***" means any Claim against the Debtor Filed by a Governmental Unit.

69.     ***"HP"*** means Hewlett-Packard Financial Services Company.

70.     ***"HP Claim"*** means the Proof of Claim filed by HP (Claim No. 12).

71.     ***"Impaired"*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

72.     ***"Insured Claim"*** means that portion of any Claim arising out of an incident or occurrence alleged to have occurred prior to the Effective Date: (i) as to which any Insurer is obligated pursuant to the terms, conditions, limitations and exclusions of any Insurance Policy and/or applicable non-bankruptcy law, to pay any judgment, settlement, or contractual obligation with respect to the Debtor, or (ii) that any Insurer otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Insurance Policy.

73.     ***"Insurer"*** means any company or other entity that issues, or is responsible for, an Insurance Policy under which the Debtor could have asserted or did assert, a right to coverage for any claim.

74.     ***"Insurance Policy"*** means any policy of insurance and related agreement under which the Debtor could have asserted or did assert, or may in the future assert, a right to coverage for any claim.

75.     *"Interest"* means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtor together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

76.     *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

77.     *"Lafayette Bank"* means Lafayette State Bank.

78.     *"Lafayette Bank Claim"* means the Proof of Claim filed by Lafayette Bank (Claim No. 16).

79.     *"Lafayette Bank Settlement"* means the settlement between the Chapter 11 Trustee and Lafayette Bank as described in Lafayette Bank Settlement Motion.

80.     *"Lafayette Bank Settlement Motion"* means the *Consent Motion to Approve Compromise and Settlement of Claim of Lafayette State Bank (Claim No. 16-1) pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Doc. No. 282].

81.     *"Liquidation Trust"* means the trust, of which the Liquidation Trustee shall serve as trustee, formed pursuant to this Plan, the Liquidation Trust Agreement, and the Confirmation Order.

82.     *"Liquidation Trust Agreement"* means the agreement included with the Plan, as may be amended, modified or supplemented, established as of the Effective Date, setting forth the terms and conditions of the Liquidation Trust, as may be modified from time to time.

83.     *"Liquidation Trust Assets"* means the Assets of the Estate as of the Effective Date, including without limitation, (i) Cash remaining after funding the Professional Fee Claim Reserve and the Liquidation Trust Claims Reserve, (ii) the Retained Causes of Action and any proceeds therefrom, and (iii) all Insurance Policies.

84.     *"Liquidation Trust Claims Reserve"* shall mean the sub-account or reserve comprised of Cash and established by the Chapter 11 Trustee if prior to the Effective Date or the Liquidation Trustee on or after the Effective Date to satisfy in full all payments required by the Plan to holders of Administrative Claims (other than Professional Fee Claims), Statutory Fees, Priority Tax Claims, Secured Tax Claims, Other Priority Claims, Prepetition Secured Loan Claims, the Claims of the AMOA Parties, the Lafayette Bank Claim, and the MCA Claims not otherwise paid on or prior to the Effective Date.

85.     *"Liquidation Trust Expense Reserve"* shall mean the reserve or sub-account established by the Liquidation Trustee on or after the Effective Date comprised of Liquidation Trust Assets in an amount sufficient to satisfy the costs of administering the Liquidation Trust, and winding down the Debtor's Estate which amount shall be no less than $85,000.00.

86.    ***"Liquidation Trustee"*** means David A. Wender, not individually, but solely in his capacity as a liquidation trustee pursuant to the terms of the Liquidation Trust Agreement, or any successor trustee appointed in accordance with the terms of the Plan and the Liquidation Trust Agreement.

87.    ***"Local Rules"*** means the Local Rules of the United States Bankruptcy Court for the Northern District of Georgia.

88.    ***"MCA Claim"*** means any claim against the Debtor based upon the type of agreement commonly known as merchant agreements, merchant cash advance agreements, and/or revenue agreements; including, without limitation, Proof of Claim Nos. 22, 23, 24, 26, and 27 and any and all other Claims of an MCA Lender.

89.    ***"MCA Lender"*** means individually or collectively, each of PMF, Secure Capital, PointOne, Click Capital, and City Capital.

90.    ***"MEC"*** means MEC Capital, Inc.

91.    ***"Mittere"*** means Mittere, Inc.

92.    ***"Miles Entities"*** means either individually or collectively, each of Zeroholding, Northwinds, MEC, Mittere, MMI, PFP and any Affiliate of the foregoing.

93.    ***"MMI"*** means MMI Education Technologies, LLC.

94.    ***"Morris Bank Claim"*** means the one or more Proofs of Claim filed by Morris Bank against the Debtor, which was subsequently assigned to AMOA CP Acquisition (Claim No. 15).

95.    ***"North American"*** means North American Banking Company.

96.    ***"Northwinds"*** means Northwinds Leasing, LLC.

97.    ***"Notice of Effective Date"*** means a notice to be Filed with the Bankruptcy Court by the Debtor upon the occurrence of all conditions to Confirmation and Consummation set forth in Article VIII of the Plan.

98.    ***"Other Priority Claims"*** means any Claim against the Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

99.    ***"Petition Date"*** means August 19, 2022, the date on which the Debtor commenced the Chapter 11 Case in the Bankruptcy Court.

100.    ***"PFP"*** means Physician Financial Partners, LLC.

101.    ***"Plan"*** means this Chapter 11 Plan of Liquidation for Curepoint, LLC (as modified,

altered, amended or supplemented from time to time).

102.    *"Plan Proponent"* means David A. Wender, solely in his capacity as the Chapter 11 Trustee.

103.    *"Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, if any, filed by the Plan Proponent at least 14 days in advance of the Voting Deadline.

104.    *"PMF"* means Premium Merchant Funding 18, LLC in its capacity as a MCA Lender.

