## SCHEDULE C

## LIQUIDATION TRUST AGREEMENT

## CUREPOINT LIQUIDATION TRUST AGREEMENT

This Curepoint Liquidation Trust Agreement (this "Agreement") dated as of [●], 2023, is by and between Curepoint, LLC, by and through the Chapter 11 Trustee (the "Debtor" or "Settlor"), and David A. Wender, solely in his capacity as the Liquidation Trustee (the "Trustee") for the benefit of the Holders of Allowed Claims and certain other Beneficiaries under the terms of *Chapter 11 Plan of Liquidation for Curepoint, LLC* (the "Plan"), confirmed by Order of the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court") in the Debtor's Chapter 11 Case, Case No. 22-56501-PMB on [●], 2023 (the "Confirmation Order") [Docket No. [●]].

### WITNESSETH

**WHEREAS**, the Trust is created pursuant to, and to effectuate, the Plan;

**WHEREAS**, the Trust is created on behalf of, and for the sole benefit of, the Beneficiaries pursuant to the terms of this Agreement and the Plan;

**WHEREAS**, the Trust is established for the purpose of collecting, distributing and liquidating the Debtor's remaining Assets for the benefit of the Beneficiaries in accordance with the terms of this Agreement and the Plan with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust;

**WHEREAS**, pursuant to the Plan, the Settlor, the Trustee, and the Beneficiaries are required to treat, for all U.S. federal income tax purposes, the transfer of the Assets to the Trust as a transfer of the Assets by the Settlors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust in

-1-

accordance with Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684;

**WHEREAS**, the Trust is intended to be treated as a grantor trust for U.S. federal income tax purposes;

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Settlor and the Trustee agree as follows:

### ARTICLE I
### DEFINITIONS AND INTERPRETATIONS

**1.1.** **Definitions.**

1.1.1. "Assets" shall mean the term Liquidation Trust Assets as defined in the Plan.

1.1.2. "Beneficiaries" or "Liquidation Trust Beneficiaries" shall mean any holder of a Beneficial Trust Interest as defined in the Plan.

1.1.3. "Disputed Claims Reserve" shall mean such reserve fund established by the Liquidation Trustee to hold cash, which may be necessary to make one or more distributions to a Beneficiary at the time a Disputed Claim becomes an Allowed Claim.

1.1.4. "Liquidation Trustee" or "Trustee" shall mean (a) initially, David A. Wender, solely in his capacity as the Liquidation Trustee, and (b) any successors or replacements duly appointed under the terms of this Agreement.

1.1.5. "Permitted Investments" shall include (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States of America as an agency or instrumentality thereof, (c) money market funds that invest exclusively in short-term direct obligations of, or obligations guaranteed by, the United States of America, (d) such other investments as the Bankruptcy Court may

48958810.3

approve from time to time, if required, or (e) demand deposits or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, provided, however, that the scope of any Permitted Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

      1.1.6.     "Plan" shall mean the *Chapter 11 Plan of Liquidation for Curepoint, LLC*, dated as of [●], 2023 [Docket No. [●]], as may be further amended, modified or supplemented.

      1.1.7.     "Retained Causes of Action" shall mean those causes of action and/or claims identified in Schedule B to the Plan.

      1.1.8.     "Settlors" shall mean the Chapter 11 Debtor and/or the Chapter 11 Trustee as the duly appointed representative of the Debtor, as appropriate.

      1.1.9.     "Trust" shall mean this Liquidation Trust established pursuant to the terms of this Agreement and the Plan.

**1.2.**    **Use of Plan Definitions.**  All capitalized terms that are used in this Agreement but not defined herein shall have the meaning set forth for such terms in the Plan.

**1.3.**    **Interpretation.**  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**1.4.**    **Particular Words.**  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof,"

"herein," "hereinafter," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

## ARTICLE II
## DECLARATION OF TRUST

**2.1.**    **Creation and Name.**  There is hereby created the Trust, which shall be known as the "**Curepoint Liquidation Trust**," and is the Trust referred to as the "Liquidation Trust" in the Plan.  The Trustee may conduct the affairs of the Trust under the name of the "Curepoint Liquidation Trust."

**2.2.**    **Purpose of Trust.**  The Settlor and the Trustee, pursuant to the Plan and in accordance with this Agreement and the Bankruptcy Code, hereby create the Trust for the purpose of collecting, distributing, and liquidating the Assets for the benefit of, and making distributions to, the Beneficiaries in accordance with the terms of this Agreement and the Plan.  The activities of the Trust shall be limited to those activities set forth in this Agreement, as may be amended, and as otherwise contemplated by the Plan.

**2.3.**    **Transfer of Assets.**

A.    The Settlor hereby grants, assigns, conveys, transfers and delivers, on behalf of the Beneficiaries, all of the Settlor's right, title and interest in the Assets to the Liquidation Trust as of the Effective Date to be held in trust for the benefit of the Beneficiaries, pursuant to §§ 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code and in accordance with the Plan and Confirmation Order.  As of the Effective Date, the Assets shall be free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other Persons and Governmental Units to the maximum extent contemplated by and permissible under § 1141(c) of the Bankruptcy Code for the uses and purposes as specified in this Agreement and the Plan.  The Assets can be used to, among other things, satisfy the following liabilities: (a) all

Quarterly Fees that accrue after the Effective Date until such time as the Bankruptcy Court enters a Final Decree closing the Chapter 11 Case; (b) any fees and expenses incurred and unpaid, or to be incurred by the Trustee and his/her respective agents and professionals, as further described in Section 3.7 herein, in the performance of their administrative duties in connection with winding up the Settlor's Estate after the Effective Date; and (c) any other obligations as may be specifically set forth in this Agreement, the Plan and/or Confirmation Order, as the case may be. Notwithstanding anything in this Agreement to the contrary, and subject to the Plan, the Trustee, in the absence of such consent, by order of the Bankruptcy Court, may abandon or otherwise not accept any Assets that the Trustee believes, in good faith, or has been advised by agents or professionals, have no value to the Trust. Any Assets that the Trust so abandons or otherwise does not accept shall not vest in the Trust.

