# EXHIBIT E

**In the Matter Of:**

CUREPOINT, LLC

22-56501-JWC

---

**HEARING**

*October 13, 2022*

---



800.211.DEPO (3376)
EsquireSolutions.com

HEARING                                    October 13, 2022
CUREPOINT, LLC                                            1

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

IN RE:  CUREPOINT, LLC

COURT FOLDER NUMBER:  22-56501-JWC

DATE:          October 13, 2022

TIME:          4:00 P.M.

BEFORE:        Honorable Jeffery W. Cavender

JOB No.:       J8792552



```
 1                A P P E A R A N C E S

 2   ON BEHALF OF DEBTOR:

 3        WILLIAM ROUNTREE, ESQUIRE

 4        WILL GEER, ESQUIRE

 5        Peachtree Rountree Leitman Klein & Geer, LLC

 6        Century Plaza 1

 7        2987 Clairmont Road, Suite 350

 8        Atlanta, Georgia 30329

 9        wrountree@rlkglaw.com

10        wgeer@rlkglaw.com

11        (404) 584-1238

12

13        DAVID A. WENDER, ESQUIRE

14        Eversheds Sutherland (US), LLP

15        999 Peachtree Street, Northeast, Suite 2300

16        Atlanta, Georgia 30309-3996

17        davidwender@eversheds-sutherland.com

18        (404) 853-8175

19

20

21

22

23

24

25
```



HEARING                                                    October 13, 2022
CUREPOINT, LLC                                                            3

```
 1   ON BEHALF OF DR. MCCORD:

 2        J. MICHAEL LEVENGOOD, ESQUIRE

 3        The Law Office of J. Michael Levengood

 4        150 South Perry Street, Suite 208

 5        Lawrenceville, Georgia 30045

 6        mlevengood@LevengoodLaw.com

 7        (678) 765-1745

 8

 9        TOM BARTON, ESQUIRE

10        Coles Barton, LLP

11        150 South Perry Street, Suite 100

12        Lawrenceville, Georgia 30046

13        tbarton@colesbarton.com

14        (770) 995-5570

15

16        AARON TODDY, ESQUIRE

17

18   ON BEHALF OF THE U.S. TRUSTEE:

19        LINDSAY KOLBA, ESQUIRE

20        Office of The United States Trustee

21        75 Ted Turner Drive, S.W., Room 362

22        Atlanta, GA 30303

23        (404) 331-4478

24

25
```



HEARING                                              October 13, 2022
CUREPOINT, LLC                                                      4

```
 1   ON BEHALF OF AMOA FINANCIAL SERVICES:

 2        MICHAEL HOLBEIN, ESQUIRE

 3        ANTHONY J. ROLLINS, ESQUIRE

 4        Smith Gambrell Russell

 5        1105 West Peachtree Street, Suite 1000

 6        Atlanta, Georgia 30309

 7        mholbein@sgrlaw.com

 8        ajrollins@sgrlaw.com

 9        (404) 815-3500

10

11   ON BEHALF OF LAFAYETTE STATE BANK:

12        DAVID GARLAND, ESQUIRE

13        Moore Clarke DuVall & Rodgers

14        2829 Old Dawson Road

15        Albany, Georgia 31707

16        dgarland@mcdr-law.com

17        (229) 888-3338

18

19   ON BEHALF OF CLG SERVICING:

20        DUSTY GILMAN, ESQUIRE

21

22

23

24

25
```



```
 1   ON BEHALF OF NEWTEK:

 2        JOHN MCCULLOUGH, ESQUIRE

 3        Aldridge Pite, LLP

 4        Fifteen Piedmont Center

 5        3575 Piedmont Road, Northeast, Suite 500

 6        Atlanta, Georgia 30305

 7        (877) 319-8840

 8

 9   ON BEHALF OF FIRST LIBERTY:

10        FRED WACHTER, ESQUIRE

11        The Wachter Law Firm

12        106 Hammond Drive Northeast,

13        Atlanta, Georgia 30328

14        (770) 973-1100

15

16   ALSO PRESENT:

17        Philip Miles

18

19

20

21

22

23

24

25
```



HEARING                                          October 13, 2022
CUREPOINT, LLC                                                  6

```
1                    C O N T E N T S

2   DECISION                                          PAGE

3        By the Court                                   10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                   P R O C E E D I N G S
 2            THE COURT OFFICER:  Good afternoon, everyone.
 3   Thank you for being prompt.  These are the
 4   continuation hearings from Curepoint, LLC.  I'm going
 5   to run through and make sure I have everyone.  If you
 6   can wait until I finish the list and then you can tell
 7   me either you're monitoring or you're not, but the
 8   main players, I'm just going to run through your names
 9   so we can get Judge Cavender on and off the bench.
10   Starting with Mr. Rountree, yes, no?
11            MR. ROUNTREE:  (Inaudible) we're all good to
12   go.
13            THE COURT OFFICER:  All right.  Mr. Geer, Mr.
14   --
15            MR. GEER:  We're all here for the Debtor.
16            THE COURT OFFICER:  -- Levengood, Mr. Toddy
17   (ph) --
18            MR. LEVENGOOD:  Present.
19            THE COURT OFFICER:  -- Mr. Barton (ph) --
20            UNKNOWN SPEAKER:  (Cross talk).
21            THE COURT OFFICER:  -- and Ms. Kolba, Mr.
22   Holbein just joined us.
23            UNKNOWN SPEAKER:  (Inaudible).
24            THE COURT OFFICER:  And then I have Mr.
25   Garland (ph), Mr. Gilman (ph) --
```



```
1            MR. GARLAND:  Yes, ma'am.

2            THE COURT OFFICER:  Thank you.  Mr. Gilman,

3   Mr. McCullough.

4            MR. GILMAN:  Present.

5            MR. MCCULLOUGH:  Yes, ma'am.

6            THE COURT OFFICER:  And Mr. Wachter?

7            MR. WACHTER:  Yes, ma'am.

8            THE COURT OFFICER:  All right.  Anyone else

9   that needs to make an appearance?  I see also that I

10  have Philip Miles (ph) on the line.

11           MR. MILES:  Yes, ma'am.

12           THE COURT OFFICER:  Thank you.  Ms. Teresa

13  (ph), are you just monitoring?

14           MS. TERESA:  That's correct, I'm just

15  observing.

16           THE COURT OFFICER:  Thank you.  Anyone else

17  that needs to make an appearance or is monitoring?

18  All right.  Judge Cavender will join us shortly.

19  Thank you, all.

20           Ladies and gentlemen, Judge Cavender will

21  join us shortly.  Thank you.

22           Ladies and gentlemen, court will come to

23  order.  Your Honor, these are the continuation

24  hearings from yesterday in Curepoint, LLC, on a final

25  hearing on the Emergency Motion by Debtor for
```



1   Authority to Use Cash Collateral, the Motion by Mark

2   McCord (ph) to appoint Chapter 11 Trustee, the Motion

3   by the U.S. Trustee for an Order directing the

4   appointment of Chapter 11 Trustee, the Motion by AMOA

5   Finance to appoint a trustee, and the Amended

6   Emergency Motion by Debtor for the Authority to Sell

7   Assets Free and Clear of Liens.

8           THE COURT:  Good afternoon.  Let's have

9   appearances for the record.  First for Curepoint, Mr.

10  Geer and Mr. Rountree?

11          MR. GEER:  Yes, Your Honor, Will Geer for

12  Curepoint, LLC.

13          MR. ROUNTREE:  Will Rountree, Your Honor, for

14  Curepoint also.

15          THE COURT:  And for Dr. McCord, Mr.

16  Levengood?

17          MR. LEVENGOOD:  Yes, Your Honor, Michael

18  Levengood and together with me are Tom Barton and

19  Aaron Toddy for Dr. McCord.

20          THE COURT:  And for the U.S. Trustee, Ms.

21  Kolba?

22          MS. KOLBA:  Good afternoon, Your Honor,

23  Lindsay Kolba on behalf of the United States Trustee.

24          THE COURT:  And for AMOA Finance, Mr.

25  Holbein?



HEARING                                                         October 13, 2022
CUREPOINT, LLC                                                          10

```
 1              MR. HOLBEIN:  Good afternoon, Your Honor.
 2   Michael Holbein for AMOA Finance and in my office with
 3   me is A.J. Rollins, another attorney in my law firm,
 4   representing AMOA Finance.
 5              THE COURT:  And for Lafayette State Bank, Mr.
 6   Garland?
 7              MR. GARLAND:  Yes, sir, Your Honor.  I'm
 8   David Garland on behalf of Lafayette State Bank.
 9              THE COURT:  And for CLG Servicing, Mr.
10   Gilman?
11              MR. GILMAN:  Dusty (ph) Gilman (inaudible)
12   appearing on behalf of CLG Servicing, Your Honor.
13   Just monitoring.  Thank you.
14              THE COURT:  All right.  Thank you, Mr.
15   Gilman.  And for Newtek, Mr. McCullough?
16              MR. MCCULLOUGH:  I'm sorry, Your Honor.  I
17   didn't unmute there.  John McCullough for Newtek Small
18   Business Finance (ph).
19              THE COURT:  Thank you, Mr. McCullough.  And
20   for First Liberty, Mr. Wachter.
21              MR. WACHTER:  Thank you, Your Honor.  Fred
22   Wachter for First Liberty.  We're just here monitoring
23   as well.
24              THE COURT:  Thank you so much.  Any other
25   creditor or party which wishes to make an appearance?
```