105.    *"PointOne"* means PointOne Capital, LLC in its capacity as an MCA Lender.

106.    "*PointOne Settlement"* means the settlement between the Chapter 11 Trustee and PointOne as described in the PointOne Settlement Motion.

107.    *"PointOne Settlement Motion"* means the *Consent Motion to Approve Compromise and Settlement of Claim of PointOne Capital, LLC (Claim No. 24-1) Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* [Doc. No. 302].

108.    *"Prepetition AR"* shall mean the accounts receivable owing to the Debtor as of the Petition and collected during the Chapter 11 Case, which totals $308,520.03.

109.    *"Prepetition Equipment Claim"* means either individually or collectively, the claims held by Arvest, HP, U.S. Bank, First American, and North American.

110.    *"Prepetition Secured Loan Claim"* means either individually or collectively, the claims held by Bankers Healthcare, the U.S. SBA, and CLG.

111.    *"Priority Tax Claim"* means any Claim against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

112.    *"Professional"* means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, 503(b), 1103, or 503 of the Bankruptcy Code or (b) awarded compensation and reimbursement by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after motion on notice under that section of the Bankruptcy Code.

113.    *"Professional Fee Claim"* means a Claim for any accrued but unpaid fees and expenses owed to a Professional pursuant to such Professional's engagement letter, court order, or otherwise under sections 328, 330, 331, 503(b), 1103, or 503 of the Bankruptcy Code, *provided* that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional.

114.    ***"Progress Leasing"*** means Progress Leasing, LLC.

115.    ***"Proof of Claim"*** means a written proof of Claim that is Filed against the Debtor in the Chapter 11 Case.

116.    ***"Proof of Interest"*** means a written proof of Interest that is Filed against the Debtor in the Chapter 11 Case.

117.    ***"Quarterly Fees"*** means any fees due and payable to the U.S. Trustee pursuant to section 1930 of Title 28 of the U.S. Code.

118.    ***"Record Date"*** means October 16, 2023.

119.    ***"Rejection Claim"*** means a Claim against the Debtor arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

120.    ***"Released Party"*** means (a) the Debtor; (b) the Chapter 11 Trustee and (c) with respect to each of the foregoing in clauses (a) through (b) such Person's or Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current and former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, investment bankers, consultants, representatives, and other professionals in their capacity as such; *provided, however*, as set forth in the Plan, any Released Party that is the target of a Retained Cause of Action, shall not be deemed to be a Released Party and such Retained Cause of Action shall not be released.

121.    ***"Retained Cause of Action"*** means any Cause of Action identified herein on Schedule B, other than any Cause of Action that was sold to the Buyer pursuant to the Asset Purchase Agreement and Sale Order. For the avoidance of doubt, no Retained Causes of Action is subject to the release or exculpation provisions of this Plan.

122.    ***"Sale"*** means the sale of substantially all of the Debtor's assets to the Buyer.

123.    ***"Sale Order"*** means the *Order (I) Approving Asset Purchase Agreement Among Debtor and Purchaser, (II) Authorizing Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* entered by the Bankruptcy Court on December 15, 2022 [Doc. No. 200].

124.    ***"Schedules"*** and/or ***"Schedules and SOFAs"*** mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statement of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time [Doc. Nos. 37, 82].

125.    ***"Section 503(b)(9) Claim"*** means Administrative Claims arising from Section

503(b)(9) of the Bankruptcy Code.

126.     *"Secure Capital*" means Secure Capital, LLC in its capacity as a MCA Lender.

127.     *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interests in the Estate's interests in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or (b) of the Bankruptcy Code Allowed as such pursuant to the Plan.

128.     *"Secured Tax Claims*" consist of any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

129.     *"Solicitation Package"* means the package to be distributed to creditors in the Voting Classes for solicitation of votes to accept or reject the Plan.

130.     *"Solicitation Procedures"* mean those voting and Tabulation Rules as approved in the *Order (A) Approving the Adequacy of the Disclosure Statement, (B) Approving the Solicitation and Notice Procedures with respect to Confirmation of the Chapter 11 Plan of Liquidation of Curepoint, LLC, (C) Approving the Forms of Ballot and Notices in Connection Therewith, And (D) Scheduling Certain Dates in Connection Therewith* [Doc. No. ●].

131.     *"Subordinated Claim"* means any Claim that is subordinated, pursuant to section 510(b) of the Bankruptcy Code or otherwise, including any Claims arising from recession of a purchase or sale of a Security of the Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

132.     *"Tabulation Rules"* mean those rules and procedures for tabulating Ballots cast on this Plan as more specifically set forth in the Solicitation Procedures.

133.     *"Tax Code"* means the Internal Revenue Code of 1986, as amended.

134.     *"Unclaimed Property"* means any distribution to any Creditor under this Plan that is unclaimed sixty (60) days following the date of such distribution under the Plan.

135.     *"Unclaimed Property Reserve"* means any Unclaimed Property reserved for a period of sixty (60) days by the Liquidation Trustee on behalf of holders of Unclaimed Property.

136.     *"Unexpired Lease"* means a lease to which the Debtor is a party that is subject assumption or rejection under section 365 of the Bankruptcy Code.

137.    ***"U.S. Bank"*** means U.S. Bank, N.A.

138.    ***"U.S. SBA"*** means the U.S. Small Business Administration.

139.    ***"U.S. Trustee"*** means the United States Trustee for Region 21.

140.    ***"Voting Classes"*** means, either individually or collectively, Class 4, Class 5, Class 6, Class 7 and Class 8 under the Plan.

141.    ***"Voting Deadline"*** means 5:00 p.m. (ET) on the date that is ten (10) days prior to the Confirmation Hearing.

142.    ***"Zeroholding"*** means Zeroholding, LLC.