B.    The Trustee shall automatically, and without need for further notice or approval of the Bankruptcy Court or the Settlor, be designated as the representative of the Estate pursuant to § 1123 of the Bankruptcy Code to enforce or pursue any Retained Causes of Action transferred to the Trust on or after the Effective Date in accordance with the terms of this Agreement, the Plan and/or the Confirmation Order. Any proceeds of a Retained Cause of Action shall be distributed pursuant to the terms of the Plan and this Agreement.

**2.4.    Securities Law.**    Under § 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Trust to the Beneficiaries under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities. If the Trustee determines, with the advice of counsel, that the Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then

48958810.3

the Trustee shall take any and all actions at the expense of the Trust to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

**2.5.**    **Appointment and Acceptance of Trustee.**  The Trustee shall be deemed to be appointed pursuant to § 1123(b)(3)(B) and all other applicable sections of the Bankruptcy Code.   The Trustee accepts the Trust created by this Agreement and the grant, assignment, transfer, conveyance, and delivery to the Trustee, on behalf, and for the benefit, of the Beneficiaries, by the Settlor of all of its respective rights, title, and interest in the Assets, upon and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order.

**2.6.**    **No Reversion to Settlor.**  In no event shall any part of the Assets be distributed to the Settlor after the Effective Date.

**ARTICLE III**
**ADMINISTRATION OF THE TRUST**

**3.1.**    **Rights, Powers, Privileges and Duties of Trustee.**  The Trustee shall have only the rights, powers, privileges, and duties expressly provided in this Agreement, the Plan and the Confirmation Order.  Subject to the terms of the Plan and this Agreement, including Section 3.11 of this Agreement, the Trustee shall have the power to take the actions granted in this Section 3.1, and any powers reasonably incidental thereto, which the Trustee reasonably determines to be necessary or appropriate to fulfill the purpose of the Trust, including but not limited to:

A.    To act on behalf of the Trust, including the right to effect all actions and execute all agreements, instruments, and other documents, and exercise all rights and privileges previously held by the Settlor or Chapter 11 Trustee, necessary or convenient to implement the provisions of the Plan and the Liquidation Trust Agreement;

48958810.3

B.      With respect to any Asset, to exercise in a manner not inconsistent with the Plan and this Agreement, all power and authority that may be or could have been exercised, commence or continue all proceedings that may be or could have been commenced or continued and take all actions that may be or could have been taken by any member, officer, director, or shareholder of the Settlor or by the Chapter 11 Trustee with like effect as if authorized, exercised and taken by unanimous action of such officers, directors, and shareholders, including, without limitation, the dissolution of the Settlor;

C.      To manage, monitor, and enforce all of the Settlor's and Estate's rights, and interests under the Plan, the Confirmation Order, this Agreement, any other agreements of the Settlor or Chapter 11 Trustee, and any other orders of the Bankruptcy Court;

D.      To establish, maintain, and adjust as may be appropriate, the Liquidation Trust Claim Reserve, Liquidation Trust Expense Reserve, and if necessary, one or more disputed claim reserves, and to authorize and make disbursements from the Profession Fee Claim Reserve, the Liquidation Trust Claim Reserve, the Liquidation Trust Expense Reserve, and any disputed claim reserve, including disbursements necessary or appropriate in connection with winding down the Estate;

E.      To authorize and make distributions to holders of Allowed Claims provided for or contemplated in the Plan;

F.      To authorize and make distributions to holders of Beneficial Trust Interests provided for or contemplated under the Plan and this Agreement;

G.      Except to the extent set forth in the Plan, to object to any Claims regardless of whether such Claim was Disputed on the Effective Date, to compromise or settle any Claim

regardless of whether such Claim was Disputed on the Effective Date, prior to objection without supervision or approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidation Trust Agreement;

H.    To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees, and consultants and to pay the fees and charges incurred by the Trustee on the Trust's behalf on or after the Effective Date for fees and expenses of professionals (including those of the Trustee), disbursements, expenses or related support services relating to the Trust;

I.    To (a) file, if necessary, any and all required tax and information returns consistent with treating the Trust as a grantor trust pursuant to Treas. Reg. 1.671-4(a) or otherwise, (b) make tax elections by and on behalf of the Trust; and (c) pay taxes, if any, payable by the Trust;

J.    To take all other actions not inconsistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable with respect to administering the Plan and the Trust;

K.    To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order, or this Agreement, and taking any other actions related to, or in connection with, the liquidation of the Assets and the exercise of the Trustee's powers granted in this Agreement, the Plan, and Confirmation Order;

48958810.3

L.      To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Asset in the reasonable business judgment of the Trustee;

M.      To prosecute and/or settle any Retained Causes of Action, with or without the approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding or Adversary Proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative, or other nonjudicial proceeding and pursue to settlement or judgment such Retained Causes of Action, including, without limitation, taking any action with respect to appeals, counterclaims, and defenses of or with respect to such claims and causes of action;

N.      To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Trustee deems necessary or advisable;

O.      To collect and liquidate and/or distribute all Assets pursuant to the Plan, the Confirmation Order, and this Agreement;

P.      Holding legal title to any and all rights of the Beneficiaries in, to, or arising from the Assets;

Q.      If any of the Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Trustee in its discretion; confer upon such trustee all the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the Trustee and except where the conditions and

48958810.3

limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws or the state or jurisdiction in which the trustee is acting shall prevail to the extent necessary); require such trustee to be answerable to the Trustee for all monies, assets, and other property that may be received in connection with the administration of the Assets; and remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution of the Trustee of a written instrument declaring such trustee removed from office, and specifying the date and time of removal;

R.    Retain any and all Insurance Policies of the Debtor providing coverage with respect to any Claims, Causes of Action or other liabilities, including the Retained Causes of Action;