1   All right.  We are here on the Chapter 11 case of

2   Curepoint, LLC.  Before the Court are four motions.

3   One, Mark W. McCord, M.D.'s Motion to Appoint a

4   Chapter 11 Trustee, which appears at Docket Number 52.

5   The United States Trustee's Motion for an Order

6   Directing the Appointment of a Chapter 11 Trustee,

7   which appears at Docket Number 54; AMOA Finance, LLC's

8   Motion to Appoint a Chapter 11 Trustee, which appears

9   at Docket Number 68, and the Debtor's Amended

10  Emergency Motion for Authority to Sell Assets Free and

11  Clear of Liens, Claims, and Encumbrances.  First

12  (inaudible) Motion to Assume and Assign Certain

13  Executory Contracts and Leases and Establish Cure

14  Costs in Connection Therewith and to Establish Bidding

15  Procedures Governing the Proposed Sale, which appears

16  at Docket Number 75.

17          The Court has jurisdiction over the matter

18  under 28 U.S. Code Section 1334(a) and (b), 28 U.S.

19  Code Section 157(a) and (b)(1).  This is a court

20  proceeding under 28 U.S. Code Section 157(b)(2)(A) and

21  (N).  The Court heard a full day of testimony

22  yesterday with respect to the Motions and reviewed the

23  exhibits offered into evidence at the hearing.  After

24  considering the Motions, the testimony offered, the

25  exhibits admitted into evidence, the record in this



1  Chapter 11 case, and arguments of Counsel presented at

2  the hearing, the Court makes the following findings of

3  fact and conclusions of law pursuant to Federal Rule

4  of Bankruptcy Procedure 7052:

5            Debtor operates a cancer center treatment

6  center in Dublin, Georgia.  Debtor commenced this

7  Chapter 11 case on August 19, 2022, as a case under

8  Subchapter V of the Bankruptcy Code, but subsequently

9  amended its petition to remove the Subchapter V

10  designation after it was discovered Debtor had

11  liabilities exceeding the statutory limits for that

12  subchapter.  The U.S. Trustee, AMOA Finance, and Dr.

13  McCord move for appointment of a Chapter 11 Trustee

14  under either Section 1104(a)(1) or (2) of the

15  Bankruptcy Code.  The Motions were heard by the Court

16  yesterday, October 12, 2022, after due and proper

17  notice to all applicable parties in interest.  At the

18  beginning of yesterday's hearing, Counsel for the U.S.

19  Trustee announced an agreement with the Debtor in

20  resolution of the U.S. Trustee's Motion whereby the

21  Debtor consents to the appointment of a Chapter 11

22  Trustee at a specific point in time; that is in

23  conjunction with approval of a sale of the Debtor's

24  assets pursuant to the sale and bid procedures

25  proposed in the Debtors Sale Motion.  Dr. McCord and



HEARING                                                October 13, 2022
CUREPOINT, LLC                                                       13

1   AMOA Finance have not agreed to the resolution reached

2   between the Debtor and the U.S. Trustee and argued

3   that a Chapter 11 Trustee should be appointed now.

4            Thus, the ultimate question before the Court

5   is not whether a Chapter 11 Trustee should be

6   appointed in this case, the Debtor concedes that one

7   should be appointed.  The only question is when should

8   that appointment be made?  The Court begins its

9   analysis at the issues as it must with the applicable

10  statutory provisions.  Section 1104(a) of the

11  Bankruptcy Code provides, "At any time after the

12  commencement of the case, but before confirmation of a

13  plan, on request of a party in interest or the U.S.

14  Trustee and after notice and a hearing, the court

15  shall order the appointment of a trustee 1) for cause,

16  including fraud, dishonesty, incompetence, or gross

17  mismanagement of the affairs of the Debtor by current

18  management either before or after the commencement of

19  the case or similar cause; or 2) if such appointment

20  is in the interest of creditors, any equity security

21  holders, and other interests of the estate."  The

22  burden of proof on a motion under Section 1104(a) is

23  on the movants, here AMOA Finance and Dr. McCord.  Not

24  all courts agree on the standard of proof to be

25  applied to Section 1104(a) motions, with some courts



1  applying a preponderance of the evidence standard.

2  See Tradex Corp. versus Morse, 339 Bankruptcy Reporter

3  823, a 2006 decision from the District of

4  Massachusetts.  That said, most courts apply a clear

5  and convincing standard to Section 1104(a) motions, a

6  point acknowledged in the Tradex opinion.  The Court

7  is not aware of any binding precedent in the 11th

8  Circuit on the correct standard of proof, but other

9  circuit courts and bankruptcy courts in the 11th

10 Circuit have applied the clear and convincing standard

11 for appointment of a Chapter 11 trustee.  See, for

12 example, in re Marvel Entertainment Group, Inc. 140

13 F.3d 463, a 3rd Circuit decision from 1998, in re

14 Cajun Electric Power Co-Op, Inc., 69 F.3d 746, a 5th

15 Circuit Decision from 1995, and in re Climate Control

16 Mechanical Services, Inc., 585 B.R. 192, a 2018

17 decision from the bankruptcy court for the Middle

18 District of Florida.

19         The rationale for a clear and convincing

20 standard is -- as indicated in the Climate Control

21 case, is that there is a strong presumption in Chapter

22 11 cases that a debtor in possession should remain in

23 possession absent a showing of the need for a trustee.

24 This presumption is based on the belief that the

25 debtor in possession is most knowledgeable about and



HEARING                                                    October 13, 2022
CUREPOINT, LLC                                                          15

1  best able to run the debtor's business.  Because the

2  appointment of a trustee is such an extraordinary

3  remedy, the moving party must show that cause for

4  appointment of a trustee exists by clear and

5  convincing evidence.  The Court agrees with this

6  rationale and will apply a clear and convincing --

7  clear and convincing standard.

8          Section 1104(a)(1) requires the court to

9  appoint a trustee for cause, including fraud,

10  dishonesty, incompetence, or gross mismanagement of

11  affairs of the debtor by current management either

12  before or after the commencement of the case.  The

13  decision whether to appoint a trustee is fact-

14  intensive and the determination must be made on a

15  case-by-case basis.  While appointment is mandatory

16  once cause is found, it is within the court's

17  discretion on a case-by-case basis to determine

18  whether conduct rises to the level of cause.

19  Appointment of a trustee is a power which is critical

20  for the court to exercise in order to preserve the

21  integrity of the bankruptcy process and to insure that

22  the interests of creditors are served.  The inquiry

23  into whether cause exists is not limited to the

24  enumerated list of fraud, dishonesty, incompetency, or

25  gross mismanagement, but extends to similar cause.  To



1  determine whether cause exits, courts consider

2  numerous factor which can include, but are not limited

3  to the following:  1) the lack of competence -- lack

4  of competence to conduct the debtor's business

5  operations in furtherance of the debtor's fiduciary

6  obligations to creditors; 2) a failure to maintain

7  complete and accurate financial records; 3)

8  trustworthiness of the debtor; 4) the debtor's past

9  and present performance and prospects for successful

10  rehabilitation, including the debtor's ability to make

11  a -- to make reliable projections and achieve those

12  projections; 5) the trust and competence or lack

13  thereof the debtor's creditors and the business

14  community in general; 6) the existence of intercompany

15  financial transfers and potential conflicts of

16  interest; and 7) the benefits of such appointment

17  against the burdens and costs of such an appointment.

18  And I cite for those factors the in re Intercat, Inc.

19  case, 247 B.R. 911, a 2000 decision from the

20  bankruptcy court from the Southern District of Georgia

21  and in re U.S. Communications of Westchester, Inc.,

22  123 B.R. 491, a 1991 decision from the bankruptcy

23  court for the Southern District of New York.