S.    To wind down the Settlor's affairs and complete tasks necessary to dissolve the Debtor;

T.    Exercise such other powers as may be vested in or assumed by the Trustee pursuant to the Plan, the Confirmation Order, other orders of the Bankruptcy Court, this Agreement or as may be necessary and proper to carry out the provisions of the Plan and Trust; and

U.    Solely with respect to any Claims and/ or the Assets, stand in the same position as the Settlor with respect to any claim the Settlor may have to an attorney-client privilege, the work-product doctrine, or any other privilege, and the Trustee shall succeed to all of the Settlor's rights to preserve, assert or waive any such privilege;

V.    Determining and satisfying any liabilities created, incurred or assumed by the Trust;

48958810.3

W.     Protecting and enforcing the rights to the Assets vested in the Trust by this Agreement, the Plan and Confirmation Order by any method reasonably determined to be appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

X.     Making all necessary filings on behalf of the Trust in accordance with any applicable law, statute, or regulation;

Y.     Determining and satisfying from the Assets any and all taxes and ordinary course liabilities, including reasonable professional fees and expenses, incurred by or on behalf of the Trust;

Z.     Investing the Assets received by the Trust or Trustee or otherwise held by the Trust or Trustee in accordance with Section 3.11 of this Agreement;

AA.   In the event that the Trustee determines that the Beneficiaries or the Trust may, will or have become subject to different tax consequences than those described herein or in the Plan, taking such actions that will, or are intended to, address such different tax consequences;

BB.   Creating sub-trusts or title vehicles of which the Trust or the Beneficiaries hold the beneficial or ownership interests, as applicable;

CC.   Opening and maintaining bank accounts or trust or agency accounts, including sub-accounts, on behalf of or in the name of the Trust or, if necessary, the Debtor;

DD.   In reliance upon the official Claims Register maintained in the Settlor's Chapter 11 Case and any applicable court order, maintaining a register on the Trustee's books and records evidencing the beneficial interest in the Trust held by each Beneficiary;

EE.   Execute offsets against Claims as provided for in the Plan;

-11-

FF.    Pay all fees and expenses and make all other payments relating to the Trust's Assets;

GG.    Pay all Quarterly Fees incurred after the Effective Date of the Plan until such time as the Bankruptcy Court enters a Final Decree closing the Settlor's Chapter 11 Case;

HH.    Complete and file any outstanding monthly operating reports of the Settlor which are not yet due or filed as of the Effective Date; and

II.    Collect outstanding receivables of the Settlor or the Trust, including, but not limited to receivables and/or proceeds of any Retained Cause of Action.

**3.2.    Assets.**  Subject to the Plan and this Agreement, the Trustee shall be authorized to collect and liquidate all uncollected and unliquidated Assets, including tax refunds.

**3.3.    Claims Administration**.  Subject in all respects to the provisions hereof and the Plan, the Trustee shall have the authority to allow, reconcile, and file objections to Claims, and to settle, compromise, withdraw, or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise.

**3.4.    Disputed Claims.**    Subject to the foregoing and the provisions of this Agreement and the Plan, from and after the Effective Date, the Trustee (a) may settle or compromise any Disputed Claim, and (b) shall succeed to the Settlor's rights with respect to any objections filed by the Settlor or the Chapter 11 Trustee that remain pending as of the Effective Date.  From and after the Effective Date, the Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

**3.5.    Claims Estimation.**  Subject to this Agreement and the Plan, the Trustee may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable

-12-

law and (b) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether the Settlor, the Chapter 11 Trustee or the Trustee have previously objected to such Claim. The Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.

**3.6.** **Retained Causes of Action.** Subject to the Plan, on and after the Effective Date, the Trustee may pursue all Retained Causes of Action even if such action or Adversary Proceeding was previously commenced in the name of the Settlor or the Chapter 11 Trustee.

**3.7.** **Agents and Professionals.** Subject to the Plan and this Agreement, the Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, tax preparers or other agents (which may be affiliated with the Trustee), professionals and employees as the Trustee deems appropriate in the reasonable exercise of his or her discretion, and whom the Trustee reasonably determines to have qualifications necessary to assist the Trustee in the proper administration of the Trust. Subject to Section 7.8 of this Agreement, the Trustee may pay the reasonable fees, costs and expenses of such persons (including himself/herself) out of the Assets in the ordinary course of business pursuant to this Agreement, the Plan and/or the Confirmation Order. Subject to the terms and conditions of this Agreement, the Plan and Confirmation Order, the Trustee may retain professionals who previously were employed by the Settlor or the Chapter 11 Trustee. The Trustee in his or her discretion may retain professionals on a contingency fee basis.

**3.8.** **Safekeeping of Assets.** All Assets shall, until distributed or paid over as herein provided or as provided in the Plan, be held in trust for the benefit of Creditors and the Beneficiaries in accordance with the Plan and this Agreement. The Trustee shall not have any liability for interest or producing income on any moneys received by him or her herein and held for distribution or payment to the Beneficiaries, except as such interest or income shall actually be received by the Trustee.

**3.9.** **Limitations on Trustee.**

A. The Trustee shall not at any time, on behalf of the Trust or Beneficiaries, enter into or engage in any trade or business, and no part of the Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Trust in furtherance of any trade or business. The Trustee shall take such actions consistent with the prompt orderly liquidation of the Assets as required by applicable law, and, except as otherwise set forth in Section 4.2 herein, consistent with the treatment of the Trust as a liquidating trust under Treasury Regulation Section 301.7701-4(d) and Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, to the extent such actions are permitted by this Agreement or the Plan. The Trustee shall, on behalf of the Trust, hold the Trust out as a trust in the process of liquidation and not as an investment company. The Trustee shall not become a market-maker for the Beneficial Trust Interests or otherwise attempt to create a secondary market for the Beneficial Trust Interests. The Trustee shall be restricted to: (a) liquidating the Assets on behalf of, and for the benefit of, the Holders of Beneficial Trust Interests, (b) distributing and applying the Assets for the purposes set forth in the Plan and herein, and (c) conserving and protecting the Assets and the administration thereof in accordance with the provisions of this Agreement, the Plan, and the Confirmation Order. Notwithstanding anything herein to the contrary, the Trustee shall at all

-14-

times act in furtherance of the Plan and the purposes of the Trust and, subject to Section 4.2 herein, shall not take any action inconsistent with the treatment of the Trust as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d). The Trustee shall not serve on the board of directors of any subsidiary of the Trust, unless the subsidiary's objective is consistent with that of the Trust.