24          Further, in the context of insiders, courts

25  have also looked to such factors as materiality of the



1 misconduct, evenhandedness in dealings with insiders

2 or affiliates, existence of preferences and fraudulent

3 transfers, unwillingness or inability of management to

4 pursue estate's causes of action, conflicts of

5 interest on the part of management, and 6) self-

6 dealing by management or waste or squandering of

7 corporate assets.

8          As previously indicated, Debtor admits that a

9 trustee is necessary to oversee and finalize the

10 proposed 363 sale and to pursue estate causes of

11 action.  The Court also heard the uncontradicted

12 evidence and expert testimony -- expert testimony from

13 Karen Fortune regarding the transfer of significant

14 amounts of cash from the Debtor's bank account to

15 entities owned or controlled by the Debtor's manager

16 for purposes of this bankruptcy case, Philip Miles.

17 The evidence clearly established that Miles caused at

18 least $2,748,777.43 of net cash to be transferred out

19 of Curepoint's bank accounts to its related entities

20 in the years preceding this case and no contrary

21 evidence was offered to establish any consideration or

22 documentation to support such transfers.

23          Specifically, the evidence established the

24 following net transfer out of Curepoint after taking

25 into account any transfers made by the same entities



1  to Curepoint.  First, $596,095.88 from Curepoint to

2  MEC Capital (ph), a Philip Miles entity.  Second,

3  $598,136.71 was Curepoint to Zero Holding, LLC (ph), a

4  Miles -- a Philip Miles related entity.  $280,404.55

5  from Curepoint to Metarie (ph), a Philip Miles owned

6  and operated entity, and $1,346,140.29 from Curepoint

7  to Northwinds Leasing, a Philip Miles and Mark Miles

8  owned and operated entity.  While all of these

9  transfers are troubling, even more troubling to the

10  Court is the fact that the Debtor failed to fully

11  disclose these transfers in the Initial Schedules and

12  Statement of Financial Affairs the Debtor signed by

13  Miles under penalty of perjury, which appears at

14  Docket Number 37, and failed to fully and properly

15  disclose the transfers to his affiliated entities in

16  the Amended Schedules and Statement of Financial

17  Affairs also signed under penalty of perjury by Miles.

18  Other testimony and evidence presented raised

19  substantial concerns as to Mr. Miles -- as to -- as to

20  Miles' honesty and trustworthiness, and his ability to

21  act as a fiduciary for the Debtor's estate without

22  conflict and without favor or animosity to particular

23  constituencies in the case.

24          So when considering the factors courts

25  typically look at, the Court finds many of the factors



HEARING                                         October 13, 2022
CUREPOINT, LLC                                              19

 1  weigh in favor of appointment of a trustee in this
 2  case -- and I'm going to go through the factors again.
 3  1) Lack of competence to conduct debtor's business
 4  operations in furtherance of the debtor's fiduciary
 5  obligations to its creditors.  While the testimony
 6  presented indicates the Debtor's underlying core
 7  business is operating properly during the pendency of
 8  this bankruptcy case, this is one of the few factors
 9  pointing in the Debtor's favor.  2) A failure to
10  maintain complete and accurate financial records.
11  Based on the schedules filed in this case, the
12  evidence is clear the Debtor has either failed to
13  maintain complete and accurate records or for whatever
14  reason, has failed to properly disclose the
15  information contained in those records in this
16  bankruptcy case.  3) The trustworthiness of the
17  Debtor.  The evidence presented established
18  significant issues with respect to trustworthiness of
19  the Debtor's current management to satisfy its
20  fiduciary obligations that a Debtor -- as the Debtor
21  in passion in this case.  4) Debtor's past and present
22  performance and prospects for successful
23  rehabilitation, including the debtor's ability make
24  reliable projections and achieve those projections.
25  No rehabilitation is at issue in this case.  A sale is



1   the only path contemplated, so the Court has not

2   considered this factor.  The trust and confidence or

3   lack thereof the debtor's creditors and the business

4   community in general.  Here, only two creditors have

5   moved for the appointment of a trustee and those two

6   creditors themselves have been parties to years of

7   litigation involving Miles and the Debtor and the

8   Court has considered this factor with that fraught

9   relationship in mind.  The Court does not give

10  significant weight to this factor as there was

11  evidence casting aspersions as both -- as to both the

12  moving creditors and the Debtor.  6) The existence of

13  intercompany financial transfers.  The expert

14  testimony presented suggests over $2 million of

15  preferential or fraudulent transferred -- transfers to

16  insiders or entities controlled by insiders.  7)

17  Unwillingness or inability of management to pursue

18  estate's causes of action.  The Debtor has already

19  acknowledged that a trustee needs to be appointed to

20  pursue estate causes of action.  8) Conflicts of

21  interest on the part of management.  The evidence

22  presented raises substantial conflicts of interest for

23  Miles as a result of the way the Debtor's business was

24  conducted pre-petition.  10) Materiality of the

25  misconduct.  The misconduct alleged by the movants and



1  for which the Court heard substantial evidence is not

2  immaterial.  And 11) the benefits of such an

3  appointment against the burdens and costs of such an

4  appointment.  This factor presents the primary factor

5  raised by the Debtor in opposition to the appointment

6  of a trustee.  The Debtor's sole offered reason to

7  delay appointment of a trustee is concern that Dr.

8  Randolph (ph) or his financing will walk away if a

9  trustee is appointed.  While the Court acknowledges

10  this risk and that appointment of a trustee will

11  probably cause some delay in the sale process, several

12  reasons lead the Court to conclude that delaying

13  appointment of a trustee is not appropriate.

14          First, the evidence was not clear that

15  appointment of a trustee will kill any potential sale

16  with Dr. Randolph.  Dr. Randolph understandably

17  prefers that a sale move forward quickly so that he

18  and the practice can move beyond the acrimony and

19  distrust that has plagued this Debtor and its owners

20  for years and he expressed concern with the

21  uncertainty and delay that appointment of a trustee

22  may bring.  He did not, however, express unwillingness

23  to consider a sale if there is a delay or a trustee is

24  in place, and the Court believes that a trustee

25  running the sale process will bring more stability to



1  the Debtor, not less, and is the best way to bring the

2  Debtor to a consummated sale.  Relatedly, although Mr.

3  Frost (ph) could not state with confidence that First

4  Liberty would finance a sale after November 30, he did

5  not indicate that November 30 was the drop-dead date

6  and he testified that First Liberty would consider a

7  deal past November 30.  Although the Court cannot

8  direct a trustee how to manage the Debtor in his or

9  her duties as trustee, the Court hopes that any

10  appointed trustee will move quickly to contact Dr.

11  Randolph to discuss the potential for moving forward

12  with a sale.

13          Second, the proposed deal is not as fully

14  formed as would normally be presented at a bid

15  procedures hearing and presents risks of its own -- of

16  its own.  There is no signed APA and Dr. Randolph was

17  asked to review an updated draft of the APA for the

18  first time on the witness stand yesterday.  The

19  proposed talking horse had not paid a deposit as of

20  the hearing and will not be required to pay one until

21  - until 10 days after an APA, whenever that may occur

22  -- 10 days after the signing of an APA, whenever that

23  may occur.  And the APA, even as amended, had issues.

24  There were several undefined terms, such as "buyer

25  parties" and "seller parties."  In particular, the



1  term, "designated contract" is undefined.  Section 3.7

2  states that it is defined in Section 1.2, but Section

3  1.2 has been reserved in the amended APA submitted at

4  the hearing.  Further, Section 1.2 of the original APA

5  filed with the Debtor's Sale Motion does not define

6  "designated contracts."  The Sale Motion contemplates

7  assumption and assignment of only two executory

8  contracts, the real property lease for the Debtor's

9  facility and the disputed lease with AMOA for the

10  LINAC (ph).  Although the Court acknowledges that it

11  does not have intimate knowledge of the Debtor's

12  operations and the contracts needed to operate it, it

13  strikes the Court as unusual for an operating business

14  like the Debtor to have only two contracts to assume

15  and assign.

16          There are significant -- there are

17  significant issues about the LINAC lease that appeared

18  to require litigation to resolve, including whether it

19  is it a lease at all.  The APA's provisions regarding

20  cure costs are confusing and seemingly contradictory.

21  Section 1.5(a) contemplates purchaser paying cure

22  costs and reducing the purchase price.  Section 9.1

23  provides the purchaser will pay the aggregate cure

24  costs of designated contracts, which is undefined, to

25  seller, unless such costs are paid from the sale



1  proceeds after closing.  It is unclear who is

2  responsible for cure costs or how that will be applied

3  to the purchase price.  A clear understanding of how

4  cure costs will be paid seems particularly important

5  given the issues with the LINAC issue and likely

6  dispute over the proper cure costs.  The Debtor's

7  books and records are being sold pursuant to Section

8  1.1(n), but there is no provision to give the future

9  trustee access to the books and records.  This is an

10 important consideration given the trustee is being

11 appointed, among other things, to investigate insider

12 transfers to -- from the Debtor.