B.      The Trust shall not receive or retain cash in excess of a reasonable amount to meet Claims, the fees and expenses of the Trust, and contingent liabilities, if any, of the Trust or as otherwise set forth in the Plan.  The Trustee shall also not incur indebtedness or comingle the Trust's funds.  The Trust shall not receive transfers of listed stocks or securities, any readily-marketable assets, any operating assets of a going business, any unlisted stock of a single issuer that represents 50 percent or more of the stock of such issuer, or any general or limited partnership interests.

**3.10.**  **Investment.**   The Trustee may only invest funds held in the Trust in Permitted Investments, in a manner consistent with the requirements of the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that if the Trustee does so, he or she shall have no liability in the event of insolvency of any institution in which he or she has invested any of the Assets or any proceeds, revenue, or income therefrom in accordance with this Agreement or the Plan.

**3.11.**  **Trustee Action.**   The Trustee shall hold, collect, conserve, protect, and administer the Trust in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth therein for the purposes set forth in the Plan, and this Agreement.  Any good

48958810.3

faith determination by the Trustee as to what actions are in the best interests of the Trust shall be determinative.

3.12.    **Bankruptcy Court Approval of Trustee Actions.**    Except as provided in the Plan or as otherwise specified in this Agreement, the Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or in the Plan to the Trustee.    Except as provided in the Plan, the Confirmation Order or otherwise specified in this Agreement, the Trustee shall exercise his or her reasonable business judgment for the benefit of the Beneficiaries in order to maximize the value of the Assets and distributions to the Beneficiaries, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing in this Section 3.12, the Trustee may seek Bankruptcy Court approval for authority to take a particular action which the Trustee may desire to have explicit approval of the Bankruptcy Court with respect to the Assets, the Trust, and the Settlor, and as provided in the Plan or this Agreement, including the administration and distribution of the Assets or resolution of any of the Retained Causes of Action.    The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion with notice to the Rule 2002 service list (as modified by the Plan) which may be made by e-mail, where available.

3.13.    **Confidentiality**.    The Trustee shall, during the period that he or she serves as Trustee under this Agreement and for a period of twelve (12) months following the termination of this Agreement or his or her removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Assets and Retained Causes of Action, relates, or which he or she has become aware of in his or her capacity as Trustee.

-16-

**3.14.   Privileged Documents.**        Nothing in the Plan or this Agreement shall constitute a waiver of any privilege claims over any of documents, including any privileged documents that are produced to or received by the Trust or Trustee.  For the avoidance of doubt, the Trust is a successor-in-interest to the Settlor and, therefore, the transfer of the privileged documents as provided herein does not impair or waive any privilege.

**ARTICLE IV**
**DISTRIBUTIONS FROM THE TRUST**

**4.1.    Distributions.**  On and after the Effective Date, the Trustee shall make distributions as and when required under the terms of the Plan, and as applicable, solely in accordance with the Plan.  However, distributions of net income plus all net proceeds from the sale or liquidation of the Assets shall be made no less frequently than once annually, such period to be measured by and from the Effective Date; provided, that the Trust may retain an amount of net proceeds or net income or other Assets (i) reasonably necessary to maintain the value of its Assets or to meet claims and contingent liabilities (including Disputed Claims), (ii) to meet reasonably incurred or anticipated fees and expenses of the Trust (including, but not limited to, any taxes imposed on or payable by the Trust or in respect of the Assets), or (iii) to satisfy claims, contingent liabilities or other liabilities incurred or anticipated by the Trust or the Trustee in accordance with the Plan or this Agreement, and retention of such amount may preclude distributions to Holders on an annual basis.

**4.2.    Disputed Claims Reserve.**

A.      On the initial Distribution Date for the Trust, and in connection with making all distributions required to be made on any such date under this Agreement or the Plan, the Trustee shall establish a separate Disputed Claims Reserve on account of distributions of Cash or other property as necessary for any Disputed Claims.  The Trustee shall not make any distributions of

-17-

Assets to the Beneficiaries unless the Trustee retains and reserves in the Disputed Claims Reserve such amounts as are reasonably necessary to satisfy amounts that would have been distributed in accordance with this Article IV in respect of Disputed Claims if the Disputed Claims were determined to be Allowed Claims immediately prior to such proposed distribution to the Beneficiaries. All Cash or other property allocable to Disputed Claims hereunder shall be contributed by the Trustee to the relevant Disputed Claims Reserve on the Distribution Date.

B.    Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Trustee), the Trustee may, in the Trustee's sole discretion, timely elect to treat any Disputed Claims Reserve as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Regulation Section 1.468B-9 for U.S. federal income tax purposes rather than to tax such reserve as a part of the Trust. If an election is made to report any reserve for Disputed Claims as a DOF, the Trust shall be the administrator of any such applicable DOF within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall comply with all withholding and U.S. federal and state tax reporting and tax compliance requirements of the DOF, including, but not limited to, the filing of a separate U.S. federal tax return for the DOF and the payment of U.S. federal and/or state income tax due.