13         Many of these issues are curable and the

14 point is not to pick apart the substantial work of

15 Debtor's Counsel, the merits of the deal, the

16 sincerity of Dr. Randolph's interests or commitment to

17 close, or the -- or the sincerity or commitment of

18 First Liberty to fund the deal.  The point is that

19 this deal, though economically attractive, feels

20 rushed and incomplete and subject to its own set of

21 risks to be on the tight schedule requested.

22         Third, the evidence raises concerns with the

23 process thus far.  AMOA's Counsel was not given access

24 to the data room for several weeks despite repeated

25 requests and the only explanation provided by Miles



1  was that he did not receive a direct request instead

2  of through Debtor's Counsel or have AMOA's Counsel --

3  Counsel's email address.  These explanations are not

4  convincing.  Further, while Miles testified to some

5  efforts to contract parties who may be interested in

6  this Debtor, the Court is not convinced that the

7  Debtor has been thoroughly marketed.

8           Finally, neither the Debtor nor the U.S.

9  Trustee have offered any authority that the Court may

10  delay appointment of a trustee after it finds cause to

11  appoint one and the Court declines to do so in this

12  case.  Although the Court appreciates the effort to

13  reach a practical solution to a difficult situation,

14  it is not convinced that proposed solution is

15  workable.  The proposal is to appoint a trustee in the

16  order approving the sale and have the trustee oversee

17  closing.  Putting aside the concerns of requiring a

18  trustee to close a sale he or she took no part in

19  negotiating or selecting, the timetable is not

20  practicable -- it is not practical.  The proposed

21  auction date is November 18th, the Friday before

22  Thanksgiving.  The closing date is set to occur no

23  later than November 30th, the Wednesday after

24  Thanksgiving.  On that timetable, a trustee -- would

25  be appointed at the earliest on the Monday before



1   Thanksgiving with the expectation of closing a $6

2   million sell of a healthcare business he or she has no

3   knowledge of within 10 days and with Thanksgiving in

4   the middle.  That is not realistic and subjects the

5   proposed sale and the trustee to substantial risk.

6            Possible solutions would be 1) move up the

7   auction date, which is not appropriate given the

8   already compressed bid procedures; 2) delay closing,

9   which is not workable under the current APA; or 3)

10  appoint -- pre-appoint a trustee with limited powers

11  to allow a smooth transition between the sale hearing

12  and closing.  The U.S. Trustee has already expressed

13  opposition to the idea of a limited purpose trustee

14  and the Court does not believe such a solution is

15  workable under the facts of this case.

16           For all these reasons, the Court determines

17  that AMOA and Dr. McCord have satisfied their burden

18  to establish cause for the appointment of a Chapter 11

19  trustee by clear and convincing evidence.  Because the

20  Court has found cause exists under 1104(a)(1), it need

21  not determine whether a trustee should be appointed

22  under 1104(a)(2).  The Court will enter an Order

23  granting the Motions to Appoint a Trustee and denying

24  the Debtor's Sale Motion for the reasons previously

25  stated.  Again, I reiterate that the intent here is



HEARING                                         October 13, 2022
CUREPOINT, LLC                                                27

1  not to kill any potential sale with Dr. Randolph and

2  the hope is that a trustee will end some of the

3  feuding and bring stability to a sale process in this

4  case.

5          With that, I would like to turn the Parties'

6  attention to cash collateral issues as I want to make

7  sure the Debtor had continuing authority to use cash

8  collateral for continued operations while we await the

9  selection and appointment of a trustee in this case.

10 Mr. Geer, I know yesterday morning, I believe, the

11 Debtor uploaded a revised 13-week budget proposed for

12 cash collateral usage.  Have you had any discussion

13 with any of the Parties relative to that budget?

14         MR. GEER:  No, Your Honor.  No discussions,

15 no objections, either.

16         THE COURT:  Let me ask -- let me just go

17 through the Parties to see if they have any objection

18 to the entry of a Order continuing the Debtor's

19 authority to use cash collateral pursuant to the

20 budget that was uploaded at Docket Number 93 yesterday

21 so that the Debtor -- to make sure that the Debtor can

22 continue operating while the U.S. Trustee selects and

23 appoints a trustee.  Let me hear first from Mr.

24 Levengood.

25         MR. LEVENGOOD:  No objection, Your Honor.



HEARING                                                          October 13, 2022
CUREPOINT, LLC                                                                  28

```
 1              THE COURT:  All right.

 2              MR. LEVENGOOD:  We support the idea of the

 3    Debtor being able to continue to operate while a

 4    trustee is appointed.

 5              THE COURT:  All right.  Thank you.  Mr.

 6    Garland?

 7              MR. GARLAND:  No objection, Your Honor.

 8              THE COURT:  All right.  Mr. McCullough?

 9              MR. MCCULLOUGH:  Your Honor, I have no

10    objection.

11              THE COURT:  Mr. Holbein?

12              MR. HOLBEIN:  Your Honor, I have a question

13    and it's -- the budget, in my understanding, was

14    materially similar to the previous budget -- I don't

15    know if the Court can answer that, but if that's the

16    case, I have no objection.

17              THE COURT:  The -- well, I will say in

18    looking at the budget it looks materially consistent

19    with previous budgets, but I didn't do a line-by-line

20    comparison.  Mr. Geer, can you answer that?

21              MR. HOLBEIN:  Yeah, understood.

22              MR. GEER:  I believe it's -- it appeared

23    materially similar as well.  It took out Debtor's

24    fees, Your Honor, Debtor's Counsel's fees -- I think

25    that was the biggest change that I saw, Your Honor.
```



1        THE COURT:  All right.  Any other creditor or

2   party in interest wish to be heard in opposition to

3   granting that -- oh, let me ask Ms. Kolba -- I'm

4   sorry?

5        MS. KOLBA:  It's all right, Your Honor.  No

6   opposition from the United States Trustee to the

7   Debtor using cash collateral.

8        THE COURT:  Thank you very much.  Any other

9   creditor or party in interest wish to be heard in

10  opposition?  Mr. Holbein?

11       MR. HOLBEIN:  Yes, Your Honor, I am --

12  haven't the -- there's an item that we (inaudible) in

13  -- in this cash collateral (ph) that was set aside for

14  the lease payment, not a direction to pay it, but set

15  aside for it.  I'm looking for it in this budget and I

16  don't see it.

17       MR. GEER:  Your Honor, just to be clear, that

18  -- that is not -- that was never intended to be a set-

19  aside, which would -- which would indicate that we

20  would actually be literally setting aside money with

21  an authority to pay only and --

22       UNKNOWN SPEAKER:  (Cross talk) --

23       MR. GEER:  -- and that's all that was.

24       MR. HOLBEIN:  But it was included in the

25  budget, it's not in this budget.  It's not (cross



1  talk) --

2          MR. GEER:  It's not there -- I didn't know

3  that it was not in there.  I guess, it will be up to

4  the trustee to determine whether that would be in

5  there, Your Honor.  I think the same authority is

6  fined (ph) and it will be up to the trustee whether to

7  pay that, Your Honor.

8          THE COURT:  Does the budget -- is it covered

9  in the budget at all?

10          MR. GEER:  (Inaudible) previous budget and

11  this is a rent -- we can put it back in, Your Honor.

12  I can just put it back in if it's not in there.

13          MR. HOLBEIN:  With that change, we don't have

14  an objection, but we need to see that in order not to

15  have an objection.

16          THE COURT:  It will obviously be up to the

17  trustee, but I would -- I think it makes sense to

18  include it, Mr. Geer.

19          MR. GEER:  I will -- I will -- we will amend

20  the budget, Your Honor, when we upload the Order.

21          THE COURT:  All right.  With that, any other

22  -- anything else we need to take up today?

23          MR. GEER:  Is this going to be a final order,

24  Your Honor?

25          THE COURT:  It's on a 13-week budget.



HEARING                                                    October 13, 2022
CUREPOINT, LLC                                                            31

1            MR. GEER:  Understood.  So --

2            THE COURT:  I would make it another interim

3  order.

4            MR. GEER:  Understood.

5            MS. KOLBA:  And generally, I believe that

6  most cash collateral orders provide for the

7  termination of authority to use cash collateral when a

8  Chapter 11 trustee is appointed, so the Chapter 11

9  trustee will probably have to come in and seek

10  authority to use cash collateral on behalf of the

11  estate.

12            THE COURT:  Yeah, my most important concern

13  is to make sure the Debtor can continue operating in

14  this interim period.