4.3    Distributions After Allowance or Disallowance of a Disputed Claim.    Within thirty (30) days of a Disputed Claim becoming an Allowed Claim, the Trustee shall distribute to the Holder thereof, from the Disputed Claim Reserve, such amount of Cash as would have been distributed to such Holder if its Claim had been an Allowed Claim on the initial Distribution Date (less any taxes paid or to be paid with respect to the amounts held in the Disputed Claims

-18-

Reserve). The Trustee shall no longer reserve for and shall distribute to the Beneficiaries, pursuant to this Agreement, their pro rata share of the funds held in the Disputed Claim Reserve on account of any Disputed Claim that becomes Disallowed (to the extent that the Holder of the Disputed Claim has not received prior distributions on account of that Claim and less any taxes paid or to be paid by the Disputed Claim Reserve with respect to the amounts held in the Disputed Claim Reserve).

**4.3.** **Termination of Disputed Claims Reserves.** Each Disputed Claim Reserve shall be closed and extinguished by the Trustee when all distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and this Agreement have been made. Upon closure of a Disputed Claim Reserve, all Cash and other property held in the Disputed Claim Reserve shall revest in the Trust and such Cash and property shall be used to pay the fees and expenses of the Trust in accordance with this Agreement, and thereafter distributed to Holders of Beneficial Trust Interests in accordance with the Plan.

**4.4.** **Undeliverable Property.** If any distribution to or on behalf of a Beneficiary is returned to the Trustee or his or her agent as undeliverable, then the procedures set forth in Article V of the Plan shall control and govern. The Trustee shall have no obligation to determine the correct current address of such Beneficiary, and no distribution to such Beneficiary shall be made unless and until the Trustee is notified, in writing, by the Beneficiary of the current address of such Beneficiary within sixty (60) days of such distribution, at which time a distribution shall be made to such Beneficiary without interest; provided that such distributions shall be deemed, without further order of the Bankruptcy Court, unclaimed property under Bankruptcy Code § 347(b) at the expiration of sixty (60) days from the date of the distribution at which time, Trustee or its agent may stop payment on an outstanding check issued to such Beneficiary. After such

48958810.3

date, all unclaimed property or interest in property shall revert to the Trust to be distributed in accordance with the terms of this Agreement and the Plan, and the Claim of any other holder or Beneficiary to such property or interest in property shall be released and forever barred.

4.5.    **Payments Limited to Assets.**    All payments to be made by the Trustee to or for the benefit of any Beneficiary shall be made only from the Assets, including any proceeds from Retained Causes of Action and in accordance with the Plan.   Notwithstanding any provision herein to the contrary, the Trust shall not, and the Trustee shall not cause the Trust to, make any distributions to the extent such distributions would violate applicable law or leave the Trust with insufficient Assets to fulfill the purpose and operation of the Trust unless it is in conjunction with making a Final Distribution.

4.6.    **United States Trustee Fees and Reports.**    After the Effective Date, the Trustee shall pay as an expense of the Trust all Quarterly Fees as required under the Plan, Confirmation Order, and applicable law until the Settlor's Chapter 11 Case is closed.   After the Effective Date, the Trust shall prepare, file and serve on the U.S. Trustee such quarterly disbursement reports for the Trust as required by the U.S. Trustee for as long as the Chapter 11 Case remains open provided, however, that nothing in this Agreement shall be interpreted to alter the obligations regarding Quarterly Fees and reporting requirements set forth in Article II.C of the Plan.

4.7.    **Insurance.**    Subject to the Plan, the Trustee may use the Assets in the Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Persons or Entities serving as Trustee or administrator of the Trust on and after the Effective Date.

**ARTICLE V
BENEFICIARIES**

5.1.    **Incidents of Ownership.**  The Beneficiaries shall be the sole beneficiaries of the Trust and the Assets, and the Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Agreement, the Plan and the Confirmation Order.

5.2.    **Interest Beneficial Only.**  The ownership of a Beneficial Trust Interest shall not entitle any Beneficiary or the Settlor to any title in or to the Assets or to any right to call for a partition or division of such Assets or to require an accounting, except as specifically provided in this Agreement or in the Plan.

5.3.    **Evidence of Beneficial Interest.**  Ownership of a Beneficial Trust Interest in the Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.  The Trustee may rely on the Claims Register.

5.4.    **Notice of Transfer of Beneficial Interest and Limitations on Transfer.**

A.    Beneficial Trust Interests shall be non-assignable and non-transferable except upon death of the Beneficial Trust Interest holder or by operation of law.

B.    A permitted assignment or transfer shall not be effective until appropriate notification consistent with this Agreement and proof thereof is submitted to the Trustee in accordance with Section 13.2 of this Agreement.  The notice shall be executed by both the transferee and the transferor and as required by Bankruptcy Rule 3001(e).  The notice must clearly describe the interest transferred. The Trustee may rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation or action on the part of the Trustee.

48958810.3

C.     Notice(s) of transfer of a beneficial interest will only be recognized by the Trustee if given in accordance with the provisions hereof at least thirty (30) days prior to the initial Distribution Date. The Trustee may continue to pay all amounts to or for the benefit of the assigning or transferring Beneficiary until receipt of proper notification and proof of assignment or transfer.  The Trustee may rely upon such proof without the requirement of any further investigation.

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

**6.1.    Reliance.**  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Trustee may rely upon and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, advice of professionals or agents or other paper or document reasonably believed to be genuine and to have been signed or presented to the Trustee.

**6.2.    Parties Dealing With the Trustee.**  In the absence of actual knowledge to the contrary, any person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Assets, the Chapter 11 Case, the Chapter 11 Trustee, and the Settlor (as necessary and appropriate).  There is no obligation on any Person dealing with the Trustee to inquire into the validity, expediency, or propriety of any transaction by the Trustee or any agent of the Trustee.

**6.3.    Limited Recourse.**  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, Persons (including any agents and professionals retained by the Trustee in accordance with this Agreement) engaged in transactions with the Trust or the Trustee shall look only to the Assets to satisfy any liability incurred in connection with the carrying out of the terms of this Agreement, the Plan, or the Confirmation Order.  No provision of this Agreement shall

-22-

require the Trustee to expend or risk his or her personal funds or otherwise incur any financial liability in the performance of his or her rights or powers hereunder, if the Trustee shall have reasonable grounds for believing that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided.