15            MR. GEER:  Understood, Your Honor.  Oh, I

16  will upload it and enter an order.

17            THE COURT:  All right.  Thank you very much.

18  Any other issue we need to take up?

19            MR. MILES:  If I may, Your Honor?  This is

20  Philip Miles, the current manager of the proceeding

21  (ph) and since I prepared that budget for purposes of

22  Debtor's Counsel, it will need to be dramatically

23  revised.

24            THE COURT:  In what way, Mr. Miles?

25            MR. MILES:  Based on a meeting I had earlier



HEARING                                                        October 13, 2022
CUREPOINT, LLC                                                            32

1  today with the physicians.

2         THE COURT:  I -- we're not going to make any

3  revisions to the budget at this point.  We'll let the

4  new -- the trustee deal with any revisions that need

5  to be made.

6         MR. MILES:  Thank you -- thank you for

7  hearing me, Your Honor.

8         THE COURT:  All right.  Thank you.  Any other

9  issue we need to take up today?

10         MR. GEER:  I don't believe so, Your Honor.

11         THE COURT:  All right.  Thank you all very

12  much.

13         THE COURT OFFICER:  Court is concluded.

14  Thank you.

15         (Whereupon, at 4:35 p.m., the proceeding was

16  concluded.)

17

18

19

20

21

22

23

24

25



HEARING                                                    October 13, 2022
CUREPOINT, LLC                                                           33

1         C E R T I F I C A T I O N

2

3    Esquire Deposition Solutions, does hereby certify

4    that through an independent contractor we have

5    transcribed the audio, and that the foregoing is a

6    true and complete transcription of the audio

7    transcribed.

8    Inaudible or indiscernible passages of sound are

9    denoted.

10

11   IN WITNESS WHEREOF, I do hereunto set my hand on this

12   30th day of October, 2022.

13

14

15              /S/

16   For Esquire Deposition Solutions

17

18

19

20

21

22

23

24

25



HEARING
CUREPOINT, LLC

---

**$**

---

**$1,346,140.
29**
  18:6

**$2**
  20:14

**$2,748,777.
43**
  17:18

**$280,404.55**
  18:4

**$596,095.88**
  18:1

**$598,136.71**
  18:3

**$6**
  26:1

---

**(**

---

**(2)**
  12:14

**(b)**
  11:18

**(b)(1)**
  11:19

**(N)**
  11:21

---

**1**

---

**1**
  13:15
  16:3 19:3
  26:6

**1.1(n)**
  24:8

**1.2**
  23:2,3,4

**1.5(a)**
  23:21

**10**
  20:24
  22:21,22
  26:3

**11**
  9:2,4
  11:1,4,6,
  8 12:1,7,
  13,21
  13:3,5
  14:11,22
  21:2
  26:18
  31:8

**1104(a)**
  13:10,22,
  25 14:5

**1104(a)(1)**
  12:14
  15:8
  26:20

**1104(a)(2)**
  26:22

**11th**
  14:7,9

**12**
  12:16

**123**
  16:22

**13-week**
  27:11
  30:25

**1334(a)**
  11:18

**140**
  14:12

**157(a)**

**11:19**

**157(b)(2)(
a)**
  11:20

**18th**
  25:21

**19**
  12:7

**192**
  14:16

**1991**
  16:22

**1995**
  14:15

**1998**
  14:13

---

**2**

---

**2**
  13:19
  16:6 19:9
  26:8

**2000**
  16:19

**2006**
  14:3

**2018**
  14:16

**2022**
  12:7,16

**247**
  16:19

**28**
  11:18,20

---

**3**

---

**3**

**16:7
19:16
26:9**

**3.7**
  23:1

**30**
  22:4,5,7

**30th**
  25:23

**339**
  14:2

**363**
  17:10

**37**
  18:14

**3rd**
  14:13

---

**4**

---

**4**
  16:8
  19:21

**463**
  14:13

**491**
  16:22

**4:35**
  32:15

---

**5**

---

**5**
  16:12

**52**
  11:4

**54**
  11:7

**585**

**14:16**

**5th**
  14:14

---

**6**

---

**6**
  16:14
  17:5
  20:12

**68**
  11:9

**69**
  14:14

---

**7**

---

**7**
  16:16
  20:16

**7052**
  12:4

**746**
  14:14

**75**
  11:16

---

**8**

---

**8**
  20:20

**823**
  14:3

---

**9**

---

**9.1**
  23:22

**911**
  16:19



HEARING
CUREPOINT, LLC

October 13, 2022
Index: 93..authority

**93**
27:20

---

**A**

---

**A.J.**
10:3

**Aaron**
9:19

**ability**
16:10
18:20
19:23

**absent**
14:23

**access**
24:9,23

**account**
17:14,25

**accounts**
17:19

**accurate**
16:7
19:10,13

**achieve**
16:11
19:24

**acknowledged**
14:6
20:19

**acknowledges**
21:9
23:10

**acrimony**
21:18

**act**
18:21

**action**

17:4,11
20:18,20

**address**
25:3

**admits**
17:8

**admitted**
11:25

**affairs**
13:17
15:11
18:12,17

**affiliated**
18:15

**affiliates**
17:2

**afternoon**
7:2 9:8,
22 10:1

**aggregate**
23:23

**agree**
13:24

**agreed**
13:1

**agreement**
12:19

**agrees**
15:5

**alleged**
20:25

**amend**
30:19

**amended**
9:5 11:9
12:9
18:16
22:23
23:3

**AMOA**
9:4,24
10:2,4
11:7
12:12
13:1,23
23:9
26:17

**AMOA's**
24:23
25:2

**amounts**
17:14

**analysis**
13:9

**animosity**
18:22

**announced**
12:19

**APA**
22:16,17,
21,22,23
23:3,4
26:9

**APA's**
23:19

**appearance**
8:9,17
10:25

**appearances**
9:9

**appeared**
23:17
28:22

**appearing**
10:12

**appears**
11:4,7,8,
15 18:13

**applicable**
12:17

13:9

**applied**
13:25
14:10
24:2

**apply**
14:4 15:6

**applying**
14:1

**appoint**
9:2,5
11:3,8
15:9,13
25:11,15
26:10,23

**appointed**
13:3,6,7
20:19
21:9
22:10
24:11
25:25
26:21
28:4 31:8

**appointment**
9:4 11:6
12:13,21
13:8,15,
19 14:11
15:2,4,
15,19
16:16,17
19:1 20:5
21:3,4,5,
7,10,13,
15,21
25:10
26:18
27:9

**appoints**
27:23

**appreciates**
25:12

**approval**
12:23

**approving**
25:16

**argued**
13:2

**arguments**
12:1

**aspersions**
20:11

**assets**
9:7 11:10
12:24
17:7

**assign**
11:12
23:15

**assignment**
23:7

**assume**
11:12
23:14

**assumption**
23:7

**attention**
27:6

**attorney**
10:3

**attractive**
24:19

**auction**
25:21
26:7

**August**
12:7

**authority**
9:1,6
11:10
25:9
27:7,19



29:21
30:5
31:7,10

await
27:8

aware
14:7

───────────

**B**
───────────

B.R.
14:16
16:19,22

back
30:11,12

bank
10:5,8
17:14,19

bankruptcy
12:4,8,15
13:11
14:2,9,17
15:21
16:20,22
17:16
19:8,16

Barton
7:19 9:18

based
14:24
19:11
31:25

basis
15:15,17

beginning
12:18

begins
13:8

behalf
9:23
10:8,12

31:10

belief
14:24

believes
21:24

bench
7:9

benefits
16:16
21:2

bid
12:24
22:14
26:8

Bidding
11:14

biggest
28:25

binding
14:7

books
24:7,9

bring
21:22,25
22:1 27:3

budget
27:11,13,
20 28:13,
14,18
29:15,25
30:8,9,
10,20,25
31:21
32:3

budgets
28:19

burden
13:22
26:17

burdens

16:17
21:3

business
10:18
15:1
16:4,13
19:3,7
20:3,23
23:13
26:2

buyer
22:24

───────────

**C**
───────────

Cajun
14:14

cancer
12:5

Capital
18:2

case
11:1
12:1,7
13:6,12,
19 14:21
15:12
16:19
17:16,20
18:23
19:2,8,
11,16,21,
25 25:12
26:15
27:4,9
28:16