**6.4.**    **Limitation of Liability.**    The Trustee and his, her or its agents, employees, officers, directors, members, managers, professionals, attorneys, accountants, advisors, and representatives shall not be subject to any personal liability whatsoever, in tort, contract, or otherwise, to any Person in connection with the Assets or the affairs of the Trust, including, but not limited to, implementing the Plan or any payment(s) or distribution(s) made pursuant to the Plan or for fulfilling any functions incidental to implementation of the Plan, except for any acts or omissions to act that are the result of their own willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing and shall not include indemnification or exculpation for breach of their own contracts with the Trust or Trustee.  Other than as set forth in the Plan or Confirmation Order, nothing in this Agreement shall be deemed to release any Beneficiary from any actions or omissions occurring prior to the Effective Date.

**6.5.**    **Non-Liability for Acts of Others.**    Except as expressly set forth in the Plan or the Confirmation Order, nothing herein shall be deemed to be an assumption by the Trustee of any of the liabilities, obligations, or duties of the Settlor or Beneficiaries and shall not be deemed to be or contain a covenant or agreement by the Trustee to assume or accept any such liability, obligation, or duty.  Any successor Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Trustee hereunder, and any statement or representation made by a predecessor Trustee or his or her agents as to the assets comprising the Assets or as to any other fact bearing upon the prior administration of the Trust, so long as he or she has a good faith basis

48958810.3

to do so. The Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Trustee or successor Trustee shall not be liable for any act or omission of any predecessor Trustee, nor have a duty to enforce any claims against any predecessor Trustee on account of any such act or omission.

## ARTICLE VII
## SELECTION, REMOVAL AND COMPENSATION OF TRUSTEE

**7.1.    Initial Trustee.**  The initial Trustee shall be David A. Wender, solely in his capacity as trustee and not in his individual capacity.

**7.2.    Term of Service.**  The Trustee shall serve until (a) the completion of all the Trustee's duties, responsibilities and obligations under this Agreement and/or the Plan; (b) termination of the Trust in accordance with this Agreement and the Plan; or (c) the Trustee's death or dissolution, incapacitation, resignation, or removal, as set forth below or as provided for in the Plan.

**7.3.    Removal of a Trustee.**  Subject to the Plan, if removal of the Trustee is sought from the Bankruptcy Court by a motion for cause (or similar motion) made by a holder of a Beneficial Trust Interest, then the Trustee is entitled to oppose such motion and to be reimbursed his or her reasonable attorneys' fees and expenses in connection with such objection from the Assets of the Trust if the Trustee is successful.

**7.4.    Resignation of Trustee.**  The Trustee may resign at any time by giving at least thirty (30) days' written notice to holders of Beneficial Trust Interests of the Trustee's intention to do so.  In the event of a resignation, the resigning Trustee shall render a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.  The resignation shall be effective on the later of (a) the date specified in the notice;

-24-

(b) the date that is thirty days (30) after the date the notice is delivered; or (c) the date the accounting described in the preceding sentence is delivered.

**7.5.    Appointment of Successor Trustee.**  Subject to the Plan, upon the resignation, death, incapacity, or removal of a Trustee, the Bankruptcy Court shall appoint a successor Trustee to fill the vacancy so created.  Incapacitation for purposes of this Article VII shall mean that the Trustee is unable to perform the duties required of him/her under the Plan and this Agreement for a period of thirty (30) consecutive calendar days.  If the Trustee becomes incapacitated, the Bankruptcy Court shall promptly appoint a successor Trustee.  Any successor Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Trustee and all of the successor Trustee's heirs and legal and personal representatives, successors or assigns.  Notwithstanding anything in this Agreement, in the event that a successor Trustee is not appointed within sixty (60) days of the occurrence or effectiveness, as applicable, of the prior Trustee's resignation, death, incapacity, or removal, a Beneficiary shall be authorized to request the Bankruptcy Court appoint a successor Trustee.

**7.6.    Powers and Duties of Successor Trustee.**  A successor Trustee shall have all the rights, privileges, powers, and duties of the predecessor Trustee under this Agreement, the Plan and the Confirmation Order.

**7.7.    Trust Continuance.**  The death, incapacity, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

**7.8.    Professional Compensation and Costs of Administration/Trust Expenses and Professional Fees.**

A.    The Trustee shall be compensated at the hourly rate of $800 per hour plus reimbursement for all reasonable and necessary expenses.  In addition, subject to this Agreement and the Plan, the Trustee may retain and compensate professionals and agents (including himself/herself) as provided for in Section 3.7 of this Agreement.  Fees and expenses of the Trust and its professionals shall be paid from the Liquidation Trust Expense Reserve.

**7.9.    Reporting and Filing Requirements.**

A.    Within sixty (60) days after the last day of each calendar year in which the Trust shall remain in existence, the Trustee shall file a report with the Bankruptcy Court of all Assets held and received by the Trust, all Cash disbursed to Beneficiaries, and all fees, income, and expenses related to the Trust during the preceding calendar year.  The Trustee's report shall be available to any Beneficiary upon written request.

B.    The Trustee shall also timely prepare, file and distribute such additional statements, reports and submissions as may be necessary to cause the Trust and the Trustee to be in compliance with applicable law, such as the filing of tax or informational returns.

C.    The Trustee shall provide such additional statements, reports, submissions and information to Beneficiaries upon reasonable request, including without limitation, periodic updates on the status of the Trust, its Assets (including tax refunds), and the projected timing of future distributions (to the extent known by the Trustee).

**ARTICLE VIII**
**TRUST RIGHTS AND OBLIGATIONS**

**8.1.    Tax Returns.** The Trustee shall cause to be prepared and file tax returns treating the Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations.