case-by-
case
15:15,17

cases
14:22

cash

9:1
17:14,18
27:6,7,
12,19
29:7,13
31:6,7,10

casting
20:11

caused
17:17

Cavender
7:9 8:18,
20

center
12:5,6

change
28:25
30:13

Chapter
9:2,4
11:1,4,6,
8 12:1,7,
13,21
13:3,5
14:11,21
26:18
31:8

circuit
14:8,9,
10,13,15

cite
16:18

Claims
11:11

clear
9:7 11:11
14:4,10,
19 15:4,
6,7 19:12
21:14
24:3
26:19

29:17

CLG
10:9,12

Climate
14:15,20

close
24:17
25:18

closing
24:1
25:17,22
26:1,8,12

Co-op
14:14

Code
11:18,19,
20 12:8,
15 13:11

collateral
9:1 27:6,
8,12,19
29:7,13
31:6,7,10

commenced
12:6

commencement
13:12,18
15:12

commitment
24:16,17

Communications
16:21

community
16:14
20:4

comparison
28:20

competence



16:3,4,12
19:3

complete
16:7
19:10,13

compressed
26:8

concedes
13:6

concern
21:7,20
31:12

concerns
18:19
24:22
25:17

conclude
21:12

concluded
32:13,16

conclusions
12:3

conduct
15:18
16:4 19:3

conducted
20:24

confidence
20:2 22:3

confirmation
13:12

conflict
18:22

conflicts
16:15
17:4
20:20,22

confusing
23:20

conjunction
12:23

Connection
11:14

consents
12:21

consideration
17:21
24:10

considered
20:2,8

consistent
28:18

constituencies
18:23

consummated
22:2

contact
22:10

contained
19:15

contemplated
20:1

contemplates
23:6,21

context
16:24

continuation
7:4 8:23

continue
27:22
28:3
31:13

continued
27:8

continuing
27:7,18

contract
23:1 25:5

contracts
11:13
23:6,8,
12,14,24

contradictory
23:20

contrary
17:20

Control
14:15,20

controlled
17:15
20:16

convinced
25:6,14

convincing
14:5,10,
19 15:5,
6,7 25:4
26:19

core
19:6

Corp
14:2

corporate
17:7

correct
8:14 14:8

costs
11:14
16:17
21:3
23:20,22,
24,25
24:2,4,6

Counsel
12:1,18
24:15,23
25:2
31:22

Counsel's
25:3
28:24

court
7:2,13,
16,19,21,
24 8:2,6,
8,12,16,
22 9:8,
15,20,24
10:5,9,
14,19,24
11:2,17,
19,21
12:2,15
13:4,8,14
14:6,17
15:5,8,20
16:20,23
17:11
18:10,25
20:1,8,9
21:1,9,
12,24
22:7,9
23:10,13
25:6,9,
11,12
26:14,16,
20,22
27:16
28:1,5,8,
11,15,17
29:1,8
30:8,16,
21,25
31:2,12,
17,24
32:2,8,
11,13

court's
15:16

courts
13:24,25
14:4,9
16:1,24
18:24

covered
30:8

creditor
10:25
29:1,9

creditors
13:20
15:22
16:6,13
19:5
20:3,4,6,
12

critical
15:19

cross
7:20
29:22,25

curable
24:13

cure
11:13
23:20,21,
23 24:2,
4,6

Curepoint
7:4 8:24
9:9,12,14
11:2
17:24
18:1,3,5,
6

Curepoint's
17:19

current
13:17



Case 22-56501-pmb   Doc 336-5   Filed 10/11/23   Entered 10/11/23 13:20:48   Desc
Exhibit E   Page 40 of 48

HEARING
CUREPOINT, LLC

October 13, 2022
Index: data..entry

15:11
19:19
26:9
31:20

---

**D**

data
24:24

date
22:5
25:21,22
26:7

David
10:8

day
11:21

days
22:21,22
26:3

deal
22:7,13
24:15,18,
19 32:4

dealing
17:6

dealings
17:1

debtor
7:15 8:25
9:6 12:5,
6,10,19,
21 13:2,
6,17
14:22,25
15:11
16:8 17:8
18:10,12
19:12,17,
20 20:7,
12,18
21:5,19

22:1,2,8
23:14
24:12
25:6,7,8
27:7,11,
21 28:3
29:7
31:13

debtor's
11:9
12:23
15:1
16:4,5,8,
10,13
17:14,15
18:21
19:3,4,6,
9,19,21,
23 20:3,
23 21:6
23:5,8,11
24:6,15
25:2
26:24
27:18
28:23,24
31:22

Debtors
12:25

decision
14:3,13,
15,17
15:13
16:19,22

declines
25:11

define
23:5

defined
23:2

delay
21:7,11,
21,23
25:10

26:8

delaying
21:12

denying
26:23

deposit
22:19

designated
23:1,6,24

designation
12:10

determination
15:14

determine
15:17
16:1
26:21
30:4

determines
26:16

difficult
25:13

direct
22:8 25:1

directing
9:3 11:6

direction
29:14

disclose
18:11,15
19:14

discovered
12:10

discretion
15:17

discuss
22:11

discussion

27:12

discussions
27:14

dishonesty
13:16
15:10,24

dispute
24:6

disputed
23:9

District
14:3,18
16:20,23

distrust
21:19

Docket
11:4,7,9,
16 18:14
27:20

documentation
17:22

draft
22:17

dramatically
31:22

drop-dead
22:5

Dublin
12:6

due
12:16

Dusty
10:11

duties
22:9

---

**E**

earlier
31:25

earliest
25:25

economically
24:19

effort
25:12

efforts
25:5

Electric
14:14

email
25:3

Emergency
8:25 9:6
11:10

Encumbrances
11:11

end
27:2

enter
26:22
31:16

Entertainment
14:12

entities
17:15,19,
25 18:15
20:16

entity
18:2,4,6,
8

entry



27:18

**enumerated**
15:24

**equity**
13:20

**establish**
11:13,14
17:21
26:18

**established**
17:17,23
19:17

**estate**
13:21
17:10
18:21
20:20
31:11

**estate's**
17:4
20:18

**evenhandedness**
17:1

**evidence**
11:23,25
14:1 15:5
17:12,17,
21,23
18:18
19:12,17
20:11,21
21:1,14
24:22
26:19

**exceeding**
12:11

**executory**
11:13
23:7

**exercise**
15:20

**exhibits**
11:23,25

**existence**
16:14
17:2
20:12

**exists**
15:4,23
26:20

**exits**
16:1

**expectation**
26:1

**expert**
17:12
20:13

**explanation**
24:25

**explanations**
25:3

**express**
21:22

**expressed**
21:20
26:12

**extends**
15:25

**extraordinary**
15:2

———————

**F**

**F.3d**
14:13,14

**facility**
23:9

**fact**
12:3

18:10

**fact-**
15:13

**factor**
16:2
20:2,8,10
21:4

**factors**
16:18,25
18:24,25
19:2,8

**facts**
26:15

**failed**
18:10,14
19:12,14

**failure**
16:6 19:9

**favor**
18:22
19:1,9

**Federal**
12:3

**feels**
24:19

**fees**
28:24

**feuding**
27:3

**fiduciary**
16:5
18:21
19:4,20

**filed**
19:11
23:5

**final**
8:24
30:23

**finalize**

17:9

**Finally**
25:8

**finance**
9:5,24
10:2,4,18
11:7
12:12
13:1,23
22:4

**financial**
16:7,15
18:12,16
19:10
20:13

**financing**
21:8

**findings**
12:2

**finds**
18:25
25:10

**fined**
30:6

**finish**
7:6

**firm**
10:3

**Florida**
14:18

**formed**
22:14

**Fortune**
17:13

**forward**
21:17
22:11

**found**
15:16
26:20

**fraud**
13:16
15:9,24

**fraudulent**
17:2
20:15

**fraught**
20:8

**Fred**
10:21

**Free**
9:7 11:10

**Friday**
25:21

**Frost**
22:3

**full**
11:21

**fully**
18:10,14
22:13

**fund**
24:18

**furtherance**
16:5 19:4

**future**
24:8

———————

**G**

**Garland**
7:25 8:1
10:6,7,8
28:6,7

**Geer**
7:13,15
9:10,11
27:10,14
28:20,22
29:17,23



HEARING
CUREPOINT, LLC

October 13, 2022
Index: general..join

| | | | | |
|---|---|---|---|---|
| 30:2,10, 18,19,23 31:1,4,15 32:10 | 26:2 **hear** 27:23 | 17 30:5, 7,11,20, 24 31:15, 19 32:7, 10 | 23:18 **incompetence** 13:16 15:10 | 13:13,20 16:16 17:5 20:21,22 29:2,9 |