-26-

48958810.3

**8.2.** **Trust Reporting.**  Subject to Article III of this Agreement, to the extent reasonably practicable and unless otherwise ordered by the Bankruptcy Court, the Trustee shall, promptly after the preparation and filing of the tax returns for each calendar year in which the Trust is in existence, send to each qualifying Beneficiary that received a distribution during the previous calendar year, a statement setting forth the Beneficiary's share of items of income, gain, loss, deduction, or credit and will instruct all such Holders to report such items on their U.S. federal income tax returns.  Such a statement shall also be sent to each Beneficiary within 120 days of the dissolution of the Trust and the filing of the Trust's final tax return.  The Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Plan and Confirmation Order relating to Disputed Claims) to the Beneficiaries in accordance with their relative beneficial interests in the Trust, as determined pursuant to this Agreement.

**8.3.** **Implementation of Plan.**  In addition to the Trustee's rights and duties with respect to the Trust set forth herein, and subject to the Plan and Confirmation Order, on and after the Effective Date, the Trustee is authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

**ARTICLE IX**
**MAINTENANCE OF BOOKS AND RECORDS**

**9.1.** **Debtor's Books and Records.**  Subject to the Plan and unless otherwise provided therein, on the Effective Date, the Trust shall: (a) to the extent provided for in the Plan, take possession of all books, records, and files of the Settlor and its Estate, in all forms including both electronic and hard copy; and (b) provide for the retention and storage of such books, records, and files until such time as the Trustee determines, in accordance with the Plan and this Agreement, that retention of same is no longer necessary or required.

48958810.3

9.2.    **Books and Records of the Trust.**    The Trustee shall maintain books and records containing a description of all Trust property from time to time constituting the Assets and an accounting of all receipts and disbursements for the Trust.  The Trustee shall furnish to any Beneficiary upon written request an annual statement of receipts and disbursements, including a summary of all income and expenses of the Trust.

**ARTICLE X**
**DURATION OF TRUST**

10.1.    **Duration.**  The Trust shall become effective upon the Effective Date of the Plan, and the Trust and its provisions herein shall remain and continue in full force and effect until the Trust is terminated.

10.2.    **Termination.**  Subject to the Plan, the Trustee shall be discharged and the Trust shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Assets have been liquidated, (c) all duties and obligations of the Trustee hereunder and the Plan have been fulfilled, (d) all distributions required to be made by the Trust under the Plan a have been made, and (e) the Chapter 11 Case has been closed, but in no event shall the Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion by the Trustee prior to the fifth anniversary, or the end of any extension period approved by the Bankruptcy Court, determines that a fixed period extension not to exceed five (5) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service, to the extent required under applicable law at that time, that any further extension would not adversely affect the status of the Trust as a liquidating trust for U.S. federal income tax purposes, is necessary to facilitate or complete the liquidation, recovery and distribution of the Assets to the Beneficiaries.

48958810.3

**10.3.** **Continuance of Trust for Winding Up.** After the termination of the Trust and for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until the Trustee's duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Trust. The Trustee and Trust shall dispose of the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Trustee in a commercially reasonably manner. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust and after final distributions of the Trust are made, the Trustee shall have no further duties or obligations hereunder. For the avoidance of doubt, the limitations on liability and indemnification rights contained in Article VI hereof shall apply to any actions taken by the Trustee and his professionals during the course of winding up the affairs of the Trust.

**ARTICLE XI**
**TAX TREATMENT OF THE TRUST**

**11.1.** **Intention of Parties to Establish Grantor Trust.** This Agreement is intended to create a grantor trust for U.S. federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust. For all U.S. federal income tax purposes, the Beneficiaries of the Trust will be treated as grantors and owners thereof and it is intended that the Trust be classified as a liquidating trust under Treasury Regulation Section 301.7701–4(d) and that the Trust is owned by the Beneficiaries. Accordingly, for U.S. federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution of an undivided interest in the Assets and then contributed such interests to the Trust. Accordingly, the Trust shall, in an expeditious but orderly manner, and pursuant to the terms of this Agreement, the Plan and the Confirmation Order, liquidate and convert to Cash the Assets, make timely distributions to the Beneficiaries pursuant to the Plan, Confirmation Order and this

48958810.3

Agreement, and not unduly prolong the Trust's duration unnecessarily. The Trust shall not be deemed a successor in interest of the Settlor for any purpose other than as specifically set forth herein, the Plan and Confirmation Order.

**11.2.** __Tax Returns.__  In accordance with the Plan and this Agreement, the Trustee shall cause the preparation and filing of tax returns treating the Trust, except with respect to any Disputed Claims Reserve (see Section 4.2), as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The Trust's taxable income, gain, loss, deduction or credit will be allocated to each one of the Beneficiaries in accordance with their relative Beneficial Trust Interests.

**11.3.** __Valuation of Assets.__  As soon as practicable after the Effective Date, the Trustee (to the extent that he or she deems it necessary or appropriate in the reasonable exercise of his or her discretion) shall, in good faith and in consultation with an investment advisor or other professional, value the Assets, and shall apprise the Beneficiaries of such valuation (but the Trust is not required to engage an expert to make such a valuation) for tax purposes. The valuation shall be used consistently by all parties (including the Settlor, the Trustee, and the Beneficiaries) for all purposes, including for U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the Assets.

**11.4.** __Disputed Claims Reserve.__  In the event there is a Disputed Claim Reserve, the Trustee shall file any required income tax returns with respect to any income attributable to the Disputed Claims Reserve, consistent with its treatment as a DOF (see Section 4.2 hereof) and shall pay any U.S. federal, state and local income taxes attributable to the Disputed Claims Reserve, based on the items of income, deduction, credit or loss allocable thereto.