**general**
16:14
20:4

**generally**
31:5

**gentlemen**
8:20,22

**Georgia**
12:6
16:20

**Gilman**
7:25 8:2,
4 10:10,
11,15

**give**
20:9 24:8

**good**
7:2,11
9:8,22
10:1

**Governing**
11:15

**granting**
26:23
29:3

**gross**
13:16
15:10,25

**Group**
14:12

**guess**
30:3

―――――――

**H**

―――――――

**healthcare**

**heard**
11:21
12:15
17:11
21:1
29:2,9

**hearing**
8:25
11:23
12:2,18
13:14
22:15,20
23:4
26:11
32:7

**hearings**
7:4 8:24

**Holbein**
7:22 9:25
10:1,2
28:11,12,
21 29:10,
11,24
30:13

**holders**
13:21

**Holding**
18:3

**honesty**
18:20

**Honor**
8:23
9:11,13,
17,22
10:1,7,
12,16,21
27:14,25
28:7,9,
12,24,25
29:5,11,

**hope**
27:2

**hopes**
22:9

**horse**
22:19

―――――――

**I**

―――――――

**idea**
26:13
28:2

**immaterial**
21:2

**important**
24:4,10
31:12

**inability**
17:3
20:17

**inaudible**
7:11,23
10:11
11:12
29:12
30:10

**include**
16:2
30:18

**included**
29:24

**including**
13:16
15:9
16:10
19:23

**incompetency**
15:24

**incomplete**
24:20

**information**
19:15

**Initial**
18:11

**inquiry**
15:22

**insider**
24:11

**insiders**
16:24
17:1
20:16

**insure**
15:21

**integrity**
15:21

**intended**
29:18

**intensive**
15:14

**intent**
26:25

**Intercat**
16:18

**intercompany**
16:14
20:13

**interest**
12:17

**interested**
25:5

**interests**
13:21
15:22
24:16

**interim**
31:2,14

**intimate**
23:11

**investigate**
24:11

**involving**
20:7

**issue**
19:25
24:5
31:18
32:9

**issues**
13:9
19:18
22:23
23:17
24:5,13
27:6

**item**
29:12

―――――――

**J**

―――――――

**John**
10:17

**join**
8:18,21



HEARING
CUREPOINT, LLC

October 13, 2022
Index: joined..Monday

joined
    7:22

Judge
    7:9 8:18,
    20

jurisdiction
    11:17

—————

**K**
—————

Karen
    17:13

kill
    21:15
    27:1

knowledge
    23:11
    26:3

knowledgeable
    14:25

Kolba
    7:21
    9:21,22,
    23 29:3,5
    31:5

—————

**L**
—————

lack
    16:3,12
    19:3 20:3

Ladies
    8:20,22

Lafayette
    10:5,8

law
    10:3 12:3

lead

21:12

lease
    23:8,9,
    17,19
    29:14

Leases
    11:13

Leasing
    18:7

level
    15:18

Levengood
    7:16,18
    9:16,17,
    18 27:24,
    25 28:2

liabilities
    12:11

Liberty
    10:20,22
    22:4,6
    24:18

Liens
    9:7 11:11

limited
    15:23
    16:2
    26:10,13

limits
    12:11

LINAC
    23:10,17
    24:5

Lindsay
    9:23

line-by-
line
    28:19

list
    7:6 15:24

literally
    29:20

litigation
    20:7
    23:18

LLC
    7:4 8:24
    9:12 11:2
    18:3

LLC's
    11:7

looked
    16:25

—————

**M**
—————

M.d.'s
    11:3

made
    13:8
    15:14
    17:25
    32:5

main
    7:8

maintain
    16:6
    19:10,13

make
    7:5 8:9,
    17 10:25
    16:10,11
    19:23
    27:6,21
    31:2,13
    32:2

makes
    12:2
    30:17

manage
    22:8

management
    13:18
    15:11
    17:3,5,6
    19:19
    20:17,21

manager
    17:15
    31:20

mandatory
    15:15

Mark
    9:1 11:3
    18:7

marketed
    25:7

Marvel
    14:12

Massachusetts
    14:4

materiality
    16:25
    20:24

materially
    28:14,18,
    23

matter
    11:17

Mccord
    9:2,15,19
    11:3
    12:13,25
    13:23
    26:17

Mccullough
    8:3,5
    10:15,16,
    17,19
    28:8,9

MEC

18:2

Mechanical
    14:16

meeting
    31:25

merits
    24:15

Metarie
    18:5

Michael
    9:17 10:2

middle
    14:17
    26:4

Miles
    8:10,11
    17:16,17
    18:2,4,5,
    7,13,17,
    19 20:7,
    23 24:25
    25:4
    31:19,20,
    24,25
    32:6

Miles'
    18:20

million
    20:14
    26:2

mind
    20:9

misconduct
    17:1
    20:25

mismanagement
    13:17
    15:10,25

Monday
    25:25



HEARING                                                                        October 13, 2022
CUREPOINT, LLC                                                                  Index: money..ph

money
    29:20

---
**N**
---

monitoring
    7:7 8:13,
    17 10:13,
    22

morning
    27:10

Morse
    14:2

motion
    8:25 9:1,
    2,4,6
    11:3,5,8,
    10,12
    12:20,25
    13:22
    23:5,6
    26:24

motions
    11:2,22,
    24 12:15
    13:25
    14:5
    26:23

movants
    13:23
    20:25

move
    12:13
    21:17,18
    22:10
    26:6

moved
    20:5

moving
    15:3
    20:12
    22:11

names
    7:8

needed
    23:12

negotiating
    25:19

net
    17:18,24

Newtek
    10:15,17

Northwinds
    18:7

notice
    12:17
    13:14

November
    22:4,5,7
    25:21,23

Number
    11:4,7,9,
    16 18:14
    27:20

numerous
    16:2

---
**O**
---

objection
    27:17,25
    28:7,10,
    16 30:14,
    15

objections
    27:15

obligations
    16:6
    19:5,20

observing
    8:15

occur
    22:21,23
    25:22

October
    12:16

offered
    11:23,24
    17:21
    21:6 25:9

office
    10:2

OFFICER
    7:2,13,
    16,19,21,
    24 8:2,6,
    8,12,16
    32:13

operate
    23:12
    28:3

operated
    18:6,8

operates
    12:5

operating
    19:7
    23:13
    27:22
    31:13

operations
    16:5 19:4
    23:12
    27:8

opinion
    14:6

opposition
    21:5
    26:13
    29:2,6,10

order
    8:23 9:3
    11:5
    13:15
    15:20
    25:16
    26:22
    27:18
    30:14,20,
    23 31:3,
    16