**11.5.** __Determination of Taxes.__  The Trustee may request a determination of any local, state and/or U.S. federal taxes of the Debtor, the Settlor or of the Trust, including the Disputed Claims

Reserve, under Bankruptcy Code§ 505(b) for all returns filed for, or on behalf of, the Debtor (to the extent necessary and appropriate), the Settlor and the Trust for all taxable periods through the dissolution of the Trust, and to take any and all action necessary to obtain payment of any tax refund(s) due to the Debtor (to the extent necessary and appropriate), the Settlor, its Estate and/or the Trust.  All earnings of the Trust shall be currently taxable to the Beneficiaries in the year in which such earnings are realized, including earnings retained in any established reserves (except with respect to the Disputed Claims Reserve, to the extent provided otherwise herein), in accordance with their respective rights to such earnings.  Subject to Section 4.2 hereof, the Trust is intended to qualify as a liquidating trust that is a "grantor trust" for U.S. federal and applicable state income tax purposes, and the Trustee shall use his or her best efforts to operate and maintain the Trust in compliance with the Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, Treasury Regulation Sections 1.671-4(a) and 301.7701-4(d) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service.

**11.6.**    **Filing, Reporting, Withholding.**

A.    The Trust shall comply with all withholding and reporting requirements imposed by any U.S. federal, state, local, or foreign taxing authority regarding the Trust's tax obligations, if any, and all distributions made by the Trust shall be subject to any such withholding and reporting requirements.  The Trust is also authorized to make tax elections on behalf of the Trust. The Trustee or its agent may require any Beneficiary to furnish to the Trustee in writing his/her or its Employer or Taxpayer Identification Number as assigned by the IRS or a complete and executed IRS Form W-9, W-8 or similar tax form and the Trustee may condition any distribution upon receipt of such identification number or document in his or her discretion.

48958810.3

B.      Notwithstanding anything herein to the contrary, each holder of Beneficial Trust Interest that has received a distribution of cash under the Plan and this Agreement will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such distribution.  The Trustee or its agent shall be authorized and fully protected in withholding and remitting to the appropriate taxing authority any required amounts from a Distribution.  All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders of Claims for all purposes of this Agreement.

## ARTICLE XII
## WIND-DOWN

**12.1.   Wind-Down of Settlor.**  In addition to the Trustee's rights and duties with respect to the Trust as set forth herein, on and after the Effective Date, the Trustee shall also have the power and authority to take any action necessary to wind down the Debtor and the Settlor's Estate.

## ARTICLE XIII
## MISCELLANEOUS

**13.1.   Jurisdiction.**  The Bankruptcy Court shall have exclusive jurisdiction over (a) the Trust and the Trustee with respect to implantation of the Plan and the administration of and activities relating to the Trust, as well as (b) any issues or disputes arising out of this Agreement and the Plan; provided, however, that notwithstanding the foregoing, the Trustee shall have the power and authority to bring any action in any court of competent jurisdiction to prosecute any Retained Causes of Action assigned to the Trust, subject to the terms of this Agreement, the Plan and the Confirmation Order.

48958810.3

**13.2.** __Notices.__  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by Trustee or the Claims Register.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile or e-mail (if receipt is confirmed) addressed as follows:

> If to the Trustee:
>
> (a)      David A. Wender, Esq.
>
> Eversheds Sutherland (US) LLP
> 999 Peachtree Street, NE, Suite 2300
> Atlanta, GA 30309-3996
> Telephone: 404.853.8175
> Facsimile: 404.853.8806
> Davidwender@eversheds-sutherland.com
>
> With a mandated copy (which shall not constitute notice) to:
>
> Nathaniel T. DeLoatch (Ga. Bar No. 216330)
> Eversheds Sutherland (US) LLP
> 999 Peachtree Street, NE, Suite 2300
> Atlanta, GA 30309-3996
> Telephone: 404.853.8175
> Facsimile: 404.853.8806
> Nathanieldeloatch@eversheds-sutherland.com

or to such other address as may from time to time be provided in written notice by the Trustee.

**13.3.** __No Bond.__  Notwithstanding any state law to the contrary, the Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

**13.4.** __Governing Law.__  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without giving effect to conflicts of law principles, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matter set forth in this Agreement, in which case such federal law shall govern.

48958810.3

**13.5.    Successors and Assigns.**  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

**13.6.    Headings.**  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

**13.7.    No Execution.**  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can bind, pledge, encumber, execute upon, garnish, or attach the Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.

**13.8.    Plan and Confirmation Order.**  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Plan except as it relates to the creation of the Trust, then the terms of the Plan shall govern and control.  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Confirmation Order, except as it relates to creation of the Trust, then the terms of the Confirmation Order shall govern and control.  For the avoidance of doubt, nothing in this Agreement is intended to expand any rights of any party or limit any obligations arising under the Plan or Confirmation Order.

**13.9.    Amendment.**  This Agreement may not be amended in a way that would make it inconsistent with the Plan or Confirmation Order absent Bankruptcy Court order.

**13.10.  Severability.**  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

-34-

**13.11.  Counterparts.**  This Agreement may be executed in one or more counterparts, including by email, pdf and/or facsimile, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

**13.12.  Further Assurances.**  The Settlor and Trustee shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement without the need for further order of the Bankruptcy Court.

**13.13.  Jurisdiction and Venue.**  The Settlor and Trustee submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement.  In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Settlor and Trustee agree to the jurisdiction (both personal and subject matter) of the State or Federal Courts located in Atlanta, Georgia.  THE SETTLOR AND TRUSTEE EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

**13.14.  Jointly Drafted.**  The Settlor and Trustee acknowledge and stipulate that this Agreement has been drafted through a joint effort of the Settlor and Trustee in furtherance of the occurrence of the Effective Date of the Plan and, therefore, shall not be construed in favor of or against any of the parties.  The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Settlor and Trustee.

**13.15.  Effective Date.**  This Agreement shall become effective on the Effective Date of the Plan.

**IN WITNESS WHEREOF**, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year written above.

48958810.3

**Liquidation Trustee**

By: _____
    Name: David A. Wender
    Title:  The Liquidation Trustee of the
    Curepoint Liquidation Trust

**Settlor**
**Curepoint, LLC**

By: _____
    Name:
    Title:

48958810.3