orders
    31:6

original
    23:4

oversee
    17:9
    25:16

owned
    17:15
    18:5,8

owners
    21:19

---
**P**
---

p.m.
    32:15

paid
    22:19
    23:25
    24:4

part
    17:5
    20:21
    25:18

parties
    12:17
    20:6
    22:25
    25:5
    27:13,17

Parties'
    27:5

party
    10:25
    13:13
    15:3
    29:2,9

passion
    19:21

past
    16:8
    19:21
    22:7

path
    20:1

pay
    22:20
    23:23
    29:14,21
    30:7

paying
    23:21

payment
    29:14

penalty
    18:13,17

pendency
    19:7

performance
    16:9
    19:22

period
    31:14

perjury
    18:13,17

petition
    12:9

ph
    7:17,19,
    25 8:10,



HEARING
CUREPOINT, LLC

October 13, 2022
Index: Philip..Randolph's

| | | | |
|---|---|---|---|
| 13 9:2<br>10:11,18<br>18:2,3,5<br>21:8 22:3<br>23:10<br>29:13<br>30:6<br>31:21<br><br>**Philip**<br>8:10<br>17:16<br>18:2,4,5,<br>7 31:20<br><br>**physicians**<br>32:1<br><br>**pick**<br>24:14<br><br>**place**<br>21:24<br><br>**plagued**<br>21:19<br><br>**plan**<br>13:13<br><br>**players**<br>7:8<br><br>**point**<br>12:22<br>14:6<br>24:14,18<br>32:3<br><br>**pointing**<br>19:9<br><br>**possession**<br>14:22,23,<br>25<br><br>**potential**<br>16:15<br>21:15<br>22:11<br>27:1<br><br>**power** | 14:14<br>15:19<br><br>**powers**<br>26:10<br><br>**practicable**<br>25:20<br><br>**practical**<br>25:13,20<br><br>**practice**<br>21:18<br><br>**pre-appoint**<br>26:10<br><br>**pre-petition**<br>20:24<br><br>**precedent**<br>14:7<br><br>**preceding**<br>17:20<br><br>**preferences**<br>17:2<br><br>**preferential**<br>20:15<br><br>**prefers**<br>21:17<br><br>**prepared**<br>31:21<br><br>**preponderance**<br>14:1<br><br>**present**<br>7:18 8:4<br>16:9<br>19:21<br><br>**presented**<br>12:1<br>18:18<br>19:6,17<br>20:14,22 | 22:14<br><br>**presents**<br>21:4<br>22:15<br><br>**preserve**<br>15:20<br><br>**presumption**<br>14:21,24<br><br>**previous**<br>28:14,19<br>30:10<br><br>**previously**<br>17:8<br>26:24<br><br>**price**<br>23:22<br>24:3<br><br>**primary**<br>21:4<br><br>**Procedure**<br>12:4<br><br>**procedures**<br>11:15<br>12:24<br>22:15<br>26:8<br><br>**proceeding**<br>11:20<br>31:20<br>32:15<br><br>**proceeds**<br>24:1<br><br>**process**<br>15:21<br>21:11,25<br>24:23<br>27:3<br><br>**projections**<br>16:11,12<br>19:24 | **prompt**<br>7:3<br><br>**proof**<br>13:22,24<br>14:8<br><br>**proper**<br>12:16<br>24:6<br><br>**properly**<br>18:14<br>19:7,14<br><br>**property**<br>23:8<br><br>**proposal**<br>25:15<br><br>**proposed**<br>11:15<br>12:25<br>17:10<br>22:13,19<br>25:14,20<br>26:5<br>27:11<br><br>**prospects**<br>16:9<br>19:22<br><br>**provide**<br>31:6<br><br>**provided**<br>24:25<br><br>**provision**<br>24:8<br><br>**provisions**<br>13:10<br>23:19<br><br>**purchase**<br>23:22<br>24:3<br><br>**purchaser**<br>23:21,23 | **purpose**<br>26:13<br><br>**purposes**<br>17:16<br>31:21<br><br>**pursuant**<br>12:3,24<br>24:7<br>27:19<br><br>**pursue**<br>17:4,10<br>20:17,20<br><br>**put**<br>30:11,12<br><br>**Putting**<br>25:17<br><br>──────<br>**Q**<br>──────<br><br>**question**<br>13:4,7<br>28:12<br><br>**quickly**<br>21:17<br>22:10<br><br>──────<br>**R**<br>──────<br><br>**raised**<br>18:18<br>21:5<br><br>**raises**<br>20:22<br>24:22<br><br>**Randolph**<br>21:8,16<br>22:11,16<br>27:1<br><br>**Randolph's**<br>24:16 |



HEARING
CUREPOINT, LLC

October 13, 2022

rationale
  14:19
  15:6
reach
  25:13
reached
  13:1
real
  23:8
realistic
  26:4
reason
  19:14
  21:6
reasons
  21:12
  26:16,24
receive
  25:1
record
  9:9 11:25
records
  16:7
  19:10,13,
  15 24:7,9
reducing
  23:22
rehabilitat
ion
  16:10
  19:23,25
reiterate
  26:25
related
  17:19
  18:4
Relatedly
  22:2
relationshi
p

20:9
relative
  27:13
reliable
  16:11
  19:24
remain
  14:22
remedy
  15:3
remove
  12:9
rent
  30:11
repeated
  24:24
Reporter
  14:2
representin
g
  10:4
request
  13:13
  25:1
requested
  24:21
requests
  24:25
require
  23:18
required
  22:20
requires
  15:8
requiring
  25:17
reserved
  23:3

resolution
  12:20
  13:1
resolve
  23:18
respect
  11:22
  19:18
responsible
  24:2
result
  20:23
review
  22:17
reviewed
  11:22
revised
  27:11
  31:23
revisions
  32:3,4
rises
  15:18
risk
  21:10
  26:5
risks
  22:15
  24:21
Rollins
  10:3
room
  24:24
Rountree
  7:10,11
  9:10,13
Rule
  12:3
run
  7:5,8

15:1
running
  21:25
rushed
  24:20

_____

S

_____

sale
  11:15
  12:23,24,
  25 17:10
  19:25
  21:11,15,
  17,23,25
  22:2,4,12
  23:5,6,25
  25:16,18
  26:5,11,
  24 27:1,3
satisfied
  26:17
satisfy
  19:19
schedule
  24:21
schedules
  18:11,16
  19:11
Section
  11:18,19,
  20 12:14
  13:10,22,
  25 14:5
  15:8
  23:1,2,4,
  21,22
  24:7
security
  13:20
seek
  31:9

seemingly
  23:20
selecting
  25:19
selection
  27:9
selects
  27:22
self-
  17:5
sell
  9:6 11:10
  26:2
seller
  22:25
  23:25
sense
  30:17
served
  15:22
Services
  14:16
Servicing
  10:9,12
set
  24:20
  25:22
  29:13,14
set-
  29:18
setting
  29:20
shortly
  8:18,21
show
  15:3
showing
  14:23
signed



18:12,17
22:16

**significant**
17:13
19:18
20:10
23:16,17

**signing**
22:22

**similar**
13:19
15:25
28:14,23

**sincerity**
24:16,17

**sir**
10:7

**situation**
25:13

**Small**
10:17

**smooth**
26:11

**sold**
24:7

**sole**
21:6

**solution**
25:13,14
26:14

**solutions**
26:6

**Southern**
16:20,23

**SPEAKER**
7:20,23
29:22

**specific**
12:22

**Specifically**
17:23

**squandering**
17:6

**stability**
21:25
27:3

**stand**
22:18

**standard**
13:24
14:1,5,8,
10,20
15:7

**Starting**
7:10

**state**
10:5,8
22:3

**stated**
26:25

**Statement**
18:12,16

**states**
9:23 11:5
23:2 29:6

**statutory**
12:11
13:10

**strikes**
23:13

**strong**
14:21

**subchapter**
12:8,9,12

**subject**
24:20

**subjects**
26:4

**submitted**
23:3

**subsequently**
12:8

**substantial**
18:19
20:22
21:1
24:14
26:5

**successful**
16:9
19:22

**suggests**
20:14

**support**
17:22
28:2

_____

_____ T

**taking**
17:24

**talk**
7:20
29:22
30:1

**talking**
22:19

**Teresa**
8:12,14

**term**
23:1

**termination**
31:7

**terms**
22:24

**testified**
22:6 25:4

**testimony**
11:21,24
17:12
18:18
19:5
20:14

**Thanksgiving**
25:22,24
26:1,3

**thereof**
16:13
20:3

**Therewith**
11:14

**things**
24:11

**tight**
24:21

**time**
12:22
13:11
22:18

**timetable**
25:19,24

**today**
30:22
32:1,9

**Toddy**
7:16 9:19

**Tom**
9:18

**Tradex**
14:2,6

**transfer**
17:13,24

**transferred**
17:18
20:15

**transfers**

16:15
17:3,22,
25 18:9,
11,15
20:13,15
24:12

**transition**
26:11

**treatment**
12:5

**troubling**
18:9

**trust**
16:12
20:2

**trustee**
9:2,3,4,
5,20,23
11:4,6,8
12:12,13,
19,22
13:2,3,5,
14,15
14:11,23
15:2,4,9,
13,19
17:9 19:1
20:5,19
21:6,7,9,
10,13,15,
21,23,24
22:8,9,10
24:9,10
25:9,10,
15,16,18,
24 26:5,
10,12,13,
19,21,23
27:2,9,
22,23
28:4 29:6
30:4,6,17
31:8,9
32:4



**Trustee's**
  11:5
  12:20

**trustworthiness**
  16:8
  18:20
  19:16,18

**turn**
  27:5

**typically**
  18:25

———————

**U**

**U.S.**
  9:3,20
  11:18,20
  12:12,18,
  20 13:2,
  13 16:21
  25:8
  26:12
  27:22

**ultimate**
  13:4

**uncertainty**
  21:21

**unclear**
  24:1

**uncontradicted**
  17:11

**undefined**
  22:24
  23:1,24

**underlying**
  19:6

**understandably**
  21:16

**understanding**
  24:3
  28:13

**understood**
  28:21
  31:1,4,15

**United**
  9:23 11:5
  29:6

**UNKNOWN**
  7:20,23
  29:22

**unmute**
  10:17

**unusual**
  23:13

**unwillingness**
  17:3
  20:17
  21:22

**updated**
  22:17

**upload**
  30:20
  31:16

**uploaded**
  27:11,20

**usage**
  27:12

———————

**V**

**versus**
  14:2

———————

**W**

**Wachter**

**8:6,7**
  10:20,21,
  22

**wait**
  7:6

**walk**
  21:8

**waste**
  17:6

**Wednesday**
  25:23

**weeks**
  24:24

**weigh**
  19:1

**weight**
  20:10

**Westchester**
  16:21

**wishes**
  10:25

**work**
  24:14

**workable**
  25:15
  26:9,15

———————

**Y**

**years**
  17:20
  20:6
  21:20

**yesterday**
  8:24
  11:22
  12:16
  22:18
  27:10,20

**yesterday's**

12:18

**York**
  16:23

